# EXHIBIT 6

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Monday, July 6, 2026 9:47 AM
**To:** Antonopoulos, Nicole L.; Cho, Karen Y.
**Subject:** URGENT — Meet-and-Confer Demand: Deadname Disclosure in Filed Declaration / SB 59 Violation / Misrepresented Meet-and-Confer / Defective Arbitration Acceptance Evidence [Case No. 5:26-cv-03535-JGB-SP]

**Importance:** High

[EXTERNAL EMAIL]
Ms. Antonopoulos,

I write pursuant to Central District Local Rule 7-3 to raise three distinct matters requiring your immediate attention. This letter constitutes my formal meet-and-confer notice on each. I am available to speak on the phone or through a conference at any time today. Please send a Teams invitee or respond to this correspondence

---

MATTER I: DEADNAME DISCLOSURE IN FILED DECLARATION — SB 59 VIOLATION

---

THE VIOLATION

The Declaration of Dineen M. Allen filed in support of Defendants' Motion to Compel Arbitration and Stay Action (ECF Doc. 10-7, ¶4) identifies me as "Luna D'Sol[redacted]" That language does three things at once: (1) it discloses my former legal name — my deadname — in a publicly accessible federal court filing; (2) it deliberately outs my transgender identity to anyone who reads the docket on PACER; and (3) it does so under the framing "formerly known as," which was not an accident or oversight — it was a deliberate editorial choice to publish the connection between my current identity and my prior one.

This is a violation of California SB 59 (Transgender Privacy Act), signed by Governor Newsom on October 13, 2025, and fully operative as of July 1, 2026. SB 59 declares that a transgender person's gender identity is "intimate personal information entitled to protection under the right to privacy" and authorizes a civil action against any person or private entity that causes harm through the disclosure of such information. Bank of America filed the offending declaration on July 2, 2026 — one day after SB 59 took full effect and squarely within the actionable period that opened April 13, 2026. You are on notice.

The "formerly known as" construction is not a neutral administrative notation. It is a targeted publication of my prior identity that outs me to every party, attorney, clerk, and member of the public who accesses ECF in this case. There is no conceivable legitimate litigation purpose served by including my deadname in a declaration about an arbitration agreement. It serves one purpose only: to humiliate, out, harass and harm.

I note that this conduct is consistent with the pattern documented in my Complaint — Bank of America generated and transmitted official records identifying me by my former male name following my transgender disclosure and termination. Defendants are now replicating that conduct in federal court, in a publicly filed document, while simultaneously defending against exactly those allegations.

DEMANDS — MATTER I

By no later than 5:00 p.m. on Tuesday, July 8, 2026, I demand that you:

1. File a corrected declaration with the deadname and the phrase "[redacted]" fully redacted, accompanied by a notice of filing to the Court explaining the correction;

2. File a motion or application to seal ECF Doc. 10-7 in its current form, or alternatively, a notice to the Court requesting leave to substitute the corrected declaration pursuant to the Court's inherent authority to protect litigants from irreparable privacy harm;

3. Provide written confirmation that no future filing by any Defendant or their counsel in this action will identify me by my former name, in any form, including but not limited to "formerly known as," "f/k/a," or any other construction;

4. Identify who at Bank of America directed or authorized the use of my former name in the declaration, and whether that person accessed my personnel records to obtain it.

CONSEQUENCES IF YOU DO NOT COMPLY — MATTER I

If you fail to take the corrective action described above by the deadline, I will:

- File a Motion to Seal ECF Doc. 10-7 and request that the Court strike the deadname disclosure from the federal record;
- File a Motion to Strike pursuant to FRCP 12(f) on the grounds that the "[redacted]" language is impertinent, scandalous, and causes irreparable harm;
- Seek sanctions pursuant to the Court's inherent power, FRCP 11, and 28 U.S.C. § 1927 for filing a declaration containing identifying information that violates SB 59 and serves no legitimate evidentiary purpose;
- Assert a standalone civil cause of action under SB 59 against Bank of America, N.A. and any individual who authorized or directed the disclosure; and
- Bring this conduct to the attention of the State Bar of California, given that your firm authorized the filing of a declaration that violates a California privacy statute protecting transgender individuals.

MATTER II: MISREPRESENTATION OF MEET-AND-CONFER IN THE MOTION TO COMPEL ARBITRATION

I demand that you correct the misrepresentation to the about meet-and-confer

FRCP 11(b)(3) requires that representations to the Court be accurate and not misleading. A false characterization of a pro se plaintiff's conduct in relation to a mandatory meet-and-confer obligation is

not a minor technical error — it goes directly to the credibility of your submissions and to this Court's assessment of litigation conduct.

This meet-and-confer correspondence is itself being served on you as part of the record on this issue. If you do not correct the misrepresentation to the Court by July 7, 2026 at 5:00 p.m., I will bring the false statement to the Court's attention in my Opposition to the Motion to Compel Arbitration and in a separate FRCP 11 certification demand.

MATTER III: THE ALLEN DECLARATION DOES NOT AND CANNOT ESTABLISH ARBITRATION ACCEPTANCE — "RECEIPT" IS NOT "ACKNOWLEDGMENT"

The Allen Declaration (ECF Doc. 10-7) is fatally insufficient to prove that I entered into a binding arbitration agreement, and your own firm's prior written admissions confirm this.

A. Your Own Client's Attorney Has Already Admitted I Had Not Acknowledged the Policy as of November 22, 2024.

On August 4, 2025 — almost a year before this litigation — Grant MacQueen of your firm wrote to me as follows:

> "On November 22, 2024, the Bank sent a reminder email to employees
> who had not yet acknowledged receipt of the Arbitration Policy,
> including you."

Read that carefully. Mr. MacQueen did not say the November 22 reminder was sent to all employees. He said it was sent specifically to employees "who had not yet acknowledged receipt" — and he expressly included me in that group.

That is a judicial admission by an authorized agent of Bank of America and a representation by Morgan Lewis to me as opposing party. It directly establishes that as of November 22, 2024, I had not acknowledged the Arbitration Policy. BofA's own tracking system — which is the only reason a targeted reminder could have gone to "those who had not yet acknowledged" — confirmed my non-acknowledgment.

B. The Allen Declaration Contradicts the MacQueen Admission.

Ms. Allen's declaration (ECF Doc. 10-7, ¶5) now claims the November 22, 2024 reminder was sent to "all active U.S.-based employees, including Ms. D'Sol and the Individual Defendants." That characterization directly contradicts Mr. MacQueen's August 4, 2025 letter, which described the reminder as targeted specifically at non-acknowledgers.

Both cannot be true. Either the November 22 reminder was a blanket distribution to everyone (Allen's version), or it was a targeted distribution to employees who had not yet acknowledged (MacQueen's version). If it was blanket, then it proves nothing about my acknowledgment status. If it was targeted — as Mr. MacQueen told me in writing — then it proves I had not acknowledged.

You should not have filed a declaration that contradicts your client's own prior written representations to me. I am preserving this contradiction for my Opposition and, if appropriate, for a motion under FRCP 11 and the Court's inherent power.

C. "Receipt" Is Not "Acknowledgment" — And BofA Knows the Difference.

Ms. Allen's declaration (ECF Doc. 10-7, ¶6) states that the Bank's internal electronic data confirms I "received" both emails. Note what she does not say: she does not say I opened the email. She does not say I clicked the link. She does not say I read the Arbitration Policy. She does not say I clicked "Acknowledge and Agree." She says only that I "received" the emails — meaning they were delivered to my company inbox.

The policy email itself (ECF Doc. 10-7, ¶7) confirms that acceptance required either (1) clicking "Acknowledge and Agree" or (2) continuing employment for 30 days. Two separate paths. The first is an affirmative electronic act; the second is a deemed-acceptance fallback for those who never clicked.

The very structure of this two-path system proves that BofA understood "clicking" and "continued employment" to be distinct. Employees who clicked were acknowledged. Employees who did not click were tracked as not-yet-acknowledged — which is precisely why the November 22 reminder existed and was targeted at them. If mere continued employment constituted acknowledgment, there would be no category of "employees who had not yet acknowledged," there would be no need to track acknowledgment separately from employment status, and there would be no need for a reminder. The reminder system is an internal admission that receipt plus continued employment does not equal acknowledgment.

D. BofA Must Immediately Produce the Actual Click Record — Or Withdraw the Motion.

BofA cannot enforce an arbitration agreement against me based only on evidence that my company inbox received an email. To establish the first of the two acceptance paths, BofA must produce an electronic log showing I clicked "Acknowledge and Agree." It has produced no such log. To establish the second path — deemed acceptance through continued employment — BofA must show that the Arbitration Policy was validly distributed in the first place. Independent forensic analysis has established that the metadata of the Arbitration Agreement document reflects a creation date of February 27, 2025, just one day after I disclosed my transgender status to Shanks and Maxim — not November 2024 — raising serious questions about whether the purported document distributed in November 2024 is the same document now before this Court.

The Allen Declaration — which shows only delivery to an inbox and continued employment — is insufficient as a matter of law to establish mutual assent to arbitrate. See Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175-76 (9th Cir. 2014) (party seeking arbitration must demonstrate agreement was formed). I am raising these issues now so that you have the opportunity to evaluate the strength of your arbitration motion before I oppose it.

DEMANDS — MATTER III

By no later than 5:00 p.m. on July 7, 2026, please:

1. Confirm whether the November 22 reminder was sent to "all active employees" (as Allen states) or only to "employees who had not yet acknowledged" (as MacQueen stated in writing). Produce the distribution list or a declaration explaining the discrepancy.

2. Produce the electronic acknowledgment log entry — if one exists — showing that I clicked "Acknowledge and Agree" at any time.

3. If no click record exists, withdraw or stay the Motion to Compel Arbitration pending resolution of the foundational authenticity dispute regarding the Arbitration Agreement document's creation date.

Again, I am available to meet and confer at any time.

Nothing in this correspondence constitutes a waiver of any position, right, claim, or argument, including Plaintiff's pending Motion to Remand. All rights are expressly reserved.

**Luna D'Sol**
(213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.