FILED

CLERK, U.S. DISTRICT COURT

07/13/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____bom_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LUNA D'SOL**<br><br>                              Plaintiff,<br><br>              vs.<br><br>BANK OF AMERICA, N.A.;<br>BANK OF AMERICA CORPORATION;<br>TRICIA SHANKS, an individual;<br>PETER C MAXIM, an individual;<br>and DOES 1 through 50, inclusive,<br><br>                              Defendant(s). | Case No:  5:26-cv-03535-JGB-SP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND**<br><br>Honorable Judge Jesus G. Bernal,        .<br>.              United States District Judge<br><br>Date: Date: August 3rd, 2026<br>Time: 9:00 am<br>Courtroom: 1, 2nd floor<br><br>Filed concurrently with Plaintiff's Notice of Motion and Motion to Remand; Memorandum of Points and Authorities in Support Thereof; Declaration of Kevin H. Cohen; Request for Judicial Notice; Plaintiff's Objections to Defendants' Notice of Removal and Supporting Evidence; and [Proposed] Order. |

## I.  **INTRODUCTION**

Plaintiff commenced this action on March 4, 2026, in the Riverside County Superior Court against Bank of America, N.A. ("BANA"), Bank of America Corporation ("BAC"), Tricia Shanks ("Shanks"), and Peter C. Maxim ("Maxim"), and Does 1 through 50 , inclusive; under Case No. **CVPS2601396** for **(a)** Discrimination In Violation Of The Feha; **(b)** Hostile Work Environment; **(c)** Harassment In Violation Of The Feha; **(d)** Retaliation In Violation Of The Feha; **(e)** Failure To Accommodate A Disability In Violation Of The Feha;  **(f)** Failure To Pay Final Wages And Issuance Of Inaccurate Wage Statements; **(g)** Failure To Engage In The Interactive Process; **(h)** Aiding And Abetting Discrimination, Harassment, And Retaliation; **(i)** Failure To Prevent Discrimination, **(j)** Harassment, Or Retaliation; **(k)** Wrongful Termination Of Employment In Violation Of Public Policy asserting under the California Fair Employment and Housing Act ("FEHA"). The Complaint alleges that, following Plaintiff's disclosure that she is transgender and subsequent serious medical diagnosis, Defendants subjected Plaintiff to unlawful discrimination, harassment, retaliation, and ultimately wrongful termination in violation of California law. (ECF Doc. 1-1; Pl's RJN No. 1, Exhibit A).

Defendant Maxim had already appeared and actively participated in the state court action before removal, yet Defendants neither obtained nor filed his consent to removal (Luna D'Sol Declaration ('D'Sol Decl.") ¶9; Plaintiff's Request for Judicial Notice ("Pl's RJN") No. 5, Exhibit E)). The unanimity requirement is mandatory, and Defendants' failure to comply renders the Notice of Removal procedurally defective.

**Reservation of Rights.** Plaintiff appears in this Court solely because Defendants removed this action. Plaintiff's participation in these proceedings, including the filing of this Motion and any related papers, is compelled by Defendants' removal and shall not be construed as consent to federal jurisdiction, a waiver of Plaintiff's objections to removal, or an admission that this Honorable Court properly exercises jurisdiction. Plaintiff expressly preserves all objections to subject matter jurisdiction, personal jurisdiction, removal procedure, venue, and all other rights, claims, and defenses.

## II.    **LEGAL STANDARD**

Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Pursuant to 28 U.S.C. § 1332(a), the federal courts have original jurisdiction over state law actions only where the amount in controversy exceeds $75,000 and the action is between parties of diverse citizenship.

The Agent, in its Notice of Removal, declared that BAC, Shanks and Maxim 'are sham defendants and thus are not properly join in this action.' [ECF Doc. 1.1, p.8, n.1]. An exception to the requirement of complete diversity exists where it appears that a Plaintiff has fraudulently joined a "sham" non-diverse defendant. Judge William W. Schwarzer et al., *California Practice Guide: Federal Civil Procedure Before Trial* ¶ 2:670 (The Rutter Group 2005). "**Fraudulent joinder**" is a term of art, and requires no proof of scienter on the part of the plaintiff. *Id.* ¶ 2:671. Instead, a non-diverse defendant is said to be fraudulently joined where "the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."

28 U.S.C. § 1447(c) authorizes motions to remand on the basis of any lack of subject matter jurisdiction or procedural defect, providing in relevant part: "A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)." This action was removed to this Court on June 25, 2026. Plaintiff received the Notice of Removal documents from Defendants in the mail on July 9th, 2026 (D'Sol Decl. ¶37-39; Exhibits 31-35) despite Defendants withholding information of the tracking number to prejudice Plaintiff to address all filings on time (Id.), and Plaintiff files this Motion on July 12, 2026 — well within the statutory period.

Fraud as defense to enforcement of arbitration agreement (1) [18:587] Fraud in "inception" or "execution" of contract: A contract is *void* where the promisor does *not intend to enter into a contract at all;* e.g., where the promisor is deceived as to the nature of his or her act and does not know what he or she is signing. Because the entire contract

is void, there is no agreement to arbitrate. [*Rosenthal v. Great Western Fin'l Secur. Corp.* (1996) 14 C4th 394, 415, 58 CR2d 875, 887]. See [D'Sol Decl. ¶¶ 9-10,14, 29-30, 34; Exhibits 20, 25, 29; Pl's RJN No. 5, Exhibit E [p.6, ¶25)].

## III.   ARGUMENT

### A. Defendants Invert Controlling FEHA Authority to Defeat the Claims Those Decisions Were Intended to Protect

Defendants likewise materially alter *Jones v. Department of Corrections & Rehabilitation*. The Court of Appeal explained that the severe-or-pervasive requirement "is a crucial limitation that prevents **sexual harassment law** from being expanded into a 'general civility code.'" *Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1377 (emphasis added). Defendants omitted the word **"sexual"** and instead quoted the passage as referring broadly to "harassment law." [ECF Doc. 1, p. 17, ¶30]. That alteration expands the court's statement beyond its actual holding and obscures the context in which the limitation was articulated. The court was addressing claims of sexual harassment—not announcing a generalized rule applicable to every form of workplace conduct.

### B.  Lack of Consent Under 28 U.S.C. § 1446(b)(2)(A)

Here, The Notice of Removal is a perfect example of "The Footnote Wins, The Case Loses." The information provided in the footnotes is misplaced because it contains substantive qualifications and contradictory assertions that materially alter the meaning of the text. The few explanatory footnotes fare no better at illuminating ITOW's argument. See *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.4 (9th Cir. 1996) ('The summary mention of an issue in a footnote, without reasoning in support of the appellant's argument, is insufficient to raise the issue on appeal.').

On the one hand, in ECF Doc. 1-1,  the Agent alleges:
> *"Defendants Tricia Shanks, Peter C. Maxim, and Bank of America Corporation are sham defendants and thus are not properly joined in this action. Their consent therefore is not required for removal of this action to this Court....."* (Id.)

Yet, in the very next sentence, Defendants state:

> "*Nonetheless, all Defendants consent to the removal of this action pursuant to 28 U.S.C. § 1446(b)(2)(A)*."(Id.)

Defendants avoid judicial scrutiny by simultaneously asserting that consent is both unnecessary and satisfied. The party invoking federal jurisdiction bears the burden of establishing that removal was proper. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). The removal statute is strictly construed against removal, and any doubt regarding the propriety of removal must be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Because Defendants have failed to carry their burden of establishing compliance with the removal requirements, remand is required.

## C. Defendants' Citizenship Allegations Are Incomplete

A case may be heard in federal court under diversity jurisdiction if there is complete diversity; i.e., all plaintiffs are diverse from all defendants. 28 U.S.C. § 1332(a). A defendant may remove an action to federal court under 28 U.S.C. § 1332 provided no defendant is a citizen of the same state in which the action was brought. 28 U.S.C. § 1441(a), (b). The citizenship of improperly and fraudulently joined defendants must be disregarded for removal purposes. McCabe v. Gen. Food Corp., 811 F.2d 1336, 1339 (9th Cir. 1987).

The Agent does not faithfully represent the authorities it cites. Instead, it omits qualifying language, removes statutory limitations, and presents quotations in a manner that expands or alters the governing legal standards. For example, in discussing domicile, Defendants quote only the first sentence of *Boon v. Allstate Ins. Co.*, stating that "[a]n individual is a citizen of the state in which he [or she] is domiciled." (ECF No. 1 at 12, ¶ 19.) They omit the very next principle relied upon by *Boon*: that domicile is determined by **both** "(1) residence in a state, and (2) intent to remain indefinitely." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002). By omitting the second element, Defendants present an incomplete statement of the governing legal standard.

BAC Is a Citizen of North Carolina and Delaware.

For diversity purposes, "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1). BAC's current California Statement of Information is a public document and publicly accessible through the California Secretary of State, ID No. 2128692 good through 12/31/2026 identifies it as a company formed in Delaware with a principal address at 100 North Tyron Street, Charlotte, North Carolina 28255. And also a California Registered Corporate Agent Authorized Employee at 330 N Brand Blvd, Glendale CA https://bizfileonline.sos.ca.gov/search/business

BAC is a citizen of Delaware and North Carolina for purposes of diversity jurisdiction. Since the commencement of this action BAC has not submitted to this court or the state court a Notice of change of address. And there are no records that BAC is or was a citizen of California. There is no record of the contrary, BAC is planning to remain indefinitely in North Carolina and Delaware.

BANA Is a Citizen of North Carolina.

BANA is a national bank. A national banking association is a citizen of the State its main office is located, as determined by its charter. 28 U.S.C. § 1348; Rouse v. Wachovia Mortg., FSB, 747 F.3d 707, 715 (9th Cir. 2014) (U]nder § 1348, a national banking association is a citizen only of the state in which its main office is located."); see, Harvey v. Bank of America, N.A., 906 F. Supp. 2d 982, 988 n.2 (N.D. Cal. 2012) ("Defendant Bank of America N.A. is a citizen of North Carolina for purposes of diversity jurisdiction"). As specified in its charter, BANA's main office is located in North Carolina. Therefore, BANA is a citizen of North Carolina. 28 U.S.C. § 1348.

BANA is a citizen of North Carolina for purposes of diversity jurisdiction. Since the commencement of this action BANA has not submitted to this court or the state court a Notice of change of address. And there are no records that BANA is or was a citizen of California. There are no records of the contrary, BANA is planning to remain indefinitely in North Carolina.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

<u>Shanks is a Citizen of Pennsylvania</u>

An individual is a citizen of the state in which he [or she] is domiciled." Boon v. Allstate Ins. Co., 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. Armstrong v. Church of Scientology Int'l, 243 F.3d 546, 546 (9th Cir. 2000) (citing Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986)). Evidence of continuing residence creates a presumption of domicile. The Agent represents that Defendant Shanks is a citizen of Pennsylvania. Plaintiff does not presently dispute that representation for purposes of this Motion. Plaintiff reserves all rights to challenge that representation. [ECF Doc. 1, pp. 12-13, ¶19]

Shanks is a citizen of Pennsylvania for purposes of diversity jurisdiction. Since the commencement of this action Shanks has not submitted to this court or the state court a Notice of change of address. And there are no records that Shanks is or was a citizen of California. There is no indication to the contrary, Shanks intends to remain in Pennsylvania indefinitely in Pennsylvania. There is no record of the contrary, Shanks is not a California citizen.

The Agent devoted more than eight pages of the Notice of Removal attempting to portray Defendant Maxim as a sham defendant. [ECF Doc. 1, pp. 13-20]. In contrast, the Agent offered only conclusory allegations regarding BAC and Defendant Shanks, without providing any meaningful factual or legal analysis to support their fraudulent joinder theory as to either defendant. This disparity is significant because Defendants—not Plaintiff—bear the burden of establishing that removal was proper. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). by clear and convincing evidence.. Having failed to establish that BAC and Shanks were fraudulently joined, Defendants have not carried their burden of demonstrating complete diversity jurisdiction. Any doubt

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

regarding the propriety of removal must be resolved in favor of remand. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

PLAINTIIF is a citizen of California

An individual is a citizen of the state in which he [or she] is domiciled." Boon v. Allstate Ins. Co., 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. Armstrong v. Church of Scientology Int'l, 243 F.3d 546, 546 (9th Cir. 2000) (citing Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986)).

Plaintiff's domicile at the time of removal was and continues to be in Palm Springs California. (See Decl. D'Sol ¶26).  Continuing residence creates a presumption of domicile. Washington v. Hovensa LLC, 652 F.3d 340, 345 (3rd Cir. 2011); State Farm Mut. Auto Ins. Co. v. Dyer, 19 F.3d 514, 519 (10th Cir. 1994). Plaintiff is not, and since the commencement of this action, Plaintiff is a citizen of California for purposes of diversity jurisdiction because she resides in Palm Springs, California, and intends to remain there indefinitely. Plaintiff has no present intent to abandon her California domicile or establish domicile in any other state. Accordingly, Plaintiff satisfies both elements of domicile recognized in *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002).

MAXIM is a citizen of California

An individual is a citizen of the state in which he [or she] is domiciled." Boon v. Allstate Ins. Co., 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing Kanter v. Warner-Lambert Co., 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. Armstrong v. Church of Scientology Int'l, 243 F.3d 546, 546 (9th Cir. 2000) (citing Lew v. Moss, 797 F.2d 747, 750 (9th Cir. 1986))

Defendant Max or his Agent have produced no evidence that Defendant Peter C. Maxim was domiciled in any state other than California. To the contrary, the available evidence consistently

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

points to California. Defendant Maxim previously disclosed that his parents reside in a retirement community in Desert Hot Springs, California. Publicly available records available through Whitepages.com continue to identify his parents at that same location. Defendant Maxim was employed by Bank of America in California; he was served at the same office location he had been working for years prior to working with Plaintiff as her Supervisor. Same public place, www.whitepages.com show his last 11 addresses all within 2 miles where was served, the absence of a motion to squash service, his office phone number area code 213 from Los Angeles California, his cell phone number area code 818 Woodland Hills California, he did not raise any jurisdictional / citizenship prior to filing an Answer in California court. in the California Superior Court, and publicly available records through Whitepages.com identify Defendant Maxim. Taken together these facts without any indication to the contrary, this supports the conclusion that Defendant Maxim was and is domiciled in California and intended to remain there indefinitely. Maxim is a citizen of California for purposes of diversity jurisdiction. There is no record of the contrary, Maxim is not a citizen of another state

The Agent's' argument is a **de facto admission** that the current operative complaint lacks complete diversity,

> "*Here, disregarding the improperly and fraudulently joined Defendant Peter Maxim, all requirements are met because Plaintiff is a citizen of California, BANA is a citizen of North Carolina, BAC is a citizen of Delaware and North Carolina, and Shanks is a citizen of Pennsylvania*" [ECF Doc. 1, p. 10, ¶9]

Defendants' Notice of Removal repeatedly shifts its characterization of Defendants Shanks and Maxim. It begins by identifying **three "sham defendants"**—BAC, Shanks, and Maxim—and asserts that they should be disregarded for jurisdictional purposes. [ECF No. 1 at 8 n.1.] In the very next breath, however, Defendants represent that **"all Defendants consent"** to removal pursuant to 28 U.S.C. § 1446(b)(2)(A). Later, the Notice narrows its focus almost exclusively to Defendant Maxim, devoting substantial analysis to his purported fraudulent joinder while providing little or no comparable analysis regarding Shanks and BAC. These shifting positions raise a threshold question: are Shanks and Maxim

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

parties whose citizenship and participation must be disregarded, or are they defendants whose consent and representation are sufficiently significant to invoke the rule of unanimity? When there are multiple defendants, the 'rule of unanimity' requires that all defendants join in the removal petition. Although the rule does not require that every defendant literally sign the notice of removal, **each defendant must independently manifest its consent to removal clearly and unambiguously to the court within the thirty days allotted by the removal statute.**" *Sansone v. Morton Mach. Works, Inc.*, 188 F. Supp. 2d 182, 184 (D.R.I. 2002).

Defendants never affirmatively allege Defendant Maxim's citizenship in the Notice of Removal. Instead, they devote substantial argument to asserting that he should be disregarded as a fraudulently joined defendant. The available evidence, however, points to California. As set forth in Plaintiff's Declaration, Defendant Maxim's Bank of America employment records identify his business location as Westlake Village, California—the same location where he was personally served with process. (D'Sol Decl. ¶ 31; Ex. 27; RJN No. 4, Ex. D; ECF No. 1-4 at 129–131.)

The Agent has produced no evidence establishing that Defendant Maxim was domiciled in any state other than California at the commencement of this action or at the time of removal. Likewise, when Defendant Maxim appeared and filed an Answer in the California Superior Court on June 3, 2026 -weeks before removal- no declaration or other evidence was submitted asserting that he was domiciled outside California (D'Sol Decl. ¶ 31; Pl; RJN No. 5, Exhibit E).

Defendant Maxim's Answer in State Court further confirms that he was an active merits defendant, not a nominal or sham party. Maxim asserted, among other defenses, that Plaintiff's claimed physical, mental, and emotional injuries were barred by workers' compensation exclusivity under California Labor Code section 3200 et seq. (Pl.'s RJN No. 5, Exhibit. E; ECF No. 1-4 at 144.) By invoking an affirmative defense directed to the substance and recoverability of Plaintiff's alleged injuries, **Maxim actively sought adjudication of Plaintiff's claims on the merits**. The Agent cannot reasonably characterize Maxim as a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

sham defendant for removal purposes while simultaneously litigating substantive defenses on his behalf in state court. All disputed facts and ambiguities in state law are resolved in the plaintiff's favor. **Hunter v. Philip Morris USA**, 582 F.3d 1039, 1044–46 (9th Cir. 2009).

Courts recognize a "strong presumption" against removal jurisdiction; the burden is on the removing defendant to demonstrate that removal is proper. *See, e.g., Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir.1992). Similarly, "courts generally employ a presumption against fraudulent joinder." *Diaz v. Allstate Ins. Group,* 185 F.R.D. 581, 586 (C.D.Cal.1998) (citations omitted); *see also Hale v. Bank of Am., N.A.,* 2013 WL 989968, at *3 (C.D.Cal. Mar.13, 2013) ("There is a presumption against finding fraudulent joinder, and defendants who assert that plaintiff has fraudulently joined a party carry a heavy burden of persuasion."); *Davis v. Prentiss Properties Ltd., Inc.,* 66 F.Supp.2d 1112, 1115 (C.D.Cal.1999) (suggesting that for fraudulent joinder to exist, a claim would have to be so frivolous as to also violate Fed.R.Civ.P. 11(b) meriting possible sanctions).

### D. Even Assuming Any Pleading Deficiency Exists, Defendants Cannot Establish That Amendment Would Be Futile

Defendants' fraudulent joinder argument fails because it applies the wrong legal standard. The issue is not whether Plaintiff has pleaded her FEHA claims with the specificity Defendants prefer. Rather, the question is whether Defendants have shown that there is **no possibility** Plaintiff could state a viable claim against Defendant Maxim under California law. They cannot make that showing. Any uncertainty concerning the sufficiency of the pleadings or California law must be resolved in Plaintiff's favor. *Grancare, LLC v. Thrower*, 889 F.3d 543, 549-50 (9th Cir. 2018).

Plaintiff's Complaint alleges that immediately after Plaintiff disclosed that she is transgender, Defendant Maxim personally participated in a pattern of conduct directed at Plaintiff because of her sex, gender identity, gender expression, and transgender status. The Complaint alleges, among other things, that Maxim removed Plaintiff's

responsibilities, excluded her from opportunities provided to other employees, singled her out for different treatment, communicated with Plaintiff in a hostile and degrading manner, participated in the events leading to Plaintiff's termination, and contributed to a hostile work environment that altered the conditions of Plaintiff's employment. (ECF No. 1-1, ¶¶ 19(b)-(e), 23(a), 24(a), 34-47)

These allegations are not directed at routine personnel management decisions alone. FEHA recognizes that harassment includes conduct outside the scope of necessary job performance undertaken because of personal hostility, bias, or discriminatory motive. *Janken v. GM Hughes Electronics*, 46 Cal.App.4th 55, 63 (1996). Plaintiff alleges precisely that: a sustained course of discriminatory conduct beginning immediately after her protected disclosure and continuing through her termination.

Even if this Court were to conclude that additional factual detail should be pleaded concerning particular incidents, dates, or communications, that would not establish fraudulent joinder. California follows a liberal policy favoring amendment, and Defendants cannot satisfy their burden by identifying defects that could readily be cured through amendment. Because Plaintiff could amend to plead additional facts supporting her FEHA claims against Maxim, Defendants cannot establish fraudulent joinder as a matter of law. *Grancare*, 889 F.3d at 550.

**1.  Individual Supervisor Liability Exists Under FEHA § 12940(j)**

Under FEHA, individual supervisors bear personal liability for their own harassing conduct, independent of any corporate employer. Cal. Gov. Code § 12940(j)(3); Fiol v. Doellstedt, 50 Cal.App.4th 1318, 1326 (1996). The agency relationship between Shanks, Maxim, and the corporate defendants confirms — rather than eliminates — individual liability. Their acts as supervisors within the scope of their employment are imputable upward to the corporation; their own harassing conduct remains actionable against them personally downward. Myers v. Trendwest Resorts, Inc., 148 Cal.App.4th 1403, 1421 (2007). Defendants cannot have it both ways: if Shanks and Maxim acted as agents of

BANA and BAC, their acts bind the corporation — and their personal harassing conduct still binds them individually.

**2.  Defendants Misquote the California Supreme Court to Alter the Governing Legal Standard**

Defendants contend that a hostile work environment claim under FEHA requires Plaintiff to demonstrate conduct "because of [their protected characteristic]," citing Lyle v. Warner Brothers Television Productions, 38 Cal.4th 264, 278–279 (2006). Defendants, however, do not quote Lyle as written. Instead, they substitute the bracketed phrase "[their protected characteristic]" in place of the California Supreme Court's actual language, which states that the conduct must create a hostile work environment "because of their sex." (Lyle, supra, 38 Cal.4th at pp. 278–279.) This is not paraphrase. This is substitution.

The distinction is legally significant. The California Supreme Court did not employ the generic phrase "protected characteristic." Rather, it expressly analyzed hostile work environment claims arising from discrimination because of sex, adopting the United States Supreme Court's interpretation of Title VII:

> "[A]n employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was severe enough or sufficiently pervasive to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees because of their sex." (Lyle, supra, 38 Cal.4th at pp. 278–279, quoting Miller v. Department of Corrections (2005) 36 Cal.4th 446, 462.)

The Court further relied upon Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993), explaining that a workplace violates the law when it is permeated with discriminatory intimidation, ridicule, and insult sufficiently severe or pervasive to alter the conditions of employment because of sex. (Lyle, supra, at p. 279.)

Defendants' alteration obscures why the California Supreme Court repeatedly referred to "sex." Under FEHA, "sex" is not limited to biological sex. Government Code section 12926 expressly defines "sex" to include gender, gender identity, gender

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

expression, transgender status, and related characteristics. Plaintiff Luna D'Sol gender identity, gender expression, transgender status, and related characteristics. Plaintiff Luna D'Sol is a transgender woman. (ECF Doc. 1-1 ¶¶ 15, 17(a), 38.) Her Second Cause of Action alleges hostile work environment harassment "on the Bases of Sex, Gender Identity, Gender Expression, and Transgender Status" in violation of Government Code section 12940, subdivision (j). (Id., Second COA, p. 15.) The California Supreme Court's repeated use of the term "sex" already encompasses the very protected characteristics Plaintiff alleges. There was no need — and no legal basis — for Defendants to rewrite the Court's language.

California authority likewise confirms that the relevant inquiry is whether the plaintiff was subjected to disparate treatment because of sex as defined by FEHA. Accardi v. Superior Court, 17 Cal.App.4th 341, 348 (1993) (plaintiff need only demonstrate that "gender was a substantial factor" in the discriminatory treatment); Birschtein v. New United Motor Manufacturing, Inc., 92 Cal.App.4th 994, 1001 (2001) (same).

### 3.  The Factual Record Establishes Colorable Claims Against Each Defendant

Plaintiff's Complaint alleges that, following her February 26, 2025, disclosure of her transgender status to Defendants Shanks and Maxim, she was subjected to "a sustained course of unwelcome conduct directed at her because of her gender identity." (ECF DOC. 1-1, pp. 11-32, ¶¶15-20.) Defendants Shanks and Maxim are alleged to have: revoked approved assignments; filed false performance reports; excluded Plaintiff from opportunities; singled her out for hostile treatment during a team-wide event; and transmitted her termination notice addressed to her former male name. (Id.) All of this conduct commenced within days of Plaintiff's February 26, 2025, disclosure.

Prior to that disclosure, Plaintiff's employment record was unimpeachable: she had received a "solid performer" evaluation, written approval to expand her assignments, and public recognition from the same supervisors who would later terminate her. (Id., ¶¶ 16(a)–(c).) No discipline, criticism, or performance concern of any kind had been documented before her disclosure. (Id., ¶ 19(a).)

Plaintiff's Complaint further alleges that the harassing conduct was "sufficiently severe and pervasive — both individually and cumulatively — to alter the conditions of Plaintiff's employment and create an intimidating, hostile, and offensive working environment within the meaning of Government Code section 12923." (Id., p. 18, ¶ 43.) The post-termination conduct — seven documented instances of deadnaming in official records after a California court had legally changed Plaintiff's name — further illustrates the deliberate and sustained nature of the harassment. (Id., p. 18, ¶ 42.)

These allegations present at minimum a colorable basis for recovery against Shanks and Maxim under FEHA § 12940(j). The fraudulent joinder defense fails.

### 4. RIGHT-TO-SUE PAPERS

Defendants' argument regarding Plaintiff's pre-litigation "Negotiations Exhausted" letter is misplaced. If Defendants believed additional factual specificity was necessary concerning the individuals identified or the records referenced therein, those issues were readily suitable for resolution through the parties' meet-and-confer process rather than serving as a basis for removal or dismissal. In any event, under California's liberal pleading rules, any such omission would, at most, constitute a curable pleading defect for which leave to amend would be appropriate, not a basis for fraudulent joinder or federal jurisdiction. See *Grancare, LLC v. Thrower*, 889 F.3d 543, 550 (9th Cir. 2018).

### E. REMOVAL IS UNTIMELY — NAR SERVICE WAS NEVER VALIDLY COMPLETE ALTERED EVIDENCE ECF DOC 1-3

Defendant BANA contend that removal was timely because service upon BANA was completed on May 26, 2026, through a Notice and Acknowledgment of Receipt ("NAR") pursuant to California Code of Civil Procedure section 415.30(c). [ECF Doc. 1, p. 9, ¶ 5.] Plaintiff disputes that contention because the NAR upon which Defendants rely was legally insufficient to complete service under section 415.30, was expressly challenged by Plaintiff before removal [D'Sol Decl. ¶¶11, 13-14; ECF Doc. 1, p. 9, ¶3; ECF Doc 1-3, pp. 1-3, Exhibit C; Memo pp. 3-4, §II(A)], and was not the operative proof of service reflected in the Riverside County Superior Court record when Defendants invoked this Court's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

jurisdiction (See Plaintiff's notice of lodging the complete state court proof of service pursuant to local civil rule 81-1).

At the time BANA filed its Notice of Removal on June 25, 2026, the official Riverside County Superior Court docket did not reflect service upon BANA, instead, the docket first recorded service on June 26, 2026, after the Notice of Removal had already been filed. (D'Sol Decl. ¶¶ 22–23, Ex. 21; Pl.'s RJN No. 7, Ex. E.). Nevertheless, BANA purported to establish service by relying upon a NAR that is facially frivolous, defective, unsupported by competent evidence of statutory mailing, and contradicted by Plaintiff's forensic metadata evidence. [(D'Sol Decl. ¶¶17-18, 27, 36 Exhibits 22-23); (Declaration of Luna D'Sol Re Declaration of Kevin Cohen filed on July 10, 2026 ("Cohen Decl.") pp. 9-10), (Pl's RJN No. 7, Exhibit G)].

More specifically, the NAR documents upon which Defendants rely to represent completed service [ECF Doc. 1-3, pp. 2–3] are part of an email transmission that forensic examination labels as "altered or replaced" [Cohen Decl., p. 10], and are supported by a different set of PDF documents transmitted by Ms. Antonopoulos to Plaintiff on May 26, 2026, notwithstanding identical file names. (Cohen Decl. 9-10.)

Defendant BANA filed a Notice of Removal on June 25, 2026—the very date Defendant Shanks was contractually and judicially obligated, pursuant to the parties' court-approved stipulation, to file her responsive pleading in the Superior Court. [D'Sol Decl. ¶¶ 14, 18, 21, Ex. F; Pl.'s RJN No. 6.] Rather than comply with the obligation upon which Defendants' counsel had obtained affirmative relief from the Superior Court, Defendants abandoned that forum, invoked federal jurisdiction, and predicated removal upon the very NAR procedure Plaintiff had repeatedly challenged as legally defective. [D'Sol Decl. ¶¶ 8, 12.] Defendants cannot obtain the benefit of a court-approved stipulation while simultaneously avoiding the obligations upon which that relief was granted. Nor may they establish federal jurisdiction by relying upon a disputed and legally deficient NAR that was not supported by the operative state court record existing at the time of removal. Because removal jurisdiction cannot be sustained by resolving

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

disputed factual issues in the removing party's favor, the disputed validity of the NAR and the conflicting state court record must be resolved in Plaintiff's favor at this stage. *Grancare, LLC v. Thrower*, 889 F.3d 543, 549–50 (9th Cir. 2018); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

Plaintiff thereafter raised these defects during the parties' Local Rule 7-3 meet-and-confer process and specifically identified the disputed NAR, the conflicting state-court record, the forensic evidence concerning documents transmitted by Defendants' counsel, and Defendants' reliance upon legal authorities inconsistent with controlling Ninth Circuit precedent, including *Grancare, LLC v. Thrower*, 889 F.3d 543 (9th Cir. 2018). Plaintiff afforded Defendants an opportunity to withdraw or  the Notice of Removal or otherwise correct those jurisdictional defects before motion practice. Defendants declined to do so and instead elected to maintain removal on frivolous grounds. (D'Sol Decl. ¶36].

## F.   DEFENDANTS RELY ON SUPERSEDED AND REVERSED LEGAL AUTHORITIES

Defendants Quote a Pre-2012 Version of 28 U.S.C. § 1332(c)(1)

Defendants purport to quote 28 U.S.C. § 1332(c)(1) to establish corporate citizenship, stating that a corporation is deemed a citizen of "any State by which it has been incorporated and of the State where it has its principal place of business." [ECF Doc. 1, p. 12, ¶ 15.] This is the pre-amendment version of the statute. Congress amended § 1332(c)(1) through the Federal Courts Jurisdiction and Venue Clarification Act of 2011, effective January 6, 2012. The operative statute now provides that a corporation is deemed a citizen of "every State and foreign state" by which it has been incorporated and of the State or foreign state where it has its principal place of business. Pub. L. No. 112-63, § 101, 125 Stat. 758, 758–59 (2011); 28 U.S.C. § 1332(c)(1). Defendants' reliance on superseded statutory language further undermines the accuracy of their jurisdictional representations.

Defendants Cite a Reversed State Court Decision to Manufacture the Amount in
Controversy

Defendants assert that the amount in controversy exceeds $75,000 based primarily on Silo v. CHW Med. Found., 86 Cal.App.4th 947, 955 (2001), for the proposition that "a jury award in excess of $75,000 in non-economic damages was upheld in a wrongful termination lawsuit." [ECF Doc. 1, p. 23, ¶ 46.] Defendants and their counsel failed to conduct basic legal research. The California Supreme Court granted review of that decision, superseding the opinion of the Court of Appeal, and ultimately reversed the judgment. Silo v. CHW Medical Foundation, 27 Cal.4th 1097 (2002).

By citing a reversed appellate decision to validate a defunct $75,000 jury award, Defendants presented a false legal and factual premise to this Court in an attempt to manufacture the amount in controversy required for diversity jurisdiction. This is not a minor citation error. Read alongside Defendants' reliance on a superseded federal statute (see § III.D.1 above), it demonstrates a pattern of copying unverified, obsolete boilerplate — conduct that multiplies these proceedings vexatiously, misleads the Court, and forces a pro se plaintiff to expend limited resources litigating a patently defective removal.

## G.    DEFENDANTS BREACHED THE STIPULATION GOVERNING THEIR STATE COURT POSITION

Before removal, Defendants obtained an order vacating Defendant Shanks' default based upon a written stipulation providing, among other things, that service would be deemed complete and that Shanks would respond by June 25, 2026. (D'Sol Decl. ¶¶ 14–20; Pl.'s RJN No. 6, Ex. F.) Removal did not erase that stipulation, the resulting order, or the procedural posture created by them. Under 28 U.S.C. § 1450, orders and proceedings entered before removal remain in force unless dissolved or modified by the district court. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70* (1974) 415 U.S. 423, 435–437. *Granny Goose* explains that § 1450 promotes judicial economy by preserving proceedings already conducted in state court and preventing interlocutory orders from lapsing merely because jurisdiction shifts. The federal court therefore takes the action where the state court left it,

although federal procedural law governs the future course of the removed action. *Id.* at 436–439. Accordingly, the stipulation and order remain relevant to the service history, the status of Defendant Shanks, and Defendants' treatment of the individual defendants immediately before removal.

Plaintiff does not rely on the stipulation as an independent waiver of removal. Rather, it forms part of the operative procedural record and contradicts Defendants' attempt to portray Shanks and Maxim as parties whose participation may simply be disregarded. Defendants obtained affirmative relief on Shanks' behalf and filed substantive defenses on Maxim's behalf before asking this Court to disregard those same defendants for jurisdictional purposes.

The stipulation and resulting order also form part of the procedural history demonstrating the objectively unreasonable nature of removal. Plaintiff incurred $2,475 in actual expenses responding to the disputed removal record, including forensic review and related costs documented in the accompanying declaration and exhibits. Accordingly, if the Court remands this action, Plaintiff requests an award of $2,475 in just costs and actual expenses under 28 U.S.C. § 1447(c). See *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

### H. Defendants' Coordinated Manipulation Of Litigation Posture

THE PATTERN OF CONTRADICTORY POSITIONS ACROSS TWO FORUMS

The Agent simultaneously represents BANA, BAC, Shanks, and Maxim. The firm filed an Answer on behalf of Maxim [Pl's RJN No. 5, Exhibit E], negotiated a stipulation on behalf of Shanks [Pl's RJN No. 6, Exhibit F], accepted service on behalf of all defendants, presented documents to this Court through Ms. Antonopoulos that forensic examination identifies as containing altered electronic data, and deployed successive contradictory legal positions as tactical weapons — all while representing to this Court that two of those same clients are phantom parties with no legitimate stake in this litigation (Cohen Decl., Exhibit B, p. 2). The record reveals a coordinated strategy designed to manufacture federal jurisdiction where none exists, while simultaneously abandoning the individual defendants to protect the corporate entity.

The pattern unfolded across a 25-day window

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

1. [June 3, 2026] Operating under the guise of Defendant Peter Maxim, the Agent filed an Answer in state court seeking affirmative compensation against Plaintiff and asserting an arbitration defense. [RJN No. 5, Exhibit E, p. 6–7.] As a supervisor, Maxim lacks personal knowledge or foundation to assert the existence of an arbitration agreement, as he never had access to Plaintiff's personnel file, never presented such an agreement, and never monitored its execution. (D'Sol Decl. ¶ 19.)

2. [June 10, 2026] Operating under the guise of Defendant Shanks, Morgan Lewis appeared in state court to induce both Plaintiff and the Superior Court judge to execute a stipulation vacating her default. Shanks explicitly committed to filing an Answer in state court by June 25, 2026. Plaintiff and the Court relied upon this representation. [RJN No. 6, Exhibit F.] (D'Sol Decl. ¶¶ 14–20.)

3. [June 25, 2026] On the very date Shanks was obligated to file her responsive pleading, Defendants abruptly removed the action — appearing solely under the guise of BANA — and characterized their own co-defendants (BAC, Shanks, and Maxim) as "sham defendants" whose consent to removal was unnecessary. [ECF Doc. 1, p. 8, n. 1.] Defendants first invoked the rights of Shanks and Maxim to obtain affirmative relief in state court, then immediately sought to disregard those same defendants when doing so served BANA's jurisdictional objective.

4. [Deceptive Citizenship Disclosure]

## THE PURPORTED ARBITRATION AGREEMENT RESTS ON A FRAUDULENT FOUNDATION

Defendants' joint defense rests entirely on a purported arbitration agreement they contend Plaintiff accepted in November 2024. The authenticity of that document is itself the subject of a genuine factual dispute that precludes fraudulent joinder and undermines the jurisdictional premise of removal. Grancare, 889 F.3d at 549–50; Hunter, 582 F.3d at 1046.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

Plaintiff repeatedly requested the operative agreement since June 2025. When Defendants finally produced a copy in July 2025, independent forensic metadata analysis conclusively determined that the electronic document was created on February 27, 2025 — exactly one day after Plaintiff disclosed her transgender status to management. (D'Sol Decl. ¶¶ 14, 29, 38; ECF Doc. 1-1, p. 7, ¶ 19(a).)

Furthermore, an email transmitted by Ms. Antonopoulos in December 2025 — which purported to forward historical records — contains forensically "altered" electronic data. (Declaration of Kevin Cohen, President of DataTriage Technologies, LLC; Cohen Decl. Exhibit B, p. 2.) This evidence directly undermines the authenticity of the documents upon which Defendants predicate both their jurisdictional arguments and their merits defenses.

Because all disputed questions of fact must be resolved in Plaintiff's favor at this stage, and because the authenticity of the arbitration agreement is genuinely disputed by forensic evidence, Defendants cannot satisfy the "no possibility" standard for fraudulent joinder. Grancare, 889 F.3d at 549–50.

THE MUTUAL MISTAKE DOCTRINE DOES NOT PROTECT   DEFENDANTS' POST-NOTICE CONDUCT

Defendants cannot invoke the doctrine of mutual mistake to excuse their conduct after being presented with objective forensic evidence undermining the factual premise upon which they continued to rely. Although ordinary negligence does not bar a claim for mutual mistake, relief is unavailable where the conduct amounts to "gross negligence or preposterous or irrational conduct." Thrifty Payless, Inc. v. Americana at Brand, LLC, 218 Cal.App.4th 1230, 1243 (2013).

Here, after Plaintiff retained a computer forensics expert, Defendants were specifically informed that the native electronic metadata reflected material inconsistencies concerning the creation and transmission of the documents upon which they based removal. (Cohen Decl. Exhibit B; D'Sol Decl. ¶11, Exhibits 12-18.) Rather than investigate, withdraw, or correct their jurisdictional allegations, Defendants elected to

maintain those representations and require Plaintiff — a pro se litigant — to bring this motion. Such conduct is no longer attributable to ordinary mistake or inadvertence. It falls outside the equitable protection afforded to claims of mutual mistake.

## I. JUDICIAL ESTOPPEL BARS DEFENDANTS' SHIFTING POSITIONS

Having prevailed — or sought to prevail — in state court by defending Maxim and Shanks as proper parties in interest [Pl's RJN Nos. 5-6, Exhibits E-F] the Agent cannot now assert that those defendants were never real parties. New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (judicial estoppel prevents a party from prevailing on a position in one phase of litigation and then relying on a contradictory position in another). Maxim filed an Answer. Shanks had a default vacated. Both were actively litigating through the same counsel. The Court should not permit Defendants to weaponize the removal statute to manufacture federal jurisdiction by retroactively declaring sham the very defendants their own counsel simultaneously defended.

## J. UNRELATED CASES

Defendants' attempt to characterize this action as Plaintiff's "third lawsuit" against BAC and BANA is misleading and legally irrelevant to the jurisdictional issues before this Court. (ECF Doc. 1; p. 8, n.2; p. 13; ¶ 22).

Federal Case: 5:25-cv-03316-SSS-DTB

The prior federal action is not a related case. It named additional defendants, including Sedgwick Claims Management Services, Inc. and Fidelity entities, and asserted claims arising from employee benefit plans and the administration of disability, pension, retirement, and related benefits. Before the Court issued a summons, Plaintiff voluntarily dismissed that action without prejudice. (See Luna D'Sol Objections to Notice of Related Cases). I was able to obtain counsel for Worker's Compensation since the Bank's lien threats were only meant for the case in this current action. (D'Sol Decl. ¶46, Exhibit 37) Shortly thereafter, those benefit-related issues proceeded through an active workers' compensation matter involving parties and issues that substantially overlap with the dismissed federal action—not with this case.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

State Case:  25VECV04709

Even though Defendants' counsel encouraged Plaintiff to file that action (D'Sol Decl. ¶ 46-47, Exhibits. 38-39), the Los Angeles Superior Court rejected Plaintiff's fee waiver application and voided the entire action as though it had never been filed. Plaintiff contacted the Los Angeles Superior Court on July 10, 2026, and the clerk confirmed that the action remains void and of no legal effect. (Decl. D'Sol, Exhibit 48, Pl's RJN No. 8 Exhibit H).

Even though Defendants' counsel encouraged me to file this document (D'Sol Decl. ¶47. Exhibit 39), the court clerk rejected my Waiver Application and void the entire claim as if it had never been filed. I called the Los Angeles Superior Court on July 10, 2026 and they confirmed this statement is still true. (Id.) Also, that case did not involve the same defendants and it was not for the same reason this claim is for. That claim was for the enfroceiblity of a fake arbitration that the bank had only produced one that it had been edited 30 minutes before sending it to me. My complaint here did not bring any agreements, any policie, any pension, no retirement. This is strictly FEHA (D'Sol Decl. 46, 47, ex 38-39

## IV.    CONCLUSION

Defendants have not carried their burden of establishing that this Court possesses diversity jurisdiction or that removal complied with the mandatory procedural requirements governing removal. Defendant Maxim's California citizenship defeats complete diversity and implicates the forum-defendant rule unless Defendants establish fraudulent joinder. They have not done so. Plaintiff alleges at least colorable FEHA harassment claims against Maxim and Shanks, and any disputed facts, uncertainties in California law, or potential curable pleading deficiencies must be resolved in Plaintiff's favor.

Removal is independently defective because Defendant Maxim had appeared and filed an Answer in the state-court action, yet the record contains no separate, clear, and unambiguous manifestation of his consent to removal within the statutory period. Defendants' conclusory statement that "all Defendants consent" does not cure their failure to establish compliance with

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION
5:26-cv-03535-JGB-SP

28 U.S.C. § 1446(b)(2)(A), particularly where the Notice simultaneously asserts that the other defendants' consent was unnecessary.

Defendants' jurisdictional showing is further undermined by their failure to allege Maxim's citizenship, their reliance upon disputed NAR documents to establish the removal date, their inconsistent treatment of Shanks and Maxim across the state and federal proceedings, and their use of materially incomplete, superseded, or reversed authorities. The removing party bears the burden; Plaintiff does not bear the burden of disproving jurisdiction that Defendants never established.

Accordingly, Plaintiff respectfully requests that the Court:

1. **Remand this action to the Superior Court of California for the County of Riverside pursuant to 28 U.S.C. § 1447(c);**

2. **Defer or deny without prejudice all merits-based motions, including any motion to compel arbitration, unless and until the Court first determines that subject-matter jurisdiction exists;**

3. **Award Plaintiff the just costs and actual expenses caused by the objectively unreasonable removal, to the extent recoverable under 28 U.S.C. § 1447(c); and**

4. **Grant such other relief as the Court determines lawful and appropriate.**

I would **not** request in this conclusion that the federal court reinstate Shanks's default or disqualify counsel. Those are separate forms of relief and risk distracting from remand. The cleaner request is to remand and leave enforcement of the state-court stipulation and default order to the Riverside Superior Court.

CERTIFICATE OF COMPLIANCE (L.R. 11-6.2) The undersigned litigant certifies that this Memorandum of Points and Authorities complies with the type-volume limitation of Local Rule 11-6.1. According to the word count feature of the word processing system used to prepare this brief, the memorandum contains 7,734 words, excluding the parts of the brief exempted by Local Rule 11-6.2. Dated: July 1

Respectfully Submitted

Dated 7/12/26                    _____

Luna D'Sol, Plaintiff in Pro Per