**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

FILED

CLERK, U.S. DISTRICT COURT

07/15/2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____ bom _____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LUNA D'SOL**<br><br>                                     Plaintiff,<br><br>                    vs.<br><br>BANK OF AMERICA, N.A.;<br><br>BANK OF AMERICA CORPORATION;<br><br>TRICIA SHANKS, an individual;<br><br>PETER C MAXIM, an individual;<br><br>and DOES 1 through 50, inclusive,<br><br><br><br>                              Defendant(s). | Case No:  5:26-cv-03535-JGB-SP<br><br>**DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S NOTICE OF MOTION AND MOTION TO REMAND, TO VACATE PLEADINGS, AND FOR DECLARATORY RELIEF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br><br>Honorable Judge Jesus G. Bernal,         .<br>.              United States District Judge<br><br>Date: Date: August 3rd, 2026<br>Time: 9:00 am<br>Courtroom: 1, 2nd floor<br><br><br>Filed concurrently with Plaintiff's Notice of Motion and Motion to Remand; Memorandum of Points and Authorities in Support Thereof; Declaration of Plaintiff Luna D'Sol; Declaration of Kevin H. Cohen; Request for Judicial Notice in Support of Plaintiff's Motion; Plaintiff's Objections to Defendants' Notice of Removal and Supporting Evidence; Notice of Lodging to Supplement Notice of Removal and [Proposed] Order. |

- 1 -

## DECLARATION OF LUNA D'SOL

I, **LUNA D'SOL**, declare:

1.      I am the plaintiff in this case. I have personal knowledge of the matters stated herein and, if called as a witness, could and would testify competently thereto.

2.      I commenced this action on March 4th, 2026, by filing a Complaint in the Superior Court of California, County of Riverside, Palm Springs Courthouse, Dept PS2, against **BANK OF AMERICA CORPORATION** ("BAC"); **BANK OF AMERICA, N.A.** ("BANA"); **TRICIA SHANKS** ("Shanks"); **PETER MAXIM** ("Maxim"); and DOES 1 through 50, inclusive (collectively, "Defendants") The action was assigned Case No. CVPS2601396, and it arises from Defendants' discrimination, harassment, retaliation, wrongful employment practices, and related unlawful conduct, including, among other things, conduct occurring after I disclosed her transgender status on the bases of gender identity, sex, gender expression, transgender status, and age, in violation of the California Fair Employment and Housing Act (Gov. Code §§ 12920, 12940 et seq.), including subdivisions (a), (h), (i), (j), (k), (m), and (n); retaliation under Labor Code sections 98.6 and 1102.5; failure to pay wages due upon discharge and issuance of inaccurate wage statements in violation of Labor Code sections 201, 203, and 226; and wrongful termination in violation of fundamental public policy. I further seek relief under Civil Code sections 52.1 and 3294, Code of Civil Procedure section 1021.5, and all other applicable statutory and equitable provisions. ("Complaint"). A true and correct conformed copy of the Complaint filed on March 4, 2026, in Case No. CVPS2601396, is attached as **Exhibit A** to Plaintiff's Request for Judicial Notice ("Pl.'s RJN"), Request No. 1, and is incorporated herein by reference as though fully set forth herein.

3.      On March 7, 2026, the Proof of Service of Summons as to Defendant Tricia Shanks was filed in the Superior Court of California, County of Riverside. After Defendant Shanks failed to timely respond, her default was entered by the Clerk on May 1, 2026. A true and correct conformed copy of the Proof of Service of Summons is attached as **Exhibit B** to Plaintiff's Request for Judicial Notice, Request No. 2, and is incorporated herein by reference.

A true and correct conformed copy of the Entry of Default is attached as **Exhibit C** to Plaintiff's Request for Judicial Notice, Request No. 3, and is incorporated herein by reference.

**4.**       On April 23rd, 2026, I contacted Ms. Antonopoulos asking if she was authorized to accept service of Summons and Complaint on behalf of any of the Defendants. On April 28, 2026, Ms. Antonopoulos, confirmed that all four Defendants had authorized Morgan, Lewis & Bockius LLP to accept service via Notice and Acknowledgment of Receipt ("NAR") California CCP § 415.30, but without clarifying whether the firm had been retained to represent all four Defendants as counsel of record, I requested written clarification so that the service packages could be properly addressed and the record would accurately reflect each Defendant's representation. Defendants' counsel did not provide the requested clarification regarding her role in this matter until one court day before my service deadline (infra ¶9), leaving me, a self-represented litigant, to proceed without the requested information while arranging service. A true and correct copy of the communication exchange between Ms. Antonopoulos and me is attached hereto as **Exhibit 1** and incorporated herein by reference. Because Monday, May 5, 2026, was the deadline to complete service, I retained a registered process server to personally serve Defendant Peter Maxim at the Bank of America office where he had worked as my supervisor (infra ¶6).

**5.**       On Friday May 1, 2026, at 3:21 pm, when I only had 1 court day left to meet my service deadline after days with no response (supra ¶4), I received an email from Ms. Antonopoulos, expressly stating that her firm had been retained to represent BAC, BANA, SHANKS and MAXIM, in this action. Ms. Antonopoulos further, stated: "there is no need for you to expend resources by attempting to personally serve Defendants directly. <u>Of course, if you prefer to attempt to effectuate personal service at your own efforts and costs, that is entirely up to you</u>." (emphasis added).  A true and correct copy of the May 1, 2026, email is attached hereto as **Exhibit 2** and incorporated herein by reference.

**6.**       On May 4, 2026, Defendant Peter C. Maxim was personally served with the Summons and Complaint at his Bank of America workplace in Westlake Village, California. I recognized this location because, during my employment with Bank of America, Mr. Maxim

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

personally represented to me and other employees during a team presentation that he had been working from the Westlake Village office since the COVID-19 pandemic and resided in Woodland Hills, California (supra ¶4). A true and correct conformed copy of the Proof of Service of Summons for Defendant Peter C. Maxim, filed on May 4, 2026, in Case No. CVPS2601396, is attached as **Exhibit D** to Plaintiff's Request for Judicial Notice ("Pl.'s RJN"), Request No. 4, and is incorporated herein by reference.

7.        Attached to the May 1, 2026, email were four pre-completed NAR forms, one for each Defendant. True and correct copies of those attachments are attached hereto as follows: (a) the NAR for Defendant Bank of America Corporation ("BAC") as **Exhibit 3**; (b) the NAR for Defendant Bank of America, N.A. ("BANA") as **Exhibit 4**; (c) the NAR for Defendant Peter C. Maxim as **Exhibit 5**; and (d) the NAR for Defendant Tricia Shanks as **Exhibit 6.**

8.        On June 2nd, 2026, I spoke to Ms. Antonopoulos advising the service was defective: a) my process server had inadvertently emailed the documents instead of mailing as required by CCP § 415.30, he had also sign the front Mailing certification and  not complete the front of the form, b) NAR forms prepared by Defendants' counsel, identified an incorrect case number in all the forms (supra ¶7, Exhibits 3-6) and c) Ms. Antonopoulos had attached a unsigned Proof of Service to each of her signed NARs which she explained her assistant had inadvertently forgotten to sign . True and correct copies of these defective NAR and unsigned Proof of Services are attached hereto as **Exhibit 7** (for BANA); **Exhibit 8** (for BAC); **Exhibit 9** (for Shanks); and **Exhibit 10** (for Maxim) all incorporated herein by reference. I told Ms. Antonopoulos that NAR package contained certifications under penalty of perjury from both parties that did not accurately reflect the manner in which service had occurred **then I considered service deficient so I caused an entirely new service package** to be sent to Defendants' counsel by certified mail and provided the tracking number via email - USPS Tracking Nos. 9402611898765528098329 and 9402611898765528098350. A true and correct copy of my June 2nd, 2026, email to Ms. Antonopoulos where I memorialized our conversation

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

represented in this paragraph is attached hereto as **Exhibit 11** and incorporated herein by reference.[1]

9.    On June 3, 2026, Ms. Antonopoulos prepared, executed, and filed an Answer to Complaint at the California Superior Court County of Riverside on behalf of Defendant Maxim [Pl's RJN No. 5, Exhibit E; ECF Doc 1-4p. 142). Ms. Antonopoulos, who executed Maxim's Answer (Id.), did not file for a Demurrer, or Motion to Strike, or Motion to Dismiss in the California Superior Court.  and Defendants'' Counsel failed to disclosed Maxim's citizenship [, whereby Defendant Maxim appeared in this action, generally denied the allegations of the Complaint, and asserted affirmative defenses pursuant to Code of Civil Procedure section 431.30. A true and correct conformed copy of Defendant Peter C. Maxim's Answer to the Complaint, filed on June 3, 2026, in Case No. CVPS2601396, is attached as **Exhibit E** to Plaintiff's Request for Judicial Notice ("Pl.'s RJN"), Request No. 5, and is incorporated herein by reference.

10.    I only spoke to matters related to my personnel file with Defendant Shanks as my manager following Bank of America's policies. Defendant Maxim was my supervisor and never presented me with an arbitration agreement, never discussed an arbitration agreement with me, and was not authorized to access to my personnel file.

11.    On June 3, 2026, Ms. Antonopoulos sent me an email attaching a purported May 26, 2026, email from her secretary, which included the NAR package with four Proofs of Service that now bore signatures. Those attachments were inconsistent with the original NAR packages previously provided to me and, as set forth in the accompanying forensic evidence are not authentic copies of the documents purportedly transmitted on May 26, 2026 (See Luna D'Sol Declaration Re Declaration of Kevin Cohen's Exhibit A filed on July 10 2026 ("Cohen Decl.")). Accordingly, the June 3 production contradicted Ms. Antonopoulos's prior

---

[1] The corrected service package was not a duplicate of the original. It corrected the erroneous case number appearing on the NARs prepared by Defendants' counsel, corrected the statutory certifications concerning service, and remedied the procedural deficiencies previously identified by both parties. Nevertheless, Defendants elected to rely upon the earlier defective documents rather than execute the corrected NARs

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

representation that her secretary had merely inadvertently failed to sign the original Proofs of Service. (Supra ¶ 8.). A true and correct copy of Ms. Antonopoulos's June 3, 2026 email is attached hereto as **Exhibit 12** and incorporated herein by reference. A true and correct conformed copy of Defendant Maxim's Answer to Complaint filed on June 3rd 2026, for Case No CVPS2601396 is attached as **Exhibit E** to the Plaintiff's RJN and topic of Plaintiff's Request No. 5 for Judicial Notice. A true and correct copy of the purported May 26, 2026 email from Ms. Antonopoulos's secretary, as attached to the June 3, 2026, email, is attached hereto as **Exhibit 13**. True and correct copies of the four purported May 26, 2026, NAR packages containing the now-signed Proofs of Service are attached hereto as **Exhibits 14** (for BAC.), **Exhibits 15** (for BANA), **Exhibits 16** (for Maxim), and **Exhibits 17** (for Shanks). In this same email Ms. Antonopoulos attached a proposed stipulation.  A true and correct copy of Ms. Antonopoulos' proposed stipulation is attached hereto as **Exhibit 18** all incorporated herein by reference.[2]

**12.**      On June 4, 2026, I declined to execute the proposed stipulation because it relied upon waiving defects under CCP §415.30 I also indicate that nothing in that  "correspondence shall be construed as a waiver, concession, or withdrawal of any position, objection, claim, defense, procedural argument, mediation opportunity, or resolution effort, including but not limited to my position regarding service on all defendants." A true and correct copy of my June 4th response email is attached hereto as **Exhibit 19** and incorporated herein by reference. I also shared with Ms. Antonopoulos that given the deficiencies in this process, I had retained One Legal to serve the Complaint and Summons to the institutional defendants via their registered agent for service of process. (Id.).    More specifically, I placed Ms. Antonopoulos on notice:

---

[2] The corrected service package was not a duplicate of the original. It corrected the erroneous case number appearing on the NARs prepared by Defendants' counsel, corrected the statutory certifications concerning service, and remedied the procedural deficiencies previously identified by both parties. Nevertheless, Defendants elected to rely upon the earlier defective documents rather than execute the corrected NARs

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

"…both sides presently possess documents that certify, under penalty of perjury, events or procedures that did not occur as reflected in those original documents. For that reason **I don't feel comfortable relying on or stipulating based upon those documents**" (Id.) (emphasis added)

13. Before filing the Notice of Removal, I expressly notified Ms. Antonopoulos that the Notice and Acknowledgment of Receipt, the accompanying Proof of Service, and the purported service record were legally and factually defective. Despite that notice, Ms. Antonopoulos represented to this Court that BANA. had been properly served and relied upon those same documents as evidence of compliance with Code of Civil Procedure section 415.30. The Cohen forensic report further concludes that the electronic records associated with those documents contain metadata inconsistent with Defendants' representations regarding their creation and transmission (Cohen Decl., pp.9-10).

14. On June 8th, 2026, I served Defendants' counsel with a Motion for Sanctions pursuant to California CCP §128.7. The motion challenged the Twenty-Fifth Additional Defense asserted in Defendant Maxim's Answer which alleged that I was subject to mandatory and binding arbitration (Supra ¶9; RJN No. 5, Exhibit E [p.6, ¶25]). A true and correct copy of the Safe Harbor Motion is attached hereto as **Exhibit 20** and incorporated herein by reference**.** Although Defendants contend that I accepted an arbitration agreement at an earlier time, which I dispute, a copy later produced reflected a February 27, 2025 creation date, one day after I disclosed my transgender status to Defendants Shanks and Maxim [ECF Doc. 1-1, p. 7, ¶19(a)]. Defendant represented that the document produced was merely an exemplar and that the operative agreement would be provided shortly. After all this, no executed arbitration agreement has been produced to me. (infra ¶ 29)

15. Defendants continue to rely on the challenged documents after having been placed on notice of the alleged defects, forensic irregularities, and my rejection of those

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

defective NAR. (supra ¶¶11, 13-14; ECF Doc. 1, p. 9, ¶3; ECF Doc 1-3, pp. 1-3, Exhibit C; Memo pp. 3-4, §II(A))

16.     On June 10, 2026, Defendants' Counsel, now invoking the authority of Defendant Sanks, requested affirmative relief from the Court by filing a proposed order and a stipulation agreement that Defendants Counsel had also prepared where both parties agreed to:  **a)** vacate Shanks default status, and **b)** Defendants counsel to file an Answer for Shanks on June 25th 2026.. A true and correct conformed copy of the stipulation is attached as **Exhibit F** to the Plaintiff's RJN and topic of Plaintiff's Request No. 6 for Judicial Notice.

17.     The prior proposed stipulation (supra ¶11, Exhibit 18) is materially different from the fully executed stipulation (Pl's RJN No. 6, Exhibit F). At my request, all references to service pursuant to Code of Civil Procedure section 415.30, the purported May 26, 2026 execution of the NAR, and any provision deeming service effective under that statute were removed. I requested those revisions because I did not intend to consent to, ratify, or waive any defect or deficiency associated with any prior attempted service by NAR (Id.). The final executed stipulation reflects that intent and contains no provision waiving my position regarding the prior NAR service attempts.

18.     On or about June 10, 2026, I retained Data Triage Technologies LLC ("Data Triage"), a computer forensics firm, to conduct a forensic metadata examination of the two emails received from Ms. Antonopoulos (supra ¶¶ 8, 11) to determine whether the attached documents had been forensically altered, modified, or replaced. The results of that examination are set forth in the Cohen Decl. pp. 9-10.

19.     On June 15, 2026, **the Honorable Manuel Bustamante, Judge of the Superior Court of California, County of Riverside, Palm Springs Courthouse, Department PS2** approved Defendant's proposed order (supra ¶14, Exhibit F, Pl's RJN No.6).

20.     On June 25, 2026, Defendants' Counsel now acting on behalf of BANA alone, filed a Notice of Removal removing this action from the Superior Court of California, County of Riverside, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 [ECF Docs. 1, 1-1 through 1-4]. In its Notice of Removal,

Defendant BANA invoked diversity jurisdiction while simultaneously asserting that Defendants BAC, Shanks, and Maxim are "sham defendants." [ECF Doc. 1, p. 8, n1.] BANA nevertheless affirmatively alleged the citizenship of itself, BAC, and Shanks, [Id., ¶¶13-20], but conspicuously omitted any allegation regarding Maxim's citizenship, asserting instead that the citizenship of purported sham defendants need not be considered. [Id. ¶22.] BANA's selective disclosure is internally inconsistent: if the citizenship of purported sham defendants is legally irrelevant, there is no apparent reason to disclose the citizenship of BAC and Shanks while withholding Maxim's.

21.     Defendants obtained the benefit of the stipulation agreement by securing relief from Defendant Tricia Shanks' default based upon their commitment to file a responsive pleading by June 25, 2026. Having accepted the benefits of the stipulation, Defendants cannot avoid their corresponding obligations or profit from their own nonperformance (supra ¶¶14,18, Exhibit F, Pl's RJN No.6).

22.     On June 25, 2026, Defendants filed their Notice of Removal in this Court and represented to the federal court that service upon BANA. had been completed through the NAR pursuant to Code of Civil Procedure section 415.30. However, at the time Defendants filed their Notice of Removal, the official Superior Court case summary did not reflect that BANA had been served. A true and correct copy of the OneLegal.com receipt confirming that the Los Angeles Superior Court accepted and posted the operating Proof of Service on Defendant BANA on June 26, 2026, at 9:31 a.m., is attached hereto as **Exhibit 21**.

23.     A true and correct conformed copy of Defendant BANA's Proof of Service of Summons accepted by the court on June 26, 2026, for Case No CVPS2601396 is attached as **Exhibit G** to the Plaintiff's RJN and topic of Plaintiff's Request No. 7 for Judicial Notice. When considered together with my OneLegal.com receipt (supra exhibit 21), these records demonstrate that Defendant removed this action on June 25th, 2026, while the Los Angeles Superior Court docket still did not reflect BANA. as having been served. Defendants nevertheless represented to this Court that an alternative method of service was sufficient, despite my position that such method was not legally effective.

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

24.     Plaintiff's Request for Judicial Notice No. 8 further establishes the official state-court record reflecting service. Thus, at the time Defendants filed their Notice of Removal, the official state-court record did not yet reflect service on BANA. Rather than disclose the existence of the operative Proof of Service or explain the procedural posture to this Court, Defendants relied exclusively on the disputed NAR procedure that I had repeatedly challenged as defective. (D'Sol Decl. ¶¶ 8, 11, 21, 24.)

25.     Following Defendants' Notice of Removal, I have consistently and respectfully objected to this Court's subject-matter jurisdiction. Any actions I have taken in this Court, including communications with opposing counsel, compliance with local rules, or participation in meet-and-confer efforts, have been undertaken solely because Defendants removed the action here. Nothing in this Declaration or any filing submitted by me constitutes consent to removal, consent to federal jurisdiction, a waiver of my Motion to Remand, or a voluntary invocation of this Court's jurisdiction.

26.     Because complete diversity of citizenship does not exist, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332. At all relevant times and at the time of removal, I was, and remain, a citizen of the State of California. My residence address is at Palm Springs CA 92262, - I am not a citizen of another state, and I have no intentions to move.

27.     In connection with the forensic examination described above (supra ¶¶ 8, 11, 17), I retained Kevin Cohen of Data Triage Technologies, LLC and incurred a total of $2,475.00 in forensic examination costs (Cohen Decl.). The first invoice, in the amount of $2,062.00, was paid on June 26, 2026, under Transaction ID No. 96B82535A2581252H. The second invoice, in the amount of $413.00, was paid on July 2, 2026, under Transaction ID No. 0RY28439NT738240K. True and correct copies of those invoices are attached hereto as **Exhibits 22** and **23**, respectively and both incorporated herein by reference

**PREJUDICE**

28.     As a direct result of Defendants' removal, I was deprived of the opportunity to present my Code of Civil Procedure section 128.7 motion to the Superior Court after expiration of the statutory safe-harbor period (supra ¶13, EXHIBIT 20) and instead was forced to devote

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

substantial time, effort, and financial resources to litigating federal jurisdiction. The removal occurred while I was unemployed, without any employment income, approximately six months delinquent on my mortgage, and experiencing a documented psychiatric crisis that requires emergency medical treatment and continuing physician supervision. A true and correct copy of the January 27, 2026 letter prepared by my treating physician, Dr. Jason Halperin, concerning my medical condition is attached hereto as **Exhibit 24** and incorporated herein by reference. During this same period, Defendants' removal forced me to divert my limited financial and personal resources to jurisdictional litigation that would not otherwise have been necessary.

29.     The events giving rise to this litigation have had a profound impact on my mental and emotional health (infra ¶ 30). After devoting nearly twenty years of my career to Bank of America (referring collectively to both BAC and BANA), during which I consistently received positive performance evaluations and advanced to positions of significant responsibility, I disclosed to Defendants on **February 26, 2025** that I am transgender (supra ¶¶2,13; ECF Doc. 1-1, p. 6,7, ¶¶ 16, 19(a)). Less than three months later, my employment was terminated. That impact has been compounded by Defendants' continued reliance on a purported arbitration agreement which, when I first requested a copy, I reviewed using the document's electronic properties and observed that it reflected a creation date of **February 27, 2025**—the day after I disclosed my transgender status—not November 2024 as Defendants continue to represent. Attached hereto as **Exhibit 25** and incorporated herein by reference is a true and correct copy of the email by which Defendants transmitted the purported arbitration agreement, with communications designated for settlement purposes redacted, together with a true and correct copy of the electronic document properties of the attached file reflecting a creation date of **February 27, 2025**.

30.     **Furthermore, in December 2025, Bank of America produced my personnel file. The records produced include my chronological training history and policy acknowledgments throughout my employment. I found no entry reflecting any acceptance, acknowledgment, or completion of an arbitration agreement** (supra ¶14, Exhibit 20, pp. 60-66, (containing Exhibit 16)). Nevertheless, Defendants continue to rely upon a document whose own metadata is

inconsistent with the timeline they ask this Court to accept. On June 4, 2026, while this litigation was pending, I was required to seek emergency medical treatment after experiencing severe chest pain and difficulty breathing. A true and correct copy of my emergency department records is attached hereto as **Exhibit 26**.

31.    A true and correct copy of Defendant Maxim's Bank of America work information is attached hereto as **Exhibit 27** and incorporated herein by reference. Personal identifying information has been redacted. The document reflects Defendant Maxim's business address in Westlake Village, California, which matches the address at which he was served [RJN No. 4., Exhibit D; ECF Doc. 1-4, pp. 129-131). The document also reflects his office telephone number with a 213-area code, the same Los Angeles area code as my cellular telephone number.

32.    A true and correct copy of my California Civil Rights portal to obtain Right-to-Sue is attached hereto as **Exhibit 28** and incorporated herein by reference. This shows all the document I upload before my intake appointment for case D'Sol VS. Bank of America, et al. (emphasis added)

**MEET AND CONFER:**

33.    I initiated meet-and-confer efforts regarding the pending state court sanctions motion on June 8, 2026, and again on June 10, 2026. Defendants ignored these requests for over a week under the pretense of indifference.  On June 17, 2026, Ms. Antonopoulos responded and confirmed that Defendants wished to meet and confer regarding my Motion for Sanctions and other anticipated motions. When the meet and confer occurred on June 26, 2026, Defendants focused exclusively on their anticipated motions in a forum where I had not even been served with the initial document. When I attempted to discuss her Motion for Sanctions, Defendants refused to address it, stating that there was no point because, according to them, "your motion is moot."

34.    I informed Defendants that I could not agree that the discussion satisfied L.R. 7-3 as to Defendants' anticipated Motion to Compel Arbitration because, while explaining that it did not matter whether I remembered being presented with an arbitration agreement, Defendants asserted that there was case authority supporting that proposition. When I asked which case they were relying upon, Defendants responded that they did not have the citation. The parties scheduled

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

a continued meet and confer for the following Wednesday, at which time I still had not been served. Before that discussion occurred, however, Defendants filed their Motion to Compel Arbitration and represented to the Court that I had been unwilling to participate in the L.R. 7-3 process. That characterization is false. A true and correct copy of the email correspondence exchanged between June 6, 2026, and June 22, 2026, concerning the parties' efforts to meet and confer is attached hereto as **Exhibit 29** and incorporated herein by reference**.**

35.    A true and correct copy of my June 26, 2026 email memorializing the parties' meet-and-confer discussion is attached hereto as **Exhibit 30** and incorporated herein by reference.

36.    I respectfully bring these matters to the Court's attention to identify the issues Defendants' counsel refused to correct when given the opportunity and that now underlie the matters before this Court: **(1)** the defective Notice and Acknowledgment of Receipt and the fabricated service record (supra ¶¶ 8, 12, 13, 15, 17, 24); **(2)** the manipulation of records, which the forensic expert specifically described as "altered" with respect to Ms. Antonopoulos's communications (see Cohen Decl.); and **(3)** Defendants' evasion of the state court sanctions proceedings, which I respectfully submit warrants the exercise of this Court's inherent authority, where Defendants represented to the state court that they would withdraw the removal and then failed to honor that representation. (supra ¶¶ 11, 12, 16, 17, and 21). Defendants selectively quoted *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998), omitting the Ninth Circuit's liming language regarding fraudulent joinder and Defendants improperly relied on the federal *Twombly* pleading standard despite binding Ninth Circuit authority holding that the fraudulent-joinder standard is not equivalent to a Rule 12(b)(6) analysis. *Grancare, LLC v. Thrower*, 889 F.3d 543, 549 (9th Cir. 2018).

**DEFENDANTS' COUNSEL WITHOLDS INFORMATION TO INDUCE DELAY**

37.    I repeatedly requested the USPS tracking number after not receiving the Notice of Removal papers. Defendants' counsel (a) denied one existed, (b) did not share that the packaged had been returned to her office, (c) and continued to withhold the tracking number by stating one did not exist thereby preventing me from seeking assistance to locate it. These events are demonstrated in chronology below through the following Exhibits incorporated herein as reference:

**a.** Attached hereto as **Exhibit 31** is a true and correct copy of my June 30, 2026 email placing Defendants' Counsel on notice that I had not received the initial Notice of Removal papers;

**b.** Attached hereto as **Exhibit 32** is a true and correct copy of my June 30, 2026 follow-up email advising Defendants' counsel that I still had not received the Notice of Removal papers and requesting tracking information which defendants' counsel confirmed one didn't exist;

**c.** Attached hereto as **Exhibit 33** is a true and correct copy of my July 9, 2026 email memorializing the parties' July 8, 2026 meet-and-confer. I again informed I had not received the Notice of Removal documents, and that when requested the USPS tracking, Defendants' counsel's represented that they mailed the documents without tracking number services;

**d.** Attached hereto as **Exhibit 34** is a true and correct copy of my July 9, 2026 correspondence sent after Plaintiff finally received the Notice of Removal package. I advised Defendants' counsel that the envelope bore a USPS tracking number and USPS processing information, and that Defendants' repeated failure to provide the tracking information prevented Plaintiff from locating or retrieving the mailing while it was being held by the United States Postal Service; and

**e.** On July 9th 2026 I contacted the United States Postal Service. A USPS representative advised that the carrier had returned the package to sender on June 27, 2026. The representative further explained that the tracking notation **"Left In Mailbox"** indicates the package was deposited inside the mailbox. And that **"Left in / at Mailbox"** indicates that the package had been held by the Postal Service. A true and correct copy of the USPS tracking history is attached hereto as **Exhibit 35**.

**38.** I finally obtained the package on July 9, 2026. The envelope bore a USPS tracking label and contained the handwritten notations "RTS" and "10 day hold," which had been redacted with black marker. A true and correct photograph of the package is attached hereto as **Exhibit 36** and incorporated herein by reference and incorporated herein by reference.

**39.** Upon receiving the Notice of Removal, I promptly began preparing and filing responsive pleadings, including a Motion to Remand and related filings.

**CONTINUED HARASSMENT**

**40.** The day after I disclosed my transgender status, Ms. Shanks acknowledged my email and copied Lauren Reed, an individual whose name I had never previously seen or heard. [ECF Doc. 1-1, p. 7, ¶20(b)], thereafter, among other adverse employment actions, my employment was terminated by Lauren Reed (Id., p.10, ¶20(c)). This rapid succession of discriminatory and retaliatory acts, compounding a concurrent diagnosis of HIV, directly worsened my psychological health and caused

severe mental distress, requiring ongoing medical treatment and clinical care by treating physicians to manage the resulting trauma [Id.; p.7, ¶20(b); p. 12, ¶20(f)], [See also ECF Doc. 1, p. 23, ¶45].

41.    As my direct supervisor, Defendant Peter C. Maxim was the individual with whom I interacted more than all other named Defendants combined. Defendant Maxim was an active participant in the events giving rise to my claims, not a nominal defendant added solely to defeat diversity (ECF Doc. 1, p.8, n.1). Defendant Maxim is named also because of his own personal acts, amongst other things, sending everyone home except me so then he can later tell me I wasn't needed in a text message using profanity [ECF Doc. 1-1, p. 9, ¶19(e))], also accusing me of not being at work via text messages and when I responded immediately after offering to send him an internal message (IM) from my desk he told me no to not because he was not at work [Id., p. 8, ¶19(c)].The continued misrepresentation of material facts concerning events I personally experienced and the need to continually respond to those inaccuracies have significantly exacerbated my mental and emotional distress. (supra ¶30, Exhibit 26)

42.    Defendants' counsel recently filed a declaration referring to my disclosure of a name as to other than my legal name. I contend that this characterization serves no legitimate litigation purpose and is highly prejudicial, improper, and injurious to my dignity. During the parties' meet-and-confer, Defendants' counsel stated that she saw no reason to remove that reference and were unaware of any legal authority requiring its removal.[3] I responded that the issue was not dependent upon a specific statute, but upon the principle that an individual should be addressed consistent with her or his legal identity and should not be subjected to unsupported theories or characterizations concerning her or his identity.

43.    My legal name is not a matter of personal preference. It was established by a court order signed by a judge and that defendants have acknowledged receiving a copy of the order that Defendants and their counsel are bound to recognize. That order does not identify me by "f/k/a," "a/k/a," or "now

---

[3] Defendants' counsel stated that she was unaware of any legal basis supporting my request to protect her privacy. I disagrees. See, e.g. **Cal. Code Civ. Proc. §§ 1275–1279.6** (Name Change Act) ; **Cal. Health & Safety Code §§ 103425–103445** (Amendment of birth records); **42 U.S.C. § 2000e-2** (Title VII); **Cal. Gov. Code § 12940** (FEHA) ;**Fed. R. Civ. P. 10(a)** (Caption of pleadings); **Fed. R. Civ. P. 11(b)** (Representations to the Court); **C.D. Cal. L.R. 11-3** (Signature block and attorney information, if relevant to party identification)

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

chooses to be," nor does it authorize a deadname disclosure. During our meet-and-confer when I asked to identify its basis, they repeated that it was because they don't see a reason why not. This conversation was memorialized in Exhibit 33 of this Declaration.

44.     Exhibit 33 of this Declaration also memorialized Defendants' Counsel response when I raised my concern regarding their breach of the stipulation concerning Defendant Shanks. Defendants stated their position that removal relieved them of any further obligation under that stipulation.

**BAC AND BANA'S MANIPULATION IN MY LACK OF REPRESENTATION**

45.     I am forced to proceed in propria persona despite preferring representation by counsel. Bank of America (collectively, BAC and BANA) has represented that a lien exists against any recovery I may obtain in this action. However, similar to their refusal to provide me a copy of a purported Arbitration agreement used as a threat for seeking court intervention, Defendants have refused  my repeated requests for a copy of the purported lien and have represented the amount of the alleged lien inconsistently. The existence of a purported lien, as I disclose it during intake session, continues to be the reason prospective counsel decline to represent me. A true and correct copy of counsel's declining to represent me because of the purported lien is attached here to as **Exhibit 37** and incorporated herein by reference**.**

46.     Attached hereto as **Exhibit 38** and incorporated herein by reference is a true and correct copy of the email dated August 4, 2025, from Defendants' Counsel explaining that on November 8, 2024, an Arbitration Agreement had been sent to all employees, which I dispute, that contained a link for acknowledgment of its terms and acceptance. Defendants' Counsel further stated that '**on November 22, 2024, the Bank sent a reminder email to employees who had not yet acknowledged receipt of the Arbitration Policy, including you** [me].' This representation indicates that, **as of November 22, 2024, I had not been recorded by the Bank as having acknowledged receipt of the Arbitration Policy**

47.     Attached hereto as **Exhibit 39** and incorporated herein by reference is a true and correct copy of the email dated August 15, 2025, from Defendants' counsel issuing threats that I'll be facing damages and other appropriate relief imposed by the bank if I file a complaint in

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

the court related solely to my employment. However, at the same time encouraging me to file a lawsuit in court and provide them a copy of my filings.

48.    A true and correct copy of the Los Angeles County Superior Court Register of Actions for Case No. 25VECV04709 is attached as **Exhibit H**, incorporated herein by reference, to Plaintiff's Request for Judicial Notice and is the subject of **Request No. 8** for Judicial Notice

49.    A true and correct copy of the public Notice of Application filed in my workers' compensation proceeding is attached as **Exhibit I**, incorporated herein by reference, to Plaintiff's Request for Judicial Notice and is the subject of **Request No. 9** for Judicial Notice.

50.    I respectfully clarify that the mention of the lien (supra ¶45) is noted solely to address Defendant's filings. I have the utmost respect for this Honorable Court and the legal profession. I do not claim to possess the specialized skills of licensed counsel, nor is there any intent to disrupt or disrespect the court's processes.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 12th day of July, 2026, at Palm Springs, California.

_____

**Luna D'Sol**

Plaintiff, In Pro Per

DECLARATION OF PLAINTIFF LUNA D'SOL IN SUPPORT OF PLAINTIFF'S MOTIONS
5:26-cv-03535-JGB-SP

EXHIBIT 1

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Re: Request for Acceptance of Service – Luna D'Sol v. Bank of America, N.A.
**Date:** April 28, 2026 at 14:45
**To:** Antonopoulos, Nicole L.  nicole.antonopoulos@morganlewis.com
**Cc:** Cho, Karen Y.  karen.cho@morganlewis.com

Dear Ms. Antonopoulos,

Thank you for the update regarding Mr. Maxim.

Before proceeding, I would appreciate confirmation of whether Morgan, Lewis & Bockius LLP will be appearing as counsel of record for all four named defendants in this matter — Bank of America, N.A., Bank of America Corporation, Tricia Shanks, and Peter C. Maxim — or whether any defendant will be separately represented.

I want to ensure the service packages are properly addressed and the record reflects the correct representation for each party.

Thank you.

## Luna D'Sol

 (213) 925-4069
 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

On Apr 27, 2026, at 16:44, Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com> wrote:

Dear Luna,

Hope you had a good weekend.  We wanted to circle back to confirm that Peter Maxim also authorized us to accept service via notice and acknowledgement of receipt pursuant to California Code of Civil Procedure section 415.30 in matter *D'Sol v. Bank of America, N.A. et al,* Riverside County Superior Court, Case No. CVPS2601396.   We will accept the notice and acknowledgement of receipt form and related documents via email.  Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com

<image001.png>  <image002.png>  <image003.png>  <image004.png>  <image005.png>

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Friday, April 24, 2026 3:21 PM
**To:** Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>
**Cc:** Cho, Karen Y. <karen.cho@morganlewis.com>
**Subject:** Re: Request for Acceptance of Service – Luna D'Sol v. Bank of America, N.A.

[EXTERNAL EMAIL]
Hi Nicole,

Your offer does not meet my request (in the interest of efficiency).

I will proceed with service on all defendants through other available means.

Plaintiff reserves all rights.

**Luna D'Sol**

📱 (213) 925-4069

📧 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

On Apr 24, 2026, at 13:17, Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com> wrote:

Dear Luna,

Thank you for your email.  It is our understanding that none of the defendants have been properly served to date.

We have authority to accept service for Defendants Bank of America, N.A., Bank of America Corporation, and Tricia Shanks via notice and acknowledgment of receipt pursuant to California Code of Civil Procedure section 415.30 in matter *D'Sol v. Bank of America, N.A. et al,* Riverside County Superior Court, Case No. CVPS2601396.

We will accept the notice and acknowledgement of receipt forms and related documents via email.  I'm providing you with a courtesy copy of the link to the notice and acknowledgement of receipt form for your reference:
        POS-015 NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

We are waiting to hear back from Peter Maxim, and we will let you know whether we have authority to accept service on Peter Maxim's behalf once we hear back from him.

Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com

 <image001.png>  <image002.png>  <image003.png>  <image004.png>  <image005.png>
**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Thursday, April 23, 2026 7:20 AM
**To:** Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>
**Cc:** Cho, Karen Y. <karen.cho@morganlewis.com>

**Subject:** Request for Acceptance of Service – Luna D'Sol v. Bank of America, N.A.

[EXTERNAL EMAIL]
Ms. Antonopoulos,

I am writing regarding the pending action filed in Riverside County Superior Court, Case No. CVPS2601396.

In the interest of efficiency and to avoid unnecessary service costs, I am prepared to effectuate formal service of the summons and complaint. Before doing so, I am extending the opportunity for you and/or your client to accept service electronically.

If you are authorized to accept service on behalf of Bank of America, N.A. and any named defendants, please confirm in writing. Upon confirmation, I will promptly provide the filed summons and complaint for acknowledgment of receipt.

If I do not receive confirmation, I will proceed with formal service without further notice.

This request is made solely to facilitate efficient service and does not waive any rights.

Sincerely,

**Luna D'Sol**

 (213) 925-4069

jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

CONFIDENTIALITY AND PRIVACY NOTICE: This email is from a law firm and may contain information that is confidential, privileged, and/or attorney work product. This email may also contain personal data, which we process in accordance with applicable data protection laws and our Privacy Policies and Notices. If you are not the intended recipient, you may not review, copy, or distribute this message. If you have received this email in error, please contact the sender immediately and delete all copies from your system.

# EXHIBIT 2

**From:** **Antonopoulos, Nicole L.** nicole.antonopoulos@morganlewis.com
**Subject:** RE: Request for Acceptance of Service – Luna D'Sol v. Bank of America, N.A.
**Date:** May 1, 2026 at 15:21
**To:** Luna D'Sol jravada@icloud.com
**Cc:** Cho, Karen Y. karen.cho@morganlewis.com

Dear Luna,

Morgan, Lewis & Bockius LLP has been retained to represent Bank of America, N.A., Bank of America Corporation, Tricia Shanks, and Peter C. Maxim in matter *D'Sol v. Bank of America, N.A. et al,* Riverside County Superior Court, Case No. CVPS2601396.

As noted in my prior emails, we are authorized to accept service for Bank of America, N.A., Bank of America Corporation, Tricia Shanks, and Peter C. Maxim via notice and acknowledgement of receipt pursuant to California Code of Civil Procedure section 415.30 in this matter, which is both efficient and cost-effective, and you can send us these forms via email.  I've attached the forms where we filled in some of the initial information at the top of the form for your convenience.  You just need to fill out the rest of the forms, except for the portion below where it says "(To be completed by recipient):" and then you can email us the forms for us to complete/sign the bottom portion of the forms.  I'm resending a link to the blank form for your reference:
*POS-015 NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL

Given we have agreed to accept service via notice and acknowledgement of receipt pursuant to California Code of Civil Procedure section 415.30, there is no need for you to expend resources by attempting to personally serve Defendants directly.  Of course, if you prefer to attempt to effectuate personal service at your own efforts and costs, that is entirely up to you.  Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com

    

# EXHIBIT 3

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO:<br>NAME: Luna D'Sol, Plaintiff, In Pro Per<br>FIRM NAME:<br>STREET ADDRESS: 2275 E Belding Drive<br>CITY: Palm Springs       STATE: CA    ZIP CODE: 92262<br>TELEPHONE NO.: 213-925-4069    FAX NO. :<br>E-MAIL ADDRESS: jravada@icloud.com<br>ATTORNEY FOR (Name): | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
 STREET ADDRESS: 3255 E. Tahquitz Canyon Way
 MAILING ADDRESS: 3325 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
 BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CVPS2601296 |
|---|---|

TO *(insert name of party being served):* Bank of America Corporation

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: _____

_____    ▶    _____
(TYPE OR PRINT NAME)                               (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐  A copy of the summons and of the complaint.
2. ☐  Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: _____

_____    ▶    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]<br>**For your protection and privacy, please press the Clear<br>This Form button after you have printed the form.** | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>*www.courtinfo.ca.gov* |

Print this form      Save this form      Clear this form

# EXHIBIT 4

**POS-015**

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** <br> NAME: Luna D'Sol, Plaintiff, In Pro Per <br> FIRM NAME: <br> STREET ADDRESS: 2275 E Belding Drive <br> CITY: Palm Springs <br> TELEPHONE NO.: 213-925-4069 <br> E-MAIL ADDRESS: jravada@icloud.com <br> ATTORNEY FOR (Name): | STATE BAR NO: <br><br><br> STATE: CA   ZIP CODE: 92262 <br> FAX NO. : | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
STREET ADDRESS: 3255 E. Tahquitz Canyon Way
MAILING ADDRESS: 3325 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol
Defendant/Respondent: Bank of America, N.A. et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: <br> CVPS2601296 |
|---|---|

TO (insert name of party being served): Bank of America, N.A.

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: _____

▶

_____     _____
(TYPE OR PRINT NAME)          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other (specify):

(To be completed by recipient):

Date this form is signed: _____

▶

_____     _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,     (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use <br> Judicial Council of California <br> POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, <br> §§ 415.30, 417.10 <br> www.courtinfo.ca.gov |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

[ Print this form ]   [ Save this form ]   [ Clear this form ]

# EXHIBIT 5

**POS-015**

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** STATE BAR NO:<br>NAME: Luna D'Sol, Plaintiff, In Pro Per<br>FIRM NAME:<br>STREET ADDRESS: 2275 E Belding Drive<br>CITY: Palm Springs  STATE: CA  ZIP CODE: 92262<br>TELEPHONE NO.: 213-925-4069  FAX NO.:<br>E-MAIL ADDRESS: jravada@icloud.com<br>ATTORNEY FOR (Name): | **FOR COURT USE ONLY** |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
STREET ADDRESS: 3255 E. Tahquitz Canyon Way
MAILING ADDRESS: 3325 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol
Defendant/Respondent: Bank of America, N.A. et al.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CVPS2601296 |

TO *(insert name of party being served):* Peter C. Maxim

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: _____

_____      ► _____
(TYPE OR PRINT NAME)                           (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: _____

_____      ► _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,          (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                  ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005]<br>**For your protection and privacy, please press the Clear<br>This Form button after you have printed the form.** | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

**Print this form**   **Save this form**   **Clear this form**

# EXHIBIT 6

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO:

NAME: Luna D'Sol, Plaintiff, In Pro Per

FIRM NAME:

STREET ADDRESS: 2275 E Belding Drive

CITY: Palm Springs    STATE: CA    ZIP CODE: 92262

TELEPHONE NO.: 213-925-4069    FAX NO. :

E-MAIL ADDRESS: jravada@icloud.com

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

STREET ADDRESS: 3255 E. Tahquitz Canyon Way

MAILING ADDRESS: 3325 E. Tahquitz Canyon Way

CITY AND ZIP CODE: Palm Springs, CA 92262

BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: CVPS2601296 |
|---|---|

TO *(insert name of party being served):* Tricia Shanks

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: _____

_____    ▶    _____
(TYPE OR PRINT NAME)    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: _____

_____    ▶    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

Print this form    Save this form    Clear this form

# EXHIBIT 7

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

NAME: Luna D'Sol, Plaintiff, In Pro Per

FIRM NAME:

STREET ADDRESS: 2275 E Belding Drive

CITY: Palm Springs    STATE: CA    ZIP CODE: 92262

TELEPHONE NO.: 213-925-4069    FAX NO.:

E-MAIL ADDRESS: jravada@icloud.com

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

STREET ADDRESS: 3255 E. Tahquitz Canyon Way

MAILING ADDRESS: 3325 E. Tahquitz Canyon Way

CITY AND ZIP CODE: Palm Springs, CA 92262

BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:  CVPS2601296 |
|---|---|

TO (insert name of party being served): Bank of America, N.A.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:    May 4th, 2026

Justin Mentzar

(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [ ] A copy of the summons and of the complaint.
2. [ ] Other (specify):

*(To be completed by recipient):*

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Bank of America, N.A.    ▶    *n Antonopoulos*

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Bank of America, N.A.

Page 1 of 1

| Form Adopted for Mandatory Use  Judicial Council of California  POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,  §§ 415.30, 417.10  www.courtinfo.ca.gov |
|---|---|---|

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]    [ Save this form ]    [ Clear this form ]

## PROOF OF SERVICE

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL
### [Bank of America, NA]

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐     by placing the document(s) listed above in a sealed  envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐     by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

Case No.CVPS2601396

EXHBIT 8

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

NAME: Luna D'Sol, Plaintiff, In Pro Per
FIRM NAME:
STREET ADDRESS: 2275 E Belding Drive
CITY: Palm Springs    STATE: CA    ZIP CODE: 92262
TELEPHONE NO.: 213-925-4069    FAX NO.:
E-MAIL ADDRESS: jravada@icloud.com
ATTORNEY FOR (Name):

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
STREET ADDRESS: 3255 E. Tahquitz Canyon Way
MAILING ADDRESS: 3325 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol
Defendant/Respondent: Bank of America, N.A. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CVPS2601296 |
|---|---|

TO (insert name of party being served): Bank of America Corporation

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: _____ May 4th, 2026 _____

justin Metnzar                                    ►  _____

_____                (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)
(TYPE OR PRINT NAME)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. [ ]  A copy of the summons and of the complaint.
2. [ ]  Other (specify):

(To be completed by recipient):

Date this form is signed: May 26, 2026
Nicole L. Antonopoulos on behalf of Bank of America Corporation

_____                ►  n Antonopoulos
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,        (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                        ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Bank of America Corporation

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ]   [ Save this form ]                    [ Clear this form ]

**PROOF OF SERVICE**

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**
**[Bank of America Corporation]**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.CVPS2601396

# EXHBIT 9

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

NAME: Luna D'Sol, Plaintiff, In Pro Per
FIRM NAME:
STREET ADDRESS: 2275 E Belding Drive
CITY: Palm Springs    STATE: CA    ZIP CODE: 92262
TELEPHONE NO.: 213-925-4069    FAX NO.:
E-MAIL ADDRESS: jravada@icloud.com
ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE
STREET ADDRESS: 3255 E. Tahquitz Canyon Way
MAILING ADDRESS: 3325 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol
Defendant/Respondent: Bank of America, N.A. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: CVPS2601296 |
|---|---|

TO (insert name of party being served): Tricia Shanks

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing:    May 4th, 2026

Justin Metnzar
(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

**ACKNOWLEDGMENT OF RECEIPT**

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other (specify):

(To be completed by recipient):

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Tricia Shanks    ▶    NAntonopoulos
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Tricia Shanks

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]    **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**    Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.    | Print this form | Save this form |    | Clear this form |

## PROOF OF SERVICE

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

### NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL
### [Tricia Shanks]

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CVPS2601396

PROOF OF SERVICE

# EXHIBIT 10

**POS-015**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY:  STATE BAR NO:<br>NAME: Luna D'Sol, Plaintiff, In Pro Per<br>FIRM NAME:<br>STREET ADDRESS: 2275 E Belding Drive<br>CITY: Palm Springs   STATE: CA   ZIP CODE: 92262<br>TELEPHONE NO.: 213-925-4069   FAX NO. :<br>E-MAIL ADDRESS: jravada@icloud.com<br>ATTORNEY FOR (Name): | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF RIVERSIDE
 STREET ADDRESS: 3255 E. Tahquitz Canyon Way
 MAILING ADDRESS: 3325 E. Tahquitz Canyon Way
CITY AND ZIP CODE: Palm Springs, CA 92262
 BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>CVPS2601296 |
|---|---|

TO (*insert name of party being served*): Peter C. Maxim

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: May 4th, 2026

Justin Mentzar

(TYPE OR PRINT NAME) ▶ _____ (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

### ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (*to be completed by sender before mailing*):

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other (*specify*):

(*To be completed by recipient*):

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Peter C. Maxim

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ N. Antonopoulos

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Peter C. Maxim

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ] [ Save this form ]   [ Clear this form ]

**PROOF OF SERVICE**

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**
**[Peter C. Maxim]**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

Case No.CVPS2601396

PROOF OF SERVICE

EXHBIT 11

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Recap of Today's Conversation
**Date:** June 2, 2026 at 17:57
**To:** Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com
**Cc:** Cho, Karen Y. karen.cho@morganlewis.com

Nicole,

My apologies that I was unable to come back to the phone. I was dealing with another matter and wanted to briefly recap our conversation to ensure I understood everything correctly.

As I understand it, you were going to check with your office regarding the proofs of service that accompanied the previously returned NAR forms and specifically determine why those proofs of service were not signed.

With respect to the corrected NAR forms for the institutional defendants, those documents were delivered and received yesterday, June 1, 2026. The corresponding tracking numbers are:

9402611898765528098329

9402611898765528098350

Those are the corrected forms that I am requesting be executed and returned.

As I mentioned during our call, my concern is not whether Bank of America received notice. I appreciate your confirmation that your office considers Bank of America to have received the documents and that service was accepted. My concern is simply that I do not wish to submit a document to the Court that appears to certify mailing of documents where the record does not accurately reflect the method by which those documents were originally transmitted. For that reason, I would prefer to proceed using the corrected versions that were delivered.

Separately, and solely to avoid any future service disputes, I have already retained One Legal to complete service on both institutional defendants through their registered agent for service of process tomorrow.

Regarding your invitation to participate in private mediation, I appreciate the offer and your willingness to explore resolution. At this time, however, I would prefer to continue litigating the matter. The parties previously had an opportunity to pursue resolution, and given the current posture of the case, including the involvement of additional defendants, I believe it is appropriate to continue moving forward through the litigation process. Of course, I will remain open to reevaluating that position as circumstances develop.

For the avoidance of doubt, nothing in this correspondence is intended to waive any existing service positions, defaults, response deadlines, objections, or procedural rights. Until otherwise agreed in writing or ordered by the Court, Plaintiff's positions regarding service on Defendant Peter C. Maxim and the current status of Defendant Tricia Shanks remain unchanged.

Thank you again for your time today and for following up regarding the proofs of service.

Best regards,

## Luna D'Sol

 (213) 925-4069
 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHBIT 12

From: **Antonopoulos, Nicole L.** nicole.antonopoulos@morganlewis.com
Subject: RE: Recap of Today's Conversation
Date: June 3, 2026 at 15:25
To: Luna D'Sol jravada@icloud.com
Cc: Cho, Karen Y. karen.cho@morganlewis.com

Dear Luna,

Thank you for your email.  I'm re-attaching the email that my office sent to you with a courtesy copy of the signed Notice and Acknowledgement documents, including signed Proofs of Service.

Also, we've attached for your review the updated redlined draft stipulation to set aside the default as to Tricia Shanks.  Could you please let us know if you approve and/or have any further edits/comments?  Once you approve, we will send you a clean copy for your signature.

Lastly, we understand you are not interested in mediation at this time, but please let us know if your position changes as we remain open to discussing resolution before both Parties expend additional time and resources in litigating this matter.  Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com



**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Tuesday, June 2, 2026 5:58 PM
**To:** Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>
**Cc:** Cho, Karen Y. <karen.cho@morganlewis.com>
**Subject:** Recap of Today's Conversation

[EXTERNAL EMAIL]
Nicole,

My apologies that I was unable to come back to the phone. I was dealing with another matter and wanted to briefly recap our conversation to ensure I understood everything correctly.

As I understand it, you were going to check with your office regarding the proofs of service that accompanied the previously returned NAR forms and specifically determine why those proofs of service were not signed.

With respect to the corrected NAR forms for the institutional defendants, those documents were delivered and received yesterday, June 1, 2026. The corresponding tracking numbers are:

9402611898765528098329

9402611898765528098350

Those are the corrected forms that I am requesting be executed and returned.

As I mentioned during our call, my concern is not whether Bank of America received notice. I appreciate your confirmation that your office considers Bank of America to have received the documents and that service was accepted. My concern is simply that I do not wish to submit a document to the Court that appears to certify mailing of documents where the record does not accurately reflect the method by which those documents were originally transmitted. For that reason, I would prefer to proceed using the corrected versions that were delivered.

Separately, and solely to avoid any future service disputes, I have already retained One Legal to complete service on both institutional defendants through their registered agent for service of process tomorrow.

Regarding your invitation to participate in private mediation, I appreciate the offer and your willingness to explore resolution. At this time, however, I would prefer to continue litigating the matter. The parties previously had an opportunity to pursue resolution, and given the current posture of the case, including the involvement of additional defendants, I believe it is appropriate to continue moving forward through the litigation process. Of course, I will remain open to reevaluating that position as circumstances develop.

For the avoidance of doubt, nothing in this correspondence is intended to waive any existing service positions, defaults, response deadlines, objections, or procedural rights. Until otherwise agreed in writing or ordered by the Court, Plaintiff's positions regarding service on Defendant Peter C. Maxim and the current status of Defendant Tricia Shanks remain unchanged.

Thank you again for your time today and for following up regarding the proofs of service.

Best regards,

**Luna D'Sol**

 (213) 925-4069

jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

CONFIDENTIALITY AND PRIVACY NOTICE: This email is from a law firm and may contain information that is confidential, privileged, and/or attorney work product. This email may also contain personal data, which we process in accordance with applicable data protection laws and our Privacy Policies and Notices. If you are not the intended recipient, you may not review, copy, or distribute this message. If you have received this email in error, please contact the sender immediately and delete all copies from your system.



# EXHIBIT 13

**From:** **Quave, Lilliam** lilliam.quave@morganlewis.com  📎
**Subject:** Luna D'Sol, In Pro Per v. Bank of America, N.A., et al. - Riverside County Superior Court Case No. CVPS2601396 -[Signed NAR Forms re Defendants Bank of America Corporation; Bank of America, NA; Tricia Shanks; and Peter C. Maxim]
**Date:** May 26, 2026 at 15:55
**To:** jravada@icloud.com
**Cc:** Cho, Karen Y.  karen.cho@morganlewis.com,  Antonopoulos, Nicole L.  nicole.antonopoulos@morganlewis.com

Dear Ms. D'Sol,

With respect to the above-referenced case, attached are courtesy copies of the signed NAR Forms, which were sent out today, via U.S. Mail.

Thank you.

Lilliam Quave


**Lilliam Quave**
Legal Administrative Specialist
**Morgan, Lewis & Bockius LLP**
600 Montgomery Street, Suite 2300 | San Francisco, CA 94111-2725
Direct: +1.415.442.1587 | Main: +1.415.442.1000 | Fax: +1.415.442.1001
lilliam.quave@morganlewis.com | www.morganlewis.com



| | |
|---|---|
| **5.26.26 - D'Sol - NAR (Bank of America Corporation).pdf** | **5.26.26 - D'Sol - NAR (Peter Maxim).pdf** |
| **5.26.26 - D'Sol - NAR (Tricia Shanks).pdf** | **5.26.26 - D'Sol - NAR (Bank of America NA).pdf** |

# EXHIBIT 14

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO:

NAME: Luna D'Sol, Plaintiff, In Pro Per

FIRM NAME:

STREET ADDRESS: 2275 E Belding Drive

CITY: Palm Springs    STATE: CA    ZIP CODE: 92262

TELEPHONE NO.: 213-925-4069    FAX NO. :

E-MAIL ADDRESS: jravada@icloud.com

ATTORNEY FOR (Name):

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

STREET ADDRESS: 3255 E. Tahquitz Canyon Way

MAILING ADDRESS: 3325 E. Tahquitz Canyon Way

CITY AND ZIP CODE: Palm Springs, CA 92262

BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: CVPS2601296 |
|---|---|

TO (insert name of party being served): Bank of America Corporation

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:    May 4th, 2026

justin Metnzar

(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing)*:

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Bank of America Corporation

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)

▶ *N Antonopoulos*

(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Bank of America Corporation

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | Clear this form |
|---|---|---|

**PROOF OF SERVICE**

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**
**[Bank of America Corporation]**

☐ by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒ by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐ by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐ by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐ by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.CVPS2601396

PROOF OF SERVICE

# EXHIBIT 15

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY:    STATE BAR NO:

NAME: Luna D'Sol, Plaintiff, In Pro Per

FIRM NAME:

STREET ADDRESS: 2275 E Belding Drive

CITY: Palm Springs    STATE: CA    ZIP CODE: 92262

TELEPHONE NO.: 213-925-4069    FAX NO. :

E-MAIL ADDRESS: jravada@icloud.com

ATTORNEY FOR (Name):

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

STREET ADDRESS: 3255 E. Tahquitz Canyon Way

MAILING ADDRESS: 3325 E. Tahquitz Canyon Way

CITY AND ZIP CODE: Palm Springs, CA 92262

BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CVPS2601296 |
|---|---|

TO (insert name of party being served): Bank of America, N.A.

### NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: _____ May 4th, 2026 _____

Justin Mentzar

_____    ►    _____
(TYPE OR PRINT NAME)    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other (specify):

(To be completed by recipient):

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Bank of America, N.A.

_____    ►    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,<br>ON WHOSE BEHALF THIS FORM IS SIGNED)    (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF<br>ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Bank of America, N.A.

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure,
§§ 415.30, 417.10
www.courtinfo.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |
|---|---|---|---|

**PROOF OF SERVICE**

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL
[Bank of America, NA]**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No.CVPS2601396

PROOF OF SERVICE

# EXHIBIT 16

**POS-015**

| ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NO: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Luna D'Sol, Plaintiff, In Pro Per | | |

FIRM NAME:

STREET ADDRESS: 2275 E Belding Drive

CITY: Palm Springs    STATE: CA    ZIP CODE: 92262

TELEPHONE NO.: 213-925-4069    FAX NO. :

E-MAIL ADDRESS: jravada@icloud.com

ATTORNEY FOR (Name):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

STREET ADDRESS: 3255 E. Tahquitz Canyon Way

MAILING ADDRESS: 3325 E. Tahquitz Canyon Way

CITY AND ZIP CODE: Palm Springs, CA 92262

BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER: CVPS2601296 |
|---|---|

TO (insert name of party being served): Peter C. Maxim

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:    May 4th, 2026

Justin Mentzar

(TYPE OR PRINT NAME)    ▶    (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):

1. ☐ A copy of the summons and of the complaint.
2. ☐ Other (specify):

(To be completed by recipient):

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Peter C. Maxim

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY, ON WHOSE BEHALF THIS FORM IS SIGNED)



(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Peter C. Maxim

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
POS-015 [Rev. January 1, 2005]

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL**

Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.

| Print this form | Save this form | | Clear this form |
|---|---|---|---|

## **PROOF OF SERVICE**

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

### **NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**
### **[Peter C. Maxim]**

☐     by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒     by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐     by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐     by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐     by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Case No. CVPS2601396

# EXHIBIT 17

POS-015

| | | |
|---|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY:** | STATE BAR NO: | *FOR COURT USE ONLY* |

ATTORNEY OR PARTY WITHOUT ATTORNEY:      STATE BAR NO:

NAME: Luna D'Sol, Plaintiff, In Pro Per

FIRM NAME:

STREET ADDRESS: 2275 E Belding Drive

CITY: Palm Springs     STATE: CA    ZIP CODE: 92262

TELEPHONE NO.: 213-925-4069    FAX NO. :

E-MAIL ADDRESS: jravada@icloud.com

ATTORNEY FOR (*Name*):

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** RIVERSIDE

  STREET ADDRESS: 3255 E. Tahquitz Canyon Way

  MAILING ADDRESS: 3325 E. Tahquitz Canyon Way

CITY AND ZIP CODE: Palm Springs, CA 92262

    BRANCH NAME: Palm Springs Courthouse

Plaintiff/Petitioner: Luna D'Sol

Defendant/Respondent: Bank of America, N.A. et al.

| | |
|---|---|
| **NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL** | CASE NUMBER:<br>CVPS2601296 |

TO (*insert name of party being served*): Tricia Shanks

---

**NOTICE**

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

---

Date of mailing:    May 4th, 2026

Justin Metnzar

(TYPE OR PRINT NAME)        ►      (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*

1. ☐   A copy of the summons and of the complaint.
2. ☐   Other *(specify):*

*(To be completed by recipient):*

Date this form is signed: May 26, 2026

Nicole L. Antonopoulos on behalf of Tricia Shanks

(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,      ►      (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)            ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Attorney for Tricia Shanks

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Code of Civil Procedure,<br>§§ 415.30, 417.10<br>*www.courtinfo.ca.gov* |

**For your protection and privacy, please press the Clear This Form button after you have printed the form.**

| Print this form | Save this form | Clear this form |
|---|---|---|

**PROOF OF SERVICE**

I, Lilliam Quave, declare:

I am a citizen of the United States and employed in San Francisco County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 600 Montgomery Street, Suite 2300, San Francisco, CA 94111-2725. On May 26, 2026, I served a copy of the within document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**
**[Tricia Shanks]**

☐    by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

☒    by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at San Francisco, California addressed as set forth below.

☐    by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to an agent for delivery.

☐    by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☐    by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol, In Pro Per
2275 E. Belding Dr.
Palm Springs, CA 92262
Phone: 213-925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on May 26, 2026, at San Francisco, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Lilliam Quave

Case No.CVPS2601396

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# EXHBIT 18

MORGAN, LEWIS & BOCKIUS LLP
Karen Y. Cho, Bar No. 274810
karen.cho@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA 90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Nicole L. Antonopoulos, Bar No. 306882
nicole.antonopoulos@morganlewis.com
1400 Page Mill Road
Palo Alto, CA 94304-1124
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF
AMERICA CORPORATION, TRICIA
SHANKS, and PETER C. MAXIM



SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

| | |
|---|---|
| LUNA D'SOL,<br><br>              Plaintiff,<br><br>       vs.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; TRICIA SHANKS, an individual; and PETER C. MAXIM, an individual; and DOES 1 through 50, inclusive,<br><br>              Defendants. | Case No. CVPS2601396<br><br>[Case Assigned for All Purposes to Hon. Manuel Bustamante]<br><br>**PLAINTIFF AND DEFENDANT TRICIA SHANKS' STIPULATION TO SET ASIDE ENTRY OF DEFAULT AS TO DEFENDANT TRICIA SHANKS; [PROPOSED] ORDER** |

        Plaintiff Luna D'Sol ("Plaintiff") and Defendant Tricia Shanks ("Shanks") (collectively, the "Parties") hereby enter into this stipulation to set aside the entry of default against Shanks as follows:

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION TO SET ASIDE ENTRY OF DEFAULT AS TO TRICIA SHANKS
DB2/ 42357523

---

**Deleted:** Luna D'Sol¶
Plaintiff, In Pro Per¶
Email Address: jravada@icloud.com¶
2275 E. Belding Drive¶
Palm Springs, CA 92262¶
Telephone: 213-925-4069¶

WHEREAS, on March 4, 2026, Plaintiff filed a Complaint against Defendants Bank of America, N.A., Bank of America Corporation, Tricia Shanks, and Peter Maxim;

WHEREAS, on March 23, 2026, Plaintiff filed a Proof of Service of Summons as to Shanks;

WHEREAS, on May 1, 2026, the Court Clerk entered a default as to Shanks;

WHEREAS, the Parties disagree as to whether Shanks was properly served with the Complaint and Summons, and this Stipulation does not constitute any admission regarding prior service efforts; WHEREAS, Plaintiff and Shanks' counsel have met and conferred regarding their service dispute, and they have agreed to set aside default entered as to Shanks;

WHEREAS, Shanks' counsel has agreed to accept service of process on behalf of Shanks via Notice and Acknowledgement of Receipt pursuant to California Code of Civil Procedure section 415.30;

WHEREAS, on May 4, 2026, Plaintiff provided the Notice and Acknowledgement of Receipt – Civil, Summons, Complaint, and other case initiating documents to Shanks' counsel. Pursuant to California Code of Civil Procedure section 415.30, the deadline for Shanks to complete and execute the Notice and Acknowledgement of Receipt is May 26, 2026, and service will be deemed completed on the date of execution of the Notice and Acknowledgement of Receipt;

WHEREAS, the Parties have agreed that service will be deemed completed on the date that Shanks' counsel signs and returns the Notice and Acknowledgement of Receipt, and Shanks' deadline to respond to Plaintiff's Complaint shall be governed by the service of the Complaint via the Notice and Acknowledgement of Receipt;

WHEREAS, Shanks' counsel signed and returned the Notice and Acknowledgement of Receipt on behalf of Shanks on May 26, 2026, and thus the Parties agree that service is deemed completed as of Shanks on May 26, 2026, and the deadline for Shanks to respond to the Complaint is June 25, 2026;

WHEREAS, Plaintiff does not waive her position as to any prior service efforts as to Defendant Peter Maxim; and

Deleted: ¶

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

2

Case No. CVPS2601396

STIPULATION TO SET ASIDE ENTRY OF DEFAULT AS TO TRICIA SHANKS

DB2/ 42357523

THEREFORE, it is hereby stipulated and agreed as follows:

1. The default entered against Defendant Tricia Shanks shall be set aside and vacated;

2. The service of the Complaint as to Tricia Shanks is deemed completed on May 26, 2026, the date of execution of the Notice and Acknowledgement of Receipt; and

3. Shanks' deadline to respond to Plaintiff's Complaint shall be June 25, 2026, based on the service of the Complaint via Notice and Acknowledgement of Receipt pursuant to California Code of Civil Procedure section 415.30.

Dated: June___, 2026                    MORGAN, LEWIS & BOCKIUS LLP

By _____
   Karen Cho
   Nicole L. Antonopoulos

   Attorneys for Defendants
   BANK OF AMERICA, N.A., BANK OF
   AMERICA CORPORATION, TRICIA
   SHANKS, and PETER C. MAXIM

Dated: June___, 2026

By _____
   Luna D'Sol

   Plaintiff Pro Per

**[PROPOSED] ORDER**

Based on the Parties' foregoing joint stipulation, it is **HEREBY ORDERED THAT** the Stipulation to Set Aside Entry of Default as to Defendant Tricia Shanks in this action is granted. IT IS HEREBY ORDERED THAT:

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

DB2/ 42357523

**Deleted:** Shanks' counsel shall accept service of the Complaint on behalf of Shanks via Notice and Acknowledgement of Receipt pursuant to California Code of Civil Procedure section 415.30, and

**Deleted:** will be

**Deleted:** governed by

**Deleted:** May

**Deleted:** May

**Deleted:** ¶ ... [1]

1. The default entered against Defendant Tricia Shanks is set aside and vacated.

2. The service of the Complaint as to Tricia Shanks is deemed completed on May 26, 2026, the date of execution of the Notice and Acknowledgement of Receipt.

3. Shanks' deadline to respond to Plaintiff's Complaint is June 26, 2026, based on the service of the Complaint via Notice and Acknowledgement of Receipt pursuant to California Code of Civil Procedure section 415.30.

**IT IS SO ORDERED.**

Dated: _____, 2026

_____
Honorable Manuel Bustamante
Judge of Riverside County Superior Court

**Deleted:** Shanks' counsel will accept service of the Complaint on behalf of Shanks via Notice and Acknowledgement of Receipt pursuant to California Code of Civil Procedure section 415.30, and

**Deleted:** will be

**Deleted:** will be governed by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

4

Case No. CVPS2601396

STIPULATION TO SET ASIDE ENTRY OF DEFAULT AS TO TRICIA SHANKS

DB2/ 42357523

| Page 3: [1] Deleted | Antonopoulos, Nicole L. |
|---|---|

| Page 3: [1] Deleted | Antonopoulos, Nicole L. |
|---|---|

# EXHBIT 19

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Re: Recap of Today's Conversation
**Date:** June 4, 2026 at 13:25
**To:** Antonopoulos, Nicole L.  nicole.antonopoulos@morganlewis.com
**Cc:** Cho, Karen Y.  karen.cho@morganlewis.com



Nicole,

I have reviewed the revised stipulation and continue to have concerns.

My concerns stem from the fact that I identified that my process server inadvertently did not mark required information on the Notice and Acknowledgment of Receipt forms and did not complete service by mail as reflected on those forms. After this issue was identified, the process server completed service correctly and prepared corrected documents reflecting what actually occurred. Your office has already received those corrected documents.

Similarly, you advised that your assistant inadvertently failed to sign the Proof of Service accompanying the Notice and Acknowledgment documents. The following day, you provided a version bearing your assistant's signature.

My concern is not the existence of clerical mistakes. Rather, my concern is that both sides presently possess documents that certify, under penalty of perjury, events or procedures that did not occur as reflected in those original documents. For that reason, I am not comfortable relying on or stipulating based upon those documents.

As I understand the current record, your office has already received the corrected Notice and Acknowledgment materials. Those are the documents that I believe should be executed and relied upon going forward.

In addition, the current draft stipulation does not reflect my understanding of the parties' communications or efforts to address these issues. I therefore cannot approve it in its present form. I remain willing to review a stipulation that accurately reflects the relevant facts, procedural history, the parties' respective positions and that is supported by documents accurately reflecting the procedures that actually occurred.

Nothing in this correspondence shall be construed as a waiver, concession, or withdrawal of any position, objection, claim, defense, procedural argument, mediation opportunity, or resolution effort, including but not limited to my position regarding service on all defendants.

Regards,

## Luna D'Sol

 (213) 925-4069
 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

EXHIBIT 20

**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF RIVERSIDE

| | |
|---|---|
| LUNA D'SOL | ) |
| Plaintiff, | ) Case No:  CVPS2601396 |
| v. | ) Hon: Judge Manuel Bustamante |
| BANK OF AMERICA, N.A.; | ) |
| BANK OF AMERICA CORPORATION; | ) |
| TRICIA SHANKS; | ) **NOTICE OF MOTION AND MOTION** |
| PETER C. MAXIM; and | ) **FOR SACTIONS PURSUANT TO CODE** |
| DOES 1-50, inclusive, | ) **OF CIVIL PROCEDURES § 128.7** |
| Defendants. | ) |
| | ) Dept: PS2 |
| | ) Date: July 6th. 2026 |
| | ) Time: 8:30 am |

///

///

///

///

///

///

///

//

- 1 -
NOTICE OF MOTION AND MOTION FOR SACTIONS PURSUANT TO CODE OF CIVIL PROCEDURES § 128.7

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on 6TH day of July, 2026, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Department PS2 of the above-entitled Court, located at Palm Springs courthouse at 3255 E Tahquitz Canyon Way, Palm Springs CA 92262 Department PS2 before Honorable Judge Manuel Bustamante, Plaintiff Luna D'Sol will and hereby does move the Court for an order imposing sanctions against Defendants and their counsel pursuant to Code of Civil Procedure section 128.7.

This Motion is directed solely to the Twenty-Fifth Additional Defense asserted in Defendant Peter C. Maxim's Answer, which alleges that Plaintiff's claims are barred because she is subject to mandatory, final, and binding arbitration pursuant to an arbitration agreement. The Motion seeks an order:

1. Directing Defendants to withdraw the Twenty-Fifth Additional Defense; and

2. Imposing sanctions in an amount sufficient to deter repetition of the conduct, as limited by Code of Civil Procedure section 128.7(d), including Plaintiff's reasonable out-of-pocket costs incurred as a direct result of the challenged defense, according to proof.

This Motion is made on the grounds that the Twenty-Fifth Additional Defense lacks evidentiary support and was asserted in violation of the certification required by Code of Civil Procedure section 128.7(b).

No document bearing Plaintiff's signature, acknowledgment, or assent to any arbitration agreement has been produced by any Defendant. The only arbitration-related document produced is an unsigned policy that Bank of America's own in-house counsel admitted in writing was an "exemplar," and which does not appear in Plaintiff's training-and-acknowledgment records or in Bank of America's separate records production. Defendants' counsel was provided with these materials months before the Answer was filed, such that a reasonable inquiry would have revealed the absence of any executed agreement.

This Motion was served on Defendants' counsel in accordance with the 21-day safe-harbor provision of Code of Civil Procedure section 128.7(c)(1) and was not filed with the Court until expiration of that period without withdrawal or correction of the challenged defense.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Luna D'Sol and the exhibits thereto, the pleadings and records on file in this action, and such further argument and evidence as may be presented at the hearing.

**This Motion is directed solely to the Twenty-Fifth Additional Defense. Plaintiff does not, by this Motion, address, concede, or waive any argument concerning any other defense, allegation, or issue in this action, and Plaintiff expressly reserves all rights and remedies.**

Respectfully submitted,

Dated: June 7th, 2026

/s/ Luna D'Sol

**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

NOTICE OF MOTION AND MOTION FOR SACTIONS PURSUANT TO CODE OF CIVIL PROCEDURES § 128.7

 Luna D'Sol

(213) 925-4069     jravada@icloud.com     2275 E Belding Dr Palm Springs CA 92262 United States

June 7, 2026

**VIA U.S. CERTIFIED MAIL AND ELECTRONIC MAIL**

Nicole L. Antonopoulos, Esq. Karen Y. Cho, Esq. Morgan, Lewis & Bockius LLP, 1400 Page Mill Road, Palo Alto, CA 94304

Re: *D'Sol v. Bank of America, N.A., et al.*, Riverside Sup. Ct. Case No. CVPS2601396 **Service Pursuant to Code of Civil Procedure § 128.7(c)(1) — Safe-Harbor Notice**

Dear Ms. Antonopoulos:

Enclosed are the following documents, served pursuant to the 21-day safe-harbor provision of Code of Civil Procedure section 128.7(c)(1):

1.    Notice of Motion and Motion for Sanctions Pursuant to Code of Civil Procedure § 128.7;
2.    Memorandum of Points and Authorities in support thereof; and
3.    Declaration of Luna D'Sol, with Exhibits 1 through 16.

These papers are **served, not filed.** The Motion is directed solely to the Twenty-Fifth Additional Defense asserted in Defendant Peter C. Maxim's Answer, which alleges that Plaintiff's claims are barred by a mandatory arbitration agreement. As set forth in the enclosed papers, no document bearing Plaintiff's signature, acknowledgment, or assent to any arbitration agreement has been produced by any Defendant.

Pursuant to section 128.7(c)(1), Defendants have **twenty-one (21) days** from the date of service to withdraw or appropriately correct the Twenty-Fifth Additional Defense. If Defendants do so within that period, Plaintiff will not file this Motion. If the challenged defense is not withdrawn or corrected within twenty-one (21) days, Plaintiff intends to file the enclosed Motion with the Court.

This letter is directed solely to the Twenty-Fifth Additional Defense. Plaintiff does not, by this letter or the enclosed Motion, address, concede, or waive any argument concerning any other defense, allegation, or issue in this action, and Plaintiff expressly reserves all rights and remedies.

Very truly yours,

Luna D'Sol Plaintiff in Pro Per

**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

| | |
|---|---|
| LUNA D'SOL | ) |
| Plaintiff, | ) Case No: CVPS2601396 |
| v. | ) |
| BANK OF AMERICA, N.A.; | ) |
| BANK OF AMERICA CORPORATION; | ) |
| TRICIA SHANKS; | ) **MEMORANDUM OF POINTS AND** |
| PETER C. MAXIM; and | ) **AUTHORITIES IN SUPPORT OF** |
| DOES 1-50, inclusive, | ) **PLAINTIFF'S MOTION FOR SANCTIONS** |
| Defendants. | ) **PURSUANT TO CODE OF CIVIL** |
| | ) **PROCEDURE § 128.7** |
| | ) |
| | ) |

## I.    INTRODUCTION

Defendants' Twenty-Fifth Additional Defense asserts that Plaintiff's claims are barred because she is "subject to mandatory, final and binding arbitration pursuant to an arbitration agreement." (D'Sol Decl. ¶ 19, Ex. 16.) There is no such agreement.

What Defendants possess is a *policy* — not an agreement. The only arbitration document they have ever produced is an unsigned "Arbitration Policy" that bears no signature, acknowledgment, or assent by Plaintiff. (D'Sol Decl. ¶¶ 7, 16, Ex. 13.) Bank of America's own in-house counsel admitted in

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

writing that the document was an "exemplar," not Plaintiff's signed agreement. (D'Sol Decl. ¶ 9, Ex. 5.) Its embedded metadata reflects that it was created on February 27, 2025 — the day after Plaintiff disclosed she is transgender — and modified on July 28, 2025, the same day it was transmitted to her. (D'Sol Decl. ¶¶ 3, 6, 8, Exs. 1, 2, 4.) That same unsigned policy, now Bates-stamped, is the only arbitration document in Defendants' personnel-file production (D'Sol Decl. ¶ 16, Exs. 13, 14), and it appears nowhere in Bank of America's separate, approximately 6,000-page records production or in Plaintiff's complete training-and-acknowledgment history — including the November 2024 entries during which Defendants contend the policy was distributed and accepted. (D'Sol Decl. ¶ 17, Ex. 15.)

A policy is not an agreement. A printed policy statement is evidence that a policy exists; it is not evidence that Plaintiff agreed to it. The defense asserts that Plaintiff is bound by an "arbitration agreement," yet no document showing Plaintiff's assent — no signature, no acknowledgment, no record of acceptance — has ever been produced by any Defendant, in any forum, despite repeated demand. (D'Sol Decl. ¶¶ 7, 12, 16, 17, 20.) A factual contention asserted without evidentiary support, which a reasonable inquiry would have shown to be unsupported, violates Code of Civil Procedure section 128.7(b). This Motion asks only that the unsupported defense be withdrawn.

## II.   LEGAL STANDARD

By presenting a pleading to the court, a party certifies that, after "an inquiry reasonable under the circumstances," the "factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery," and that the "denials of factual contentions are warranted on the evidence." (Code Civ. Proc. § 128.7(b)(3)–(4).) A defense asserted without evidentiary support, which a reasonable inquiry would have shown to be unsupported, violates that certification.

A court may impose sanctions where a pleading is "filed for an improper purpose or [is] indisputably without merit, either legally or factually." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 440.) A contention is factually frivolous when it is "not well grounded in fact." (*Guillemin v. Stein* (2002) 104 Cal.App.4th 156, 167.) The standard is objective: sanctions are warranted where "any reasonable attorney would agree that [the contention] is totally and completely without merit." (*Peake, supra,* at p. 440; *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650.)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

Section 128.7 requires that, before filing, the moving party serve the motion and afford the offending party a 21-day safe-harbor period to withdraw or correct the challenged matter. (Code Civ. Proc. § 128.7(c)(1); *Bucur v. Ahmad* (2016) 244 Cal.App.4th 175, 190.) Plaintiff has complied with that requirement. (D'Sol Decl. ¶¶ 21–22.) Sanctions under section 128.7 are limited to what is "sufficient to deter repetition." (Code Civ. Proc. § 128.7(d).)

## III.    <u>ARGUMENT</u>

**A.   The party invoking arbitration bears the burden of proving a valid agreement exists.**

A defendant asserting arbitration carries the burden of proving the existence of a valid arbitration agreement by a preponderance of the evidence. (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 164; *Enmark v. KF Community Care, LLC* (2024) 105 Cal.App.5th 463; Code Civ. Proc. § 1281.2.) Where the party against whom arbitration is asserted disputes the agreement, the proponent must establish by a preponderance of the evidence that the agreement is valid. (*Gamboa, supra,* at pp. 165–166.) An affirmative defense premised on an arbitration agreement is therefore a factual contention the proponent must be able to support — not a placeholder insulated from section 128.7. Plaintiff disputes that any agreement exists and does not recall signing, acknowledging, or consenting to one. (D'Sol Decl. ¶ 7.) That places the burden squarely on Defendants.

A plaintiff's denial that she signed or assented to an arbitration agreement is itself sufficient to shift the burden to the proponent to prove the agreement's existence. (*Garcia v. Stoneledge Furniture LLC* (2024) 102 Cal.App.5th 41.)

**B. A policy is not an agreement, and Defendants have produced only a policy.**

The defense asserts that Plaintiff is bound by an "arbitration agreement." What Defendants have produced is an unsigned "Arbitration Policy." (D'Sol Decl. ¶¶ 6, 16, Exs. 3, 13.) The two are not the same. A printed policy statement is evidence that a policy exists; it is not evidence that the employee assented to it. An agreement requires mutual assent, and the proponent's burden under *Gamboa* is to prove *that agreement* — not merely to produce the text of a policy.

In the cases in which arbitration has been compelled, the employer produced a document bearing the employee's signature, authenticated by a custodian of records. (See *Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747; *Ramirez v. Golden Queen Mining Co.* (2024) 102 Cal.App.5th 821.) Defendants

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

here have produced no signed document of any kind — only an unsigned policy. They have less than the employers who prevailed in *Iyere* and *Ramirez*, and less even than the employer in *Gamboa*, whose signed agreement still failed once its authenticity was challenged. (*Gamboa, supra,* 72 Cal.App.5th at pp. 165–166.) An unsigned policy is not an agreement, and it cannot carry Defendants' burden.

The two are not the same. An employee handbook, welcome letter, and policy acknowledgment do not create a mutual agreement to arbitrate where the documents do not reflect the employee's assent to be bound. (*Esparza v. Sand & Sea, Inc.* (2016) 2 Cal.App.5th 781.) A printed policy statement is evidence that a policy exists; it is not evidence that the employee assented to it.

**C. The contention lacks evidentiary support.**

Bank of America's in-house counsel admitted in writing that the document provided was an "exemplar," not Plaintiff's signed agreement. (D'Sol Decl. ¶ 9, Ex. 5.) The document's embedded metadata reflects creation on February 27, 2025 — the day after Plaintiff's protected disclosure — and modification the same day it was transmitted. (D'Sol Decl. ¶¶ 3, 6, 8, Exs. 1, 4.) The identical document, Bates-stamped BANK/LUNA000318–000323, is the only arbitration-related record in Defendants' personnel-file production, and a page-by-page comparison confirms it is the same exemplar with only Bates numbers added. (D'Sol Decl. ¶ 16, Exs. 13, 14.) It does not appear in Bank of America's separate, approximately 6,000-page records production, nor in Plaintiff's complete training-and-acknowledgment history — the system in which every mandatory acknowledgment is recorded — including the November 2024 entries during which Defendants contend the policy was distributed and accepted. (D'Sol Decl. ¶¶ 7, 17, Ex. 15.) On this record, the contention that Plaintiff is bound by "an arbitration agreement" is not well grounded in fact.

Defendants' theory that Plaintiff assented by continuing her employment does not supply the missing support. (D'Sol Decl. ¶ 6.) Assent by continued employment requires, at a minimum, evidence that the employee received notice of the policy. Where the proponent relies on records to establish that an agreement was transmitted to the employee, a bare assertion that records "indicate" a mailing — without a witness having personal knowledge of the transmission — is insufficient to authenticate the agreement or carry the burden. (*Chambers v. Crown Asset Management, LLC* (2021) 71 Cal.App.5th 583.) And where the employee's evidence controverts the proponent's showing, the proponent does not

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

meet its burden. (*Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178.) Plaintiff disputes receiving the November 2024 communications, and Bank of America's own records contain no entry reflecting transmission or acknowledgment of any arbitration policy. (D'Sol Decl. ¶¶ 7, 17.) A theory of assent unsupported by any evidence of notice, acknowledgment, or execution is not evidentiary support; it is the absence of it.

### D. The "discovery may yield support" exception is foreclosed.

Section 128.7(b)(3) excuses an unsupported contention only where it is "specifically so identified" as "likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." That qualifier cannot save this defense. The records have already been searched and produced — more than once. Bank of America produced Plaintiff's payroll and personnel file in successive, Bates-numbered productions assembled by counsel, including a supplemental production made specifically in response to Plaintiff's notice that an earlier production was incomplete. (D'Sol Decl. ¶¶ 13–16, Exs. 9–14.) Bank of America separately produced an approximately 6,000-page records production directly to Plaintiff. (D'Sol Decl. ¶ 17, Ex. 15.) In-house counsel and successor counsel each had the opportunity to produce a signed agreement, and what emerged each time was the same unsigned exemplar. (D'Sol Decl. ¶¶ 9, 16.) When counsel located records Plaintiff identified as missing, counsel produced them — yet no signed or acknowledged arbitration agreement ever surfaced. (D'Sol Decl. ¶¶ 14–16.) There is no reasonable prospect that further discovery will produce a signed agreement that does not exist in the systems that would contain it.

### E. Defendants' counsel was on notice before pleading the defense.

Months before the Answer was filed, Plaintiff provided Morgan, Lewis & Bockius LLP with the exemplar, the metadata analysis, and in-house counsel's written admission that the document was an exemplar. (D'Sol Decl. ¶¶ 10–11, Exs. 6–7.) Counsel thus knew, when the defense was pleaded, that no document bearing Plaintiff's signature had been produced and that Bank of America's own records contained no arbitration acknowledgment. (D'Sol Decl. ¶¶ 17, 20.) A reasonable inquiry into Bank of America's records — the inquiry section 128.7(b) requires — would have confirmed the absence of any executed agreement before the defense was asserted.

– 5 –

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

The defense was nonetheless asserted on behalf of an individual defendant with no access to those records. Defendant Maxim was Plaintiff's line supervisor and was not part of Bank of America's human resources, records-management, training, or personnel-file functions; he had no independent basis to verify or deny whether an executed agreement exists. (D'Sol Decl. ¶ 20.) Whether such an agreement exists depends on the records maintained by Bank of America — records that Plaintiff had already placed before counsel, and that contain no such agreement. Asserting the defense under these circumstances, without any signed or acknowledged instrument and after counsel had been shown its absence, is objectively unreasonable. (*Peake, supra,* 227 Cal.App.4th at p. 440

**F. The Cited Communications Are Not Barred by Evidence Code Section 1152.**

Evidence Code section 1152 renders inadmissible offers to compromise and statements made in negotiating a compromise when offered to prove liability for, invalidity of, or the amount of a disputed claim. It does not exclude statements that are independent of, and unconnected with, an offer of compromise. (*Moving Picture etc. Union v. Glasgow Theaters, Inc.* (1970) 6 Cal.App.3d 395, 402; *Truestone, Inc. v. Simi West Industrial Park II* (1984) 163 Cal.App.3d 715, 725–726.).

Whether a statement falls within section 1152 depends upon the purpose for which it is offered and the context in which it was made; statements of fact independent of any offer to compromise remain admissible. (*Moving Picture, supra,* 6 Cal.App.3d at p. 402.) The distinction turns on intent: a statement made to "buy peace" in contemplation of mutual concessions is a protected compromise offer, but a statement by which the party "intended to make no concessions but to exact all that he deemed himself entitled to" is an ordinary admission against interest, not subject to section 1152. (*Ibid.*)

Plaintiff does not offer the cited communications to establish Defendants' liability, the value of any claim, or the propriety of any settlement position. Rather, Plaintiff offers them solely to establish the representations made concerning the alleged arbitration agreement — including counsel's assertion that Plaintiff was purportedly bound by arbitration, and Mr. Bird's subsequent acknowledgment that the document provided was an "exemplar" — and to show what information was communicated to Plaintiff and available to Defendants' counsel concerning the arbitration issue before the challenged defense was asserted. The statements concern the existence, provenance, and alleged enforceability of the arbitration

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

agreement itself, and are offered for that purpose alone — not as evidence of liability, damages, or the value of any disputed claim.

## IV.    RELIEF REQUESTED

Plaintiff requests an order:

1. Directing Defendants to withdraw the Twenty-Fifth Additional Defense; and

2. Imposing sanctions in an amount sufficient to deter repetition of the conduct, as limited by Code of Civil Procedure section 128.7(d).

Sanctions under section 128.7 are limited to "what is sufficient to deter repetition of this conduct or comparable conduct by others similarly situated." (Code Civ. Proc. § 128.7(d).) Plaintiff seeks no more than that statutory purpose requires. Plaintiff does not seek to strike the Answer or to obtain any relief on the merits; she asks only that an affirmative defense asserted without evidentiary support, and shown to be unsupported before it was pleaded, be withdrawn or corrected as section 128.7 contemplates.

## V.    CONCLUSION

The Twenty-Fifth Additional Defense rests on an arbitration *agreement* that does not exist. What Defendants possess is an unsigned policy — admitted to be an exemplar, generated the day after Plaintiff's protected disclosure, absent from every records system that would contain a genuine acknowledgment, and identical to the document Plaintiff challenged a year before the Answer was filed. A policy is not an agreement, and Defendants have produced no agreement. Because the defense lacks evidentiary support, because no reasonable inquiry could have supplied it, and because counsel had been shown its absence before pleading it, Plaintiff respectfully requests that the Court grant this Motion.

Respectfully submitted by:

Dated: June 7th, 2026

/s/ Luna D'Sol
_____

**Luna D'Sol**
Plaintiff, In Pro Per
Email Address: jravada@icloud.com
2275 E Belding Dr
Palm Springs CA 92262
Telephone: 213-925-4069

- 7 -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE

LUNA D'SOL

                Plaintiff,

            v.

BANK OF AMERICA, N.A.;
BANK OF AMERICA CORPORATION;
TRICIA SHANKS;
PETER C. MAXIM; and
DOES 1-50, inclusive,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No: CVPS2601396

**DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7**

///

///

///

///

///

///

///

- 1 -

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

I, Luna D'Sol, declare as follows:

1.    I am the Plaintiff in this action. I am over the age of 18 years. I have personal knowledge of the facts stated in this declaration and, if called as a witness, I could and would competently testify to them. This declaration and the accompanying Notice of Motion, Motion, and Memorandum are being served in accordance with the provisions of CCP § 128.7(c)(1).

2.    I commenced this action on March 4, 2026, by filing a Complaint against Bank of America, N.A., Bank of America Corporation, Tricia Shanks, Peter Maxim, and Does 1 through 50, for violations of the California Fair Employment and Housing Act and related California law, including claims for harassment, retaliation, failure to accommodate, failure to engage in the interactive process, aiding and abetting discrimination, harassment, and retaliation, and failure to prevent discrimination, harassment, or retaliation. The Complaint further sets forth specific conduct by the individual defendants, that extends beyond personnel management decisions, arising from their participation in, authorization of, ratification of, and assistance with the conduct at issue, as well as claims for wrongful termination in violation of public policy and failure to pay final wages and provide accurate wage statements (Complaint, First through Ninth Causes of Action, pp. 14-26).

A.    **My Transgender Disclosure to Defendants**

3.    On February 26, 2025, I disclosed my transgender status and gender identity to my manager, Defendant Shanks, and supervisor, defendant Maxim. Attached hereto as **Exhibit 1** is a true and correct copy of a photograph I personally took of my Bank of America work laptop screen on or about February, 26th, 2025 capturing the e-mail I sent to Defendants Shanks and Maxim on February 26th, 2025. In that communication, I informed them that I identified as female, had begun hormone therapy, and had been living as female outside of work for approximately two years. I explicitly stated that I was "putting my fears aside" and hoped I would "never regret" trusting that the company was "committed to protect me." (Exhibit 1, Complaint ¶19(a))

4.    Defendant Peter C. Maxim is named in this action in his individual capacity based on conduct directed at me that, as set forth in the Complaint, fell outside the scope of his supervisory responsibilities (See Complaint, ¶ 6). Following my gender transition disclosure on February 26, 2025, Defendant Maxim engaged in conduct that, as described in the Complaint, contributed to a hostile work

- 2 -

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

environment, subjected me to discriminatory treatment, and resulted in the wrongful termination challenged in this action. (See Complaint, ¶¶ 6, 36, 39.) Specifically, the Complaint states that Defendant Maxim falsely accused me of failing to perform my work duties, excluded me from operational opportunities made available to other employees, and subjected me to disparate treatment during workplace operations. (See Complaint, ¶¶ 41, 54, 90.)

5.      Defendant Shanks acknowledged my February 26, 2025, transgender disclosure email and copied Lauren Reed, a Human Resources representative with whom I had never previously interacted and whose name I had never heard prior to that communication (See Complaint, ¶¶ 20(b), 40). On May 21, 2025, Lauren Reed sent me a written communication informing me that my employment was being terminated. At the exact time this termination notice was issued, Bank of America had already formally approved my use of my accrued paid time off. (See Complaint, ¶¶ 20 (a)-(b))

**B.      LEGAL REPRESENTATION – IN HOUSE COUNSEL STEPHEN BIRD**

6.      On July 28, 2025, at 4:16 pm PST, Bank of America Associate General Counsel Stephen D. Bird first asserted that I was bound by an arbitration agreement. In his email, Mr. Bird stated:

'As to arbitration, please see the attached arbitration policy, to which you agreed to be bound during your employment. On November 8, 2024, you received an email providing this policy and explaining that by continuing your employment with Bank of America for thirty (30) days after you received the policy via the email, you were agreeing to the policy. You received another follow up email on November 22, 2024. As a result, by continuing your employment for more than thirty (30) days after receiving the email/policy, you agreed to the policy.'

(Bird Email, July 28, 2025, Exhibit 2)

7.      I was never provided with an executed arbitration agreement, and I do not recall signing, acknowledging, or otherwise consenting to any arbitration agreement. During my employment with Bank of America, the Bank strictly utilized internal systems known as 'My Learning,' 'My Acknowledgment,' and 'My Tasks' to distribute mandatory trainings, compliance notices, policy updates, acknowledgments, certifications, and other employee communications requiring review or confirmation. Based upon my first-hand experience as a Bank employee, all mandatory corporate

- 3 -

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

employee acknowledgments were ordinarily maintained through these automated tracking systems and their associated electronic audit logs pursuant to standard Bank internal policy.

8.      Following receipt of the unexecuted arbitration policy from Mr. Bird (¶6, Exhibit 3), I personally extracted and reviewed the native file properties and embedded digital metadata. I executed a standard command-line utility functions within the macOS Terminal application to read the unaltered iManage and PDF data blocks embedded directly inside the document. Attached hereto as **Exhibit 4** is a true and correct copy of the Forensic Metadata Analysis Report generated from that file. As set forth in Exhibit 4, the document's embedded metadata reflects a Creation Date of February 27, 2025 at 13:09:54 UTC—precisely one day after my February 26, 2025 gender transition disclosure (¶3, Exhibit 1). The embedded data further reflects a Modification Date of 'July 28, 2025 at 19:04:13 (UTC-04:00)' or 4:04 pm PST, matching the exact date but 12 minutes before Mr. Bird transmitted the file to me  at 4:16 pm PST (*See ¶6, Exhibit 2*). The document profile explicitly identifies the iManage Database Source as 'IMAN_PRI_US_PRD', logs the unique Document Identifier as '4521187.1', and links the Sender Email directly to 'STEPHEN.BIRD@BOFA.COM' under standard Bank of America ID 'ZKV93ZW'. The Creator Application and Producer are explicitly logged as 'PDFium'. I have safely preserved and currently maintain the original, unaltered native electronic file of this communication in its digital format, and am fully prepared to produce it to the Court or a neutral forensic examiner upon request.

9.      On July 30, 2025, I transmitted my forensic metadata findings to Mr. Bird. Later that same day, Mr. Bird responded to me in writing, explicitly acknowledging that the arbitration policy he had previously provided was merely an 'exemplar' of the corporate policy. In that same communication, Mr. Bird noted that the Bank was in the process of attempting to retrieve records responsive to my personnel file requests and stated that the retrieval process 'may take a little bit of time.' Attached hereto as **Exhibit 5** is a true and correct copy of Mr. Bird's July 30, 2025 email response sent to me with confidential, settlement-related language and financial negotiation values within this correspondence have been strictly redacted to preserve evidentiary compliance pursuant to California Evidence Code §1152.

C.      **SWITCH TO EXTERNAL LEGAL REPRESENTATION - Grant Macqueen of Morgan, Lewis & Bockius LLP**

- 4 -

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

10. On August 15, 2025, I provided Grant MacQueen, Esq., of Morgan, Lewis & Bockius LLP with materials concerning the arbitration issue, including: (1) Mr. Bird's July 28, 2025 email asserting that I was bound by an arbitration agreement and attaching an arbitration policy [¶6, Exhibit 2]; (2) my forensic metadata analysis reflecting, among other things, a document Creation Date of February 27, 2025 and a Modification Date of July 28, 2025 [¶8, Exhibit 4]; and (3) Mr. Bird's July 30TH, 2025 correspondence concerning the arbitration policy document previously provided to me [¶9, Exhibit 5]. In that communication, I requested again the arbitration agreement by explicitly stating "**as an authorized party, I have the right to request and review any arbitration agreement alleged to bind me**" specifically identified my concerns regarding the timing, provenance, and evidentiary basis of the arbitration policy and provided the underlying records supporting those concerns. A true and correct copy of my email transmitted to Mr. Grant Macqueen from Augur 15tth, 2025 is attached hereto as **Exhibit 6**. Knowledge of these documents tracking properties was therefore fully disclosed and legally imputed to Defendants' counsel of record as of August 15, 2025

11. Mr. MacQueen responded to my communication from ¶10 (Exhibit 6) and explicitly stated:

> 'The arbitration agreement, which you acknowledged by continuing to work at Bank of America after receiving the subject emails, is valid and enforceable, whether or not you now recall receiving the emails, and even though you were later provided the language of the policy in an exemplar.'

(McQueen Email, August 15, 2025, Exhibit 7)

A true and correct copy of Mr. Grant MacQueen's August 15, 2025 email sent to me with confidential, settlement-related language and financial negotiation values within this correspondence have been strictly redacted to preserve evidentiary compliance pursuant to California Evidence Code §1152, is attached hereto as **Exhibit 7**. In that communication, Mr. MacQueen did not provide a signed arbitration agreement, arbitration acknowledgment, assent record, or any other arbitration-related document (Exhibit 7) beyond referring to the same exemplar previously transmitted by Mr. Bird (¶9, Exhibit 5). Nor did he produce any document reflecting my execution, acknowledgment, or acceptance of an arbitration agreement (Exhibit 7).

– 5 –

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

12.     On October 24, 2025, via certified mail bearing Tracking No. 9402611898765476394191, I requested complete personnel records from Bank of America **pursuant to California Labor Code sections 226, 432, and 1198.5.** A true and correct copy of this records request, which was transmitted to Bank of America Global Human Resources by certified mail on October 27, 2025, is attached hereto as **Exhibit 8.** As part of that request, I specifically requested production of any arbitration agreement, arbitration acknowledgment, arbitration-policy acceptance, or other employment-related instrument allegedly signed or acknowledged by me. Notably, in this letter I expressly requested that 'if you believed that any record is lawfully exempt from disclosure, identify each document and specific statutory basis for withholding it.' (Exhibit 8, p. 4).

**D.     SUBSTITUTION OF COUNSEL WITHIN THE SAME LAWFIRM - Nicole Antonopoulos of Morgan, Lewis & Bockius LLP**

13.     On December 5, 2025, Ms. Nicole L. Antonopoulos **o**f Morgan, Lewis & Bockius LLP transmitted correspondence to me advising that all future communications regarding this matter should be directed to her and Karen Cho. In that same correspondence, Ms. Antonopoulos stated: "In response to your request, I have enclosed your payroll records during the prior three years, Bates-stamped BANK/LUNA000001–BANK/LUNA000167. **Your personnel records will follow."** A true and correct copy of Ms. Antonopoulos's December 5, 2025 correspondence is attached hereto as **Exhibit 9**.

14.     On December 9, 2025, after reviewing the records produced by Ms. Antonopoulos (¶13), I notified Ms. Antonopoulos that her production was incomplete, it did not include payroll records after June 15, 2025. A true and correct copy of my email correspondence sent to Ms. Antonopoulos from December 9th, 2025, is attached hereto as **Exhibit 10.**

15.     On December 15, 2025, Morgan, Lewis & Bockius LLP attorney Nicole L. Antonopoulos transmitted to me additional payroll records and a personnel-records production Bates-stamped BANK/LUNA000168 through BANK/LUNA000323. A true and correct copy of the December 15, 2025 correspondence, bearing Ms. Antonopoulos's signature, is attached hereto as **Exhibit 11.** In that correspondence, I was addressed as "Mr. D'Sol." On December 17, 2025, I received a delivery of flowers at my residence accompanied by a handwritten note purportedly from a secretary at Morgan, Lewis & Bockius LLP. The note stated: "I am the idiot secretary who misgendered the salutation on a

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

letter to you and signed Nicole Antonopoulos's name to it, please accept my apology." A true and correct copy of that note is attached hereto as **Exhibit 12**. Although the note represented that the December 15, 2025 correspondence had been signed by a secretary rather than Ms. Antonopoulos, neither Ms. Antonopoulos nor Morgan, Lewis & Bockius LLP thereafter transmitted any corrected correspondence withdrawing, modifying, or otherwise changing the contents of the December 15, 2025 letter, including its representation that pages BANK/LUNA000168 through BANK/LUNA000323 constituted my personnel records production.

16.     The December 15, 2025 personnel-records production identified in Ms. Antonopoulos's correspondence (Exhibit 11) included an arbitration-related document Bates-stamped BANK/LUNA000318 through BANK/LUNA000323. A true and correct copy of BANK/LUNA000318 through BANK/LUNA000323, as produced by Ms. Antonopoulos on December 15, 2025, is attached hereto as **Exhibit 13.** The arbitration document contained within Ms. Antonopoulos's December 15, 2025 production is not signed by me, does not bear my name, does not contain any acknowledgment by me, and does not contain any indication that I reviewed, accepted, executed, or otherwise agreed to its terms (Exhibit 13). The arbitration policy produced by Ms. Antonopoulos at BANK/LUNA000318– BANK/LUNA000323 (¶16, Exhibit 13) is the same arbitration policy previously transmitted to me by Mr. Bird on July 28, 2025, and later referenced in my August 15, 2025 correspondence with Mr. MacQueen. (See ¶¶ 6, 10; Exhibits 2, 3, and 6.) Using Adobe Acrobat's document-comparison function, I personally prepared a page-by-page comparison of the arbitration policy provided by Mr. Bird and the arbitration policy later produced by Ms. Antonopoulos. A true and correct copy of that comparison report is attached hereto as **Exhibit 14**. As reflected in Exhibit 14, the two documents are identical in content, formatting, and structure, except for the Bates numbering added to the version produced by Ms. Antonopoulos

17.     Separately, on February 20, 2026, I received directly from Bank of America Global Human Resources a substantially larger production of my personnel records, transmitted under a cover letter titled "RE: Wage/salary information" and bearing no Bates numbering. That production included my complete My Learning / My Tasks history, including the training, acknowledgment, and compliance-tracking records maintained during my employment (¶7). A true and correct copy of my

- 7 -

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

Learning/ My Task / my Acknowledgment history issued by Bank of America on February 20th, 2026, is attached hereto as **Exhibit 15**. I personally reviewed the My Learning / My Tasks / my Acknowledgment history and did not locate any entry reflecting an arbitration agreement, arbitration acknowledgment, arbitration-policy acceptance, or similar arbitration-related record. In particular, I reviewed the entries corresponding to November 2024 — the period during which Defendants contend the arbitration policy was distributed and accepted — and located no arbitration-related entry. (Exhibit 15, p. 1.) The arbitration document Defendants rely upon does not appear anywhere in this production.

18. Despite my request described in Paragraph 12 (Exhibit 8), Bank of America did not identify any arbitration agreement, arbitration acknowledgment, arbitration-policy acceptance record, or any other arbitration-related document as having been withheld, exempt from disclosure, confidential, privileged, settlement-related, provided for settlement purposes only, or otherwise excluded from production. Nor did Bank of America identify any document at all as being withheld or produced subject to any such limitation in response to my records demand.

**E.    DEFENDANT'S ANSWER – Peter Maxim by Nicole Antonopoulos**

19. On June 3, 2026, Defendant Peter C. Maxim, through counsel Nicole L. Antonopoulos of Morgan, Lewis & Bockius LLP, filed an Answer in this action. A true and correct copy of that Answer filed on June 3rd, 2026 by Ms. Antonopoulos for Defendant Maxim is attached hereto as **Exhibit 16**. In the Twenty-Fifth Additional Defense, Defendant Maxim asserts that my claims are barred, in whole or in part, because I am allegedly subject to mandatory, final, and binding arbitration pursuant to an arbitration agreement. (Exhibit 16, p. 6).

20. Mr. Maxim was my supervisor and was not part of Bank of America's Human Resources, records-management, training, or personnel-file functions. The existence of any arbitration agreement allegedly binding me would therefore depend upon employment, personnel, acknowledgment, training, and related records maintained by Bank of America rather than upon Mr. Maxim's personal knowledge. Before filing the Answer, Morgan, Lewis & Bockius LLP had already been provided with the materials described in Paragraphs 10 through 18 concerning the arbitration issue, including the exemplar identified by Mr. Bird, the absence of any executed arbitration agreement, and the records productions I

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

reviewed. No executed arbitration agreement bearing my signature has been produced by Bank of America, Mr. Bird, Mr. MacQueen, or Ms. Antonopoulos.

21.    I caused this declaration, together with the Notice of Motion, Motion, and Memorandum, to be served on Defendants' counsel Nicole L. Antonopoulos of Morgan, Lewis & Bockius LLP on June 8, 2026, by U.S. Certified Mail and electronic mail.

22.    I have not filed these papers with the Court. If, within 21 days of service, Defendants withdraw or appropriately correct the Twenty-Fifth Additional Defense, I will not file this Motion. If Defendants do not do so, I intend to file this Motion together with a supplemental declaration attesting to the date of service and to Defendants' failure to withdraw or correct the challenged matter within the 21-day period.

23.    Each exhibit referenced above is a true and correct copy of the document it purports to be.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 7, 2026, at Palm Springs, California.

/s/ Luna D'Sol

Luna D'Sol
Plaintiff, In Pro Per
2275 E Belding Dr
Palm Springs, CA 92262
Telephone: 213-925-4069
Email: jravada@icloud.com

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

EXHIBIT INDEX

- **Exhibit 1** — February 26, 2025 disclosure email (laptop-screen photograph)

- **Exhibit 2** — Email from Stephen Bird, July 28, 2025 *(settlement-related content redacted per Evid. Code § 1152)*

- **Exhibit 3** — Arbitration Policy document (unsigned)

- **Exhibit 4** — Forensic Metadata Analysis Report

- **Exhibit 5** — Email from Stephen Bird, July 30, 2025 *(settlement-related content redacted per Evid. Code § 1152)*

- **Exhibit 6** — Plaintiff's email to Grant MacQueen, August 15, 2025 *(settlement-related content redacted per Evid. Code § 1152, if applicable)*

- **Exhibit 7** — Email from Grant MacQueen, August 15, 2025 *(settlement-related content redacted per Evid. Code § 1152, if applicable)*

- **Exhibit 8** — Records demand, October 24, 2025 (Labor Code §§ 226, 432, 1198.5)

- **Exhibit 9** — Antonopoulos letter, December 5, 2025

- **Exhibit 10** — Plaintiff's email, December 9, 2025

- **Exhibit 11** — Antonopoulos letter, December 15, 2025 (signed)

- **Exhibit 12** — Handwritten note (flowers delivery)

- **Exhibit 13** — Arbitration Policy, Bates BANK/LUNA000318–000323 (unsigned)

- **Exhibit 14** — Adobe comparison report

- **Exhibit 15** — My Learning / My Tasks / Acknowledgment history

- **Exhibit 16** — Defendant Maxim's Answer, June 3, 2026

– 10 –

DECLARATION OF LUNA D'SOL IN SUPPORT OF MOTION FOR SANCTIONS PURSUANT TO CODE OF CIVIL PROCEDURE § 128.7

EXHIBIT 1



Personal Update.pe - Message (HTML)

File   Message   Help   Q Tell me what you want to do

Personal Update.pe

Ravada, Julio
To: Shanks, Tricia; Maxim, Peter C

Wed 2/26/2025 5:41 PM

Hi Tricia and Peter,

I am reaching to you to tell you about a matter that is essentially personal but will result in some changes at work. You will start to notice (or may have already noticed) some changes over the next several months as a I identify as a female and have started the transitioning process with hormone therapy since the beginning of this year. I have had feelings that question my gender identity, but I kept those feelings hidden and did my best to make my life work with my male body as my discomfort grew bigger. For the last 2 years outside of work I have been living as female. My friends call me Luna and last week I decided it was time to take action to start the process to change my name legally and will expect to be referred to as such once formalized which I will keep you and our company posted.

This transition process may include therapy, increased hormonal treatment and / or various surgeries and more. Accordingly, I have been working with my therapist and doctors following the standard of care that set out treatment guidelines for transgender individuals. I am very pleased to take this step towards personal wholeness while staying at the job I have found very rewarding. This change will not affect my ability to do my job. In fact, I may be less distracted when I no longer will have to deal with hiding my true identity here at work. Also, as I embrace my true self you may find me more enjoyable to be around and work with.

Some of you may not understand the life changes that I am undertaking. I would be very happy to answer your questions or direct you to additional information. Some of you may not approve of what I am doing which I believe it is your right, however, I expect that everyone will still treat me with basic human respect. Trust me, I am aware how our country's current political doctrines should have helped me decide that this is not a good time for me to feel free, and because of this I pray that I never regret to have chosen putting my fears aside in order to stand up firm with loud pride knowing with confidence that the company we work for is committed to protect me.

I know that this will take a little time to get used to, and I expect that people will make mistakes at first. All I ask is that you try your best to get it right.

Thank you,

Julio R

# EXHIBIT 2

Email from Stephen Bird dated July 28, 2025
(settlement-related content redacted per Evid. Code § 1152)

From: **Bird, Stephen - Legal** stephen.bird@bofa.com
Subject: RE: Formal Response - Action Required [ -LT.FID372085]
Date: July 28, 2025 at 4:16 PM
To: jravada@icloud.com

Confidential – For Settlement Purposes Only

Luna,

██████████████████████████████████████

██████████████████████████████████████
██████████████████████████████████████
████████████████████

As to arbitration, please see the attached arbitration policy, to which you agreed to be bound during your employment.  On November 8, 2024, you received an email providing this policy and explaining that by continuing your employment with Bank of America for thirty (30) days after you received the policy via the email, you were agreeing to the policy. You received another follow up email on November 22, 2024.  As a result, by continuing your employment for more than thirty (30) days after receiving the email/policy, you agreed to the policy.

(This email is being sent without prejudice and with all rights, defenses and claims reserved.)

Stephen D. Bird

Associate General Counsel & Senior Vice President

Global Human Resources Legal

Legal Department

Bank of America

NY8-114-07-01, 114 West 47th Street

New York, NY 10036

T 212.852.3660 M 646.901.1864

stephen.bird@bofa.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and immediately permanently delete without reading further or forwarding to others.*

This message, and any attachment(s), is for the intended recipient(s) only, may contain information that is privileged, confidential and/or proprietary and subject to important terms and conditions available at http://www.bankofamerica.com/electronic-disclaimer  If you are not the intended recipient, please delete this message. For more information about how Bank of America protects your privacy, including specific rights that may apply, please visit the following pages: https://business.bofa.com/en-us/content/global-privacy-notices.html (which includes global privacy notices) and https://www.bankofamerica.com/security-center/privacy-overview/ (which includes US State specific privacy notices such as the http://www.bankofamerica.com/ccpa-notice).



EXHIBIT 3

**BANK OF AMERICA**

**<u>ARBITRATION POLICY</u>**

Bank of America strives to maintain a positive and productive work environment for all of its employees. Bank of America nonetheless recognizes that disagreements may arise between an employee and Bank of America, or between employees in a context that involves Bank of America, that cannot be resolved through internal procedures and processes. In such instances, Bank of America believes that the resolution of such disagreements can be best achieved on an efficient basis through external arbitration. For these reasons, Bank of America has adopted this Arbitration Policy ("Policy"). This Policy makes arbitration the required and exclusive forum for the resolution of all Covered Claims (as defined below), whether initiated by an employee or Bank of America.

For purposes of this Policy, "Bank of America" shall mean Bank of America Corporation, Bank of America, N.A., BofA Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and/or any of its and their current, future and former parents, subsidiaries, affiliates, predecessors, successors or assigns.

I.      **<u>Covered Claims</u>**

Except for Excluded Claims (as that term is defined below), and to the maximum extent permitted by law, all disputes, claims, complaints, or controversies that any employee has had, has now, or has at any time in the future against Bank of America and/or any of its current, future and former officers, directors, employees, and/or agents (the "Company"), or that Bank of America has had, has now, or has at any time in the future against any employee, including, but not limited to, claims relating to breach of contract, tort claims, wrongful discharge, discrimination and/or harassment claims, retaliation claims, claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to the employee's application for employment with the Company, the employee's employment with the Company, the terms and conditions of the employee's employment with the Company, and/or termination of the employee's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Policy and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE ANY COVERED CLAIMS.

II.     **<u>Excluded Claims</u>**

The following claims and disputes are not subject to this Policy ("Excluded Claims"):

      A.      For employees registered with the Financial Industry Regulatory Authority ("FINRA"), claims that are required and eligible to be arbitrated under the FINRA Code of Arbitration Procedure for Industry Disputes (except that if a Covered Claim may not be arbitrated before FINRA or is ineligible for, otherwise excluded

Bank of America—Arbitration Policy

from, or not subject to arbitration before, FINRA, then any arbitration of such Covered Claim shall be conducted in accordance with this Policy);

B.    Claims pending in court as of the date Bank of America distributes this Policy to employees;

C.    Claims that may not be subject to a pre-dispute arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (unless the employee elects to pursue such claims in arbitration pursuant to this Policy);

D.    Applications or requests for temporary and/or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, with the merits of any Covered Claim to be heard in arbitration;

E.    Claims for workers' compensation or unemployment compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation or unemployment compensation benefits;

F.    Claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board;

G.    For employees employed in California, claims for public injunctive relief under California law (*i.e.*, claims that benefit citizens as a whole, not just the employee or a group of employees), provided that a court of competent jurisdiction, not an arbitrator, will decide whether a claim is a claim for public injunctive relief;

H.    Representative "non-individual" California Private Attorneys General Act ("PAGA") claims to the extent they cannot be waived under applicable law, brought by the employee for alleged California Labor Code violations that individuals other than the employee have suffered; and

I.    Any claim that is expressly precluded from arbitration by a governing federal statute.

Nothing in this Policy shall prohibit an employee from filing a charge, complaint or claim, or participating in an investigation, with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Notwithstanding the foregoing, any charge, complaint or claim involving a Covered Claim that is not finally resolved by the administrative agency, and any appeal or proceeding that commences in an agency and later is appealed to or brought in state or federal court, shall be subject to arbitration under this Policy and submitted to arbitration.

If any Excluded Claim is combined with a Covered Claim, the employee and Bank of America agree to sever the Excluded Claim(s) from any case they bring and pursue the Excluded Claim(s) in a case separate from the Covered Claim(s), which will be arbitrated to the maximum extent permitted by the Federal Arbitration Act.

III.    **Class, Collective, and Non-Individual Representative Action Waiver**

A.    Waiver of Class, Collective, and Non-Individual Representative Actions:

1.    To the maximum extent permitted by applicable law, Covered Claims must be brought in arbitration in an individual capacity only for injuries or violations directly experienced by the party bringing the claim, and must be adjudicated on an individual basis, and may not be initiated or maintained on a class action, collective action, or non-individual representative action basis in court or arbitration.  This means that neither employees nor Bank of America may serve or participate as a class or collective action member or representative or receive any recovery from a class or collective action involving Covered Claims in any proceeding.  In addition, neither employees nor Bank of America may participate as a plaintiff or claimant in a class or collective action involving Covered Claims against the employee or Bank of America, and agree to take all steps necessary to opt-out of, or refrain from opting into, any class or collective action involving a Covered Claim.

2.    The arbitrator shall not have the authority to:  (i) consolidate or join claims by different persons into one proceeding; (ii) determine whether the Covered Claim should proceed to final adjudication as a class, collective or non-individual representative action; (iii) allow any Covered Claim to proceed in arbitration as a class, collective or non-individual representative action; and/or (iv) award relief on a class, collective or non-individual representative basis with respect to any Covered Claim.

B.    California Private Attorneys General Act ("PAGA") Individual Action Requirement.  Employees employed in California and Bank of America further agree to arbitrate any PAGA claim by an employee to recover any unpaid wages, civil penalties as to the employee's individual claim, or other individual relief.  The arbitrator is without authority to preside over any non-individual PAGA claim (*i.e.*, any PAGA claim by a party to the arbitration for penalties associated with violations and/or injuries that the employee did not directly experience themselves).  This PAGA Individual Action Requirement clause, or any portion thereof, will be severable from this Policy if there is a final judicial determination that it is invalid, unenforceable, unconscionable, void or voidable. In such case, the PAGA action must be litigated in a civil court of competent jurisdiction but the portion of this PAGA Individual Action Requirement that is enforceable shall be enforced in arbitration.

C.    Court to Decide Enforceability of the Waiver:  A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement set forth above.

D.    Right to Challenge Validity of this Policy: The employee has the right to challenge this Policy on any grounds that may exist in law and equity, and Bank of America shall not discipline, discharge, or engage in any retaliatory actions against the employee in the event the employee chooses to do so.  Bank of America, however,

Bank of America—Arbitration Policy

reserves the right to enforce the terms and conditions of this Policy.  If, for any reason, the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement are held unenforceable or invalid in whole or in part, then a court of competent jurisdiction, not an arbitrator, will decide the claim as to which the waiver or requirement was held unenforceable or invalid and all other Covered Claims will remain subject to arbitration.

IV.     **Forum and Rules**

Except for arbitrations before FINRA, the following rules will apply to any arbitration under this Policy:

A.      Except as modified in this Policy, any Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules") in effect at the time of the arbitration or any successor rules.  The JAMS Rules are available at www.jamsadr.com.  If there is any conflict between the JAMS Rules and this Policy, the Policy shall govern.

B.      Any proceeding under this Policy must be brought within the time period provided for within the statute(s) of limitations applicable to the Covered Claims asserted.

C.      Unless otherwise agreed by the parties, the arbitration shall be held in the county of the employee's current or last principal place of employment with Bank of America or, if not practicable, in the county closest to the employee's current or last principal place of employment with Bank of America where the arbitration can be held.  If the employee's current or last principal place of employment with Bank of America is outside of the United States, the arbitration shall be held in New York, New York.

D.      Unless otherwise agreed by the parties, the arbitration will be submitted to a single arbitrator selected in accordance with the JAMS Rules.

E.      Except as expressly precluded by federal law, any issue concerning arbitrability of a particular issue or claim pursuant to this Policy (except for issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement) must be resolved by the arbitrator, not the court.

F.      Any party shall have the right to file, and the arbitrator must promptly hear and decide, any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to, motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine or any other dispositive motion.  The arbitrator shall issue an appropriate protective order prior to the production of any relevant and discoverable confidential information or other non-publicly available documents or information requiring that such materials be treated as confidential at all times during and after the arbitration.

Bank of America—Arbitration Policy

G.      The arbitrator shall follow and apply the substantive law, and be subject to the same rules of evidence and burdens of proof, that would have governed the Covered Claim(s) had it been heard in court. The arbitrator shall not enlarge, add to, subtract from, disregard, or otherwise alter the parties' rights under the applicable law.  In reaching a decision, the arbitrator shall be bound by the law and shall have no power to vary from said law.

H.      The arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the Federal Arbitration Act.  The arbitrator shall be authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction.  The arbitrator shall have no authority to make awards beyond that remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if permitted by the applicable statute, law or contract. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either the employee or Bank of America.  The arbitrator shall not have authority to consider any claim that has not been administratively exhausted as required by statute, that is barred by an applicable statute of limitations, or that is otherwise raised in an untimely fashion as provided by applicable law.

I.      The employee shall be responsible for any filing fee required to initiate arbitration on the employee's behalf or to assert any counterclaims up to the amount of the filing fee, if any, the employee would have incurred had the employee filed such claims in court, and Bank of America shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum.  The fees and expenses for any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law.  Except as otherwise provided by law, all attorneys' fees shall be paid by the party that incurs them.

J.      No arbitration award or decision shall have preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the original arbitration and the issue and/or claims were actually litigated and decided by the arbitrator.

## V.    **Confidentiality of Proceedings**

To the maximum extent permitted by law, the employee and Bank of America shall maintain the confidential nature of any arbitration proceeding and the award except as may be necessary in connection with a judicial action to vacate or enforce an award, or unless otherwise required or protected by law or allowed by prior written consent of both parties.  This provision shall not prevent either the employee or Bank of America from communicating with witnesses to the extent necessary to assist in arbitrating the proceeding, nor shall this provision prohibit the employee from:  (a) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful; (b) engaging in protected concerted activity under the National Labor Relations Act (such as discussions of wages, hours, or other terms and conditions of employment); or (c) initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, in

Bank of America—Arbitration Policy

connection with any reporting of, investigation into, or proceeding regarding suspected violations of law (and the employee shall not be required to advise or seek permission from the Company before engaging in any such activity).

## VI.    **Severability**

If any part or provision of this Policy is found to be void, voidable, or otherwise unenforceable, that part or provision shall be severed and such a finding will not affect the validity of the remainder of this Policy, and all other parts and provisions will remain in full force and effect.  If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable, or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

## VII.    **Governing Law**

The enforceability of this Policy shall be governed by and interpreted in accordance with the Federal Arbitration Act.

## VIII.    **Modifications**

Bank of America reserves the right, in its sole discretion, to modify the terms of this Policy prospectively at any time by providing thirty (30) calendar days advance notice to employees.  Such modifications shall be effective thirty (30) calendar days after the notice is provided to employees.  To the maximum extent permitted by law, Employees' continuation of employment for thirty (30) calendar days after such notice is provided shall be deemed acceptance of the revised terms.

## IX.    **At-Will Employment**

Neither the terms nor conditions described in this Policy are intended to create a contract of employment for a specific duration of time.  Employment with Bank of America is voluntarily entered into, and employees are free to end their employment at any time, with or without notice or cause, subject to any agreement between the employee and Bank of America.  Similarly, Bank of America may terminate the employment relationship at any time for any reason, with or without prior notice or cause, subject to any agreement between the employee and Bank of America.

## X.    **Policy Survives Termination of Employment**

This Policy will survive the termination of an employee's employment with Bank of America.  This Policy shall control over any prior agreement between any employee and Bank of America regarding the subject matter of dispute resolution of Covered Claims.  Notwithstanding the foregoing, in the event this Policy is found to be void, voidable, or otherwise unenforceable in full, or a Covered Claim is found not to be subject to this Policy, any prior agreement between an employee and Bank of America regarding the subject matter of dispute resolution shall remain in full force and effect.

BANK OF AMERICA

Marie Terezakis
Head of Employee Relations and GHR Conduct

Please note that for purposes of Section II.B., Bank of America distributed the Arbitration Policy to employees at 10 a.m. Eastern on November 8, 2024.

Bank of America—Arbitration Policy

EXHIBIT 4

**FORENSIC METADATA ANALYSIS REPORT**

**Document Title:** 2025-07-28 – Bank of America Arbitration Agreement – Constructive Fraud.pdf

**1. File Information**

- **File Name:** 2025-07-28 - Bank of America Arbitration Agreement - Constructive Fraud.pdf

- **File Size:** 314.97 KB

- **File Created (System Timestamp):** 2025-08-10 21:41:31 (local system time)

- **File Modified (System Timestamp):** 2025-08-10 21:41:31 (local system time)

**2. Embedded PDF Metadata**

- **Creation Date (Embedded):** 2025-02-27 13:09:54 UTC

- **Modification Date (Embedded):** 2025-07-28 19:04:13 (UTC-04:00)

- **Creator Application:** PDFium

- **Producer:** PDFium

**3. Embedded Smart Document (iManage) Data**

The document contains embedded iManage Smart Document properties under the `/IMAN_SMARTDOC` field:

- **Document ID:** `IMAN_PRI_US_PRD!4521187.1`

- **Sender ID:** `ZKV93ZW`

- **Sender Email:** `STEPHEN.BIRD@BOFA.COM`

- **Last Modified (iManage):** 2025-07-28T23:04:13.6391345Z

- **Database Source:** `IMAN_PRI_US_PRD`

**4. Forensic Timeline and Interpretation**

Analysis of metadata and iManage data indicates the following sequence:

1. **PDF Instance Creation – Feb 27, 2025**

   ◦ This timestamp marks the generation of the *current* PDF file from within Bank of America's iManage document management system.

   ◦ The original content may predate this timestamp (e.g., sourced from Word, SharePoint, or prior iManage versions), but this is when it was first saved/exported as a PDF in its present file structure.

2. **Unlock/Check-Out for Editing – Before July 28, 2025**

- ◦ iManage metadata shows a later modification event, meaning the file left its "locked" PDF state internally, was altered, and then re-committed.

- ◦ This action is consistent with checking out the file from the iManage repository to make internal edits.

3. **Modification & Re-Lock – July 28, 2025**

- ◦ Both the embedded `/ModDate` and the iManage `<lastmodified>` field confirm edits were made and finalized on this date.

- ◦ The document was then re-locked in PDF form, likely for distribution.

4. **Post-Modification Handling – After July 28, 2025**

- ◦ No evidence exists in the metadata of further edits outside iManage after this date.

- ◦ The version provided appears to be the locked, final state as of July 28, 2025.

## 5. Observations

- The mid-2025 "unlock → edit → re-lock" cycle is conclusive from the matching July 28, 2025 modification timestamps in both the embedded PDF metadata and the iManage Smart Document fields.

- The iManage `documentid` and sender email (`STEPHEN.BIRD@BOFA.COM`) create a direct traceable link to Bank of America's internal document repository and the responsible custodian.

- These identifiers can be targeted in a discovery request to retrieve:

  1. Prior versions of the document

  2. Edit history logs

  3. Check-in/check-out activity for the document ID `IMAN_PRI_US_PRD!4521187.1`.

## 6. Chain-of-Custody Considerations

- The file appears to have remained within Bank of America's controlled iManage environment until export.

- The July 28, 2025 modification aligns with the internal last-modified record, suggesting that alterations occurred within the official system prior to external release.

- The metadata provides a defensible timeline showing the file was *actively edited* within months of distribution, undermining claims of an unaltered historical document.

**Prepared by:**
Digital Forensics & Metadata Analysis Unit
Date: 2025-08-10

# EXHIBIT 5

Email from Stephen Bird dated July 30, 2025
(settlement-related content redacted per Evid. Code § 1152)

**From:** **Bird, Stephen - Legal** stephen.bird@bofa.com
**Subject:** FW: Formal Response - Action Required
**Date:** July 30, 2025 at 8:03 AM
**To:** jravada@icloud.com

Confidential – For Settlement Purposes Only

Dear Luna,

At your request, I am resending the below.  Please let me know if you are able to access.

Thanks,

Stephen D. Bird
Associate General Counsel & SVP
Global Human Resources Legal
Legal Department
Bank of America

NY8-114-07-01, 114 West 47th Street
New York, NY 10036
T 212.852.3660 M 646.901.1864
stephen.bird@bofa.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and immediately permanently delete without reading further or forwarding to others.*

**From:** Bird, Stephen - Legal
**Sent:** Tuesday, July 29, 2025 8:20 PM
**To:** Luna D'Sol <jravada@icloud.com>
**Subject:** RE: [SecMail:] Formal Response - Action Required [ -LT.FID372085]

Confidential – For Settlement Purposes Only

Dear Luna,

The arbitration policy sent to you was an exemplar of the policy.  With that said, I note your request for arbitration materials, which the Bank is in the process of retrieving (which may take a bit of time.).



██████████████████████████████████

████████████████████

(This email is being sent without prejudice and with all rights, defenses and claims reserved.)


Regards,


Stephen D. Bird

Associate General Counsel & Senior Vice President

Global Human Resources Legal

Legal Department

Bank of America

NY8-114-07-01, 114 West 47th Street

New York, NY 10036

T 212.852.3660 M 646.901.1864

stephen.bird@bofa.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and immediately permanently delete without reading further or forwarding to others.*

EXHIBIT 6

From: Luna D'Sol jravada@icloud.com
Subject: Response to Arbitration Assertions – Final Position
Date: August 15, 2025 at 10:51
To: MacQueen, Grant grant.macqueen@morganlewis.com
Co: Shaulson, Samuel S. sam.shaulson@morganlewis.com, miceal.chamberlain@bofa.com, aaron.longo@bofa.com, katelyn.hunt@bofa.com, jmiller87@bofa.com, ross.jeffries@bofa.com

Without Prejudice – All Rights Reserved

Mr. Bird,

I am referencing the following communications, which will be attached as exhibits to this correspondence:

1. Exhibit 1 – July 28, 2025 email from Bank of America attaching an "Arbitration Policy."

2. Exhibit 2 – Forensic metadata analysis confirming the document was created after my alleged agreement date (February 27, 2025) and edited/re-locked on July 28, 2025, immediately prior to being sent to me.

3. Exhibit 3 – July 29, 2025 email from Bank of America admitting the document provided was merely an exemplar and not my signed agreement.

I will not entertain further unfounded or phonic statements, nor participate in ongoing misrepresentations. The sole purpose of my outreach was as a professional courtesy, providing the Bank an opportunity to present a valid, signed arbitration agreement—not to engage in a circular, baseless exchange.

For the record, I made no offer to negotiate the "scope" of any confidentiality obligation. My position has been, and remains, that the Bank has no valid, enforceable agreement over me on the matters at issue, and any suggestion otherwise mischaracterizes my words and intent.

As an authorized party, I have the right to request and review any arbitration agreement alleged to bind me. I have no recollection of signing such an agreement, nor do I recall the Bank providing an "important update" requiring employees to either quit or accept it. The suggestion that I am bound under these circumstances is procedurally defective and, frankly, laughable.

Given the seriousness of the Bank's actions and the clear evidence that the only document provided is neither contemporaneous nor valid (see Exhibit 2), mediation is not required under any enforceable terms. Moreover, proposing mediation under these conditions—while the Bank continues to take actions that severely and negatively impact my life—is entirely inappropriate.

At this point, I consider the Bank to have no valid objection to my chosen forum. Accordingly, I will treat your failure to produce a valid, executed agreement as acknowledgment that I am free to proceed.

Exhibit 1

> **2025-07-28 - Stehen Bird Provides Arbitration Agreement ...**
> 88 KB

Exhibit 2

> **2025-08-10 - Arbitration Forensic Digital Analysis - ...**
> 90 KB

2

Exhibit 3



2025-07-29 - Stephen Bird
acknowledges arbitration ...
86 KB

All rights remain fully reserved.

Sincerely,

Luna D'Sol
213.925.4069
jravada@icloud.com

The content of this email and any attachments are confidential and intended for the recipient specified in the message only. It is strictly forbidden to share any part of this message with any third party without a written consent of the sender. If you received this message by mistake, please reply to this message and follow with its deletion.

# EXHIBIT 7

Email from Grant MacQueen, August 15, 2025
(settlement-related content redacted per Evid. Code § 1152, if applicable)

**From:** **MacQueen, Grant** grant.macqueen@morganlewis.com  📎
**Subject:** RE: Response to Arbitration Assertions – Final Position
**Date:** August 15, 2025 at 12:02
**To:** Luna D'Sol jravada@icloud.com
**Cc:** Shaulson, Samuel S. sam.shaulson@morganlewis.com, Hale, Ashley J. ashley.hale@morganlewis.com

GM

Ms. D'Sol:

The arbitration agreement, which you acknowledged by continuing to work at Bank of America after receiving the subject emails, is valid and enforceable, whether or not you now recall receiving the emails, and even though you were later provided the language of the policy in an exemplar. ████████████████████████████████████
███████████████████████████████████████████████████████████
█████████████████████████████████████████████████
██████████████████████████████  █████████████████████
███████████████████████████████

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████  █████████████████████████

███████████████████████████████████████████████
█████████████████████████████████████████

Regards,
Grant

**Grant MacQueen**

**Morgan, Lewis & Bockius LLP**
101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6214 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
Assistant: Liz Salas | +1.212.309.6323 | liz.salas@morganlewis.com
grant.macqueen@morganlewis.com | www.morganlewis.com

**GLOBAL IMPACT OF THE US ADMINISTRATION**
Visit our resource center ❯

# EXHIBIT 8

Luna DSol
Luna DSol
2275 E BELDING DR
PALM SPRINGS CA 92262-6515

**USPS CERTIFIED MAIL**

9402 6118 9876 5476 3941 91

US POSTAGE AND FEES PAID
PRIORITY MAIL IMI
Oct 27 2025
Mailed from ZIP 97230
1 LB PRIORITY MAIL RATE
ZONE 8
11923275
Commercial



endicia

063S0010282486

Bank of America Global Human Resources P.O. Box
Bank of America Global Human Resources P.O. Box
PO BOX 25118
TAMPA FL 33622-5118

27824904

15177-18

■ ⌐ **Luna D'Sol**

(213) 925-4069     jravada@icloud.com     2275 E Belding Dr Palm Springs CA 92262 United States

Sent via Certified Mail & Submitted via NetBenefits Support Portal**
Request ID 14092318

October 24, 2025

**Bank of America Global Human Resources**
P.O. Box 25118
Tampa, FL 33622-5118

### Subject: Demand for Complete Personnel Records Pursuant to California Labor Code §§ 226, 432, and 1198.5

Dear Bank of America Global Human Resources,

I am writing to formally demand complete compliance with my previous request for a copy of my personnel records. While I received a partial response, significant portions of my employment file remain missing. Under multiple California statutes, these records must be produced in full within specific time frames. I trust this oversight is inadvertent and that Bank of America will promptly provide the full disclosure required by law.

### 1. Payroll and Wage Records (21-Day Deadline – Labor Code § 226)

Under California Labor Code § 226(c), an employer must furnish copies of payroll records within 21 calendar days of a request. Failure to do so subjects the employer to a civil penalty of $750 per violation (§ 226(f)).

The following items remain outstanding:
- W-2 forms for all years of employment;
- Pay stubs and statements of earnings;
- Annual compensation summaries and bonus documentation.

The 21-day window has now expired, and these records must be delivered immediately to avoid statutory penalties.

## 2. Personnel File Documents (30-Day Deadline – Labor Code § 1198.5)

Under Labor Code § 1198.5(b)(1), an employer must make the complete personnel file available within 30 calendar days of a written request. That period has also expired.

The following records are still missing:
- All internal performance notes or memos relating to evaluations, promotions, or discipline;
- Leave-of-absence records and FMLA documentation maintained by Sedgwick or other administrators;
- Internal emails or correspondence pertaining to my employment status and termination;
- Any documents reflecting investigations, complaints, or managerial reviews.

## 3. Signed Employment and Severance Documents (Immediate – Labor Code § 432)

Under California Labor Code § 432, an employee is entitled to a copy of any employment-related instrument they signed upon request. This includes (but is not limited to):
- My initial employment agreement and any subsequent offer or promotion letters;
- The Severance Agreement, General Release, and Addendum;
- Any non-disclosure or confidentiality agreements.

These documents must be produced without delay. There is no grace period under § 432.

## 4. Record-Preservation Notice

Please be advised that pursuant to California law, it is unlawful to destroy or alter any personnel or employment-related records that may be relevant to my employment or termination. This letter serves as a formal request to preserve all such records, including

*USPS Article #9402611898765476394191 Date: 10/27/2025*

15177-20

digital files, emails, and documents held by Bank of America or any third-party agents acting on its behalf (Sedgwick, MetLife, etc.).

**5. Deadline for Compliance**

To cure these violations, please deliver all outstanding records no later than ten (10) calendar days from receipt of this letter via email to jravada@icloud.com or by mail to:

> Luna D'Sol
> 2275 E Belding Dr
> Palm Springs CA 92262

If you believe any record is lawfully exempt from disclosure, identify each document and the specific statutory basis for withholding. Absent a complete response, I will consider filing a complaint with the California Labor Commissioner and pursuing remedies available under the Labor Code.

Please note that I acknowledge your right to charge a reasonable fee to cover the actual cost of reproduction, as permitted by Labor Code §§ 226 and 1198.5. This demand is made in good faith and preserves my right to seek all remedies available under the Labor Code, including but not limited to those potentially enforceable through the Private Attorneys General Act (PAGA).

Thank you for your attention to this matter. I look forward to your confirmation that my records have been fully produced in accordance with California law.

Sincerely,

**Luna D'Sol**
Former Employee
Person 20143187

*USPS Article #9402611898765476394191 Date: 10/27/2025*

15177-21

# EXHIBIT 9

# Morgan Lewis

**Nicole L. Antonopoulos**
Associate
+1.650.843.7236
nicole.antonopoulos@morganlewis.com

December 5, 2025

**VIA E-MAIL AND US MAIL**

Luna D'Sol
2275 E Belding Dr.
Palm Springs, CA 92262
jravada@icloud.com

Re:     Luna D'Sol - Request for Payroll and Personnel Records

Dear Ms. D'Sol:

As discussed, please direct all future correspondence regarding this matter to myself and Karen Cho (karen.cho@morganlewis.com).  In response to your request, I have enclosed your payroll records dating back three years (bates-stamped BANK/LUNA000001 - BANK/LUNA000167).  Your personnel records will follow.

Sincerely,

*N. Antonopoulos*

Nicole Antonopoulos

NLA

**Morgan, Lewis & Bockius LLP**

1400 Page Mill Road
Palo Alto, CA  94304            📞 +1.650.843.4000
United States                  📠 +1.650.843.4001

# EXHIBIT 10

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Incomplete Payroll Record – Discrepancy Between Final Payslip and 2025 W-2
**Date:** December 9, 2025 at 11:47
**To:** Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com, Onaka, Robin robin.onaka@morganlewis.com



Nicole and Onaka,,

I am confirming receipt of the payroll documents you provided. After reviewing the packet, I noted that the **last payslip included in your production** is located at **BANK/LUNA0158–0159**, reflecting the pay period **June 1–15, 2025**.

I also noted that the 2025 W-2 is located at **BANK/LUNA0166**.

There is a material inconsistency:
 •   The **YTD wage and tax amounts** in the final payslip you produced (June 1–15, 2025) **do not match**
 •   The **wage and tax amounts reported on the W-2**.

This suggests that either:
 1.   **Payroll records after June 15, 2025 were not included**, or
 2.   **There were additional earnings, adjustments, or coding entries processed by the Bank that are not reflected in the documents produced.**

Please confirm whether:

(a) the June 1–15, 2025 payslip is truly the **final** 2025 pay record in the Bank's system, or
(b) additional 2025 payroll entries exist that were not included in your production.

This communication is limited to ensuring the accuracy and completeness of the documents the Bank has provided. It is not a settlement discussion.

Regards,

## Luna D'Sol

  (213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 11

# Morgan Lewis

**Nicole L. Antonopoulos**
Associate
+1.650.843.7236
nicole.antonopoulos@morganlewis.com

December 15, 2025

**VIA US MAIL**

Luna D'Sol
2275 E Belding Drive
Palm Springs, CA 92262
jravada@icloud.com

Re:    Luna D'Sol - Request for Payroll and Personnel Records

Dear Mr. D'Sol:

In response to your request, I have enclosed additional payroll records and your personnel file (Bates-stamped BANK/LUNA000168 - BANK/LUNA000323).

Sincerely,

Nicole Antonopoulos

NLA

**Morgan, Lewis & Bockius LLP**

1400 Page Mill Road
Palo Alto, CA 94304
United States

☎ +1.650.843.4000
✆ +1.650.843.4001

EXHIBIT 12



I am the idiot Secretary who misgendered the Salutation on a letter to you and signed Nicole Antonopulos' name to it.

Please accept my apology

# EXHIBIT 13

**BANK OF AMERICA**

**ARBITRATION POLICY**

Bank of America strives to maintain a positive and productive work environment for all of its employees. Bank of America nonetheless recognizes that disagreements may arise between an employee and Bank of America, or between employees in a context that involves Bank of America, that cannot be resolved through internal procedures and processes. In such instances, Bank of America believes that the resolution of such disagreements can be best achieved on an efficient basis through external arbitration. For these reasons, Bank of America has adopted this Arbitration Policy ("Policy"). This Policy makes arbitration the required and exclusive forum for the resolution of all Covered Claims (as defined below), whether initiated by an employee or Bank of America.

For purposes of this Policy, "Bank of America" shall mean Bank of America Corporation, Bank of America, N.A., BofA Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and/or any of its and their current, future and former parents, subsidiaries, affiliates, predecessors, successors or assigns.

I.      **Covered Claims**

Except for Excluded Claims (as that term is defined below), and to the maximum extent permitted by law, all disputes, claims, complaints, or controversies that any employee has had, has now, or has at any time in the future against Bank of America and/or any of its current, future and former officers, directors, employees, and/or agents (the "Company"), or that Bank of America has had, has now, or has at any time in the future against any employee, including, but not limited to, claims relating to breach of contract, tort claims, wrongful discharge, discrimination and/or harassment claims, retaliation claims, claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to the employee's application for employment with the Company, the employee's employment with the Company, the terms and conditions of the employee's employment with the Company, and/or termination of the employee's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Policy and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE ANY COVERED CLAIMS.

II.     **Excluded Claims**

The following claims and disputes are not subject to this Policy ("Excluded Claims"):

A.      For employees registered with the Financial Industry Regulatory Authority ("FINRA"), claims that are required and eligible to be arbitrated under the FINRA Code of Arbitration Procedure for Industry Disputes (except that if a Covered Claim may not be arbitrated before FINRA or is ineligible for, otherwise excluded

from, or not subject to arbitration before, FINRA, then any arbitration of such Covered Claim shall be conducted in accordance with this Policy);

B.    Claims pending in court as of the date Bank of America distributes this Policy to employees;

C.    Claims that may not be subject to a pre-dispute arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (unless the employee elects to pursue such claims in arbitration pursuant to this Policy);

D.    Applications or requests for temporary and/or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, with the merits of any Covered Claim to be heard in arbitration;

E.    Claims for workers' compensation or unemployment compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation or unemployment compensation benefits;

F.    Claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board;

G.    For employees employed in California, claims for public injunctive relief under California law (*i.e.*, claims that benefit citizens as a whole, not just the employee or a group of employees), provided that a court of competent jurisdiction, not an arbitrator, will decide whether a claim is a claim for public injunctive relief;

H.    Representative "non-individual" California Private Attorneys General Act ("PAGA") claims to the extent they cannot be waived under applicable law, brought by the employee for alleged California Labor Code violations that individuals other than the employee have suffered; and

I.    Any claim that is expressly precluded from arbitration by a governing federal statute.

Nothing in this Policy shall prohibit an employee from filing a charge, complaint or claim, or participating in an investigation, with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Notwithstanding the foregoing, any charge, complaint or claim involving a Covered Claim that is not finally resolved by the administrative agency, and any appeal or proceeding that commences in an agency and later is appealed to or brought in state or federal court, shall be subject to arbitration under this Policy and submitted to arbitration.

If any Excluded Claim is combined with a Covered Claim, the employee and Bank of America agree to sever the Excluded Claim(s) from any case they bring and pursue the Excluded Claim(s) in a case separate from the Covered Claim(s), which will be arbitrated to the maximum extent permitted by the Federal Arbitration Act.

III. **Class, Collective, and Non-Individual Representative Action Waiver**

A. Waiver of Class, Collective, and Non-Individual Representative Actions:

1. To the maximum extent permitted by applicable law, Covered Claims must be brought in arbitration in an individual capacity only for injuries or violations directly experienced by the party bringing the claim, and must be adjudicated on an individual basis, and may not be initiated or maintained on a class action, collective action, or non-individual representative action basis in court or arbitration. This means that neither employees nor Bank of America may serve or participate as a class or collective action member or representative or receive any recovery from a class or collective action involving Covered Claims in any proceeding. In addition, neither employees nor Bank of America may participate as a plaintiff or claimant in a class or collective action involving Covered Claims against the employee or Bank of America, and agree to take all steps necessary to opt-out of, or refrain from opting into, any class or collective action involving a Covered Claim.

2. The arbitrator shall not have the authority to: (i) consolidate or join claims by different persons into one proceeding; (ii) determine whether the Covered Claim should proceed to final adjudication as a class, collective or non-individual representative action; (iii) allow any Covered Claim to proceed in arbitration as a class, collective or non-individual representative action; and/or (iv) award relief on a class, collective or non-individual representative basis with respect to any Covered Claim.

B. California Private Attorneys General Act ("PAGA") Individual Action Requirement. Employees employed in California and Bank of America further agree to arbitrate any PAGA claim by an employee to recover any unpaid wages, civil penalties as to the employee's individual claim, or other individual relief. The arbitrator is without authority to preside over any non-individual PAGA claim (*i.e.*, any PAGA claim by a party to the arbitration for penalties associated with violations and/or injuries that the employee did not directly experience themselves). This PAGA Individual Action Requirement clause, or any portion thereof, will be severable from this Policy if there is a final judicial determination that it is invalid, unenforceable, unconscionable, void or voidable. In such case, the PAGA action must be litigated in a civil court of competent jurisdiction but the portion of this PAGA Individual Action Requirement that is enforceable shall be enforced in arbitration.

C. Court to Decide Enforceability of the Waiver: A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement set forth above.

D. Right to Challenge Validity of this Policy: The employee has the right to challenge this Policy on any grounds that may exist in law and equity, and Bank of America shall not discipline, discharge, or engage in any retaliatory actions against the employee in the event the employee chooses to do so. Bank of America, however,

reserves the right to enforce the terms and conditions of this Policy.  If, for any reason, the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement are held unenforceable or invalid in whole or in part, then a court of competent jurisdiction, not an arbitrator, will decide the claim as to which the waiver or requirement was held unenforceable or invalid and all other Covered Claims will remain subject to arbitration.

IV.    **Forum and Rules**

Except for arbitrations before FINRA, the following rules will apply to any arbitration under this Policy:

A.    Except as modified in this Policy, any Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules") in effect at the time of the arbitration or any successor rules.  The JAMS Rules are available at www.jamsadr.com.  If there is any conflict between the JAMS Rules and this Policy, the Policy shall govern.

B.    Any proceeding under this Policy must be brought within the time period provided for within the statute(s) of limitations applicable to the Covered Claims asserted.

C.    Unless otherwise agreed by the parties, the arbitration shall be held in the county of the employee's current or last principal place of employment with Bank of America or, if not practicable, in the county closest to the employee's current or last principal place of employment with Bank of America where the arbitration can be held.  If the employee's current or last principal place of employment with Bank of America is outside of the United States, the arbitration shall be held in New York, New York.

D.    Unless otherwise agreed by the parties, the arbitration will be submitted to a single arbitrator selected in accordance with the JAMS Rules.

E.    Except as expressly precluded by federal law, any issue concerning arbitrability of a particular issue or claim pursuant to this Policy (except for issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement) must be resolved by the arbitrator, not the court.

F.    Any party shall have the right to file, and the arbitrator must promptly hear and decide, any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to, motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine or any other dispositive motion.  The arbitrator shall issue an appropriate protective order prior to the production of any relevant and discoverable confidential information or other non-publicly available documents or information requiring that such materials be treated as confidential at all times during and after the arbitration.

Bank of America—Arbitration Policy
**BANK/LUNA000321**

G. The arbitrator shall follow and apply the substantive law, and be subject to the same rules of evidence and burdens of proof, that would have governed the Covered Claim(s) had it been heard in court. The arbitrator shall not enlarge, add to, subtract from, disregard, or otherwise alter the parties' rights under the applicable law. In reaching a decision, the arbitrator shall be bound by the law and shall have no power to vary from said law.

H. The arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the Federal Arbitration Act. The arbitrator shall be authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction. The arbitrator shall have no authority to make awards beyond that remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if permitted by the applicable statute, law or contract. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either the employee or Bank of America. The arbitrator shall not have authority to consider any claim that has not been administratively exhausted as required by statute, that is barred by an applicable statute of limitations, or that is otherwise raised in an untimely fashion as provided by applicable law.

I. The employee shall be responsible for any filing fee required to initiate arbitration on the employee's behalf or to assert any counterclaims up to the amount of the filing fee, if any, the employee would have incurred had the employee filed such claims in court, and Bank of America shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum. The fees and expenses for any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law. Except as otherwise provided by law, all attorneys' fees shall be paid by the party that incurs them.

J. No arbitration award or decision shall have preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the original arbitration and the issue and/or claims were actually litigated and decided by the arbitrator.

V. **Confidentiality of Proceedings**

To the maximum extent permitted by law, the employee and Bank of America shall maintain the confidential nature of any arbitration proceeding and the award except as may be necessary in connection with a judicial action to vacate or enforce an award, or unless otherwise required or protected by law or allowed by prior written consent of both parties. This provision shall not prevent either the employee or Bank of America from communicating with witnesses to the extent necessary to assist in arbitrating the proceeding, nor shall this provision prohibit the employee from: (a) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful; (b) engaging in protected concerted activity under the National Labor Relations Act (such as discussions of wages, hours, or other terms and conditions of employment); or (c) initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, in

connection with any reporting of, investigation into, or proceeding regarding suspected violations of law (and the employee shall not be required to advise or seek permission from the Company before engaging in any such activity).

VI.    **Severability**

If any part or provision of this Policy is found to be void, voidable, or otherwise unenforceable, that part or provision shall be severed and such a finding will not affect the validity of the remainder of this Policy, and all other parts and provisions will remain in full force and effect.  If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable, or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

VII.    **Governing Law**

The enforceability of this Policy shall be governed by and interpreted in accordance with the Federal Arbitration Act.

VIII.    **Modifications**

Bank of America reserves the right, in its sole discretion, to modify the terms of this Policy prospectively at any time by providing thirty (30) calendar days advance notice to employees.  Such modifications shall be effective thirty (30) calendar days after the notice is provided to employees.  To the maximum extent permitted by law, Employees' continuation of employment for thirty (30) calendar days after such notice is provided shall be deemed acceptance of the revised terms.

IX.    **At-Will Employment**

Neither the terms nor conditions described in this Policy are intended to create a contract of employment for a specific duration of time.  Employment with Bank of America is voluntarily entered into, and employees are free to end their employment at any time, with or without notice or cause, subject to any agreement between the employee and Bank of America.  Similarly, Bank of America may terminate the employment relationship at any time for any reason, with or without prior notice or cause, subject to any agreement between the employee and Bank of America.

X.    **Policy Survives Termination of Employment**

This Policy will survive the termination of an employee's employment with Bank of America.  This Policy shall control over any prior agreement between any employee and Bank of America regarding the subject matter of dispute resolution of Covered Claims.  Notwithstanding the foregoing, in the event this Policy is found to be void, voidable, or otherwise unenforceable in full, or a Covered Claim is found not to be subject to this Policy, any prior agreement between an employee and Bank of America regarding the subject matter of dispute resolution shall remain in full force and effect.

BANK OF AMERICA

Marie Terezakis
Head of Employee Relations and GHR Conduct

Please note that for purposes of Section II.B., Bank of America distributed the Arbitration Policy to employees at 10 a.m. Eastern on November 8, 2024.

Bank of America—Arbitration Policy
**BANK/LUNA000323**

# EXHIBIT 14



**ARBITRATION POLICY**

Bank of America strives to maintain a positive and productive work environment for all of its employees. Bank of America nonetheless recognizes that disagreements may arise between an employee and Bank of America, or between employees in a context that involves Bank of America, that cannot be resolved through internal procedures and processes. In such instances, Bank of America believes that the resolution of such disagreements can be best achieved on an efficient basis through external arbitration. For these reasons, Bank of America has adopted this Arbitration Policy ("Policy"). This Policy makes arbitration the required and exclusive forum for the resolution of all Covered Claims (as defined below), whether initiated by an employee or Bank of America.

For purposes of this Policy, "Bank of America" shall mean Bank of America Corporation, Bank of America, N.A., BofA Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and/or any of its and their current, future and former parents, subsidiaries, affiliates, predecessors, successors or assigns.

I.   **Covered Claims**

Except for Excluded Claims (as that term is defined below), and to the maximum extent permitted by law, all disputes, claims, complaints, or controversies that any employee has had, has now, or has at any time in the future against Bank of America and/or any of its current, future and former officers, directors, employees, and/or agents (the "Company"), or that Bank of America has had, has now, or has at any time in the future against any employee, including, but not limited to, claims relating to breach of contract, tort claims, wrongful discharge, discrimination and/or harassment claims, retaliation claims, claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to the employee's application for employment with the Company, the employee's employment with the Company, the terms and conditions of the employee's employment with the Company, and/or termination of the employee's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Policy and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE ANY COVERED CLAIMS.

II.  **Excluded Claims**

The following claims and disputes are not subject to this Policy ("Excluded Claims"):

A.   For employees registered with the Financial Industry Regulatory Authority ("FINRA"), claims that are required and eligible to be arbitrated under the FINRA Code of Arbitration Procedure for Industry Disputes (except that if a Covered Claim may not be arbitrated before FINRA or is ineligible for, otherwise excluded

**ARBITRATION POLICY**

Bank of America strives to maintain a positive and productive work environment for all of its employees. Bank of America nonetheless recognizes that disagreements may arise between an employee and Bank of America, or between employees in a context that involves Bank of America, that cannot be resolved through internal procedures and processes. In such instances, Bank of America believes that the resolution of such disagreements can be best achieved on an efficient basis through external arbitration. For these reasons, Bank of America has adopted this Arbitration Policy ("Policy"). This Policy makes arbitration the required and exclusive forum for the resolution of all Covered Claims (as defined below), whether initiated by an employee or Bank of America.

For purposes of this Policy, "Bank of America" shall mean Bank of America Corporation, Bank of America, N.A., BofA Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and/or any of its and their current, future and former parents, subsidiaries, affiliates, predecessors, successors or assigns.

I.   **Covered Claims**

Except for Excluded Claims (as that term is defined below), and to the maximum extent permitted by law, all disputes, claims, complaints, or controversies that any employee has had, has now, or has at any time in the future against Bank of America and/or any of its current, future and former officers, directors, employees, and/or agents (the "Company"), or that Bank of America has had, has now, or has at any time in the future against any employee, including, but not limited to, claims relating to breach of contract, tort claims, wrongful discharge, discrimination and/or harassment claims, retaliation claims, claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to the employee's application for employment with the Company, the employee's employment with the Company, the terms and conditions of the employee's employment with the Company, and/or termination of the employee's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Policy and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE ANY COVERED CLAIMS.

II.  **Excluded Claims**

The following claims and disputes are not subject to this Policy ("Excluded Claims"):

A.   For employees registered with the Financial Industry Regulatory Authority ("FINRA"), claims that are required and eligible to be arbitrated under the FINRA Code of Arbitration Procedure for Industry Disputes (except that if a Covered Claim may not be arbitrated before FINRA or is ineligible for, otherwise excluded

Bank of America—Arbitration Policy
**BANK/LUNA000318**

from, or not subject to arbitration before, FINRA, then any arbitration of such Covered Claim shall be conducted in accordance with this Policy);

B. Claims pending in court as of the date Bank of America distributes this Policy to employees;

C. Claims that may not be subject to a pre-dispute arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (unless the employee elects to pursue such claims in arbitration pursuant to this Policy);

D. Applications or requests for temporary and/or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, with the merits of any Covered Claim to be heard in arbitration;

E. Claims for workers' compensation or unemployment compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation or unemployment compensation benefits;

F. Claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board;

G. For employees employed in California, claims for public injunctive relief under California law (*i.e.*, claims that benefit citizens as a whole, not just the employee or a group of employees), provided that a court of competent jurisdiction, not an arbitrator, will decide whether a claim is a claim for public injunctive relief;

H. Representative "non-individual" California Private Attorneys General Act ("PAGA") claims to the extent they cannot be waived under applicable law, brought by the employee for alleged California Labor Code violations that individuals other than the employee have suffered; and

I. Any claim that is expressly precluded from arbitration by a governing federal statute.

Nothing in this Policy shall prohibit an employee from filing a charge, complaint or claim, or participating in an investigation, with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Notwithstanding the foregoing, any charge, complaint or claim involving a Covered Claim that is not finally resolved by the administrative agency, and any appeal or proceeding that commences in an agency and later is appealed to or brought in state or federal court, shall be subject to arbitration under this Policy and submitted to arbitration.

If any Excluded Claim is combined with a Covered Claim, the employee and Bank of America agree to sever the Excluded Claim(s) from any case they bring and pursue the Excluded Claim(s) in a case separate from the Covered Claim(s), which will be arbitrated to the maximum extent permitted by the Federal Arbitration Act.

Bank of America—Arbitration Policy

from, or not subject to arbitration before, FINRA, then any arbitration of such Covered Claim shall be conducted in accordance with this Policy);

B. Claims pending in court as of the date Bank of America distributes this Policy to employees;

C. Claims that may not be subject to a pre-dispute arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (unless the employee elects to pursue such claims in arbitration pursuant to this Policy);

D. Applications or requests for temporary and/or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, with the merits of any Covered Claim to be heard in arbitration;

E. Claims for workers' compensation or unemployment compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation or unemployment compensation benefits;

F. Claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board;

G. For employees employed in California, claims for public injunctive relief under California law (*i.e.*, claims that benefit citizens as a whole, not just the employee or a group of employees), provided that a court of competent jurisdiction, not an arbitrator, will decide whether a claim is a claim for public injunctive relief;

H. Representative "non-individual" California Private Attorneys General Act ("PAGA") claims to the extent they cannot be waived under applicable law, brought by the employee for alleged California Labor Code violations that individuals other than the employee have suffered; and

I. Any claim that is expressly precluded from arbitration by a governing federal statute.

Nothing in this Policy shall prohibit an employee from filing a charge, complaint or claim, or participating in an investigation, with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Notwithstanding the foregoing, any charge, complaint or claim involving a Covered Claim that is not finally resolved by the administrative agency, and any appeal or proceeding that commences in an agency and later is appealed to or brought in state or federal court, shall be subject to arbitration under this Policy and submitted to arbitration.

If any Excluded Claim is combined with a Covered Claim, the employee and Bank of America agree to sever the Excluded Claim(s) from any case they bring and pursue the Excluded Claim(s) in a case separate from the Covered Claim(s), which will be arbitrated to the maximum extent permitted by the Federal Arbitration Act.

Bank of America—Arbitration Policy
**BANK/LUNA000319**

### III. Class, Collective, and Non-Individual Representative Action Waiver

A. Waiver of Class, Collective, and Non-Individual Representative Actions:

1. To the maximum extent permitted by applicable law, Covered Claims must be brought in arbitration in an individual capacity only for injuries or violations directly experienced by the party bringing the claim, and must be adjudicated on an individual basis, and may not be initiated or maintained on a class action, collective action, or non-individual representative action basis in court or arbitration. This means that neither employees nor Bank of America may serve or participate as a class or collective action member or representative or receive any recovery from a class or collective action involving Covered Claims in any proceeding. In addition, neither employees nor Bank of America may participate as a plaintiff or claimant in a class or collective action involving Covered Claims against the employee or Bank of America, and agree to take all steps necessary to opt-out of, or refrain from opting into, any class or collective action involving a Covered Claim.

2. The arbitrator shall not have the authority to: (i) consolidate or join claims by different persons into one proceeding; (ii) determine whether the Covered Claim should proceed to final adjudication as a class, collective or non-individual representative action; (iii) allow any Covered Claim to proceed in arbitration as a class, collective or non-individual representative action; and/or (iv) award relief on a class, collective or non-individual representative basis with respect to any Covered Claim.

B. California Private Attorneys General Act ("PAGA") Individual Action Requirement. Employees employed in California and Bank of America further agree to arbitrate any PAGA claim by an employee to recover any unpaid wages, civil penalties as to the employee's individual claim, or other individual relief. The arbitrator is without authority to preside over any non-individual PAGA claim (*i.e.*, any PAGA claim by a party to the arbitration for penalties associated with violations and/or injuries that the employee did not directly experience themselves). This PAGA Individual Action Requirement clause, or any portion thereof, will be severable from this Policy if there is a final judicial determination that it is invalid, unenforceable, unconscionable, void or voidable. In such case, the PAGA action must be litigated in a civil court of competent jurisdiction but the portion of this PAGA Individual Action Requirement that is enforceable shall be enforced in arbitration.

C. Court to Decide Enforceability of the Waiver: A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement set forth above.

D. Right to Challenge Validity of this Policy: The employee has the right to challenge this Policy on any grounds that may exist in law and equity, and Bank of America shall not discipline, discharge, or engage in any retaliatory actions against the employee in the event the employee chooses to do so. Bank of America, however,

Bank of America—Arbitration Policy

### III. Class, Collective, and Non-Individual Representative Action Waiver

A. Waiver of Class, Collective, and Non-Individual Representative Actions:

1. To the maximum extent permitted by applicable law, Covered Claims must be brought in arbitration in an individual capacity only for injuries or violations directly experienced by the party bringing the claim, and must be adjudicated on an individual basis, and may not be initiated or maintained on a class action, collective action, or non-individual representative action basis in court or arbitration. This means that neither employees nor Bank of America may serve or participate as a class or collective action member or representative or receive any recovery from a class or collective action involving Covered Claims in any proceeding. In addition, neither employees nor Bank of America may participate as a plaintiff or claimant in a class or collective action involving Covered Claims against the employee or Bank of America, and agree to take all steps necessary to opt-out of, or refrain from opting into, any class or collective action involving a Covered Claim.

2. The arbitrator shall not have the authority to: (i) consolidate or join claims by different persons into one proceeding; (ii) determine whether the Covered Claim should proceed to final adjudication as a class, collective or non-individual representative action; (iii) allow any Covered Claim to proceed in arbitration as a class, collective or non-individual representative action; and/or (iv) award relief on a class, collective or non-individual representative basis with respect to any Covered Claim.

B. California Private Attorneys General Act ("PAGA") Individual Action Requirement. Employees employed in California and Bank of America further agree to arbitrate any PAGA claim by an employee to recover any unpaid wages, civil penalties as to the employee's individual claim, or other individual relief. The arbitrator is without authority to preside over any non-individual PAGA claim (*i.e.*, any PAGA claim by a party to the arbitration for penalties associated with violations and/or injuries that the employee did not directly experience themselves). This PAGA Individual Action Requirement clause, or any portion thereof, will be severable from this Policy if there is a final judicial determination that it is invalid, unenforceable, unconscionable, void or voidable. In such case, the PAGA action must be litigated in a civil court of competent jurisdiction but the portion of this PAGA Individual Action Requirement that is enforceable shall be enforced in arbitration.

C. Court to Decide Enforceability of the Waiver: A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement set forth above.

D. Right to Challenge Validity of this Policy: The employee has the right to challenge this Policy on any grounds that may exist in law and equity, and Bank of America shall not discipline, discharge, or engage in any retaliatory actions against the employee in the event the employee chooses to do so. Bank of America, however,

Bank of America—Arbitration Policy
**BANK/LUNA000320**

reserves the right to enforce the terms and conditions of this Policy. If, for any reason, the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement are held unenforceable or invalid in whole or in part, then a court of competent jurisdiction, not an arbitrator, will decide the claim as to which the waiver or requirement was held unenforceable or invalid and all other Covered Claims will remain subject to arbitration.

IV.   **Forum and Rules**

Except for arbitrations before FINRA, the following rules will apply to any arbitration under this Policy:

    A.   Except as modified in this Policy, any Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules") in effect at the time of the arbitration or any successor rules. The JAMS Rules are available at www.jamsadr.com. If there is any conflict between the JAMS Rules and this Policy, the Policy shall govern.

    B.   Any proceeding under this Policy must be brought within the time period provided for within the statute(s) of limitations applicable to the Covered Claims asserted.

    C.   Unless otherwise agreed by the parties, the arbitration shall be held in the county of the employee's current or last principal place of employment with Bank of America or, if not practicable, in the county closest to the employee's current or last principal place of employment with Bank of America where the arbitration can be held. If the employee's current or last principal place of employment with Bank of America is outside of the United States, the arbitration shall be held in New York, New York.

    D.   Unless otherwise agreed by the parties, the arbitration will be submitted to a single arbitrator selected in accordance with the JAMS Rules.

    E.   Except as expressly precluded by federal law, any issue concerning arbitrability of a particular issue or claim pursuant to this Policy (except for issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement) must be resolved by the arbitrator, not the court.

    F.   Any party shall have the right to file, and the arbitrator must promptly hear and decide, any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to, motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine or any other dispositive motion. The arbitrator shall issue an appropriate protective order prior to the production of any relevant and discoverable confidential information or other non-publicly available documents or information requiring that such materials be treated as confidential at all times during and after the arbitration.

reserves the right to enforce the terms and conditions of this Policy. If, for any reason, the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement are held unenforceable or invalid in whole or in part, then a court of competent jurisdiction, not an arbitrator, will decide the claim as to which the waiver or requirement was held unenforceable or invalid and all other Covered Claims will remain subject to arbitration.

IV.   **Forum and Rules**

Except for arbitrations before FINRA, the following rules will apply to any arbitration under this Policy:

A.   Except as modified in this Policy, any Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules") in effect at the time of the arbitration or any successor rules. The JAMS Rules are available at www.jamsadr.com. If there is any conflict between the JAMS Rules and this Policy, the Policy shall govern.

B.   Any proceeding under this Policy must be brought within the time period provided for within the statute(s) of limitations applicable to the Covered Claims asserted.

C.   Unless otherwise agreed by the parties, the arbitration shall be held in the county of the employee's current or last principal place of employment with Bank of America or, if not practicable, in the county closest to the employee's current or last principal place of employment with Bank of America where the arbitration can be held. If the employee's current or last principal place of employment with Bank of America is outside of the United States, the arbitration shall be held in New York, New York.

D.   Unless otherwise agreed by the parties, the arbitration will be submitted to a single arbitrator selected in accordance with the JAMS Rules.

E.   Except as expressly precluded by federal law, any issue concerning arbitrability of a particular issue or claim pursuant to this Policy (except for issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement) must be resolved by the arbitrator, not the court.

F.   Any party shall have the right to file, and the arbitrator must promptly hear and decide, any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to, motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine or any other dispositive motion. The arbitrator shall issue an appropriate protective order prior to the production of any relevant and discoverable confidential information or other non-publicly available documents or information requiring that such materials be treated as confidential at all times during and after the arbitration.

Bank of America—Arbitration Policy
**BANK/LUNA000321**

G. The arbitrator shall follow and apply the substantive law, and be subject to the same rules of evidence and burdens of proof, that would have governed the Covered Claim(s) had it been heard in court. The arbitrator shall not enlarge, add to, subtract from, disregard, or otherwise alter the parties' rights under the applicable law. In reaching a decision, the arbitrator shall be bound by the law and shall have no power to vary from said law.

H. The arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the Federal Arbitration Act. The arbitrator shall be authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction. The arbitrator shall have no authority to make awards beyond that remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if permitted by the applicable statute, law or contract. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either the employee or Bank of America. The arbitrator shall not have authority to consider any claim that has not been administratively exhausted as required by statute, that is barred by an applicable statute of limitations, or that is otherwise raised in an untimely fashion as provided by applicable law.

I. The employee shall be responsible for any filing fee required to initiate arbitration on the employee's behalf or to assert any counterclaims up to the amount of the filing fee, if any, the employee would have incurred had the employee filed such claims in court, and Bank of America shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum. The fees and expenses for any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law. Except as otherwise provided by law, all attorneys' fees shall be paid by the party that incurs them.

J. No arbitration award or decision shall have preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the original arbitration and the issue and/or claims were actually litigated and decided by the arbitrator.

V. **Confidentiality of Proceedings**

To the maximum extent permitted by law, the employee and Bank of America shall maintain the confidential nature of any arbitration proceeding and the award except as may be necessary in connection with a judicial action to vacate or enforce an award, or unless otherwise required or protected by law or allowed by prior written consent of both parties. This provision shall not prevent either the employee or Bank of America from communicating with witnesses to the extent necessary to assist in arbitrating the proceeding, nor shall this provision prohibit the employee from: (a) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful; (b) engaging in protected concerted activity under the National Labor Relations Act (such as discussions of wages, hours, or other terms and conditions of employment); or (c) initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, in

Bank of America—Arbitration Policy

G. The arbitrator shall follow and apply the substantive law, and be subject to the same rules of evidence and burdens of proof, that would have governed the Covered Claim(s) had it been heard in court. The arbitrator shall not enlarge, add to, subtract from, disregard, or otherwise alter the parties' rights under the applicable law. In reaching a decision, the arbitrator shall be bound by the law and shall have no power to vary from said law.

H. The arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the Federal Arbitration Act. The arbitrator shall be authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction. The arbitrator shall have no authority to make awards beyond that remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if permitted by the applicable statute, law or contract. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either the employee or Bank of America. The arbitrator shall not have authority to consider any claim that has not been administratively exhausted as required by statute, that is barred by an applicable statute of limitations, or that is otherwise raised in an untimely fashion as provided by applicable law.

I. The employee shall be responsible for any filing fee required to initiate arbitration on the employee's behalf or to assert any counterclaims up to the amount of the filing fee, if any, the employee would have incurred had the employee filed such claims in court, and Bank of America shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum. The fees and expenses for any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law. Except as otherwise provided by law, all attorneys' fees shall be paid by the party that incurs them.

J. No arbitration award or decision shall have preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the original arbitration and the issue and/or claims were actually litigated and decided by the arbitrator.

V. **Confidentiality of Proceedings**

To the maximum extent permitted by law, the employee and Bank of America shall maintain the confidential nature of any arbitration proceeding and the award except as may be necessary in connection with a judicial action to vacate or enforce an award, or unless otherwise required or protected by law or allowed by prior written consent of both parties. This provision shall not prevent either the employee or Bank of America from communicating with witnesses to the extent necessary to assist in arbitrating the proceeding, nor shall this provision prohibit the employee from: (a) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful; (b) engaging in protected concerted activity under the National Labor Relations Act (such as discussions of wages, hours, or other terms and conditions of employment); or (c) initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, in

Bank of America—Arbitration Policy
**BANK/LUNA000322**

connection with any reporting of, investigation into, or proceeding regarding suspected violations of law (and the employee shall not be required to advise or seek permission from the Company before engaging in any such activity).

VI.     **Severability**

If any part or provision of this Policy is found to be void, voidable, or otherwise unenforceable, that part or provision shall be severed and such a finding will not affect the validity of the remainder of this Policy, and all other parts and provisions will remain in full force and effect.  If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable, or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

VII.    **Governing Law**

The enforceability of this Policy shall be governed by and interpreted in accordance with the Federal Arbitration Act.

VIII.   **Modifications**

Bank of America reserves the right, in its sole discretion, to modify the terms of this Policy prospectively at any time by providing thirty (30) calendar days advance notice to employees.  Such modifications shall be effective thirty (30) calendar days after the notice is provided to employees.  To the maximum extent permitted by law, Employees' continuation of employment for thirty (30) calendar days after such notice is provided shall be deemed acceptance of the revised terms.

IX.     **At-Will Employment**

Neither the terms nor conditions described in this Policy are intended to create a contract of employment for a specific duration of time.  Employment with Bank of America is voluntarily entered into, and employees are free to end their employment at any time, with or without notice or cause, subject to any agreement between the employee and Bank of America.  Similarly, Bank of America may terminate the employment relationship at any time for any reason, with or without prior notice or cause, subject to any agreement between the employee and Bank of America.

X.      **Policy Survives Termination of Employment**

This Policy will survive the termination of an employee's employment with Bank of America.  This Policy shall control over any prior agreement between any employee and Bank of America regarding the subject matter of dispute resolution of Covered Claims.  Notwithstanding the foregoing, in the event this Policy is found to be void, voidable, or otherwise unenforceable in full, or a Covered Claim is found not to be subject to this Policy, any prior agreement between an employee and Bank of America regarding the subject matter of dispute resolution shall remain in full force and effect.

BANK OF AMERICA

Marie Terezakis
Head of Employee Relations and GHR Conduct

Please note that for purposes of Section II.B., Bank of America distributed the Arbitration Policy to employees at 10 a.m. Eastern on November 8, 2024.

Bank of America—Arbitration Policy

connection with any reporting of, investigation into, or proceeding regarding suspected violations of law (and the employee shall not be required to advise or seek permission from the Company before engaging in any such activity).

VI.     **Severability**

If any part or provision of this Policy is found to be void, voidable, or otherwise unenforceable, that part or provision shall be severed and such a finding will not affect the validity of the remainder of this Policy, and all other parts and provisions will remain in full force and effect.  If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable, or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

VII.    **Governing Law**

The enforceability of this Policy shall be governed by and interpreted in accordance with the Federal Arbitration Act.

VIII.   **Modifications**

Bank of America reserves the right, in its sole discretion, to modify the terms of this Policy prospectively at any time by providing thirty (30) calendar days advance notice to employees.  Such modifications shall be effective thirty (30) calendar days after the notice is provided to employees.  To the maximum extent permitted by law, Employees' continuation of employment for thirty (30) calendar days after such notice is provided shall be deemed acceptance of the revised terms.

IX.     **At-Will Employment**

Neither the terms nor conditions described in this Policy are intended to create a contract of employment for a specific duration of time.  Employment with Bank of America is voluntarily entered into, and employees are free to end their employment at any time, with or without notice or cause, subject to any agreement between the employee and Bank of America.  Similarly, Bank of America may terminate the employment relationship at any time for any reason, with or without prior notice or cause, subject to any agreement between the employee and Bank of America.

X.      **Policy Survives Termination of Employment**

This Policy will survive the termination of an employee's employment with Bank of America.  This Policy shall control over any prior agreement between any employee and Bank of America regarding the subject matter of dispute resolution of Covered Claims.  Notwithstanding the foregoing, in the event this Policy is found to be void, voidable, or otherwise unenforceable in full, or a Covered Claim is found not to be subject to this Policy, any prior agreement between an employee and Bank of America regarding the subject matter of dispute resolution shall remain in full force and effect.

BANK OF AMERICA

Marie Terezakis
Head of Employee Relations and GHR Conduct

Please note that for purposes of Section II.B., Bank of America distributed the Arbitration Policy to employees at 10 a.m. Eastern on November 8, 2024.

Bank of America—Arbitration Policy
**BANK/LUNA000323**

EXHIBIT 15

| Course | Type | Credits | | Status | Date | | | Credits | ID | |
|---|---|---|---|---|---|---|---|---|---|---|
| Compliance Risk Management (CRM) Program for Front Line Units and Control Functions | Online Class | 0.25 | 0.25 | Completed | 4/12/2016 | Select | | 0.25 | WBT-0051032 | No |
| Life Priorities Seasons: Spring is about home | Document | 0.25 | 0.25 | Completed | 4/16/2016 | Select | | 0.25 | SELF-0062817 | No |
| FCM list Shadow Acknowledgement | Online Class | 0.5 | 0.5 | Completed | 4/11/2016 | Select | | 0.5 | SELF-0062190 | No |

*(Remainder of table illegible in source image.)*

| | | 871.30 | 731.5 | | | | | 1 | | |

# EXHIBIT 16

MORGAN, LEWIS & BOCKIUS LLP
Karen Y. Cho, Bar No. 274810
karen.cho@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:    +1.213.612.2500
Fax:    +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Nicole L. Antonopoulos, Bar No. 306882
nicole.antonopoulos@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304-1124
Tel:    +1.650.843.4000
Fax:    +1.650.843.4001

Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF AMERICA
CORPORATION, TRICIA SHANKS, and PETER C.
MAXIM

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE

| | |
|---|---|
| LUNA D'SOL,<br><br>                Plaintiff,<br><br>        vs.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; TRICIA SHANKS, an individual; and PETER C. MAXIM, an individual;  and DOES 1 through 50, inclusive,<br><br>              Defendants. | Case No. CVPS2601396<br><br>[Case Assigned for All Purposes to Hon. Manuel Bustamante]<br><br>**DEFENDANT PETER C. MAXIM'S ANSWER TO PLAINTIFF'S COMPLAINT**<br><br>Date Action Filed: March 4, 2026 |

DEFENDANT PETER C. MAXIM'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant Peter C. Maxim ("Defendant"), by and through his undersigned counsel, hereby submits this Answer to Plaintiff Luna D'Sol's ("Plaintiff") Complaint pursuant to Code of Civil Procedure Section 431.30, by denying generally each and every allegation contained therein and by asserting the following affirmative defenses:

## GENERAL DENIAL

Pursuant to Section 431.30(d) of the California Code of Civil Procedure, Defendant denies, generally and specifically, each allegation in Plaintiff's Complaint. Defendant further generally and specifically denies that Plaintiff has been damaged in the sums alleged, or any other sum, or at all, because of any act or omissions to act on the part of Defendant or any of his agents, servants, employees, or representatives. Defendant further denies, generally and specifically, that Plaintiff is entitled to general, compensatory, punitive, or other damages, in any amount because of any act or omission to act on the part of Defendant or on the part of his agents, servants, employees, or representatives.

## ADDITIONAL DEFENSES

Defendant has not completed his investigation of the facts of this case, has not completed discovery, and has not completed his preparation for trial. Defendant asserts the following additional defenses based on his current knowledge, information, and belief. Without conceding that he bears the burden of proof or persuasion as to any one of them, Defendant asserts the following additional defenses to the allegations set forth in the Complaint:

## FIRST ADDITIONAL DEFENSE
### (Failure to State a Cause of Action)

1.    As a separate defense, Defendant alleges that the Complaint fails to state facts sufficient to constitute a cause of action upon which relief can be granted against Defendant.

## SECOND ADDITIONAL DEFENSE
### (Statute of Limitations)

2.    As a separate defense, Defendant alleges that Plaintiff's claims are barred in whole or in part to the extent that Plaintiff alleges conduct that occurred prior to the applicable statute(s) of limitations, including but not limited to, Government Code section 12960.

## THIRD ADDITIONAL DEFENSE

### (Failure to Exhaust Administrative Remedies)

3.    As a separate defense, Defendant alleges that Plaintiff's claims are barred, in whole or in part, because Plaintiff failed to timely, adequately, and/or fully to exhaust her administrative remedies with the Equal Employment Opportunity Commission ("EEOC") and/or the Civil Rights Department ("CRD") (formerly the Department of Fair Employment and Housing) and pursuant to any other statute or regulation that requires exhaustion of administrative remedies.

## FOURTH ADDITIONAL DEFENSE

### (Exceeds Scope of Administrative Charge)

4.    As a separate defense, Defendant alleges that Plaintiff's claims brought under the Fair Employment and Housing Act ("FEHA") are barred to the extent that Plaintiff's allegations exceed the scope of any charges or complaints of discrimination, harassment, or retaliation Plaintiff filed with the EEOC and/or the CRD.

## FIFTH ADDITIONAL DEFENSE

### (After-Acquired Evidence)

5.    As a separate defense, Defendant alleges that to the extent that Defendant acquires after Plaintiff's employment (including during the course of this litigation) any evidence of wrongdoing by Plaintiff, which wrongdoing would have materially affected the terms and conditions of Plaintiff's employment or would have resulted in Plaintiff either being demoted, disciplined, or terminated, such after-acquired evidence shall bar and/or limit the amount of damages Plaintiff can recover on her claims, assuming *arguendo*, Plaintiff is able to establish liability.

## SIXTH ADDITIONAL DEFENSE

### (Workers' Compensation Exclusivity)

6.    As a separate defense, Defendant alleges that Plaintiff is barred from seeking any damages for purported physical, mental or emotional injuries allegedly suffered as a result of her

employment in that the sole and exclusive remedy in this respect is and was governed by the California Workers' Compensation Act, and the California Labor Code §§ 3200 *et seq*.

## SEVENTH ADDITIONAL DEFENSE

### (Pre-Existing Conditions)

7.    As a separate defense, Defendant alleges that to the extent Plaintiff purportedly has suffered any emotional pain, suffering, inconvenience, mental pain, loss of enjoyment of life, or any other non-pecuniary losses, which Defendant denies, Defendant is not responsible to the extent that some or all of such injuries are due to personal circumstances existing in Plaintiff's life during the relevant time or to pre-existing conditions.

## EIGHTH ADDITIONAL DEFENSE

### (Mitigation)

8.    As a separate defense, Defendant alleges that Plaintiff failed to fully, diligently, and adequately mitigate her alleged damages, if any.

## NINTH ADDITIONAL DEFENSE

### (Estoppel)

9.    As a separate defense, Defendant alleges that Plaintiff's claims are barred in whole or in part by the doctrine of estoppel.

## TENTH ADDITIONAL DEFENSE

### (Release and Waiver)

10.    As a separate defense, Defendant alleges that Plaintiff's claims are barred in whole or in part to the extent that they have been released and/or waived.

## ELEVENTH ADDITIONAL DEFENSE

### (Offset/Set-Off)

11.    As a separate defense, Defendant alleges that any recovery on Plaintiff's Complaint, or any purported cause of action alleged therein, are subject to the doctrines of offset, set-off, and/or recoupment.

**TWELFTH ADDITIONAL DEFENSE**

**(One Satisfaction)**

12.    As a separate defense, Defendant alleges that Plaintiff cannot properly recover damages under multiple or different theories or causes of action for the same or similar alleged acts.

**THIRTEENTH ADDITIONAL DEFENSE**

**(Comparative Fault And/Or Negligence)**

13.    As a separate defense, Defendant alleges that any recovery to which Plaintiff might be entitled must be reduced by reason of Plaintiff's own fault and/or negligence.

**FOURTEENTH ADDITIONAL DEFENSE**

**(Avoidable Consequences)**

14.    As a separate defense, Defendant alleges that Plaintiff unreasonably failed to take advantage on a timely basis of any preventative or corrective safeguards, procedures or measures provided by Defendant and/or Bank of America, N.A. (the "Bank") that would have remedied any alleged unlawful conduct, and that Plaintiff unreasonably failed otherwise to avoid harm. Defendant exercised reasonable care to prevent and correct promptly any alleged harassing behavior.  Plaintiff's failure to report the alleged harassment and/or discrimination was unreasonable under the circumstances and, more likely than not, using the Bank's internal remedies and procedures would have prevented some, if not all, of Plaintiff's claimed damages from occurring. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998); *Faragher v. Boca Raton*, 524 U.S. 775 (1998).

**FIFTEENTH ADDITIONAL DEFENSE**

**(Equitable Indemnity/Proportional Fault)**

15.    As a separate defense, Plaintiff's alleged injuries are the result, in whole or in part, of the acts or omissions of entities or individuals other than Defendant, including Plaintiff, and Defendant's liability, if any, must be reduced by any percentage of fault attributable to those other entities and/or individuals.

## SIXTEENTH ADDITIONAL DEFENSE

### (Punitive Damages Unavailable)

16.    As a separate defense, Defendant alleges that Plaintiff's Complaint fails to state facts sufficient to support any claim for punitive damages, and Defendant's good faith actions bar serve as a complete bar to any claim for punitive damages.

## SEVENTEENTH ADDITIONAL DEFENSE

### (Unconstitutional Punitive Damages)

17.    As a separate defense, Defendant alleges that an award of punitive damages would be an unconstitutional denial of Defendant's right to due process and/or equal protection under the Fifth and Fourteenth Amendments to the United States Constitution and Articles I and IV of the California Constitution.

## EIGHTEENTH ADDITIONAL DEFENSE

### (Excessive Fine)

18.    As a separate defense, Defendant alleges that an award of penalties or punitive damages under the circumstances of this case would constitute an excessive fine and otherwise would be in violation of Defendant's due process and other rights under the United States and California Constitutions.

## NINETEENTH ADDITIONAL DEFENSE

### (Alternative Stressors)

19.    As a separate defense, Plaintiff's claims for emotional distress damages are barred in whole or in part because other stressors, unrelated to her claims in this lawsuit, caused all or some of her emotional distress, if any.

## TWENTIETH ADDITIONAL DEFENSE

### (Same Decision/Mixed Motive)

20.    As a separate defense, to the extent Defendant made any decision(s), Defendant would have made the same decisions anyway, for legitimate, independent reasons.

## TWENTY-FIRST ADDITIONAL DEFENSE

### (Reasonable Care and Prompt Remedial Action)

- 5 -

21.     As a separate defense, Defendant alleges that Plaintiff's claims are barred, in whole or in part, because Defendant exercised reasonable care and prompt and appropriate remedial action was taken by Defendant on all behaviors allegedly reported or complained of by Plaintiff, if any.

## TWENTY-SECOND ADDITIONAL DEFENSE

### (Privilege/Justification)

22.     As a separate defense, Defendant alleges that Defendant's conduct, if any, was a just and proper exercise of managerial discretion, undertaken for fair and honest reasons, comporting with good faith under the circumstances, then existing, and was privileged and justified.

## TWENTY-THIRD ADDITIONAL DEFENSE

### (Business Judgment)

23.     As a separate defense, Plaintiff's Complaint, and each cause of action, is barred because the alleged conduct of which Plaintiff complains, if committed, was made in good faith, honestly, not maliciously, and in the exercise of business judgment and for legitimate, non-discriminatory, lawful reasons that were not based on any improper or illegal consideration.

## TWENTY-FOURTH ADDITIONAL DEFENSE

### (Legitimate, Non-Discriminatory Reason)

24.     As a separate defense, Defendant alleges that Plaintiff's claims are barred in whole or in part because Defendant acted based on legitimate, non-discriminatory and non-retaliatory reasons and/or business necessity.

## TWENTY-FIFTH ADDITIONAL DEFENSE

### (Arbitration Agreement)

25.     As a separate defense, Defendant alleges that Plaintiff's claims are barred in whole or in part because she is subject to mandatory, final and binding arbitration pursuant to an arbitration agreement.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

## TWENTY-SIXTH ADDITIONAL DEFENSE

### (Consent)

26. As a separate defense, Defendant alleges that Plaintiff's claims are barred in whole or in part because of Plaintiff's consent and/or voluntary participation in all or some of the acts alleged, or conduct similar thereto.

## TWENTY-SEVENTH ADDITIONAL DEFENSE

### (Misjoinder of Parties/Not the Employer)

27. Insofar as Plaintiff's claims against Defendant are based on an alleged employment relationship with Defendant, they are barred in whole or in part because no such relationship existed.

## TWENTY-EIGHTH ADDITIONAL DEFENSE

### (Undue Hardship)

28. As a separate defense, Defendant alleges that to the extent Plaintiff sought and/or was otherwise eligible for an accommodation, the accommodation would be an undue hardship.

## TWENTY-NINTH ADDITIONAL DEFENSE

### (Additional Defenses)

29. Defendant presently has insufficient knowledge and/or information on which to form a belief as to whether he may have additional, as yet unstated, defenses available. Defendant reserves the right to assert additional defenses if discovery indicates that such defenses would be appropriate.

WHEREFORE, Defendant prays for judgment against Plaintiff as follows:

1. That Plaintiff takes nothing by this action;

2. That judgment be entered in favor of Defendant and against Plaintiff on all causes of action;

3. That Defendant be awarded his costs of suit incurred herein;

4. That Defendant be awarded his attorneys' fees incurred herein; and

5. That the Court award Defendant such other and further relief as the Court may deem just and proper.

Dated: June 3, 2026

MORGAN, LEWIS & BOCKIUS LLP


By  /s/ Nicole L. Antonopoulos
    Karen Y. Cho
    Nicole L. Antonopoulos
    Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF
AMERICA CORPORATION, TRICIA
SHANKS, and PETER C. MAXIM

## PROOF OF SERVICE

I, Suga A. Ikeda, declare:

I am a citizen of the United States and employed in Santa Clara County, California. I am over the age of eighteen years and not a party to the within entitled action. My business address is 1400 Page Mill Road, Palo Alto, CA 94304. On June 3, 2026, I served a copy of the within document(s):

**DEFENDANT PETER C. MAXIM'S ANSWER TO PLAINTIFF'S COMPLAINT**

☒  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, the United States mail at Palo Alto, California addressed as set forth below.

☐  by placing the document(s) listed above in a sealed envelope and affixing a pre-paid air bill, and causing the envelope to be delivered to a agent for delivery.

☐  by personally delivering the document(s) listed above to the person(s) at the address(es) set forth below.

☒  by transmitting via e-mail or electronic transmission the document(s) listed above to the person(s) at the e-mail address(es) set forth below.

Luna D'Sol                                          *In Pro Per*
2275 E. Belding Dr.
Palm Springs, CA 92262
Tel: (213) 925-4069
Email: jravada@icloud.com

I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

Executed on June 3, 2026, at Palo Alto, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____
Suga A. Ikeda

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
LOS ANGELES

-1-
PROOF OF SERVICE

**Luna D'Sol**

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF RIVERSIDE**

| | |
|---|---|
| LUNA D'SOL | ) |
| | ) |
|                                         Plaintiff, | ) Case No:  CVPS2601396 |
| | ) |
|                          v. | ) |
| BANK OF AMERICA, N.A.; | ) |
| BANK OF AMERICA CORPORATION; | ) **PROOF OF SERVICE** |
| TRICIA SHANKS; | ) |
| PETER C. MAXIM; and | ) |
| DOES 1-50, inclusive, | ) |
| | ) |
|                                         Defendants. | ) |
| | ) |
| | ) |

I, Justin Mentzar, declare:

1.      I am over the age of eighteen and not a party to this action. I am a resident of the State of California.

2.      On June 8th , 2026, I caused true and correct copies of the following documents to be served:

**Notice of Motion and Motion for Sanctions Pursuant to CCP § 128.7; Memorandum of Points and Authorities in Support for Sanctions Pursuant to CCP § 128.7; Declaration of Luna D'Sol in support for Sanctions Pursuant to CCP § 128.7**

3.    I caused the above-listed documents to be served by depositing true copies thereof enclosed in sealed envelopes, with postage fully prepaid, via United States Postal Service Certified Mail, addressed to the persons listed below.

4.    The names, addresses, and party representations of the persons served are as follows:

> Nicole L. Antonopoulos
> Morgan, Lewis & Bockius LLP
> 1400 Page Mill Road
> Palo Alto, CA 94304-1124
> Telephone: +1.650.843.7236
> Facsimile: +1.650.843.4001
> Email: nicole.antonopoulos@morganlewis.com

Attorney for Defendants Bank of America, N.A.; Bank of America Corporation; Tricia Shanks; and Peter C. Maxim

5.    On June 8, 2026, I caused this declaration, together with the Notice of Motion and Motion and the Memorandum of Points and Authorities, to be served on Defendants' counsel Nicole L. Antonopoulos of Morgan, Lewis & Bockius LLP by and electronic mail via OneLegal to:

> nicole.antonopoulos@morganlewis.com
>
> suga.ikeda@morganlewis.com
>
> karen.cho@morganlewis.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on June 8th, 2026, at Palm Springs, California.

Justin Mentzr, Declarant

EXHIBIT 21

**From:** noreply@onelegal.com
**Subject:** eFiling accepted for DSOL vs BANK OF AMERICA N.A.
**Date:** June 26, 2026 at 09:31
**To:** jravada@icloud.com



# eFiling Accepted by Court Clerk

| | |
|---|---|
| **Order #** | 28429817 |
| **Submitted** | 06/08/2026 11:35 PT by Luna D'Sol |
| **Case** | DSOL vs BANK OF AMERICA N.A. #CVPS2601396 |
| **Court** | Superior Court of California, Riverside County (Riverside) |
| **Client billing** | CVPS2601396 |
| **Court transaction #** | 26RSCR01569606 |

**Accepted Documents**

- Proof of Service

View court-returned documents

Thank you,
The One Legal Team

You are receiving this email in response to an order that was placed on www.onelegal.com
Please do not reply to this email. Get help on our Support Center or by contacting Customer Support.
InfoTrack US, Inc. 1400 North McDowell Blvd., Suite 300, Petaluma, CA 94954



EXHIBIT 22

**From:** service@paypal.com
**Subject:** You paid to Data Triage Technologies for invoice 23-197
**Date:** June 26, 2026 at 18:25
**To:** jravada@icloud.com

Hello, Luna DSol



# You just sent a $2,062.00 USD payment

## View your invoice

| **Transaction ID** | **Transaction date** |
|---|---|
| 96B82535A2581252H | June 26, 2026 |
| Invoice number | 23-197 |

## Payment from

Luna DSol
jravada@icloud.com

## Payment to

Data Triage Technologies
kcohen@datatriage.com

## Shipping address

Luna DSol
2275 E Belding Dr
Palm Springs, CA 92262

Palm Springs, CA 92262
United States

---

1 X Retainer for investigation and writing declaration.
$2,062.00 USD

$2,062.00 USD

| | |
|---|---|
| Subtotal | $2,062.00 USD |
| Discount | $0.00 USD |
| Shipping | $0.00 USD |
| Tip amount | $0.00 USD |
| Invoice Total | $2,062.00 USD |
| Amount paid | -$2,062.00 USD |
| Amount due | $0.00 USD |

## Payment summary

**Total amount of this transaction**

$2,062.00 USD

## Payment method

DISCOVER x-2494                                    **$2,062.00 USD**

This transaction will appear on your statement as PAYPAL *DATATRIAGE



Help & Contact  |  Security  |  Apps

   

PayPal is committed to preventing fraudulent emails. Emails from PayPal will always contain your full name. **Learn to identify phishing**

Please don't reply to this email. To get in touch with us, click **Help & Contact**.

PayPal Customer Service can be reached at 888-221-1161.

Not sure why you received this email? **Learn more**

Copyright © 1999-2026 PayPal, Inc. All rights reserved. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal RT000426:en_US(en-US):1.4.0:00000000000000003dc5feac4ccb02d0

EXHIBIT 23

**From:** service@paypal.com
**Subject:** You paid to Data Triage Technologies for invoice 23-198
**Date:** July 2, 2026 at 11:53
**To:** jravada@icloud.com

Hello, Luna DSol



# You just sent a $413.00 USD payment

## View your invoice

**Transaction ID**
0RY28439NT738240K

**Transaction date**
July 2, 2026

Invoice number

23-198

## Payment from

Luna DSol
jravada@icloud.com

## Payment to

Data Triage Technologies
kcohen@datatriage.com

## Shipping address

Luna DSol
2275 E Belding Dr
Palm Springs, CA 92262

Palm Springs, CA 92262
United States

1 X 1 hour to finish declaration
$400.00 USD

**$400.00 USD**

| | |
|---|---|
| Subtotal | $400.00 USD |
| Discount | $0.00 USD |
| Shipping | $0.00 USD |
| Transact Fee | $13.00 USD |
| Tip amount | $0.00 USD |
| Invoice Total | $413.00 USD |
| Amount paid | -$413.00 USD |
| Amount due | $0.00 USD |

## Payment summary

**Total amount of this transaction**

**$413.00 USD**

## Payment method

DISCOVER x-2494

**$413.00 USD**

This transaction will appear on your statement as PAYPAL *DATATRIAGE

   

PayPal is committed to preventing fraudulent emails. Emails from PayPal will always contain your full name. **Learn to identify phishing**

Please don't reply to this email. To get in touch with us, click **Help & Contact**.

PayPal Customer Service can be reached at 888-221-1161.

Not sure why you received this email? **Learn more**

Copyright © 1999-2026 PayPal, Inc. All rights reserved. PayPal is located at 2211 N. First St., San Jose, CA 95131.

PayPal RT000426:en_US(en-US):1.4.0:00000000000000003ceb42126e74572c

# EXHIBIT 24

**Letter by Jason Halperin, MD on 1/27/2026**



DAP Health

January 27, 2026

Patient: **Luna**
Date of Birth: **11/20/1984**
Date of Visit: **1/27/2026**

To Whom It May Concern:

It is my medical opinion that Luna (Julio Ravada) is having a mental health crises and requires urgent psychiatric attention. Please determine follow up with psychiatry.

If you have any questions or concerns, please don't hesitate to call.

Sincerely,

HALPERIN, JASON, MD

CC: No Recipients

**Communication Routing Information**

| Recipient | Relationship | Method | Details |
|---|---|---|---|
| Luna | Patient | Print Locally | |

EXHBIT 25

**FORENSIC METADATA ANALYSIS REPORT**

**Document Title:** 2025-07-28 – Bank of America Arbitration Agreement – Constructive Fraud.pdf

### 1. File Information

- **File Name:** 2025-07-28 - Bank of America Arbitration Agreement - Constructive Fraud.pdf

- **File Size:** 314.97 KB

- **File Created (System Timestamp):** 2025-08-10 21:41:31 (local system time)

- **File Modified (System Timestamp):** 2025-08-10 21:41:31 (local system time)

### 2. Embedded PDF Metadata

- **Creation Date (Embedded):** 2025-02-27 13:09:54 UTC

- **Modification Date (Embedded):** 2025-07-28 19:04:13 (UTC-04:00)

- **Creator Application:** PDFium

- **Producer:** PDFium

### 3. Embedded Smart Document (iManage) Data

The document contains embedded iManage Smart Document properties under the `/IMAN_SMARTDOC` field:

- **Document ID:** `IMAN_PRI_US_PRD!4521187.1`

- **Sender ID:** `ZKV93ZW`

- **Sender Email:** `STEPHEN.BIRD@BOFA.COM`

- **Last Modified (iManage):** 2025-07-28T23:04:13.6391345Z

- **Database Source:** `IMAN_PRI_US_PRD`

### 4. Forensic Timeline and Interpretation

Analysis of metadata and iManage data indicates the following sequence:

1. **PDF Instance Creation – Feb 27, 2025**

   ◦ This timestamp marks the generation of the *current* PDF file from within Bank of America's iManage document management system.

   ◦ The original content may predate this timestamp (e.g., sourced from Word, SharePoint, or prior iManage versions), but this is when it was first saved/exported as a PDF in its present file structure.

2. **Unlock/Check-Out for Editing – Before July 28, 2025**

- iManage metadata shows a later modification event, meaning the file left its "locked" PDF state internally, was altered, and then re-committed.

- This action is consistent with checking out the file from the iManage repository to make internal edits.

3. **Modification & Re-Lock – July 28, 2025**

- Both the embedded `/ModDate` and the iManage `<lastmodified>` field confirm edits were made and finalized on this date.

- The document was then re-locked in PDF form, likely for distribution.

4. **Post-Modification Handling – After July 28, 2025**

- No evidence exists in the metadata of further edits outside iManage after this date.

- The version provided appears to be the locked, final state as of July 28, 2025.

## 5. Observations

- The mid-2025 "unlock → edit → re-lock" cycle is conclusive from the matching July 28, 2025 modification timestamps in both the embedded PDF metadata and the iManage Smart Document fields.

- The iManage `documentid` and sender email (`STEPHEN.BIRD@BOFA.COM`) create a direct traceable link to Bank of America's internal document repository and the responsible custodian.

- These identifiers can be targeted in a discovery request to retrieve:

  1. Prior versions of the document

  2. Edit history logs

  3. Check-in/check-out activity for the document ID `IMAN_PRI_US_PRD!4521187.1`.

## 6. Chain-of-Custody Considerations

- The file appears to have remained within Bank of America's controlled iManage environment until export.

- The July 28, 2025 modification aligns with the internal last-modified record, suggesting that alterations occurred within the official system prior to external release.

- The metadata provides a defensible timeline showing the file was *actively edited* within months of distribution, undermining claims of an unaltered historical document.

**Prepared by:**
Digital Forensics & Metadata Analysis Unit
Date: 2025-08-10

**From:** **Bird, Stephen - Legal**  stephen.bird@bofa.com
**Subject:** FW: Formal Response - Action Required
**Date:** July 30, 2025 at 8:03 AM
**To:** jravada@icloud.com

Confidential – For Settlement Purposes Only

Dear Luna,

At your request, I am resending the below.  Please let me know if you are able to access.

Thanks,

Stephen D. Bird
Associate General Counsel & SVP
Global Human Resources Legal
Legal Department
Bank of America

NY8-114-07-01, 114 West 47th Street
New York, NY 10036
T 212.852.3660 M 646.901.1864
stephen.bird@bofa.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and immediately permanently delete without reading further or forwarding to others.*

**From:** Bird, Stephen - Legal
**Sent:** Tuesday, July 29, 2025 8:20 PM
**To:** Luna D'Sol <jravada@icloud.com>
**Subject:** RE: [SecMail:] Formal Response - Action Required [ -LT.FID372085]

Confidential – For Settlement Purposes Only

Dear Luna,

The arbitration policy sent to you was an exemplar of the policy.  With that said, I note your request for arbitration materials, which the Bank is in the process of retrieving (which may take a bit of time.).



███████████████████████████████████
███████████████████

(This email is being sent without prejudice and with all rights, defenses and claims reserved.)


Regards,


Stephen D. Bird

Associate General Counsel & Senior Vice President

Global Human Resources Legal

Legal Department

Bank of America

NY8-114-07-01, 114 West 47th Street

New York, NY 10036

T 212.852.3660 M 646.901.1864

stephen.bird@bofa.com

*This e-mail may contain confidential or privileged information. If you are not the intended recipient, please advise by return e-mail and immediately permanently delete without reading further or forwarding to others.*

# EXHIBIT 26

**Desert Regional Medical Center**
1150 N. Indian Canyon
Palm Springs, CA 92262-4872
Phone: 7603236251

## Patient Education & Visit Summary

### PERSON INFORMATION

**Name:** RAVADA, JULIO R

**Address:** 2275 E BELDING DR PALM SPRINGS CA 92262-6515 **Phone:**213-925-4069

**DOB:** 11/20/1984 **MRN:** 1319700 **Acct#:** 253322887

**Arrival Time:** 06/15/2026 21:08:00 **ED Discharge Time:**

### VISIT INFORMATION

**Presenting Complaint:** chest pain

**Patient Diagnosis:** 1:Chest discomfort

**Primary Care Provider:** UNKNOWN , PCP

**Allergy Info:** NKA

**Discharge Location:**

**FOLLOW-UP WITH:**

| With: | Address: | When: |
|---|---|---|
| Follow up with primary care physician | | Within 3-5 days |

**Comments:**
Additional Instructions: Please follow up with your primary care physician. If you do not have a primary care physician, please contact (833) 310-2440 or go to https://www.desertcarenetwork.com/find-a-doctor for further assistance.

If you have Kaiser HMO or Desert Oasis HMO, please contact your case manager for follow up questions.

If you have an out of area HMO, please contact your case manager for follow up questions.

It is IMPORTANT to see your DOCTOR OR PRIMARY CARE PROVIDER. Emergency Care may be incomplete without proper follow-up. Symptoms sometimes change or new symptoms might arise after you leave the Emergency Department. It is important that you call your doctor if you become worse in any way, or return to the Emergency Department.

You are strongly urged to follow-up with your physician to assure complete and thorough care. PLEASE CALL YOUR DOCTORS OFFICE TODAY, INFORM THEM THAT YOU WERE SEEN IN THE EMERGENCY DEPARTMENT, AND THAT YOU NEED TO BE SEEN IMMEDIATELY FOR CLOSE FOLLOW UP. If you do not have a primary care doctor we encourage you to proactively seek a local physician for close follow up. Consider local clinics, free or sliding scale clinics, local county hospitals. You can always return to the Emergency Department if you are having difficulty coordinating close follow up. If medications were prescribed you should fill them at your local pharmacy immediately and take only as prescribed. Bring your new medications to your doctors follow up visit to discuss any changes that would be necessary. RETURN TO THE EMERGENCY DEPARTMENT IMMEDIATELY FOR ANY NEW OR WORSENING SYMPTOMS.

**If you should have any difficulty making arrangements**, please call the Emergency Department. If you have a problem and are not able to contact your primary care provider, you may return to the Emergency Department at any time.

**Patient Portal**

Your test results and important health information are available online on My Health Rec. **If you did not sign up for My Health Rec during your visit, please go to the hospital website to enroll.** The first step is to create a My Health Rec account. Once you create an account, you will be able to use other online applications to manage your health information. When you use an online application, it will sign in to your secure My Health Rec account.

Call 1-888-252-8149 if you need help with My Health Rec. If you have questions about medicines or health concerns after going home from the hospital, please call your doctor's office.

**PATIENT EDUCATION INFORMATION GIVEN:**

Nonspecific Chest Pain, Adult

**IMMUNIZATIONS:**

**MAJOR TESTS AND PROCEDURES:**

Name RAVADA, JULIO R          Page:2                06/16/2026 01:06:20
MRN 1319700

## Laboratory Orders

| Name | Status |
| --- | --- |
| CBC w/auto Diff | Completed |
| Point of Care Results | Completed |
| Trop I HS | Completed |
| Trop I HS | Completed |

## Radiology Orders

| Name | Status |
| --- | --- |
| XR Chest 2 Views | Completed |

## Cardiology Orders

| Name | Status |
| --- | --- |
| ED EKG-CernerCV | Completed |

| Order Name | Order Details |
| --- | --- |
| | Discharge To: Home |
| Discharge Patient | Discharge Diet: Resume Home Diet |
| | Discharge Activity: Resume Home Activity |

Name RAVADA, JULIO R          Page:3          06/16/2026 01:06:20
MRN 1319700

## MEDICATIONS:

*Your discharge prescriptions may be printed, or transmitted electronically to the pharmacy. If there are any issues with your prescriptions, please call the Emergency Department. If you received a prescription for medication(s) today it is important that when you fill this you let the pharmacists know all the other medications that you are on and any allergies you might have. It is also important that you notify your follow-up physician of all your medication including the prescriptions you may receive today.*

**Additional Medications**

**Walgreens Specialty Pharmacy (Community) #07577, 1695 N Sunrise Way Palm Springs, CA 922623701, (760) 325 - 9370**

**famotidine (Pepcid 20 mg oral tablet)** 1 tablet(s) Oral Daily. Refills: 0.
Last Dose Given_____Take next dose_____

## FINAL ACTIVE MEDICATION LIST:

*We have provided a list of your active medications as a courtesy so that you can easily update your home records and provide to your physician(s). These are the only medications that you should be taking.*

**famotidine (Pepcid 20 mg oral tablet)** 1 tablet(s) Oral Daily. Refills: 0.

*Do not stop taking these medications until told to stop. Please review carefully and contact your doctor prior to taking any medications NOT on this list.*

MED LEAFLETS INFORMATION GIVEN:

**MEDICATION LEAFLETS:**

**PATIENT EDUCATION INSTRUCTIONS:**

# Nonspecific Chest Pain, Adult

Chest pain is an uncomfortable, tight, or painful feeling in the chest. The pain can feel like a crushing, aching, or squeezing pressure. A person can feel a burning or tingling sensation. Chest pain can also be felt in your back, neck, jaw, shoulder, or arm. This pain can be worse when you move, sneeze, or take a deep breath.

Chest pain can be caused by a condition that is life-threatening. This must be treated right away. It can also be caused by something that is not life-threatening. If you have chest pain, it can be hard to know the difference, so it is important to get help right away to make sure that you do not have a serious condition.

Some life-threatening causes of chest pain include:

- Heart attack.
- A tear in the body's main blood vessel (aortic dissection).
- Inflammation around your heart (pericarditis).
- A problem in the lungs, such as a blood clot (pulmonary embolism) or a collapsed lung (pneumothorax).

Some non life-threatening causes of chest pain include:

- Heartburn.
- Anxiety or stress.
- Damage to the bones, muscles, and cartilage that make up your chest wall.
- Pneumonia or bronchitis.
- Shingles infection (varicella-zoster virus).

Your chest pain may come and go. It may also be constant. Your health care provider will do tests and other studies to find the cause of your pain. Treatment will depend on the cause of your chest pain.

## Follow these instructions at home:

### Medicines

- Take over-the-counter and prescription medicines only as told by your health care provider.
- If you were prescribed an antibiotic medicine, take it as told by your health care provider. **Do not** stop taking the antibiotic even if you start to feel better.

### Activity

- Avoid any activities that cause chest pain.
- **Do not** lift anything that is heavier than 10 lb (4.5 kg), or the limit that you are told, until your health care provider says that it is safe.
- Rest as directed by your health care provider.
- Return to your normal activities only as told by your health care provider. Ask your health care provider what activities are safe for you.

## Lifestyle



- **Do not** use any products that contain nicotine or tobacco, such as cigarettes, e-cigarettes, and chewing tobacco. If you need help quitting, ask your health care provider.
- **Do not** drink alcohol.
- Make healthy lifestyle changes as recommended. These may include:
  - Getting regular exercise. Ask your health care provider to suggest some exercises that are safe for you.
  - Eating a heart-healthy diet. This includes plenty of fresh fruits and vegetables, whole grains, low-fat (lean) protein, and low-fat dairy products. A dietitian can help you find healthy eating options.
  - Maintaining a healthy weight.
  - Managing any other health conditions you may have, such as high blood pressure (hypertension) or diabetes.
  - Reducing stress, such as with yoga or relaxation techniques.

## General instructions

- Pay attention to any changes in your symptoms.
- It is up to you to get the results of any tests that were done. Ask your health care provider, or the department that is doing the tests, when your results will be ready.
- Keep all follow-up visits as told by your health care provider. This is important.
- You may be asked to go for further testing if your chest pain does not go away.

## Contact a health care provider if:

- Your chest pain does not go away.

Name RAVADA, JULIO R          Page:7          06/16/2026 01:06:20
MRN 1319700

- You feel depressed.
- You have a fever.
- You notice changes in your symptoms or develop new symptoms.

## Get help right away if:

- Your chest pain gets worse.
- You have a cough that gets worse, or you cough up blood.
- You have severe pain in your abdomen.
- You faint.
- You have sudden, unexplained chest discomfort.
- You have sudden, unexplained discomfort in your arms, back, neck, or jaw.
- You have shortness of breath at any time.
- You suddenly start to sweat, or your skin gets clammy.
- You feel nausea or you vomit.
- You suddenly feel lightheaded or dizzy.
- You have severe weakness, or unexplained weakness or fatigue.
- Your heart begins to beat quickly, or it feels like it is skipping beats.

**These symptoms may represent a serious problem that is an emergency. Do not wait to see if the symptoms will go away. Get medical help right away. Call your local emergency services (911 in the U.S.). Do not drive yourself to the hospital.**

## Summary

- Chest pain can be caused by a condition that is serious and requires urgent treatment. It may also be caused by something that is not life-threatening.
- Your health care provider may do lab tests and other studies to find the cause of your pain.
- Follow your health care provider's instructions on taking medicines, making lifestyle changes, and getting emergency treatment if symptoms become worse.
- Keep all follow-up visits as told by your health care provider. This includes visits for any further testing if your chest pain does not go away.

This information is not intended to replace advice given to you by your health care provider. Make sure you discuss any questions you have with your health care provider.

Document Revised: 03/03/2022 Document Reviewed: 03/03/2022
Elsevier Patient Education © 2023 Elsevier Inc.

X-RAYS and LAB TESTS:

If you had x-rays today they were read by the emergency physician. Your x-rays will also be read by a radiologist within 24 hours. If you had a culture done it will take 24 to 72 hours to get results. If there is a change in the x-ray diagnosis or a positive culture we will contact you. (Make sure we have your local phone number.)

Thank you for the opportunity to provide your emergency medical care. It is important you understand that emergency medical services are not a substitute for complete medical care.

**Suicide Awareness:** If you are having thoughts of harming yourself or others, call 911 or go to the nearest emergency department. You may also contact the National Suicide Prevention Lifeline at 988 or 800-273-TALK (8255).

### **What is FindHelp.org?**

A free referral platform that connects people with social care services and community resources in your area

### **Resources provided**

- Food
- Housing
- Goods
- Transportation
- Childcare
- Healthcare

**Visit findhelp.org or scan the code below to get connected**



Thank you for the opportunity to provide your emergency medical care. It is important you understand that emergency medical services are not a substitute for complete medical care.

# EXHIBIT 27

**BANK OF AMERICA**

Flagscape ®

About Us        News & Events



# Peter Maxim

**Vice President; Senior**
**GLOBAL RISK MANAG**
**Employee**

Send recognition        Save Outlook contact

✉ peter.maxim████████

📞 Primary work phone: +1.213.████████
████████

## Organizatio

## Reporting st

31303 AGOURA ROAD
31303 AGOURA RD
📍 WESTLAKE VILLAGE, CA 91361
UNITED STATES OF AMERICA
████████



Br
Ch
OF
En
br

⊙ 02:34 PM (PDT) Wednesday, 11 June

👤 ████████



C
c
G
E



Essential links        My organization

# EXHIBIT 28



## California Civil Rights System

Luna D'Sol ▾

Civil Rights Department

Home
(/s/)

Start a
New Form
(/s/initiate-
case)

Resume a
Form
(/s/incomplete-
cases)

View Forms (/s/ccrs-
case/DFEH_Case__c/Default)

Resume a
Record
Request
(/s/incomplete-
record-
requests)

View Record Requests
(/s/pra/PRA__c/Default)

○ Get Started

○ Related Parties

○ Complaint Details

**Upload Files**

○ Demographics

○ Verify & Submit

**Case Summary**

Case #:
**202508-30704712**

Case Name:
**D'Sol / Bank of America ...**

Form Type:
**Right to Sue**

Status:
**Closed**

# Upload Files

All documents submitted to the CRD by any party, whether
uploaded to this website or sent by other means, are public records
that may be subject to disclosure under the California Public
Records Act, Gov. Code § 7920.000 et seq.

Save & Upload

⬆ Upload Files       Or drop files

English



# Uploaded Files

| FILE NAME | CREATED | | |
|---|---|---|---|
| 📄 2025.8.11.D'Sol _ Bank of America et al..CMT-00157 Right.to.Sue.Package.pdf | Aug 11, 2025 | ⬇ Download | 🗑 D |
| 📄 2025 - 02- 26 - Luna shares transgender status and upcoming surgeries with manager - Sex:Gender Identity | Aug 11, 2025 | ⬇ Download | 🗑 D |



| | | | |
|---|---|---|---|
| PDF March 26 2025 – HIV Results 1st time positive | Aug 11, 2025 | Download | D |
| PDF 2025 - 08 -15 - Disability Extension Doctor Signed Form - FMLA | Aug 11, 2025 | Download | D |
| PDF 2025 - 06 - 09 - Formal Sedgwick Letter Lproved | Aug 11, 2025 | Download | D |
| PDF 2025 - 05 - 20 to 2025 - 08-07 - Sedgwick Claim Notes Denial Per Banks Inteference - FMLA Interference | Aug 11, 2025 | Download | D |
| PDF 2025 - 06 - 25 -Bank degenders me - Sex:Gender Discrimination | Aug 11, 2025 | Download | D |
| PDF May 21 2025 12:47pm From BOA Email Received 1st hearing severance intention | Aug 11, 2025 | Download | D |
| PDF 2025 - 02- 26 - Luna shares transgender status and upcoming surgeries with manager - Sex:Gender Identity | Aug 11, 2025 | Download | D |

⟨ Previous        Next ⟩

# EXHIBIT 29

**From:** Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com
**Subject:** RE: Meet-and-Confer Request — § 128.7 Safe Harbor — D'Sol v. Bank of America, et al., Case No. CVPS2601396
**Date:** June 22, 2026 at 14:12
**To:** Luna D'Sol jravada@icloud.com
**Cc:** Cho, Karen Y. karen.cho@morganlewis.com

Dear Luna,

Hope you had a good weekend.  I'm following up on the below email regarding our request to meet and confer regarding Defendants' motion to compel arbitration and motion to dismiss. Per Central District of California Local Rule 7-3, we must meet and confer by this Thursday. Could you please let us know your availability for a call to meet and confer this week (and no later than Thursday)?  Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com

    

**From:** Antonopoulos, Nicole L.
**Sent:** Wednesday, June 17, 2026 10:40 AM
**To:** 'Luna D'Sol' <jravada@icloud.com>
**Cc:** Cho, Karen Y. <karen.cho@morganlewis.com>
**Subject:** RE: Meet-and-Confer Request — § 128.7 Safe Harbor — D'Sol v. Bank of America, et al., Case No. CVPS2601396

Dear Luna,

Thank you for your email.  We would like to schedule a meet and confer call to discuss Plaintiff's intent to file a motion for sanctions.

Also, Defendants intend to remove this case to federal court, and Defendants then intend to file a motion to compel arbitration and motion to dismiss.  Per Central District of California Local Rule 7-3, we must meet and confer at least 7 days prior to the filings of the motions.  Could you please let us know your availability to meet and confer on Monday or Tuesday?  Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com

    

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Wednesday, June 10, 2026 2:00 PM
**To:** Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>
**Cc:** Cho, Karen Y. <karen.cho@morganlewis.com>

**Subject:** Re: Meet-and-Confer Request — § 128.7 Safe Harbor — D'Sol v. Bank of America, et al., Case No. CVPS2601396

[EXTERNAL EMAIL]

Ms. Antonopoulos,

I wanted to follow up on this request.

Please understand that I have no desire to engage in unnecessary motion practice or court intervention. For many months, I have attempted to understand and resolve the basis for the arbitration defense without involving the Court. When the exemplar document was provided, I understood that efforts would be made to determine whether records existed showing my assent to arbitration. Since that time, I have continued to seek clarification and supporting documentation.

I am not pursuing this issue because I wish to prolong the litigation. To the contrary, I would strongly prefer that the parties resolve any differences without court involvement whenever possible. However, after many months, I still have not been provided with an executed agreement, acknowledgment, acceptance record, or other evidence showing my assent to arbitration, while the defense continues to be asserted.

My goal is simply to ensure that the record accurately reflects the evidence that exists. If Defendants possess evidence supporting the defense, I welcome its identification. If they do not, I believe it would benefit all parties to address the issue now rather than continue litigating over a defense that may not be supported by the available record.

Thank you.

**Luna D'Sol**

 (213) 925-4069

jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

On Jun 8, 2026, at 10:35, Luna D'Sol <jravada@icloud.com> wrote:

Dear Ms. Antonopoulos:

I write regarding the Motion for Sanctions Pursuant to Code of Civil Procedure section 128.7 that I caused to be served upon you on June 8, 2026, together with the accompanying Notice of Motion, Memorandum of Points and Authorities, Declaration of Luna D'Sol, and supporting exhibits. As you know, the 21-day safe-harbor period under section 128.7(c)(1) expires on June 29, 2026.

For clarity, both an original and revised version of this correspondence were transmitted. The revised version supersedes the original in its entirety. The original version contained a clerical error, and the revised version was transmitted solely to correct that error. No substantive changes were made.

The motion is narrowly directed to the Twenty-Fifth Additional Defense asserted in Defendant Peter C. Maxim's June 3, 2026 Answer, which alleges that Plaintiff is subject to mandatory and binding arbitration pursuant to an arbitration agreement.

As set forth in the motion papers, Plaintiff's position is that Defendants have never produced an executed arbitration agreement, acknowledgment, acceptance record, or other evidence of Plaintiff's assent despite repeated requests and multiple records productions. The motion further explains why Plaintiff believes the defense lacks evidentiary support and why the section 128.7(b)(3) exception for contentions likely to obtain support through further investigation or discovery does not apply under the circumstances presented.

Before the expiration of the safe-harbor period, I request that we meet and confer regarding whether Defendants intend to:

(a) withdraw the Twenty-Fifth Additional Defense;

(b) amend or correct the defense; or

(c) maintain the defense.

If Defendants intend to maintain the defense, please identify the arbitration agreement, acknowledgment, acceptance record, or other evidence of assent upon which Defendants presently rely.

I am available to meet and confer by telephone or videoconference and can be reached at (760) 507 - 5381 or jravada@icloud.com. If you prefer to respond in writing, that is acceptable as well.

Please confirm receipt of this correspondence and advise Defendants' position at your earliest convenience so that the parties may determine whether further proceedings can be avoided.

This communication is made solely for purposes of the CCP section 128.7 safe-harbor process and is sent without waiver of any rights, claims, defenses, objections, or remedies.

Sincerely,

**Luna D'Sol**

Zana B Go.

(213) 925-4069

jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

CONFIDENTIALITY AND PRIVACY NOTICE: This email is from a law firm and may contain information that is confidential, privileged, and/or attorney work product. This email may also contain personal data, which we process in accordance with applicable data protection laws and our Privacy Policies and Notices. If you are not the intended recipient, you may not review, copy, or distribute this message. If you have received this email in error, please contact the sender immediately and delete all copies from your system.

EXHIBIT 30



**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Meet and Confer
**Date:** June 26, 2026 at 07:38
**To:** Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com, Cho, Karen Y. karen.cho@morganlewis.com



Hi Nicole and Karen,

PLAINTIFF SUBMITS THIS CORRESPONDENCE UNDER A STRICT SPECIAL APPEARANCE SOLELY TO COMPLY WITH CENTRAL DISTRICT LOCAL RULE 7-3. NEITHER THIS LETTER, THE CONFORMANCE WITH LOCAL RULES, NOR ANY SUBSEQUENT CONFERENCES OR DISCUSSIONS SHALL BE CONSTRUED AS AN EXPRESS OR IMPLIED WAIVER OF PLAINTIFF'S OBJECTION TO SUBJECT-MATTER JURISDICTION. Plaintiff expressly rejects federal jurisdiction and reserves all rights, objections, claims, remedies, and arguments concerning the legal and procedural defects in Defendants' Notice of Removal.

**Plaintiff will discuss the following concerns, including, but not limited to, the underlying procedural and substantive violations set forth in Defendants' Notice of Removal:**

**Defective Notice and Acknowledgment of Receipt and Fabricated Service Record**. Plaintiff previously notified Defendants that the Notice and Acknowledgment of Receipt ("NAR") procedure had not been completed in the manner required by California Code of Civil Procedure section 415.30. Specifically, Plaintiff advised that the NAR package had been transmitted by email rather than served by first-class mail as required by statute, that the NAR form did not reflect the required identification of documents that were considered for this process, and that the with the NAR form representing a defective procedure it was mailed to Plaintiff with an unsigned Proof of Service, therefore CCP § 415.30 cannot be invoked to establish valid service. In addition the NARS form submitted with Defendant's Notice of Removal contains a Riverside County Superior Court case number unrelated to this matter. Plaintiff expressly declined to stipulate that the attempted service complied with section 415.30 or to waive any statutory requirements.

Your removal documents rely heavily on a NAR form that your office represented under penalty of perjury was executed and sent via U.S. Mail on May 26, 2026. A forensic metadata extraction of the native `.eml` file and the document titled `5.26.26 — D'Sol — NAR (Bank of America NA)-1.pdf` reveals that the document did not exist on May 26. The internal PDF info dictionary and XMP stream show an immutable CreationDate of Wednesday, June 3, 2026, at 15:24:42 UTC. Furthermore, the document was programmatically generated using `Aspose.PDF for .NET 24.6.0`—a developer library—not a physical scanner. Your office initially transmitted an unsigned, legally void proof of service sheet, and subsequently provided a backdated, synthetic signature sheet after Plaintiff pointed out the defect on June 4, 2026.

Plaintiff will request judicial notice of the Riverside County Superior Court docket in Case No. CVPS2601396, which reflects that, as of the date of removal, Bank of America, N.A. had not been processed as served by the state court. Under Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 347–48 (1999), "[a] named defendant's time to remove is triggered by simultaneous service of the summons and complaint … but not by mere receipt of the complaint unattended by any formal service." Accordingly, absent valid service of process, the thirty-day removal period prescribed by 28 U.S.C. § 1446(b) is not triggered.

| Attachment Group | Creation-Date (Metadata) | Modification-Date |
|---|---|---|
| Group A — 5 files | Tue, 26 May 2026  22:55:42 GMT (consistent with email send date) | Wed, 03 Jun 2026  22:24:50–51 GMT |
| Group B — 4 files | ⚠ Wed, 03 Jun 2026  22:24:45 GMT (8 days after claimed send date) | Wed, 03 Jun 2026  22:24:52–55 GMT |

| Email Header Field | Recorded Value |
|---|---|
| Date (sender field) | Tue, 26 May 2026  22:55:44 +0000 UTC |
| Received (first hop) | Tue, 26 May 2026  22:55:44 UTC |
| Received (delivery) | Tue, 26 May 2026  22:55:47 UTC |
| Original Arrival Time | 26 May 2026  22:55:44.2039 UTC |
| Message-ID | BY5PR03MB5143...@namprd03.prod.outlook.com |
| Originating Client IP | 170.85.154.88 |
| DKIM Signature | None (message not cryptographically signed) |

| PDF Metadata Field | Value |
|---|---|
| File Name | 5.26.26 — D'Sol — NAR (Bank of America NA)-1.pdf |
| PDF Creator Application | Aspose Pty Ltd. |
| PDF Producer Library | Aspose.PDF for .NET 24.6.0 |
| ⚠ CreationDate | Wed, 03 Jun 2026 — 15:24:42 UTC |
| ⚠ ModDate | Wed, 03 Jun 2026 — 22:24:42 UTC |
| PDF Version | 1.4 |
| Pages | 2 |
| Encryption / JavaScript | None |

**Evasion of State Court Sanctions via Tactical "Evacuation Removal":** On June 5, 2026, Plaintiff properly served Bank of America, N.A. via personal service on its registered agent, CT Corporation System (Form POS-010, Case No. CVPS2601396). Right after, Plaintiff formally served your office with a motion for sanctions under California Code of Civil Procedure § 128.7. Precisely on the 20th day of that 21-day safe-harbor window, your office abruptly filed this Notice of Removal. Utilizing the federal removal statute as a tactical shield to flee a pending state court sanctions motion constitutes severe bad faith and a vexatious multiplication of proceedings under 28 U.S.C. § 1927.

**Reliance on Completely Reversed Supreme Court Case Law:** To manufacture the $75,000 federal amount in controversy, your Notice of Removal cites Silo v. CHW Med. Found., 86 Cal. App. 4th 947, 955 (2001) for the proposition that a jury award exceeding $75,000 for emotional distress was upheld. Your office completely omitted the critical fact that this appellate decision was entirely reversed twenty-four years ago by the California Supreme Court in Silo v. CHW Medical Foundation, 27 Cal. 4th 1097 (2002), rendering it an absolute legal nullity.

**Substantive Manipulation of Binding Ninth Circuit Precedent**: In paragraph 24 of the Notice of Removal, your office selectively truncated a direct quote from Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998), ending the sentence at a semicolon to hide the Ninth Circuit's explicit limiting language. You intentionally omitted the court's adjacent holding that fraudulent joinder "did not key on an inquiry as to whether those defendants could propound defenses to an otherwise valid cause of action.

**Application of Inapplicable Pleading Standards**: Your Notice of Removal attempts to apply the federal Bell Atlantic Corp. v. Twombly motion to dismiss standard to argue that individual supervisors Peter C. Maxim and Tricia Shanks were fraudulently joined. This directly misstates binding Ninth Circuit law. As established in Grancare, LLC v. Thrower, 889 F.3d 543, 549 (9th Cir. 2018), the standard for fraudulent joinder is not equivalent to a Rule 12(b)(6) dismissal. Under California Government Code § 12940(j)(3), supervisors face direct personal liability for workplace harassment. Because Plaintiff's Complaint explicitly alleges direct harassment under subdivision (j), valid state law claims exist, completely destroying federal diversity jurisdiction.

Please be advised that because this motion is brought pursuant to 28 U.S.C. § 1927, 28 U.S.C. § 1447(c), and the Court's Inherent Powers to penalize bad-faith conduct, there is no 21-day safe-harbor waiting period. The Court possesses immediate authority to issue sanctions.

Plaintiff is amenable to resolving this matter without judicial intervention if Defendants execute a joint stipulation to remand this case to state court and agree to cover the costs incurred due to this improper removal.

I am looking forward to discussing these items at the confirmed time June 26 2026 8am

Sincerely,

Luna D'Sol

## Luna D'Sol

 (213) 925-4069

 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 31

From:   **Luna D'Sol** jravada@icloud.com
Subject: URGENT NOTICE: Case No. 5:26-cv-03535 — Confirmation of Phone Call and Service Deficiencies
Date:   June 30, 2026 at 11:18
To:   Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com, Cho, Karen Y. karen.cho@morganlewis.com



Dear Ms. Cho,

This email constitutes formal notice and confirms our phone conversation at approximately 11:00 AM today, June 30, 2026.

During the call, I placed you on direct notice that I have not been served with the physical, paper Notice of Removal or your moving papers as strictly required for a pro se litigant under CDCA Local Rule 5-3.2.1[CDCA Local Rules - Local Rule 5]. You stated that your office sent a "courtesy copy" via mail but explicitly confirmed that you do not possess a tracking number to verify delivery or receipt. You further instructed me to "go online" to view the docket.

As I stated on the call, I have not appeared electronically in this case and I was waiting for the document fro the court to proceed with their process for this case and I have not waived my right to physical paper service under the Local Rules [CDCA Local Rules - Local Rule 5].I requested a tracking number of your documents and you said that you don't have one. Because your office has failed to execute legal service of the removal or your moving papers under CDCA Local Rule 7-4, tomorrow's scheduled meet-and-confer call is entirely premature and procedurally invalid [CDCA Local Rules - Local Rule 7].

Any filing you submit to the federal court today or tomorrow will contain a defective Proof of Service and violate Federal Rule of Civil Procedure 11 [FRCP Rule 11].

I am waiting for my postal delivery at noon today. I will follow up with you immediately after the mail arrives to confirm whether proper physical service has been perfected.

Sincerely,

## Luna D'Sol



 (213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 32

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Re: Meet-and-Confer Recap June 26, 2026 – D'Sol v. Bank of America, et al.
**Date:** June 30, 2026 at 15:02
**To:** Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com
**Cc:** Cho, Karen Y. karen.cho@morganlewis.com



Nicole,

As of the conclusion of mail delivery today, June 30, 2026, I have not received copies of the Notice of Removal or Defendants' proposed moving papers. I therefore have not had the opportunity to review the documents that would be the subject of any conference.

For clarity, I have not been granted leave to file or appear electronically in this case, and I have not received credentials enabling me to do so. Under Local Rule 5-4.2, a pro se litigant presents documents to the Clerk in paper format unless otherwise ordered by the Court, and I am proceeding on that basis.

A conference under Local Rule 7-3 contemplates a thorough discussion of the substance of a contemplated motion. Because I have not yet received Defendants' moving papers, a substantive conference is not presently possible. I am willing to confer once I have received and had a reasonable opportunity to review the papers, and I ask that you provide them to me in a form I can access.

Accordingly, I request that the call scheduled for July 1, 2026 be rescheduled to a date after I have received the moving papers. Nothing in this correspondence concedes that removal is proper or that this Court has jurisdiction, and all rights, positions, objections, and remedies — including the right to seek remand — are expressly reserved.

Regards,

## Luna D'Sol

  (213) 925-4069
jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

On Jun 30, 2026, at 14:38, Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com> wrote:

Dear Luna,

We disagree with your characterization of our meet and confer call on June 26.  As we discussed on our call, the Bank distributed the Arbitration Policy to all U.S. based employees, including you, by email on November 8, 2024.  The email stated that you accepted the policy "by continuing your employment with Bank of America for thirty (30) days after the Bank distributes this Policy via this email."  On November 22, 2024, the Bank sent a reminder email to employees, including you, regarding the Arbitration Policy.  You thereafter continued working for the Bank, thus agreeing to be bound by the Arbitration Policy.  *See e.g., Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416, 422 (2000) (finding evidence that the arbitration agreement was received by the plaintiff twice; that she continued to work for the defendant; and that she thereby agreed to be bound by the arbitration agreement); *Denham v. Weatherford U.S. L.P.,* 2023 WL 8870538, at *3 (C.D. Cal. Aug. 3, 2023) (finding the plaintiff impliedly consented to the arbitration agreement because "[p]laintiff received the revised [agreement] though his work email and continued his employment after receiving notice").  As such, we request that you stipulate to arbitration and stay your action.

The deadline for Defendants to file their response to the complaint is July 2.  Please let us know in advance of July 2 whether you will stipulate to arbitration.  If you do not stipulate, Defendants will file their motion to compel arbitration and stay action.  We are happy to

further meet and confer on our follow-up call set for July 1.  Thank you.

**Nicole L. Antonopoulos**
**Morgan, Lewis & Bockius LLP**
1400 Page Mill Road | Palo Alto, CA 94304-1124
Direct: +1.650.843.7236 | Main: +1.650.843.4000 | Fax: +1.650.843.4001
nicole.antonopoulos@morganlewis.com | www.morganlewis.com

 <image001.png>  <image002.png>  <image003.png>  <image004.png>  <image005.png>

**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Friday, June 26, 2026 7:55 PM
**To:** Antonopoulos, Nicole L. <nicole.antonopoulos@morganlewis.com>; Cho, Karen Y. <karen.cho@morganlewis.com>
**Subject:** Meet-and-Confer Recap June 26, 2026 – D'Sol v. Bank of America, et al.

[EXTERNAL EMAIL]

Counsel,

I am writing to summarize and recap the meet-and-confer today, June 26, 2026 at 8am, attended by Plaintiff Luna D'Sol and Defendants' counsel Karen Cho and Nicole Antonopoulos.

As a matter of record, Plaintiff requested a copy of the alleged arbitration agreement in July 2025. Defendants initially asserted an "implied acknowledgment" theory based on non-rejection acceptance from November 2024. When a document was finally produced in July 2025 by internal counsel Stephen Bird, the metadata explicitly revealed it was created exactly one day after Plaintiff disclosed her transgender status to Manager Shanks and Supervisor Defendant Peter C. Maxim.

When confronted with these findings, Bank of America's internal counsel, ceased asserting the enforceability of that document and promised a correct version to be issued "soon". Instead, later productions by your firm included a mismatched, Bates-numbered personnel package that directly contradicted the official personnel files provided by Bank of America both before and after that date.

To resolve this evidence issue, Plaintiff served a 21-day safe harbor notice in state court. Defendants engaged in discussions to coordinate a time to resolve the matter. Instead, Defendants filed a Notice of Removal exactly one business day before Plaintiff was eligible to file that mature motion.

**Motion to Compel Arbitration**

Defendant initiated a meet-and-confer regarding its anticipated motion to compel arbitration. During that process, however, Defendant denied the existence of the very documents that Plaintiff contends were previously misrepresented and refused to substantively address those disputed factual issues. When Plaintiff challenged Defendant's unsupported characterization of the purported arbitration agreement, defense counsel responded only that "there is a case that supports it." Plaintiff promptly requested that authority, as well as any other legal basis supporting Defendant's position, but Defendant declined to provide it, instead deferring any discussion until Wednesday, July 1, while simultaneously asserting that it was required to file the motion by Thursday, July 2.

Plaintiff advised Defendant that this sequence failed to satisfy the purpose of the meet-and-confer process because Defendant had neither provided the factual and legal basis necessary to permit a meaningful discussion nor complied with its obligation to attempt to resolve or narrow the issues before motion practice. Plaintiff further noted that Defendant had previously represented, in correspondence dated June 17, that "per Local

Rule 7-3, we must meet and confer at least 7 days prior to filing of the motions," and again on June 22 stated, "per Local Rule 7-3, we must meet and confer this Thursday… and no later than Thursday." Despite those prior representations, Defendant later appeared to invoke a different interpretation of the rule while continuing to withhold the authorities upon which it claimed to rely and refusing to engage in a substantive discussion of the disputed issues. Leaving a substantive discussion for July 1st for a July 2nd filing provides an impossible 1-day window. This is a direct violation of Central District Local Rule 7-3's mandatory 7-day rule—a timeline you previously acknowledged. Your accusation that Plaintiff "does not know the rules" is baseless and contradicted by your own written communications.

### Federal Rule of Civil Procedure 5(b)(2)(E

With respect to your verbal assertion regarding an alleged prior state-court filing referenced in your Notice of Removal, your characterization does not correspond to the any documents previously transmitted to me. Further, let the record reflect that I have not consented to electronic service in either the state or federal action. Under Federal Rule of Civil Procedure 5(b)(2)(E), service by electronic means is effective only upon the recipient's written consent. I have provided no such consent. Accordingly, neither an email nor a verbal reference to the purported filing constitutes valid service and given given Defendant's repeated filing irregularities and frivolous pleadings, I can only be expected to respond to documents that have been properly served in accordance with the applicable procedural rules.

Defendants disputed Plaintiff's assertions, denied that any document had been fabricated, maintained that the Notice and Acknowledgment of Receipt was properly executed and transmitted, stated that Defendants accepted service, and further asserted that removal may occur before formal service.

## Continuation of Meet-and-Confer

Because Defendants had not identified or produced the legal authorities supporting their anticipated motions before the conference, Plaintiff requested additional time to review those authorities before providing substantive responses. Defendants agreed to provide the authorities discussed during the call. The parties agreed to the meet-and-confer on **July 1, 2026, at 8:00 a.m to allow Defendants a good-faith opportunity to comply,** Plaintiff anticipated that, by that time, Defendant's filings would have been properly served**.** No agreements were reached regarding arbitration, dismissal, remand, or sanctions. Plaintiff expressly reserved all rights, objections, jurisdictional challenges, claims, defenses, and remedies.

### Email's Inconsistency:

Plaintiff identified several irregularities arising from Defendants' correspondence and the evidence presented to the Court in order to afford Defendants a good-faith opportunity to clarify the record and address those issues before motion practice. Defendants declined that opportunity and instead maintained that their record is, allegedly, verified.

Finally, Defendant's last-minute filings, coupled with its decision to preempt the parties' agreed-upon Local Rule 7-3 meet-and-confer, have materially prejudiced Plaintiff. The purpose of the meet-and-confer process is to afford the parties a meaningful opportunity to evaluate the contemplated motion, resolve factual disputes, exchange supporting authorities, and where appropriate, avoid

disputes, exchange supporting authorities, and, where appropriate, avoid unnecessary motion practice.

Instead, during the meet-and-confer, Defendant denied knowledge of the prior metadata forensic report identified by Mr. Bird, despite that report having already been explained in detail in the very materials upon which Defendant requested the meet-and-confer. Defendant also declined to provide the factual basis and legal authorities supporting its position, including those relating to the purported arbitration agreement. By filing first and withholding the information necessary for a meaningful discussion, Defendant deprived Plaintiff of the very opportunity that Local Rule 7-3 is intended to provide—namely, the opportunity to resolve or narrow disputes in good faith before judicial intervention became necessary.

For the avoidance of doubt, my participation in this correspondence and any meet-and-confer efforts is undertaken solely in an effort to comply with the applicable procedural rules and to avoid unnecessary motion practice. Nothing contained herein shall be construed as a general appearance, consent to this Court's jurisdiction, consent to removal, consent to electronic service, or a waiver of any jurisdictional, procedural, service, or other objections, all of which are expressly preserved and reserved.

**Luna D'Sol**

(213) 925-4069

jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

CONFIDENTIALITY AND PRIVACY NOTICE: This email is from a law firm and may contain information that is confidential, privileged, and/or attorney work product. This email may also contain personal data, which we process in accordance with applicable data protection laws and our Privacy Policies and Notices. If you are not the intended recipient, you may not review, copy, or distribute this message. If you have received this email in error, please contact the sender immediately and delete all copies from your system.

# EXHIBIT 33

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** RECAP JULY 9TH 2026
**Date:** July 9, 2026 at 23:22
**To:** Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com, Cho, Karen Y. karen.cho@morganlewis.com



Hi Counsel,

This email memorializes my understanding of today's meet and confer.

First, I requested that Defendants amend or otherwise correct the declaration filed in this action to remove the unnecessary public disclosure of my former legal name. I explained that my legal name is Luna D'Sol and that I am requesting this solely because the disclosure serves no apparent litigation purpose while unnecessarily compromising my privacy. Defendants stated they would review the issue and consider whether any corrective action is appropriate.

During our discussion regarding the unnecessary public disclosure of my former legal name, Defendants stated that they did not believe any legal basis required amendment of the declaration and questioned the harm resulting from the disclosure. I explained that this action arises from, among other things, allegations concerning my transgender status and that publicly linking my former legal name to my current legal identity unnecessarily compounds the very privacy and discrimination concerns underlying this litigation. I further explained that, beyond SB 59, California recognizes a fundamental constitutional right to privacy under Article I, section 1 of the California Constitution, and that I am unaware of any legitimate litigation purpose served by publicly disclosing my former legal name in Defendants' filing. Defendants indicated they would review the issue and consider my request.

Second, we discussed service of the Notice of Removal. Defendants represented that the Notice of Removal was sent by regular U.S. Mail, with a courtesy copy transmitted by email. When I asked whether there was any tracking number or proof of mailing associated with the U.S. Mail service, Defendants stated that they did not believe there was.

Third, Defendants asked whether I would participate in a settlement conference before the assigned federal judge. I explained that I intend to proceed with my Motion to Remand and other pending filings and that I remain concerned about preserving all jurisdictional objections. Defendants responded that any stipulation regarding a settlement conference could include language expressly preserving my challenge to removal and federal jurisdiction.

Finally, I raised my concern regarding the prior state-court stipulation concerning Defendant Tricia Shanks. I explained my position that Defendants agreed to file a responsive pleading by the deadline specified in the stipulation but did not do so before removing the action. Defendants disagreed and stated their position that removal relieved them of any further obligation under that stipulation.

If any portion of the foregoing does not accurately reflect Defendants' understanding of today's discussion, please advise promptly.

As stated during today's conference and consistently throughout my prior communications, nothing in this meet and confer, nor this email, shall be construed as a waiver of any rights, objections, or arguments, including but not limited to Plaintiff's objections to removal, jurisdiction, service, or any other procedural or substantive issue.

## Luna D'Sol

 (213) 925-4069

 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

# EXHIBIT 34

**From:** **Luna D'Sol** jravada@icloud.com
**Subject:** Subject: REF: Luna D'Sol v. Bank of America, N.A., et al. (Case No: 5:26-cv-03535-JGB-SP) – Written Confirmation of Untrue Statements Regarding Service Tracking
**Date:** July 10, 2026 at 07:37
**To:** Cho, Karen Y. karen.cho@morganlewis.com, Antonopoulos, Nicole L. nicole.antonopoulos@morganlewis.com



Counsel,

I am writing to formalize a critical development regarding your service of the Notice of Removal and related documents in the above-referenced matter.

As you are aware, during our meet-and-confer sessions on June 30, 2026, and again on July 8, 2026, I explicitly requested the USPS tracking details for the physical package you claimed to have mailed to my residence. On both occasions, you stated unequivocally that no tracking number existed and that the documents were simply dropped into standard USPS mail without a tracking mechanism.

Yesterday, July 9, 2026, I finally received your package following the resolution of an administrative postal hold at my residence.

Contrary to your explicit, repeated verbal representations, your package does contain a prominent, printed USPS Tracking Number, which confirms it was processed on June 25, 2026.

Because you chose to withhold this tracking data, I was prevented from locating or retrieving the documents from the post office during the hold period. Your deliberate withholding of verifiable tracking information constitutes a clear attempt to frustrate my ability to respond and run down my procedural clocks.

Please be advised that I have preserved the physical packaging and shipping label showing the tracking number. This physical evidence, alongside my written memorialization of your June 30 and July 8 statements, has been formally submitted to Judge Bernal today as an exhibit to my declaration exposing bad-faith litigation conduct. Can you please clarify why you withheld the tracking information>

Regards,

## Luna D'Sol

  (213) 925-4069
📧 jravada@icloud.com

This email and any attachments are intended only for the named recipient(s) and may contain confidential information. If you received this in error, please notify the sender and delete it immediately.

EXHIBIT 35

# USPS Tracking®  ⟩

Get the free Informed Delivery® feature to receive automated notifications on your packages    **Learn More**

**Remove ✕**

**Tracking Number:**

## 9114901159815794562302

**Copy**        **Add to Informed Delivery**

**● Delivered**

### Latest Update

Your item was delivered in or at the mailbox at 11:56 am on June 29, 2026 in PALM SPRINGS, CA 92262.

**Delivered, In/At Mailbox**
PALM SPRINGS, CA 92262
June 29, 2026 11:56 AM

**● Returned to Sender**
PALM SPRINGS, CA 92262
June 27, 2026 11:50 AM

**● Forwarded**
PALM SPRINGS, CA
June 27, 2026 11:50 AM

**● Arrived at Post Office**
PALM SPRINGS, CA 92262
June 27, 2026 6:55 AM

**Arrived at USPS Facility**

PALM SPRINGS, CA 92262
June 27, 2026 4:00 AM

**Departed USPS Facility**

SAN BERNARDINO CA
DISTRIBUTION CENTER
June 27, 2026 2:49 AM

**Arrived at USPS Facility**

SAN BERNARDINO CA
DISTRIBUTION CENTER
June 27, 2026 1:29 AM

**Departed USPS Facility**

MORENO VALLEY CA
DISTRIBUTION CENTER
June 27, 2026 12:53 AM

**Arrived at USPS Facility**

MORENO VALLEY CA
DISTRIBUTION CENTER
June 26, 2026 10:15 PM

**Arrived at USPS Facility**

SAN BERNARDINO CA
DISTRIBUTION CENTER
June 26, 2026 4:32 PM

**In Transit to Next Facility**

June 26, 2026 4:18 PM

**In Transit to Next Facility**

June 26, 2026 1:54 PM

**Departed USPS Facility**

SANTA CLARITA CA DISTRIBUTION
CENTER
June 26, 2026 12:47 PM

**Arrived at USPS Facility**

SANTA CLARITA CA DISTRIBUTION
CENTER
June 26, 2026 11:40 AM

**In Transit to Next Facility**

June 26, 2026 10:19 AM

**In Transit to Next Facility**

June 26, 2026 7:36 AM

**Departed USPS Facility**

SAN FRANCISCO CA
DISTRIBUTION CENTER
June 26, 2026 4:53 AM

**Arrived at USPS Facility**

SAN FRANCISCO CA
DISTRIBUTION CENTER
June 26, 2026 12:54 AM

**Departed USPS Facility**

SAN FRANCISCO CA
DISTRIBUTION CENTER
June 26, 2026 12:24 AM

**Arrived at USPS Facility**

SAN FRANCISCO CA
DISTRIBUTION CENTER
June 25, 2026 10:12 PM

**USPS in possession of item**

SAN FRANCISCO, CA 94188
June 25, 2026 6:25 PM

**Hide Tracking History**

**What Do USPS Tracking Statuses
Mean?**

**Text & Email Updates**



## USPS Tracking Plus®  ⌄

has been purchased for 9114901159815794562302. The tracking history is now available until April 22, 2027. To request a USPS Tracking Plus Statement, please enter an email address below.

*First Name

First

*Last Name

Last

*Email Address

user@domain.com

**Send Report**

## Product Information  ⌄

### See Less ⌃

Track Another Package

Enter tracking or barcode numbers

# Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

# EXHIBIT 36





EXHIBIT 37

**From:** **Daniel M. Holzman** dholzman@caskeyholzman.com
**Subject:** Re: MRepresentation Request – Final Phase of Wrongful Termination Arbitration
**Date:** July 25, 2025 at 21:20
**To:** Julio Ravada jravada@icloud.com

Hi Julio.

I appreciate the kind words and the fact you want to consider retaining my services, but I can't be retained when a lawyer has a lien on the first $750K.

I'm sure you will find an attorney willing to represent you under your terms.

Dan


Dan Holzman
Caskey & Holzman
24025 Park Sorrento
Suite 400
Calabasas, CA  91302
(818) 657-1070
(818) 297-1775 (e-fax)
www.laemploymentlawyers.com

EXHIBIT 38

**From:** **MacQueen, Grant** grant.macqueen@morganlewis.com
**Subject:** RE: Legal Invalidity of CSP Agreement and Related Misrepresentations
**Date:** August 4, 2025 at 12:50
**To:** Luna D'Sol jravada@icloud.com
**Cc:** Shaulson, Samuel S. sam.shaulson@morganlewis.com, Hale, Ashley J. ashley.hale@morganlewis.com

Ms. D'Sol:

We are in receipt of your August 4, 2025 letter, wherein you advise that you are "preparing a civil complaint for filing in Superior Court." Any such filing would be in breach of your arbitration agreement. On November 8, 2024, you received, by email, a link to the Bank of America Arbitration Policy. That email stated that you accepted the policy "by continuing your employment with Bank of America for thirty (30) days after the Bank distributes this Policy via this email." On November 22, 2024, the Bank sent a reminder email to employees who had not yet acknowledged receipt of the Arbitration Policy, including you. You thereafter continued working for Bank of America, thus agreeing to be bound by the Arbitration Policy. Accordingly, any filing in a forum other than JAMS would be in contravention of your agreement to arbitrate your threatened claims on an individual basis, and Bank of America reserves all rights to seek damages and other appropriate relief relating to any such breach by you by filing a complaint in court.

Regards,
Grant

### Grant MacQueen

**Morgan, Lewis & Bockius LLP**

101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6214 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
Assistant: Liz Salas | +1.212.309.6323 | liz.salas@morganlewis.com
grant.macqueen@morganlewis.com | www.morganlewis.com



**From:** Luna D'Sol <jravada@icloud.com>
**Sent:** Monday, August 4, 2025 11:05 AM
**To:** MacQueen, Grant <grant.macqueen@morganlewis.com>
**Cc:** Shaulson, Samuel S. <sam.shaulson@morganlewis.com>; Hale, Ashley J. <ashley.hale@morganlewis.com>
**Subject:** Legal Invalidity of CSP Agreement and Related Misrepresentations

[EXTERNAL EMAIL]

Dear Mr. MacQueen,

Please find attached my formal position regarding the disputed CSP documents and the Bank's ongoing conduct. In the absence of a valid agreement and given the pattern of discrimination, retaliation, and bad faith, I am preparing to initiate civil proceedings.

To avoid further escalation, the Bank may resolve this matter by remitting $909,000 with no allocation to Sack & Sack. No enforceable confidentiality agreement exists, and any attempt to rely on the contested CSP will be vigorously challenged.

This communication is sent **without prejudice**, and all rights are expressly reserved.

Sincerely,

CONFIDENTIALITY AND PRIVACY NOTICE: This email is from a law firm and may contain information that is confidential, privileged, and/or attorney work product. This email may also contain personal data, which we process in accordance with applicable data protection laws and our Privacy Policies and Notices. If you are not the intended recipient, you may not review, copy, or distribute this message. If you have received this email in error, please contact the sender immediately and delete all copies from your system.

Case 5:26-cv-03535-JGB-SP    Document 31    Filed 07/15/26    Page 227 of 228   Page
ID #:1060

# EXHIBIT 39

**From:** **MacQueen, Grant** grant.macqueen@morganlewis.com 📎
**Subject:** RE: Courtesy Notice - Opportunity to Raise Confidentiality Record
**Date:** August 15, 2025 at 09:58
**To:** Luna D'Sol jravada@icloud.com
**Cc:** Shaulson, Samuel S. sam.shaulson@morganlewis.com, Hale, Ashley J. ashley.hale@morganlewis.com

GM

Ms. D'Sol:

Our "procedural objection" to you filing a public complaint is that you are bound by an arbitration agreement that requires you to file concerns related to your employment solely at JAMS.  As we have said before, any filing in court would be in breach of your arbitration agreement (see August 4, 2025 email, attached).  If you file anywhere other than JAMS, Bank of America reserves all rights to seek damages and other appropriate relief, including the Bank's attorney fees, relating to any such breach by you by filing a complaint in court.

With that said, and given your offer to discuss any "disputes over confidentiality scope," we would also ask you to please share a copy of your draft complaint so that we can review it before you file it (whether that be at JAMS or in court).

Regards,
Grant

**Grant MacQueen**

**Morgan, Lewis & Bockius LLP**

101 Park Avenue | New York, NY 10178-0060
Direct: +1.212.309.6214 | Main: +1.212.309.6000 | Fax: +1.212.309.6001
Assistant: Liz Salas | +1.212.309.6323 | liz.salas@morganlewis.com
grant.macqueen@morganlewis.com | www.morganlewis.com

**GLOBAL IMPACT OF THE US ADMINISTRATION**
Visit our resource center ⊙