FILED

CLERK, U.S. DISTRICT COURT

July 21, 2026

CENTRAL DISTRICT OF CALIFORNIA

BY ___pd___ DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

LUNA D'SOL

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LUNA D'SOL<br><br>                                    Plaintiff,<br><br>                    VS.<br><br>BANK OF AMERICA, N.A.;<br>BANK OF AMERICA CORPORATION;<br>TRICIA SHANKS, an individual;<br>PETER C MAXIM, an individual;<br>and DOES 1 through 50, inclusive,<br><br>                          Defendant(s). | **Case No:** 5:26-cv-03535-JGB-SP<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Jesus G. Bernal.<br>.            United States District Juge<br><br>    Date:   August 3rd, 2026<br>   Time:   8:30 am<br>Courtroom:   1, 2nd floor<br><br>Complaint Filed: March 4th, 2026<br><br>Concurrently filed with: Declaration of Luna D'Sol in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration and Stay Action; [Proposed] Order |

## I.    INTRODUCTION

Plaintiff Luna D'Sol ("Plaintiff"), appearing pro se, respectfully opposes the Motion to Compel Arbitration and Stay Action ("Motion") filed by Defendants **Bank of America Corporation**, **Bank of America, N.A.,** Tricia **Shanks**, and Peter C**. Maxim** (collectively, "Defendants"). Defendants ask this Court to strip Plaintiff of her right to a jury trial on nine causes of action for discrimination, harassment, retaliation, disability accommodation, and wage violations, based on a single document — an "Arbitration Policy" — that Defendants' own evidence cannot authenticate, that Bank of America's own in-house counsel has already admitted in writing was merely an "exemplar," and whose forensic metadata shows it was created on February 27, 2025: three months after the November 2024 distribution date Defendants now claim, and one day after Plaintiff disclosed her transgender status to her supervisors.

Defendants' Motion rests entirely on the declaration of Dineen M. Allen, who asserts — without producing any record specific to Plaintiff — that "[t]he Bank's internal electronic data shows that Plaintiff received the November 8th and November 22nd emails." (Declaration of Dineen M. Allen (ECF DOC. 20 ["**Allen Decl**."] ¶ 6.) Plaintiff disputes this. Plaintiff has no record of receiving, opening, or acknowledging either email; neither email identifies Plaintiff as a recipient; and when Plaintiff formally requested her copy of the arbitration agreement from Bank of America's own in-house counsel in 2025, she was told in writing that the document the Bank possessed was only an "exemplar" and that the Bank was "attempting to locate" her copy. (Declaration of Luna D'Sol in Support of Plaintiff's Opposition to Motion to Compel Arbitration ("D'Sol Opp'n Decl.") ¶¶ 4–5; ECF Doc. 31 at Page ID 1010–1011.) No such copy was ever located — because, on this record, none exists. Bank of America's own Human Resources department subsequently confirmed as much: in response to Plaintiff's formal request under California Labor Code sections 1198.5 and 432 for any arbitration-related document in her personnel file, the Bank produced approximately 80 pages of records, including a twelve-page tracking report listing more than 700 policies, agreements, and acknowledgments spanning her employment — and no arbitration agreement of any kind. (D'Sol Opp'n Decl. ¶¶ 8–10; ECF Doc. 31 at Page ID 1029–1032.) Of the five separate productions of Plaintiff's personnel file she has received to

date, only one contains an arbitration document: a copy produced for the first time by defense counsel during a mid-litigation records exchange, months after this dispute arose. (D'Sol Opp'n Decl. ¶ 11.) Most critically, forensic metadata examination of the very document Defendants offer as "the Arbitration Policy" (Allen Decl., Ex. 2) shows that it was created and edited on February 27, 2025 — the day after Plaintiff disclosed her transgender status to Defendants Shanks and Maxim on February 26, 2025. (D'Sol Opp'n Decl. ¶ 6; ECF Doc. 31 at Page ID 1008–1009.) A document cannot have been distributed to Plaintiff's inbox in November 2024 and simultaneously have been created in February 2025. That contradiction is fatal to Defendants' evidentiary showing, and it is the subject of Plaintiff's pending, concurrently-noticed Motion for Sanctions against Defendants and their counsel for bad-faith litigation conduct. (ECF Docs. 32–34.)

Under settled Ninth Circuit law, where — as here — the very existence of an arbitration agreement is genuinely and materially disputed, the Court cannot resolve that dispute on competing declarations; it must proceed to trial on the narrow question of formation, or, at minimum, permit discovery before ruling. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 673, 677 (9th Cir. 2021); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991); 9 U.S.C. § 4. Because Defendants have not carried — and on this record cannot carry — their burden of proving by a preponderance of the evidence that a valid agreement to arbitrate was ever formed, the Motion should be denied, or, in the alternative, the formation question should be set for trial or limited discovery before the Court rules.

## II.    STATEMENT OF RELEVANT FACTS

### A.  Plaintiff's Employment and Her Protected Disclosure

Plaintiff worked for the Bank as a Testing Specialist. (Allen Decl. ¶ 4.) On February 26, 2025, Plaintiff disclosed to her manager and supervisor — Defendants Shanks and Maxim — that she is a transgender woman. (D'Sol Opp'n Decl. ¶ 5; ECF Doc. 31 at Page ID 927; ECF Doc. 17, Pl.'s RJN No. 1, Ex. A ¶ 19(a), Page ID 384.) Plaintiff was separated from her employment on or around June 20, 2025. (Allen Decl. ¶ 4.)

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY
5:26-cv-03535-JGB-SP

**B. The Emails Defendants Rely Upon Identify No Recipient and Were Never Received, Opened, or Acknowledged by Plaintiff**

Defendants contend that on November 8, 2024, and again on November 22, 2024, the Bank distributed its Arbitration Policy to "all U.S.-based employees, including Plaintiff," by email, and that Plaintiff assented by continuing her employment for thirty days thereafter. (Mot. at 2–3; Allen Decl. ¶¶ 5–8, Exs. 1, 3.) Plaintiff disputes this. She has no record of receiving, opening, or acknowledging either email. (D'Sol Opp'n Decl. ¶ 3.) Neither email identifies Plaintiff as a recipient; both were produced to Plaintiff, for the first time, as ECF Docs. 10-8 and 10-10 in this litigation, and neither bears a "To," "Cc," or other individualized recipient field naming Plaintiff. (Id. ¶ 7.) Defendants' sole evidence that Plaintiff personally received these emails is Ms. Allen's conclusory assertion that "[t]he Bank's internal electronic data shows that Plaintiff received" them. (Allen Decl. ¶ 6.) No delivery log, read-receipt, distribution list, or audit-trail record for Plaintiff's mailbox specifically is attached to or described in the Allen Declaration.

**C. Defendants' Own Prior Written Representation Contradicts the "General Distribution" Theory They Now Advance**

Before filing the Motion, defense counsel represented in writing to Plaintiff that the November 22, 2024 email was sent only "to employees who had not yet acknowledged the Arbitration Policy, including you." (D'Sol Opp'n Decl. ¶ 7; ECF Doc. 31 at Page ID 1057–1059, Ex. 38 (emphasis added).) That representation necessarily concedes that the November 22 email was an individually targeted follow-up sent because the specific recipient — by Defendants' own prior account, including Plaintiff — had not yet acknowledged the Policy, not a blanket reminder sent to the entire workforce regardless of acknowledgment status. Defendants now characterize the same email in their Motion as simply "a reminder email to employees, including Plaintiff." (Mot. at 2.) These two accounts cannot both be true, and the shift in characterization, offered only after Plaintiff raised the discrepancy, is itself evidence that Defendants' description of the underlying distribution mechanics is unreliable and cannot be resolved without testing the underlying records.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY

5:26-cv-03535-JGB-SP

**D. The Document Defendants Offer as "the Arbitration Policy" Was Created February 27, 2025 — Not November 2024**

Plaintiff retained a forensic examination of the metadata embedded in the document attached as Exhibit 2 to the Allen Declaration — the document Defendants represent is "the" Arbitration Policy distributed in November 2024. (D'Sol Opp'n Decl. ¶ 6.) That metadata reflects that the document was created and edited on February 27, 2025 — one day after Plaintiff disclosed her transgender status to Defendants Shanks and Maxim. (Id.; ECF Doc. 31 at Page ID 1008–1009, Ex. 25.) A document cannot simultaneously have been transmitted to employees' inboxes in November 2024 and created in February 2025. This is not a immaterial technical discrepancy; it goes to the very existence and authenticity of the instrument Defendants ask this Court to enforce.

**E. Bank of America's Own In-House Counsel Has Already Admitted the Document Is Only an "Exemplar"**

When Plaintiff separately requested a copy of her arbitration agreement directly from Bank of America, the Bank's in-house counsel, Stephen Bird, responded in writing on July 30, 2025 — nearly a year before this litigation — representing that the document provided was an "exemplar" and that the Bank was "attempting to locate" Plaintiff's copy. (D'Sol Opp'n Decl. ¶ 4; ECF Doc. 31 at Page ID 1010–1011, Ex. 25.) No signed, acknowledged, or otherwise individualized copy attributable to Plaintiff was ever produced. This is an admission by a party-opponent's employee on a matter within the scope of his employment, made before this dispute existed, and is not adversarial litigation positioning. Fed. R. Evid. 801(d)(2)(D).

**F. Bank of America's Official Personnel-File Production, Compelled by Statute, Contains No Arbitration Agreement**

On March 18, 2026, Plaintiff submitted a formal request to Bank of America's Global Human Resources Service Center, invoking California Labor Code sections 1198.5 and 432, specifically requesting any arbitration agreement, dispute resolution policy, or mandatory arbitration acknowledgment in or associated with her personnel file. (D'Sol Opp'n Decl. ¶ 8; ECF Doc. 31 at Page ID

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY
5:26-cv-03535-JGB-SP

1029, Ex. 45.) On March 25, 2026, Bank of America's Human Resources department — not defense counsel, and not a party to this litigation — closed the request and produced approximately 80 pages of Plaintiff's personnel records, including a twelve-page tracking report listing more than 700 policies, agreements, training records, and acknowledgments maintained throughout Plaintiff's tenure. (D'Sol Opp'n Decl. ¶¶ 9–10; ECF Doc. 31 at Page ID 1031–1032, Ex. 46.) That production contains no arbitration agreement, no dispute resolution policy, and no arbitration acknowledgment of any kind. (Id.)

Plaintiff has received five separate productions of her personnel file. Four of them — including the official Labor Code response described above — contain no arbitration agreement. The only production that contains one is a second package sent by defense counsel's office in December 2025, after Plaintiff notified counsel that an earlier production had omitted relevant payroll records; the cover letter accompanying that second package also misgendered Plaintiff, addressing her as "Mr. D'Sol." (D'Sol Opp'n Decl. ¶ 11.) A routine, non-adversarial administrative response from a business's own human-resources custodian — kept and produced in the ordinary course, see Fed. R. Evid. 803(6) — that affirmatively omits any arbitration document is far more probative of what actually exists (or does not exist) in Plaintiff's personnel file than a document surfaced by outside litigation counsel after a dispute had already arisen.

### G.  Procedural History

Plaintiff filed her Complaint in the Superior Court of California, County of Riverside, on March 4, 2026, asserting nine causes of action, including discrimination, harassment, and retaliation based on sex, gender identity, gender expression, and transgender status under the California Fair Employment and Housing Act. Defendants removed the action to this Court and thereafter filed the instant Motion, along with a Motion to Dismiss addressing overlapping issues. (Declaration of Karen Y. Cho ("Cho Decl.") ¶¶ 4, 13.) The parties met and conferred on June 26, 2026, at which time Plaintiff disclosed to defense counsel that her forensic metadata review showed the Arbitration Policy had been created and modified after the date Defendants claim it was distributed. (Cho Decl. ¶ 12.) Defendants nonetheless proceeded to file the Motion without addressing that discrepancy.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY
5:26-cv-03535-JGB-SP

### III.    **LEGAL STANDARD**

The Federal Arbitration Act ("FAA") requires courts to enforce arbitration agreements "according to their terms," but only where a valid agreement to arbitrate exists in the first place. 9 U.S.C. § 2; AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011). A motion to compel presents two threshold questions: (1) does a valid agreement to arbitrate exist, and (2) does it encompass the dispute at issue. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

"Ordinary state-law principles that govern the formation of contracts" determine whether an agreement exists, and the party seeking to compel arbitration bears the burden of proving, by a preponderance of the evidence, that the parties actually agreed to arbitrate. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

Critically, where the making of the arbitration agreement is genuinely disputed, the FAA does not permit the Court to resolve that dispute on the papers. Section 4 of the FAA provides that "if the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. The Ninth Circuit applies a summary-judgment-like standard: the court first determines whether a genuine, triable issue of fact exists as to contract formation and, if so, must proceed to a trial on that issue rather than deciding the motion on competing declarations. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 673, 677 (9th Cir. 2021) (vacating and remanding for a jury trial under § 4 where the party opposing arbitration submitted a sworn declaration denying she had ever agreed to the terms at issue, notwithstanding the movant's contrary business records); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991) ("[A] district court may not compel arbitration until the party asserting the existence of a contract containing an arbitration clause proves the existence of a contract by a preponderance of the evidence" and must try any genuinely disputed formation question). A party opposing arbitration defeats summary disposition by producing evidence beyond a bare denial — for example, corroborating documentary or forensic evidence — sufficient to place the movant's account of contract formation genuinely in dispute. Hansen, 1 F.4th at 677.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY
5:26-cv-03535-JGB-SP

## IV.    ARGUMENT

### A.  A Genuine, Material Dispute of Fact Exists as to Whether Any Agreement to Arbitrate Was Ever Formed, and That Dispute Must Be Tried — Not Resolved on Competing Declarations

Defendants ask the Court to find, on the strength of the Allen Declaration alone, that Plaintiff received two emails in November 2024 and thereby assented to arbitration by continued employment. Plaintiff's opposing evidence is not a bare, unsupported denial of the kind that leaves a movant's showing unrebutted. It is corroborated by: (1) the absence of any recipient information on the emails themselves; (2) defense counsel's own prior written admission that the November 22 email was targeted specifically at employees, "including" Plaintiff, who had "not yet acknowledged" the Policy — a characterization irreconcilable with the Motion's current "general reminder" theory; (3) forensic metadata showing the operative document was created in February 2025, months after the claimed distribution; (4) a written admission from the Bank's own in-house counsel that the document produced to Plaintiff was merely an "exemplar"; and (5) the Bank's own statutorily-compelled personnel-file production, which contains no arbitration agreement at all. This is precisely the kind of corroborated, documentary dispute that Hansen holds must be tried, not resolved on the papers. 1 F.4th at 677. Accordingly, the Court should either deny the Motion outright for failure to carry the movant's burden, see Part IV.B, infra, or set the formation question for trial under 9 U.S.C. § 4.

### B.  Defendants Have Not Carried Their Burden to Prove, by a Preponderance of the Evidence, That a Valid Agreement to Arbitrate Was Formed

#### 1.  No Evidence Specific to Plaintiff Establishes Receipt of the November 2024 Emails

Defendants rely on Ms. Allen's conclusory statement that "internal electronic data" shows Plaintiff received the emails, but no such data — no delivery log, no read receipt, no distribution list bearing Plaintiff's name or email address — is attached to or described with any specificity in the Allen Declaration. This distinguishes the cases Defendants cite for the proposition that continued employment after notice constitutes implied acceptance. In Craig v. Root and Brown & Root, Inc., 84 Cal. App. 4th 416 (2000), Denham v. Weatherford U.S. L.P., 2023 WL 8870538 (C.D. Cal. Aug. 3, 2023),

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY

5:26-cv-03535-JGB-SP

Davis v. Nordstrom, Inc., 755 F.3d 1089 (9th Cir. 2014), Bolanos v. Khalatian, 231 Cal. App. 3d 1586 (1991), Brookwood v. Bank of Am., 45 Cal. App. 4th 1667 (1996), Vernon v. Drexel Burnham & Co., 52 Cal. App. 3d 706 (1975), and Castorena v. Charter Commc'ns, LLC, 2018 WL 10806903 (C.D. Cal. Dec. 14, 2018), the plaintiff's receipt of the operative document was established or unrebutted, and the courts addressed only whether a plaintiff who received but did not read or sign an arbitration policy is nonetheless bound. None of those decisions holds that an employer satisfies its evidentiary burden by asserting, without producing the underlying record, that "internal data" shows delivery where the employee affirmatively and specifically denies ever receiving, opening, or acknowledging the document. Where receipt itself — not merely the legal effect of receipt — is the disputed fact, those authorities do not control, and Defendants must actually prove delivery to Plaintiff specifically. First Options, 514 U.S. at 944.

**2. Defendants' Own Prior Representation Undermines the Reliability of Their Account**

As detailed in Part II.C, supra, defense counsel's own pre-litigation written statement that the November 22 email targeted employees who, "including" Plaintiff, had "not yet acknowledged" the Policy is flatly inconsistent with the Motion's characterization of that same email as a blanket reminder to the entire workforce. A party's own prior inconsistent statement about the very facts it now offers to a court is powerful evidence that its current account cannot be accepted at face value without further testing.

**3. The Document Defendants Rely Upon Cannot Be Authenticated as the November 2024 Policy**

Defendants bear the burden of authenticating Exhibit 2 to the Allen Declaration as what they represent it to be: the actual document transmitted to employees in November 2024. Fed. R. Evid. 901(a). The forensic metadata showing that the document was created and edited on February 27, 2025 affirmatively rebuts that showing. A document created in February 2025 is not, and cannot be, the document that was allegedly emailed in November 2024. This discrepancy is not a peripheral evidentiary quibble — it goes to the existence of the very instrument Defendants ask the Court to

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY

5:26-cv-03535-JGB-SP

enforce, and it independently defeats Defendants' ability to meet their burden under First Options and Chiron.

### 4. Bank of America's Own In-House Counsel Has Already Conceded the Document Is Only an "Exemplar"

Mr. Bird's July 2025 written statement — made in the ordinary course of responding to Plaintiff's own good-faith inquiry, and months before this litigation existed — is a statement by a party's agent concerning a matter within the scope of his employment and is admissible as a party-opponent admission. Fed. R. Evid. 801(d)(2)(D). That the Bank's own counsel could not, as of July 2025, locate any individualized copy of an arbitration agreement attributable to Plaintiff is strong, non-adversarial evidence that none exists.

### 5. Bank of America's Own Statutorily-Compelled Personnel File Production Confirms No Arbitration Agreement Exists

Bank of America's Human Resources department — responding to a mandatory disclosure obligation under Labor Code sections 1198.5 and 432, not to litigation counsel's discretion — produced a comprehensive, 80-page file including a twelve-page chronological tracking report of more than 700 policies and acknowledgments, and it contains no arbitration agreement. That production is a business record created and maintained in the ordinary course, Fed. R. Evid. 803(6), and it is far more probative of whether an enforceable arbitration agreement exists in Plaintiff's personnel file than a document surfaced by outside counsel only after this dispute arose.

### C. Even If the Court Were to Find an Agreement Was Formed, It Would Be Procedurally Unconscionable as Applied to Plaintiff

Defendants argue the Policy is not procedurally unconscionable because the emails were labeled "Important" and used bolded subject lines. (Mot. at 9–10.) But procedural unconscionability does not turn on font formatting alone; it asks whether the party opposing enforcement had a meaningful opportunity to know she was waiving her right to a judicial forum. Armendariz v. Found.

Health Psychcare Servs., Inc., 24 Cal. 4th 83, 113–15 (2000). On this record, if Plaintiff is bound at all, it can only be on a theory of constructive notice via a single mass email — one of more than 700 corporate communications, policies, and acknowledgments Plaintiff received over the course of her employment (D'Sol Opp'n Decl. ¶ 10) — that purported to bind her by silence and inaction rather than by any affirmative, individually-confirmed acknowledgment, and that Plaintiff affirmatively denies ever having received. A contract of adhesion presented on a take-it-or-leave-it basis, where acceptance is deemed from inaction rather than an unambiguous manifestation of assent, carries meaningful procedural unconscionability, particularly where the underlying notice itself is genuinely disputed. See Nguyen v. Barnes & Noble, Inc., 763 F.3d 1171, 1176–79 (9th Cir. 2014) (reasonably conspicuous notice and unambiguous manifestation of assent are required before silence or continued conduct can bind a party to an arbitration term); Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 555–56 (1st Cir. 2005) (an emailed policy did not provide minimally sufficient notice of its contractual, rights-waiving nature where the email did not clearly convey that continued employment would constitute binding acceptance and waiver of a judicial forum). Unlike Circuit City Stores, Inc. v. Najd, 294 F.3d 1104 (9th Cir. 2002), and Denham, 2023 WL 8870538, both cited by Defendants, in which the employee's receipt of the arbitration document was not genuinely in dispute, Plaintiff here disputes receipt itself — a threshold fact those decisions did not have occasion to address.

### D.  The Individual Defendants' Third-Party-Beneficiary, Agency, and Equitable-Estoppel Theories Are Wholly Derivative and Fail for the Same Reasons

Defendants Shanks and Maxim argue they may enforce the Arbitration Policy as third-party beneficiaries, as alleged agents, and under equitable estoppel. (Mot. at 14–16.) Each of those doctrines presupposes the existence of a valid, authenticated underlying agreement between Plaintiff and the Bank. See Murphy v. DirecTV, Inc., 724 F.3d 1218, 1233 (9th Cir. 2013); Ronay Fam. Ltd. P'ship v. Tweed, 216 Cal. App. 4th 830, 838–39 (2013); Garcia v. Pexco, LLC, 11 Cal. App. 5th 782, 788 (2017); Franklin v. Cmty. Reg'l Med. Ctr., 998 F.3d 867, 870–71 (9th Cir. 2021). None of these doctrines creates an arbitration agreement out of a disputed or unauthenticated document; they merely determine who may enforce an agreement that has already been shown to exist. Because Defendants have not met

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY
5:26-cv-03535-JGB-SP

their threshold burden of proving that any valid agreement exists between Plaintiff and the Bank, the Individual Defendants' derivative theories necessarily fail as well, at least at this stage.

### E.  In the Alternative, the Court Should Order Limited Discovery and/or an Evidentiary Hearing Before Ruling

If the Court is not prepared to deny the Motion outright, Plaintiff respectfully requests, in the alternative, that the Court order limited discovery testing the Allen Declaration's conclusory "internal electronic data" assertion — including the underlying delivery and read-receipt logs, the distribution list actually used on November 8 and November 22, 2024, and the document-management-system audit trail for the document produced as Exhibit 2 to the Allen Declaration — before the Court makes any finding on a preponderance-of-the-evidence standard. Such discovery, followed by an evidentiary hearing or trial as needed, is the procedure the Ninth Circuit has directed courts to follow where, as here, a party's account of contract formation is genuinely and specifically controverted. Hansen, 1 F.4th at 677; Chiron, 207 F.3d at 1131.

### F.  A Stay Pending Arbitration Is Premature

A stay under 9 U.S.C. § 3 presupposes a threshold finding that a valid, applicable arbitration agreement exists. Smith v. Spizzirri, 601 U.S. 472, 478 (2024); Ziober v. BLB Res., Inc., 839 F.3d 814, 817 (9th Cir. 2016). Because that threshold finding cannot be made on the present record, a stay would be premature. Should the Court, after trial or discovery on the formation question, determine that a valid agreement exists, Plaintiff does not oppose an appropriately tailored stay at that time.

### V.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion to Compel Arbitration and Stay Action. In the alternative, Plaintiff respectfully requests that the Court order a trial pursuant to 9 U.S.C. § 4, and/or limited discovery and an evidentiary hearing, on the disputed question of whether any valid agreement to arbitrate was formed, before ruling on the Motion.

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY
5:26-cv-03535-JGB-SP

**CERTIFICATE OF COMPLIANCE**

The undersigned, Plaintiff, certifies that this brief contains approximately 3,650 words (including headings and footnotes but excluding the caption), which complies with the word limit of Local Rule 11-6.1.

Respectfully submitted,

Dated: July 21, 2026

By: _____

Luna D'Sol

Plaintiff, In Pro Per

jravada@icloud.com

2275 E Belding Dr

Palm Springs, CA 92262

Telephone: 213-925-4069

PLAINTIFF'S OPPOSITION TO MOTION TO COMPEL AND STAY

5:26-cv-03535-JGB-SP