LUNA D'SOL

Plaintiff, In Pro Per

Email Address: jravada@icloud.com

2275 E Belding Dr

Palm Springs CA 92262

Telephone: 213-925-4069

FILED

CLERK, U.S. DISTRICT COURT

July 22, 2026

CENTRAL DISTRICT OF CALIFORNIA

BY_____pd_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL<br><br>                              Plaintiff,<br><br>                   VS.<br><br>BANK OF AMERICA, N.A.;<br>BANK OF AMERICA CORPORATION;<br>TRICIA SHANKS, an individual;<br>PETER C MAXIM, an individual;<br>and DOES 1 through 50, inclusive,<br><br>                         Defendant(s). | **Case No:** 5:26-cv-03535-JGB-SP<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANTS AND THEIR COUNSEL FOR BAD FAIFTH PURSUANT TO THE COURT'S INHERENT POWER**<br><br>Judge: Hon. Jesus G. Bernal.<br>.          United States District Juge<br><br>  Date:   August 24rd, 2026<br>  Time:   8:30 am<br>Courtroom:  1, 2nd floor<br><br>Complaint Filed: March 4th, 2026<br><br>Concurrently filed with: Notice of Motion and Motion For Sanctions Against Defendants And Their Counsel For Bad Faifth Litigation Conduct Pursuant To The Courts Inherent Power; Declaration of Luna D'Sol; Proposed Order |

1

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................. 2

II. LEGAL STANDARD ......................................................................................... 2

III. ARGUMENT ..................................................................................................... 3

A. Defendants Fabricated an Arbitration Agreement the Same Day
They Acknowledged Plaintiff's Transgender Status ……………………………… 3
1. Purported Arbitration Email …………………….…………………………….. 3
2. Purported Company-Wide Arbitration Email ……………………………….. 3
3. Defendants and Counsel's Fatal Contradiction ……………………………… 3
4. Bank of America Resolved the Regulatory Request and
Confirmed No Arbitration Agreement Exists ……………………..………………… 4
5. Five Separate Productions of Plaintiff's Personnel Records ……………..…………. 4
B. Concealment, Alteration, and Misrepresentation of Material Facts
Concerning the Notices and Acknowledgments of Receipt ……………….………….. 5
C. Continued Reliance After Notice Demonstrates Bad Faith …………………………. 8
D. Morgan Lewis's Selective Corporate Identity ……………………………...…………. 8
E. Defendants' Counsel's Out-of-Context Citations Omitting
Material Language Concerning Sexual Harassment …………………...………………… 9
1. Defendants' Alteration of the "Because of Sex" Language in *Lyle* ……………...…… 9
2. Defendants' Omission of "Sexual" from the
"General Civility Code" Language …………………………………………………… 10
3. Defendants' Misquotation of 28 U.S.C. § 1441(b)(2) …………………………… 11
F. Inducement …………………………………………………………………………… 12
1. Mischaracterization of Bank of America Corporation
as a Sham Defendant ……………………………………...…………………….. 12
2. Conduct Concerning the Stipulated Order and Removal …...…………….…………… 12
3. Induced Delay and Withholding of Tracking Information ……………………….. 12
G. Meet and Confer ……………………………………………………………………. 13

IV. RECKLESSNESS COUPLED WITH HARASSMENT …………………………… 13
1. Plaintiff's Legal Name ……………………………………………………….. 13
2. Defendants Had Notice ………………………………………………………. 13
3. Absence of Any Litigation Purpose …………………………...………………… 13

4. Continued Deadnaming After Notice …………………..…………………………… 14

5. Counsel's Refusal to Correct the Filing ………………………………………… 14

6. Resulting Harm …………………………………………………………………. 15

V. DAMAGES

………………………………………………………………………………… 15

VI. CONCLUSION

…………………………………………………………………..……………….. 16

# TABLE OF AUTHORITIES

**Cases**

**Accardi v. Superior Court**
17 Cal.App.4th 341 (1993) ……………………………………………………………………… 11

**Amaprop Ltd. v. Indiabulls Financial Services Ltd.**
No. 10 Civ. 1853, 2011 WL 1002439 (S.D.N.Y. Mar. 16, 2011) ……………………………..…… 3

**Chambers v. NASCO, Inc.**
501 U.S. 32 (1991) ……………………………………………………….. 2, 3, 7, 8, 13, 15, 16

**Copeland v. Georgia Department of Corrections**
97 F.4th 766 (11th Cir. 2024) ……………………………………………………………… 14

**Cooter & Gell v. Hartmarx Corp.**
496 U.S. 384 (1990) ………………………………………………………………………….. 2

**Crawford Fitting Co. v. J.T. Gibbons, Inc.**
482 U.S. 437 (1987) ………………………………………………………………………… 15

**Fink v. Gomez.**
239 F.3d 989 (9th Cir. 2001) ……………………………………………………… 2, 8, 13, 14, 16

**Goodyear Tire & Rubber Co. v. Haeger**
581 U.S. 101 (2017) ………………………………………………………………………… 15

**Jones v. Department of Corrections & Rehabilitation**
152 Cal.App.4th 1367 (2007) ……………………………………………………………… 9, 10

**Lyle v. Warner Brothers Television Productions**
38 Cal.4th 264 (2006) ……………………………………………………………………….. 9

**Meritor Savings Bank, FSB v. Vinson**
477 U.S. 57 (1986) ………………………………………………………………………….. 9

**Miller v. Department of Corrections**
36 Cal.4th 446 (2005) ……………………………………………………………………….. 9

**Moser v. Bret Harte Union High School District**
366 F.Supp.2d 944 (E.D. Cal. 2005) ……………………………………...…………………… 7

**Oncale v. Sundowner Offshore Services, Inc.**
523 U.S. 75 (1998) ………………………………………………………….………………. 10

i

**People v. Zarazua**
85 Cal.App.5th 639 (2022) ……………………………………………………………… 14

**Ramirez v. Wong**
188 Cal.App.4th 1480 (2010) …………………………………………………………… 10

**Soliman v. Philip Morris, Inc.**
311 F.3d 966 (9th Cir. 2002) …………………………………………………………… 11

**Vedachalam v. Tata America International Corp.**
477 F.Supp.2d 1080 (N.D. Cal. 2007), aff'd,
339 F.App'x 701 (9th Cir. 2009) …………………………………………………….. 5

## Statutes

**28 U.S.C. § 1332** ………………………………………………………………….. 11

**28 U.S.C. § 1441(b)** …………………………………………;; ………………… 11

**28 U.S.C. § 1920** ……………………………………;…………………;;;……………………. 15

**California Labor Code § 432** ……………………………;;…;;;;…………;…………………….. 4

**California Labor Code § 1198.5** …………………………;;;;;;;;……………………………… 4

## Federal Rules

**Federal Rule of Civil Procedure 26(g)** …………………………;;;;;;;…………………….. 2

## California Rules

**California Rule of Professional Conduct 8.4(d)** ………;;;;;;;;;;;;;;;……………………… 14

**CACI No. 118** …………………………………………………………………. 14

I.      **INTRODUCTION**

Plaintiff commenced this action on March 4TH, 2026, by fling a Complaint in the Superior Court of California, County of Riverside, Palm Springs Courthouse, Dept PS2, against Bank of America Corporation ("BAC"), Bank of America, N.A. ("BANA"), Tricia Shanks, Peter Maxim and Doe I through\h 50, inclusive. This action was assigned Case No. CVPS2601396 asserting claims arising from Defendants' conduct.  ("Complaint") (ECF Doc. 17, pp. 6–37, Page ID #:378–409; Pl.'s RJN No. 1, Ex. A.)

This Motion does not seek to litigate the merits of Plaintiff's claims, commence litigation in this Court, or waive Plaintiff's objections to this Honorable Court's jurisdiction. Rather, Plaintiff respectfully seeks only the Court's exercise of its inherent authority and authority  under FRCP 26(g) to address litigation conduct that has undermined the integrity of these proceeding and has prejudiced Plaintiff. A federal court may resolve a motion for sanctions under its inherent authority notwithstanding a subsequent determination that subject matter jurisdiction is lacking. *See Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–98 (1990).

**Defendants create an arbitration agreement the same day Defendants acknowledged Plaintiff's disclosure that she is a transgender woman** (Declaration of Luna D'Sol 'in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration Agreement' FILED 7/21/2025, ¶¶ 3-5; ECF Doc. 31 at Page ID 927, 929, 938-939; Pl's RJN No. 1, Exhibit A)

II.     **LEGAL STANDARD**

Federal courts possess inherent authority to sanction conduct that abuses the judicial process. (Chambers v. NASCO, Inc. (1991) 501 U.S. 32, 43–46.) This authority exists independently of Rule 11 and 28 U.S.C. section 1927 and reaches conduct that threatens the integrity of judicial proceedings. (Id.)

In the Ninth Circuit, sanctions under the Court's inherent power require a finding of bad faith or conduct tantamount to bad faith; recklessness combined with an improper purpose is sufficient. (Fink v. Gomez (9th Cir. 2001) 239 F.3d 989, 992–994.) A finding of bad faith does not require that the legal and factual basis for a party's position be totally frivolous.

2

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS
5:26-cv-03535-JGB-SP

III.    **ARGUMENT**

**A. DEFENDANTS FABRICATED AN ARBITRATION AGREEMENT**

**THE SAME DAY THEY ACKNOWLEDGE PLAINTIFF'S TRANSGENDER STATUS**

The arbitration agreement was created the same day Defendants acknowledged Plaintiff's disclosure that she is a transgender woman (Declaration of Luna D'Sol 'in Support of Plaintiff's Opposition to Defendants' Motion to Compel Arbitration Agreement' FILED 7/21/2025, ¶¶ 3-5; ECF Doc. 31 at Page ID 927, 929, 938-939)

1. **Purported Arbitration Email.** One day after plaintiff disclosed her transgender status, defendants created the purported arbitration document, which they later sought to enforce by misrepresenting it as a November 2024 record. (**D'Sol Decl. ¶¶ 11–20; ECF Doc. 31 at PAGE IDs 927, 1008–1011, 1057–1059; ECF Docs. 10-8, 10-10; ECF Doc. 17, Ex. A ¶ 19(a), PAGE ID 384; Exs. 45–46.).** Reliance on the court's inherent authority to sanction bad-faith conduct is appropriate where much of the bad-faith conduct is beyond the reach of the Federal Rules of Civil Procedure. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991).

2. **Purported Company-Wide Arbitration Email**. Defendants' evidence supports only the existence of an Arbitration Policy. Moreover, Defendants' own evidence fails to establish that the purported arbitration materials were ever transmitted to Plaintiff, received by Plaintiff, opened by Plaintiff, or acknowledged by Plaintiff. (**D'Sol Decl. ¶¶ 11–20; ECF Docs. 10-8, 10-10; ECF Doc. 17, Ex. A ¶ 19(a), PAGE ID 384; ECF Doc. 31 at PAGE IDs 927, 1008–1011, 1057–1059; Exs. 45–46.)**. Courts have not hesitated to invoke their inherent authority where a litigant misrepresents arbitration materials to the court. See *Amaprop Ltd. v. Indiabulls Financial Services Ltd.*, No. 10 Civ. 1853, 2011 WL 1002439, at *___ (S.D.N.Y. Mar. 16, 2011) (finding respondents had submitted a brief containing a "misleading redaction" of the arbitration clause and had proceeded in "the utmost bad faith").

3. **Defendants and Counsel's Fatal Contradiction** – Defendants' current litigation position directly contradicts their prior written representation. Before this litigation, Defendants asserted that the November 22, 2024 email was sent only to employees who "had not yet acknowledged receipt" of the Arbitration Policy, including Plaintiff. They now characterize the same email as a

3

general reminder sent to all employees. Despite these inconsistent representations, Defendants have never produced the underlying tracking records or acknowledgment data necessary to establish that Plaintiff received, opened, or acknowledged the purported Arbitration Policy. **(D'Sol Decl. ¶¶ 15–20; ECF Docs. 10-8, 10-10; ECF Doc. 31 at PAGE ID 1057–1059; Exs. 45–46.). On March 18, 2026,** Plaintiff made a formal request to Bank of America Global Human Resource invoking records under California Labor Code sections 1198.5 and 432 specifically of any arbitration agreement, dispute resolution policy, or mandatory arbitration acknowledgment contained in or associated with Plaintiff's personnel file. (D'Sol Decl. ¶17, Exhibit 45).

4. **Bank of America Resolved the Regulatory Request and Confirmed No Arbitration Agreement Exists.** On March 25, 2026, Bank of America closed Service Request No. 15674835 and issued its resolution by producing approximately 80 pages of Plaintiff's personnel records, including, among other documents, Plaintiff's Confidentiality Agreement, Preservation of Property Agreement, Official Offer Agreement, Proprietary Rights and Inventions Agreement, Employment Agreement, and a twelve-page tracking report listing more than 700 employment-related policies, agreements, training records, and acknowledgments maintained since 2015. The tracking report identified numerous entries, including the Enterprise Change Policy, Associate Investment Policy, Local Information Security Policies, Credit Card Agreement, and Authentication Associate Acknowledgment, all organized chronologically. **Despite Plaintiff's express request under California Labor Code sections 1198.5 and 432 for any arbitration agreement, dispute resolution agreement, arbitration policy, or acknowledgment, Bank of America produced no such document or record .** (D'Sol Decl. ¶17, Exhibit 45).

5. Plaintiff has received five separate productions of her personnel records. One production was transmitted by Defendants' counsel on December 5, 2025. After Plaintiff notified Ms. Antonopoulos that the production omitted three payroll periods directly relevant to the claims asserted in this action, Ms. Antonopoulos transmitted a second package on December 15, 2025. That second package included the previously omitted payroll records and, for the first time, an arbitration agreement. The accompanying cover letter also addressed Plaintiff as "Mr. D'Sol."

The remaining four personnel-record productions were provided directly by Bank of America—two before Ms. Antonopoulos's production and two afterward—and none of those four productions contained an arbitration agreement.

The March 26th, 2026, production of documents from Defendants ask the Court to infer that Plaintiff received and assented to an arbitration agreement based on a document that purports to have been sent to "All U.S.-based employees," yet contains no recipient information whatsoever. The exhibit does not identify Plaintiff as a recipient, does not establish that Plaintiff received the email, and contains no manifestation of Plaintiff's assent. As in *Vedachalam*, the Court should decline to infer mutual assent where the record does not establish the existence of an enforceable agreement to arbitrate. *Vedachalam v. Tata America Int'l Corp.*, 477 F. Supp. 2d 1080, 1088–89 (N.D. Cal. 2007), aff'd, 339 F. App'x 701, 702–03 (9th Cir. 2009).

### B. Concealment, Alteration and Misrepresentation of Material Facts Concerning the Notices and Acknowledgments of Receipt (NARs)

The record demonstrates that the Notices and Acknowledgments of Receipt ("NARs") transmitted by Defendants on June 3, 2026, were not the same PDF documents attached to Defendants' May 26, 2026 email, despite bearing identical filenames. To investigate this discrepancy, Plaintiff retained Kevin H. Cohen, President of Data Triage Technologies LLC, a computer forensics expert with more than twenty years of experience in digital forensics, electronic discovery, and expert testimony ([ECF Doc. 20, pp. 3-11, **PAGES ID 488-496**], [D'Sol Decl., ¶7]). Mr. Cohen conducted a forensic examination utilizing accepted forensic methodologies, including MD5 hash analysis, internal metadata analysis, and DomainKeys Identified Mail ("DKIM") verification. (Id.).

Mr. Cohen examined two emails transmitted by defense counsel: the May 26, 2026 email containing the original set of four NAR each attached to an <u>unsigned Proof of Service</u> from Defendants' Counsel's office [ECF Doc. 31, pp. 32-43, Exhibits 7-10] and the June 3, 2026 email [Id., p. 50, Exhibit 13], which appeared to attach the original May 26, 2026 email including what purported to be the original May 26th, 2026, set of original NAR, but it was not because this time each NAR attached a <u>signed Proof of Service</u>.  [Id., pp.51-62 Exhibits 14-17], The attached new set of NAR PDF documents bore identical filenames as the original version, Mr. Cohen determined that the documents were not

5

identical [ECF Doc. 20 at PAGES ID: 495-496]. His forensic examination established that the PDF files contained different MD5 hash values, demonstrating that they were different electronic files rather than identical copies of the same documents (Id., Declaration of Kevin Cohen and attached Exhibit B).

Mr. Cohen further confirmed through DKIM verification that neither email had been altered during transmission, thereby eliminating email corruption or transmission error as an explanation for the discrepancies [ECF Doc. 20 at PAGE ID 496].  The report further explained that attachments to an email should not change unless the attachments themselves have been altered or replaced (Id.). Plaintiff then contends that NAR sent on June 3rd 2026, were "**altered or replaced**" (emphasis added) by Ms. Antonopoulos and / or her office. (Id.).

One day before transmitting the June 3, 2026 email containing the altered or replaced NARs**,** on June 2, 2026, during a meet-and-confer call, Defendants' Counsel acknowledged that her secretary had inadvertently failed to sign each Proof of Service,  and after the call Plaintiff memorialized the conversation **(**ECF Doc. 31, p. 45, **Page ID #:878, Ex. 11.;** Concurrent Declaration of Luna D'Sol ["D'Sol Decl."], ¶4**)**, no objections were received.  Rather than correcting the acknowledged deficiency, on June 3, 2026, Ms. Antonopoulos transmitted an email to Plaintiff with a signed Proof of Service attached to each NAR claiming that this set of NAR with signed Proof of Service was the original from May 26th, 2026, contradicting a forensic report that labeled them as 'altered or replaced." [ECF Doc. 20 at PAGE ID: 496]. Plaintiff informed Ms. Antonopoulos that Plaintiff considered the purported service defective because the documents contained statements executed under penalty of perjury attesting to acts that had not occurred **(ECF Doc. 31, pp. 4-5, ¶ 8, Page ID #:837-838, Ex. 11.)**

Notably, Plaintiff took affirmative steps to cure the deficiencies, on June 2, 2026, Plaintiff prepared and transmitted an entirely new set of NAR's execution, which were sent via United States Postal Service Certified Mail under Tracking Nos. **9402611898765528098329** and **9402611898765528098350**. (Id.; D'Sol Decl. ¶5).

Defendants did not sign the two packages with correct NARS (Id.), and on June 25, 2026, Defendant BANA filed a Notice of Removal (ECF Doc 1). On June 26, 2026, the California Superior Court docket, for the first time, reflected that BANA had been served. **(ECF Doc. 31, p. 163, Page ID**

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS
5:26-cv-03535-JGB-SP

**#:996, Ex. 21.)** (*See* also a true and correct conformed copy of the only operative Proof of Service for BANA **in ECF Doc. 17, pp. 100–101, Page ID #:472–473; Pl.'s RJN No. 7, Ex. G.)**

Thus, when Defendants filed the Notice of Removal on June 25, 2026, the official State Court record did not reflect that BANA had been served (Id.), Defendants **affirmatively represented** to this honorable Court that BANA had been served (ECF Doc. 1, p. 9, ¶ 3, PAGE ID 9) via a defective NAR service (ECF Doc. 1-3, pp. 1-3, PAGE ID  74-76) that contained an **altered** Proof of Service (ECF Doc. 20 at PAGE ID: 496) and rejected by Plaintiff as **deficient** because it contained **representations under penalty of perjury that were materially inaccurate.** (ECF Doc. 31, pp. 4 & 6, ¶¶ 8 & 12, Page ID #:837 & 839, Exs. 11 & 19),

The Court's inherent authority is not limited to misconduct occurring in open court and may be exercised whenever litigation conduct undermines the truth-seeking function of the judicial process. (Chambers V. NASCO, INC (1991), 501 U.S. at pp. 43–46.). Plaintiff contends that Defendants and their counsel continued to advance specific factual representations after being placed on notice of their claimed inaccuracy and after receiving documentary evidence disputing them, and that such continued reliance supports the inference of improper purpose. Courts within the Ninth Circuit have specifically imposed sanctions where counsel persisted in factual misrepresentations after being placed on notice of inaccuracies. See Moser v. Bret Harte Union High School Dist., 366 F.Supp.2d 944 (E.D. Cal. 2005) (sanctions warranted where party ignored warnings that factual representations were inaccurate and failed to correct the record).

Plaintiff contends that Defendants' timing was not coincidental. Had Defendants waited until May 26, 2026 when the state court record reflected proper service upon BANA [ECF No. 31, p. 163, Ex. 21.], Defendants would have been required to address the June 15, 2026 Stipulated Order **(ECF Doc. 17, pp. 94–97, Page ID #:466–469; Pl.'s RJN No. 6, Ex. F.)** governing Defendant Shanks' appearance and June 25, 2026 response deadline [Id.], a procedural circumstance bearing directly on their subsequent removal arguments concerning unanimity and the number of answering defendants. [ECF Doc. 1, p. 8, n.1].

Defendants made an affirmative misrepresentation to this Court on a matter bearing directly on the procedural basis for removal. A material misrepresentation to the court is conduct the

7

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS
5:26-cv-03535-JGB-SP

court's inherent authority is designed to address. (*Chambers v. NASCO, Inc.* (1991) 501 U.S. 32, 44–46 [inherent power reaches fraud upon the court and conduct that abuses the judicial process]; *Fink v. Gomez* (9th Cir. 2001) 239 F.3d 989, 992–994 [recklessness combined with improper purpose suffices].)

### C. Continued Reliance After Notice Demonstrates Bad Faith

On June 25, 2026, before the parties' Local Rule 7-3 meet and confer, Plaintiff provided Defendants with a detailed written explanation identifying the factual and legal deficiencies Plaintiff contended existed in the Notice of Removal. Among other things, Plaintiff advised Defendants that the Notice of Removal relied upon disputed Notices and Acknowledgments of Receipt, challenged the accuracy of the accompanying Proofs of Service, identified the forensic evidence concerning the electronic documents, and cited the State Court docket reflecting that Bank of America, N.A. had not yet been processed as served as of the date of removal. (ECF Doc. 31., Exhibit 30, PAGE ID 1033-1034) Plaintiff also identified additional legal authorities Plaintiff believed were inconsistent with Defendants' removal arguments and requested that Defendants stipulate to remand the action and reimburse Plaintiff's resulting costs.

Defendants declined to withdraw or correct the challenged factual representations and instead continued relying upon them throughout this litigation. Plaintiff contends that Defendants' continued reliance on those factual representations after receiving specific notice of the  inaccuracies supports an inference of bad faith or, at minimum, reckless conduct coupled with an improper purpose under *Fink v. Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001).

### D. Morgan Lewis's Selective Corporate Identity

The records produced in response to Plaintiff's request also included Plaintiff's Employment Agreement, which expressly provides that it was entered into "[i]n consideration of Plaintiff's employment by **Bank of America Corporation**" (D'Sol Decl. ¶17, Exhibit 45). Despite producing that agreement, Defendants now contend in this action that **Bank of America, N.A.** was Plaintiff's employer and characterize **Bank of America Corporation** as sham defendant.  Another material inconsistency

8

concerns answering Defendant Peter Maxim, a California citizen. Defendants removed this action while asserting that Maxim's consent to removal was unnecessary (ECFC Doc. 1, p. 9, n.). Yet, on the same day Defendants removed this action, answering Defendant Peter Maxim actively participated in these proceedings by filing a document and initiating a CM/ECF transaction.  (D'Sol Decl. ¶ 26, Exhibit 49).

### E. Defendants' Counsel citing out of context explicitly omitting sexual harassment

| DEFENDANTS' BRRIEF | ACTUAL AUTHORITY |
|---|---|
| ..and create a work environment that qualifies as hostile or abusive to employees **because of [their protected characteristic]."** Lyle v. Warner Brothers Television Productions, 38 Cal.4th 264, 278-79 (2006) (emphasis in original). "[A] workplace may give rise to liability when it | ...[ (Aguilar) ], relying upon Harris v. Forklift Systems, Inc. (1993) 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 [ (Harris ) ].)" (Miller, supra, 36 Cal.4th at p. 462, 30 Cal.Rptr.3d 797, 115 P.3d 77, italics added.) As the high court explained, a workplace may give rise to liability when it |
| **"is permeated with 'discriminatory intimidation, ridicule, and insult,'[citation], that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."** | **"is permeated with 'discriminatory [sex-based] intimidation, ridicule, and insult,' [citation], that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment** |
| Id. This requirement "is a crucial limitation that prevents [] harassment law from being expanded into a 'general civility code.'" Jones v. Dep't of Corrections & Rehabilitation, 152 Cal.App.4th 1367, 1377 (2007); see also Ramirez v. Wong, 188 Cal.App.4th 1480, 1488 (2010) (affirming… | .]' " (Harris, supra, 510 U.S. at p. 21, 114 S.Ct. 367.) Under Title VII, a hostile work environment sexual harassment claim requires a plaintiff employee to show she was subjected to sexual advances, conduct, or comments that were (1) unwelcome (see Meritor, supra, 477 U.S. at p. 68, 106 S.Ct.... |
| **ECF Doc. 1, p. 17, ¶30, PAGE ID 17** | **Lyle v. Warner Brothers 38 Cal.4th 264** |

As Table 1 illustrates, Defendants generalized Lyle's "because of sex" into a vague "[their protected characteristic]" bracket rather than acknowledging that Plaintiff's theory specifically requires proof of sex/transgender-status-based motivation.

///

///

///

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS
5:26-cv-03535-JGB-SP

| DEFENDANTS' BRRIEF | ACTUAL AUTHORITY |
|---|---|
| workplace may give rise to liability when it "is permeated with 'discriminatory . . . intimidation, ridicule, and insult,' [citation], that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Id. This requirement<br><br>**"is a crucial limitation that prevents [] harassment law from being expanded into a 'general civility code.'"**<br><br>Jones v. Dep't of Corrections & Rehabilitation, 152 Cal.App.4th 1367, 1377 (2007); see also Ramirez v. Wong, 188 Cal.App.4th 1480, 1488 (2010) (affirming dismissal following successful demurrer to sexual harassment claim because the alleged conduct was neither severe nor pervasive); ...<br><br>**ECF Doc. 1, p. 17, ¶30, PAGE ID 17** | ..and there is no Title VII violation.' " (Aguilar v. Avis Rent A Car System, Inc., supra, 21 Cal.4th at p. 130, 87 Cal.Rptr.2d 132, 980 P.2d 846.) The requirement that the conduct be sufficiently severe or pervasive to create a working environment a reasonable person would find hostile or abusive<br><br>**is a crucial limitation that prevents sexual harassment law from being expanded into a "general civility code."**<br><br>Oncale v. Sundowner Offshore Services, Inc. (1998) 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201.) The conduct must be extreme: " 'simple teasing,' [citation] offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and...<br><br>**Jones v. Department of Corrections, June 14, 2007, 152 Cal.App.4th 1367** |

Defendants' quotation deletes the word "sexual" outright from the actual holding in Jones v. Dep't of Corrections & Rehabilitation, 152 Cal.App.4th 1367, 1377 (2007), and left blank brackets with no ellipsis or substitute term, which states that the severe-or-pervasive standard "is a crucial limitation that prevents **sexual** harassment law from being expanded into a 'general civility code.'" In place of that word, Defendants insert an empty bracket. The result converts a limitation the court applied specifically to sexual harassment claims into an unqualified limitation on harassment claims of any kind — the category into which Defendants seek to place Plaintiff's claims here.

///

///

///

| DEFENDANTS' BRIEF | ACTUL AUTHORITY |
|---|---|
| "…Morris, Inc., 311 F.3d 966, 971 (9th Cir. 2002). Thus, the inclusion of 'Doe' defendants in Plaintiff's Complaint has no effect on the ability to remove. 6. Maxim is A Sham Defendant, so His Citizenship Is Not Considered for Removal Purposes. 22. Under § 1441(b), actions are removable if,<br><br>**'none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.'**<br><br>28 U.S.C. § 1441(b). Plaintiff has attempted to prevent removal by improperly naming Maxim as an individual defendant…."<br><br>**(ECF Doc. 1.p. 13, ¶22)** | "…removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded. (2) A civil action otherwise **removable solely on the basis of the jurisdiction under section 1332(a)** of this title may not be removed if any<br><br>**"of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. …"**<br><br>(c) Joinder of Federal law claims and State law claims.--(1) If a civil action includes--(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and(B) a claim not within the original or supplemental jurisdiction of…..<br><br>**Soliman v. Philip Morris, Inc., 311 F.3d 966 (9th Cir. 2002)** |

As Table 3 illustrates, the real statute reads: removal is barred "if **any** of the parties in interest properly joined and served as defendants is a citizen of the State... brought." Defendants' brief flips this into an affirmative paraphrase — "actions are removable if 'none of the parties... is a citizen'" — and puts it in quotation marks as if it's the literal statutory text, attributing it directly to "28 U.S.C. § 1441(b)." The word "none" appears nowhere in the actual statute. That's not selective quotation of a longer passage — it's a paraphrase dressed up as a direct quote and cited to the Code section itself,

The statute's forum-defendant bar only applies to removals "solely **on the basis of the jurisdiction under section 1332(a)"** — i.e., diversity-only cases. Defendants' quote drops that qualifier too, which matters sine Defendants argument of removal rests on sham defendants to excuse the lack of consent of answering defendants.

As California courts have explained, being treated differently because Plaintiff is a transgender woman is sufficient to show that gender was a substantial factor in the discrimination and that, had the plaintiff been a man, she would not have been treated in the same manner. *Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 348. Defendants' repeated omission of material qualifying language

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS
5:26-cv-03535-JGB-SP

from multiple authorities, each omission favoring Defendants' position, supports Plaintiff's contention that these were not isolated citation errors, but part of a pattern of litigation conducts **tantamount to bad faith**. Such conduct undermines the Court's ability to evaluate the governing law accurately and further supports the imposition of sanctions under the Court's inherent authority.

## F. Inducement

1. In their Notice of Removal, Defendants, through counsel, contend that Bank of America, N.A. ("BANA") employed Plaintiff at all relevant times and, on that basis, mischaracterize Bank of America Corporation ("BAC") as a sham defendant. [ECF Doc. 1, p. 3, ¶ 3.]. BAC is not a sham defendant, an Employment Agreement signed by Plaintiff on 10/5/2012 first reads: "In Consideration of my employment by Bank of America Corporation […] (hereinafter "The Company")." (D'Sol Decl. ¶18-19, Exhibits. 45-46)

2. **Defendants' Counsel intention to deceive Honorable Judge Manuel Bustamante** – Defendants filed and proposed through a stipulation agreement the removal of default status to Shanks and agreeing to file an Answer by June 25, 2026. Honorable Judge Manuel Bustamante approve Defendant's proposal on June 15, 2026 **(ECF Doc. 17, pp. 94–97, Page ID #:466–469; Pl.'s RJN No. 6, Ex. F.)**, all parties received the signed order on June 17, 2026 and later that same day, Defendants informed Plaintiff that they were moving the case to federal court, and processed the transfer on the same day they were required to comply with their part of the agreement.

3. **Defendants Induced Delay, Withheld Information, and further Bad faith strategies** On May 30, 2026, Defendants withheld the tracking information associated with the initial service of the Notice of Removal documents on Plaintiff, claiming that no tracking number existed. It was later established that a tracking number did exist and that the package had been returned to Defendants before May 30, 2026. On July 2, 2026, Defendants again withheld and refused to provide the tracking information associated with service of their Motion to Compel Arbitration, despite Plaintiff's request. Instead of providing the requested information, Defendants emailed Plaintiff stating that they believed it was unnecessary to continue expending time on the ongoing litigation and proposed that the parties redirect their efforts toward settlement,

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS

requesting that Plaintiff prepare and submit a settlement demand. Defendants thereafter sent several additional responses but continued to withhold the requested tracking information.

### G. MEET AND CONFER

Plaintiff made repeated, good-faith efforts to resolve the issues presented in this Motion without Court intervention. [ECF Doc. 31, pp. 12-13, ¶¶ 34-36, Exhibits 29-30] Before filing this Motion, Plaintiff repeatedly notified Defendants' counsel of the factual inaccuracies and evidentiary concerns actually give me the identified herein, including the disputed Notices and Acknowledgments of Receipt, the Proofs of Service, the purported arbitration documents, Plaintiff's legal name, and other material issues. Plaintiff provided supporting documentation, identified the specific defects, requested corrective action, and invited Defendants' counsel to discuss the matters in an effort to avoid unnecessary motion practice. (See also D'Sol Decl. ¶21; ECF Doc. 31, pp. 209-210, PAGE ID 1042-1043).

Defendants declined to correct the challenged representations as evident by their lack of amending the issues discussed throughout the parties' meet-and-confer sessions.

## IV.    RECKLESSNESS COUPLED WITH HARRASSMENT

1. **Legal Name**: Plaintiff's legal name is Luna D'Sol

2. **Defendants had notice**: Defendants and their Counsel have known of Plaintiff's current legal name and gender since August 1st. 2025, yet they disclosed Plaintiff's deadname publicly despite its irrelevance. [ECF Doc. 10-7, p. 2, ¶4].

3. **No litigation purposes**: Defendants publicly identified Plaintiff by her former legal name despite knowing her legal name is Luna D'Sol. The former legal name was not necessary to identify Plaintiff, distinguish the parties, or resolve any issue before the Court. After Plaintiff requested that Defendants correct the filing, Defendants declined and continued relying upon it. Gratuitous, irrelevant disclosure of a transgender litigant's former legal name, maintained after notice that it serves no litigation purpose, is precisely the kind of reckless conduct coupled with an improper purpose that supports sanctions under the Court's inherent authority. *Fink v.*

13

*Gomez*, 239 F.3d 989, 992–94 (9th Cir. 2001); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991) (inherent power reaches conduct that abuses the judicial process).

4. ***Continued Deadnaming After Notice.*** Plaintiff informed Defendants that her legal name is Luna D'Sol, explained that public disclosure of her former legal name served no litigation purpose, and requested the filing be corrected. Defendants declined and continued relying on the filing. California courts have expressly held that "[p]arties are to be treated with respect, courtesy, and dignity — including the use of preferred pronouns," and that failure to do so "offends the administration of justice." *People v. Zarazua*, 85 Cal.App.5th 639 (2022); *see also* CACI No. 118 (directing that "attorneys and courts should take affirmative steps to ensure that they are using correct personal pronouns" to accord transgender and nonbinary litigants "full legal recognition and equal treatment under the law" and to protect their "dignity and privacy"). The same principle applies with equal force to a litigant's legal name. Federal courts have likewise recognized that intentional deadnaming and misgendering may constitute discriminatory or harassing conduct. *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766 (11th Cir. 2024) (vacating summary judgment on a hostile work environment claim based in part on repeated misgendering of a transgender employee). Defendants' decision to continue the challenged conduct after receiving notice of its irrelevance and harmful effect supports a finding of bad-faith litigation conduct and independently reflects conduct "prejudicial to the administration of justice" under California Rule of Professional Conduct 8.4(d).

5. ***Opposing Counsel's Refusal to Correct the Filing Also Confirms Bad Faith.*** A hallmark of sanctionable bad faith is an attorney's continuation of an abusive course of conduct after being explicitly placed on notice of its harmful and improper nature. *Fink*, 239 F.3d at 992–94. On July 9, 2026, Plaintiff met and conferred with defense counsel and identified the harm caused by the public disclosure of her former legal name, requesting that the filing be amended or corrected. (D'Sol Decl. ¶ 21.) Defendants stated that they "did not believe any legal basis required amendment of the declaration" and questioned the harm resulting from the disclosure. (D'Sol Decl. ¶ 21; Ex. 33, ECF Doc. 31, pp. 209–210, Page ID 1042–1043.) Defendants indicated they would review the issue and consider Plaintiff's request but have taken no

14

corrective action to date. This refusal forecloses any defense of accidental oversight or clerical mistake: Defendants were squarely on notice of the harm and the absence of any litigation purpose for the disclosure, and chose to take no action.

6. ***Resulting Harm Demonstrates the Consequences of Defendants' Continued Conduct***. After Defendants declined to correct the filing, Plaintiff experienced the very harm she had warned would result. On July 11, 2026, while attending a friend's gathering, an individual addressed Plaintiff by her former legal name in front of others; Plaintiff had never disclosed that name to anyone present. The incident caused embarrassment and humiliation and illustrates the real-world consequences of Defendants' continued disclosure after notice of the harm it would cause. (D'Sol Decl. ¶ 22.)

## V.    <u>DAMAGES</u>

As a direct result of Defendants' misconduct, Plaintiff has incurred expenses from third parties caused by Defendants' misconduct. The Court's inherent power to sanction bad-faith litigation conduct authorizes full compensatory recovery of such expenses, unconstrained by the narrower statutory ceilings that apply to ordinary cost-shifting under 28 U.S.C. §1920. Chambers v. NASCO, Inc., 501 U.S. 32, 45–46, 55–58 (1991); Goodyear Tire & Rubber Co. v. Haeger, 581 U.S. 101, 108–09 (2017) (inherent-power compensatory sanctions limited only by 'but-for' causation between the misconduct and the expense). The $30-per-day witness-fee limit recognized in Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 439, 445 (1987), governs taxation of ordinary costs under Fed. R. Civ. P. 54(d) and 28 U.S.C. §1920 — a different and narrower remedy that does not constrain the Court's inherent authority to compensate Plaintiff for the forensic examination and copying expenses Defendants' fabrication of documents made necessary.

These expenses total **$2,990.00** are costs that Plaintiff would not have incurred absent the litigation misconduct

**Calculation:**

Digital forensic analysis: **$2,062.00 (ECF Doc. 31, pp. 165-167)**

15

Supplemental forensic analysis: **$413.00 (ECF Doc.31, pp. 169-171)**

Chambers copies: **$311.21 (D'Sol Decl. ¶23 Exhibit 47)**

Chambers copies: **$212.18 (D'Sol Decl. ¶23 Exhibit 48)**

**Total out-of-pocket costs: $2,990.0**

## VI.    CONCLUSION

Viewed in the totality of the circumstances, Defendants' conduct reflects far more than isolated mistakes or routine litigation disputes. The record presented in this Motion demonstrates repeated factual misrepresentations, concealment of material information, alteration or replacement of litigation documents, continued reliance upon disputed factual representations after receiving notice of their inaccuracies, selective quotation of legal authorities that omitted material qualifying language, and litigation conduct directed at Plaintiff that served no legitimate litigation purpose. Collectively, these acts support a finding of conduct **tantamount to bad faith** under *Fink v. Gomez*, 239 F.3d 989, 992-94 (9th Cir. 2001), and warrant the exercise of this Court's inherent authority under *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991).

Accordingly, Plaintiff respectfully requests that the Court impose appropriate sanctions sufficient to compensate Plaintiff for the expenses incurred as a direct result of Defendants' litigation misconduct, deter similar conduct in these proceedings, and preserve the integrity of the judicial process.

*[CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.2: The undersigned, Plaintiff, certifies that this brief contains [5386] words ("including headings, footnotes and quotations but excluding the caption, the table of contents [and] the table of authorities"), which complies with the word limit of Local Rule 11-6.1.]*

Respectfully submitted:

**Dated: July 22ⁿᵈ, 2026**            By: _____

**Luna D'Sol**
Plaintiff, In Pro Per

MEMORANDUM ISO PLAINTIFF'S MOTION FOR SANCTIONS
5:26-cv-03535-JGB-SP