MORGAN, LEWIS & BOCKIUS LLP
Karen Y. Cho, Bar No. 274810
karen.cho@morganlewis.com
300 South Grand Avenue
Twenty-Second Floor
Los Angeles, CA  90071-3132
Tel:   +1.213.612.2500
Fax:   +1.213.612.2501

MORGAN, LEWIS & BOCKIUS LLP
Nicole L. Antonopoulos, Bar No. 306882
nicole.antonopoulos@morganlewis.com
1400 Page Mill Road
Palo Alto, CA  94304-1124
Tel:   +1.650.843.4000
Fax:   +1.650.843.4001

Attorneys for Defendants
BANK OF AMERICA, N.A., BANK OF
AMERICA CORPORATION, TRICIA
SHANKS, and PETER C. MAXIM

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL,<br><br>                    Plaintiff,<br><br>          vs.<br><br>BANK OF AMERICA, N.A.; BANK OF AMERICA CORPORATION; TRICIA SHANKS, an individual; and PETER C. MAXIM, an individual;  and DOES 1 through 50, inclusive,<br><br>                    Defendants. | Case No. 5:26-cv-03535-JGB-SP<br><br>Hon. Jesus G. Bernal<br><br>**DEFENDANTS' AMENDED REPLY IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY ACTION**<br><br>Date:        August 3, 2026<br>Time:        9:00 a.m.<br>Courtroom: 1, 2nd Floor |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

Case No. 5:26-cv-03535-JGB-SP

DEFENDANTS' AMENDED REPLY ISO MOTION TO COMPEL ARBITRATION

DB2/ 652988539.4

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................... 1

I.    LEGAL ARGUMENT ........................................................................................... 2

    A.    Plaintiff Concedes this Motion Should Be Granted by Failing to File a Timely Opposition. ................................................................. 2

    B.    The Court Should Grant Defendants' Motion on the Merits. ............... 4

        1.    The Arbitration Policy Covers Plaintiff's Claims and Is Not Substantively Unconscionable. ............................................. 4

        2.    Defendants Have Established that an Arbitration Agreement Exists Between Plaintiff and Defendants. .............. 4

        3.    There is No Disputed Material Fact that Plaintiff Agreed to the Arbitration Policy. .......................................................... 6

            a.    Plaintiff Does Not Dispute That She Received the Email Notice of the Arbitration Agreement. .................... 6

            b.    Plaintiff Has No Admissible Evidence that the Arbitration Agreement Does Not Exist. .......................... 7

        4.    Plaintiff Is Not Entitled to an Evidentiary Hearing on Defendants' Motion. ............................................................. 10

        5.    The Arbitration Policy Is Not Procedurally Unconscionable. ................................................................... 10

        6.    A Stay Pending Arbitration Is Appropriate. ........................... 12

II.   CONCLUSION ..................................................................................................... 12

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

i    Case No. 5:26-cv-03535-JGB-SP

DEFENDANTS' AMENDED REPLY ISO MOTION TO COMPEL ARBITRATION

DB2/ 652988539.4

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ardente v. Shanley*,
2010 WL 546485 (N.D. Cal. Feb. 9, 2010)..........................................................................4

*Campbell v. Gen. Dynamics Gov. Sys. Corp.*,
407 F.3d 546 (1st Cir. 2005) ...............................................................................11, 12

*Carrillo v. Sodexo, Inc.*,
2021 WL 2980594 (C.D. Cal. Jan. 8, 2021).......................................................................9

*Castorena v. Charter Commc'ns, LLC*,
2018 WL 10806903 (C.D. Cal. Dec. 14, 2018) ........................................5, 7, 11

*Circuit City Stores, Inc. v. Najd*,
294 F.3d 1104 (9th Cir. 2002)............................................................................12

*Craig v. Brown & Root, Inc.*,
84 Cal. App. 4th 416 (2000)................................................................................5

*Denham v. Weatherford U.S. L.P.*,
2023 WL 8870538 (C.D. Cal. Aug. 3, 2023)......................................................11

*Derderian v. Sw. & Pac. Specialty Fin., Inc.*,
673 F. App'x 736 (9th Cir. 2016) .......................................................................6

*Folck v. Lennar Corp.*,
2018 WL 1726617 (S.D. Cal. Apr. 10, 2018) .....................................................9

*Ghazail v. Moran*,
46 F.3d 52 (9th Cir. 1995), *overruled on other grounds by Lacey v.
Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) ..................................................3

*Hale v. Lee*,
2022 WL 18359098 (C.D. Cal. Nov. 30, 2022)..................................................2

*Hann v. Int'l Bhd. of Magicians IBM*,
2023 WL 5504963 (C.D. Cal. May 19, 2023)......................................................3

*Hansen v. LMB Mortg. Servs., Inc.*,
1 F.4th 667 (9th Cir. 2021)................................................................................10

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

ii

Case No. 5:26-cv-03535-JGB-SP

DEFENDANTS' AMENDED REPLY ISO MOTION TO COMPEL ARBITRATION

DB2/ 652988539.4

*Holandez v. Ent., LLC*,
    2023 WL 2559209 (C.D. Cal. Jan. 5, 2023) ..................................................... 3

*McMahon v. Gamez*,
    2017 WL 2380163 (C.D. Cal. May 31, 2017) ................................................... 3

*Nguyen v. Barnes & Noble, Inc.*,
    763 F.3d 1171 (9th Cir. 2014) .......................................................................... 11

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
    55 Cal. 4th 223 (2012) ........................................................................................ 6

*Preciado v. Los Angeles Unified School Dist.*,
    2014 WL 559372 (C.D. Cal. Feb. 12, 2014) ..................................................... 3

*Starace v. Lexington L. Firm*,
    2019 WL 2642555 (E.D. Cal. June 27, 2019) ................................................... 6

*Torre v. R&L Carriers Shared Servs., LLC*,
    2023 WL 6190829 (C.D. Cal. July 31, 2023) ................................................... 3

*U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.*,
    576 F.3d 1040 (9th Cir. 2009) ........................................................................... 6

*Vernon v. Drexel Burnham & Co.*,
    52 Cal. App. 3d 706 (1975) ............................................................................... 7

*Williams v. Wells Fargo Bank, N.A.*,
    2016 WL 10988573 (C.D. Cal. July 26, 2016) ................................................. 2

**Other Authorities**

Fed. R. Evid. 408 ...................................................................................................... 9

Fed. R. Evid. 602 ...................................................................................................... 8

Fed. R. Evid. 701 ...................................................................................................... 8

Fed. R. Evid. 702 ...................................................................................................... 8

Fed. R. Evid. 803(6) ................................................................................................. 5

Fed. R. Evid. 901 ...................................................................................................... 8

Local Rule 7-9 ........................................................................................................... 2

Local Rule 7-12 ...................................................................................... 1, 2, 3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

Case No. 5:26-cv-03535-JGB-SP

DB2/ 652988539.4 DEFENDANTS' AMENDED REPLY ISO MOTION TO COMPEL ARBITRATION

## I.    INTRODUCTION

In violation of this Court's Local Rules, Plaintiff Luna D'Sol failed to file a timely Opposition to Defendants' Motion to Compel Arbitration. Instead, Plaintiff decided to file an improper *ex parte* application to continue the hearing on Defendants' Motion, claiming that Defendants did not properly serve the motion papers because they were allegedly "blown away in the wind." As demonstrated in Defendants' opposition to Plaintiff's *ex parte* application, Defendants properly served the motion papers, and Plaintiff's own conduct confirms that she received them. Indeed, just one business day after service, Plaintiff emailed Defendants' counsel to meet and confer regarding the very documents that Defendants filed in support of Defendants' Motion. Accordingly, pursuant to Local Rule 7-12, this Court should exercise its discretion to deem Plaintiff's failure to timely oppose the Motion as consent to granting of Defendants' Motion.

Moreover, despite continuing to insist that she did not receive Defendants' motion papers, Plaintiff untimely filed her opposition more than one week after it was due. Plaintiff's untimely filing does not excuse her failure to comply with the Court's rules. In any event, even if the Court decides to consider Plaintiff's late opposition, Defendants' Motion should still be granted because the evidence establishes that a valid and binding arbitration exists between the Parties.

Plaintiff does not dispute that the Arbitration Policy covers her claims. Instead, the bulk of Plaintiff's untimely opposition is devoted to her contention that she did not agree to the Arbitration Policy. Even though the Bank implemented a nationwide rollout of the Arbitration Policy in November 2024, Plaintiff has taken the unbelievable view that the Arbitration Policy never existed in November 2024 and the Bank only created the Arbitration Policy in response to Plaintiff's disclosure that she was transgender months later. Plaintiff has no evidence to support her speculative theory, which contradicts actual evidence of the nationwide rollout of the Policy.

In addition, Plaintiff must establish that the Arbitration Policy is *both* procedurally and substantively unconscionable to avoid the agreement. She does neither. Indeed, Plaintiff does not dispute that the Arbitration Policy is not substantively unconscionable. And her attempt to demonstrate procedural unconscionability also fails. Plaintiff received notice of the Arbitration Policy multiple times in November 2024 by email, and the emails distributing the Arbitration Policy were clear and concise.

Because Plaintiff received notice of the Arbitration Policy and continued her employment for more than six months after receiving such notice, Plaintiff agreed to the Arbitration Policy. As a result, and given she cannot demonstrate procedural and substantive unconscionability, the Court should grant Defendants' Motion and require Plaintiff to honor her agreement to arbitrate.

## I. <u>LEGAL ARGUMENT</u>

### A. <u>Plaintiff Concedes this Motion Should Be Granted by Failing to File a Timely Opposition.</u>

Pursuant to this Court's Local Rule 7-9, Plaintiff's Opposition was due to be filed on July 13, 2026 (21 days before the hearing date of August 3, 2026). Despite this deadline, Plaintiff filed an opposition *over a week late* on July 21. By failing to file a timely opposition, this Court has discretion to find that Plaintiff concedes the Motion. *See* Local Rule 7-12 ("The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion . . ."); *see Hale v. Lee,* 2022 WL 18359098, at *1 (C.D. Cal. Nov. 30, 2022) (overruling the plaintiff's objection that Plaintiff never received the motion where there was evidence that the motion was mailed to the plaintiff's designated address and finding "failure to oppose the Motion is a sufficient reason to grant it"); *Williams v. Wells Fargo Bank, N.A.,* 2016 WL 10988573, at *1 (C.D. Cal. July 26, 2016) (exercising its discretion to dismiss Plaintiff's Complaint under Local Rule 7-12 for failure to oppose).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

2

Case No. 5:26-cv-03535-JGB-SP

DB2/ 652988539.4   DEFENDANTS' AMENDED REPLY ISO MOTION TO COMPEL ARBITRATION

This Court, as well as numerous other courts, have routinely applied the well-established rule that a party's failure to oppose a motion within the deadline may be deemed consent to the requested relief, including where the non-opposing party is proceeding pro se. *See Hann v. Int'l Bhd. of Magicians IBM,* 2023 WL 5504963, at *5 (C.D. Cal. May 19, 2023) (Bernal J.) (stating that "even 'pro se litigants,' like Mr. Hann, are 'bound by the rules of procedure,' and Plaintiff has failed to follow them" and deeming "Plaintiff's belated filing of opposing papers consent to the granting of the Motions"); *McMahon v. Gamez,* 2017 WL 2380163, at *2 (C.D. Cal. May 31, 2017) (Bernal J.) (finding the pro se plaintiff's "failure (despite numerous opportunities) to file any response means that the Court should deem the dismissal motion unopposed under Local Rule 7–12 and grant the requested relief"); *Holandez v. Ent., LLC*, 2023 WL 2559209, at *3 (C.D. Cal. Jan. 5, 2023) (Bernal J.) (deeming "Defendants' filing of opposing papers 16 days late consent to the granting of the Motion"); *Preciado v. Los Angeles Unified School Dist.*, 2014 WL 559372, at *2 (C.D. Cal. Feb. 12, 2014) (accepting the magistrate judge's report and recommendation and granting a motion to dismiss pursuant to Local Rule 7-12 when the pro se plaintiff failed to file an opposition); *Ghazail v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896 (9th Cir. 2012) (affirming a district court decision, which granted a motion to dismiss when the pro se plaintiff failed to file an opposition, and explaining that despite construing pleadings liberally in pro se plaintiffs' favor, such litigants must follow the rules of procedure); *Torre v. R&L Carriers Shared Servs., LLC*, 2023 WL 6190829, at *3 (C.D. Cal. July 31, 2023) ("deem[ing] Plaintiff's belated filing of opposing papers consent to the granting of the Motion").

The circumstances here provide an especially compelling basis for the Court to exercise that discretion. Plaintiff did not merely fail to meet the opposition deadline; rather, Plaintiff elected not to file a timely opposition and instead sought to shift blame for her failure onto Defendants by asserting that Defendants did not

properly serve the motion papers on her, causing them to be "blown away in the wind." But, as discussed in Defendants' opposition to Plaintiff's *ex parte* application to continue the hearing on Defendants' Motion, Plaintiff did in fact receive proper service of those documents – she actually received them in two separate ways (both by FedEx and e-mail), and proving just that, she sent an email to Defendants' counsel just one business day after service of Defendants' Motion seeking to meet and confer over those very same papers. Plaintiff's failure to timely oppose the Motion therefore cannot be attributed to lack of notice or defective service. Instead, the record demonstrates that Plaintiff had actual notice of the Motion and deliberately chose not to file a timely opposition. The Court's inquiry should end here.

## B.     The Court Should Grant Defendants' Motion on the Merits.

Setting aside Plaintiff's failure to timely oppose the Motion, the Court should grant Defendants' Motion based on the arguments and evidence presented in their Motion. Defendants have met their burden to show that Plaintiff is subject to a binding arbitration agreement pursuant to the Arbitration Policy, that the Arbitration Policy is valid and enforceable, and that the Arbitration Policy encompasses the claims at issue in this case.

### 1.     The Arbitration Policy Covers Plaintiff's Claims and Is Not Substantively Unconscionable.

As discussed in Defendants' Motion, the Arbitration Policy covers Plaintiff's claims, and the Arbitration Policy is not substantively unconscionable. Plaintiff does not respond to these arguments, and her failure to respond should be deemed a concession to their merit. *Ardente v. Shanley*, 2010 WL 546485, at *6 (N.D. Cal. Feb. 9, 2010).

### 2.     Defendants Have Established that an Arbitration Agreement Exists Between Plaintiff and Defendants.

Plaintiff does not dispute the well-established case law that an employee may impliedly consent to an arbitration agreement by receiving notice of an arbitration agreement and continuing employment. *See* Opp. at 8. Instead, Plaintiff attempts to

distinguish Defendants' case authority by asserting that those cases "addressed only whether a plaintiff who received but did not read or sign arbitration policy is nonetheless bound." *Id*. at 9. Plaintiff's characterization is inaccurate. Neither *Craig v. Brown & Root, Inc.,* 84 Cal. App. 4th 416 (2000) nor *Castorena v. Charter Commc'ns, LLC,* 2018 WL 10806903 (C.D. Cal. Dec. 14, 2018) was limited to circumstances in which the employee merely failed to read or sign the arbitration agreement. To the contrary, both courts enforced arbitration based on the employees' continued employment even where the employees affirmatively disputed receiving notice of the agreement. *See Craig,* 84 Cal. App. 4th at 420 (found implied-in-fact agreement based on the employee's continued employment even though the plaintiff submitted declaration stating "I have carefully read [the memorandum and brochure] and can affirmatively state that I did not receive any of these documents at my residence in Baldwin Park during the years 1993 or 1994."); *Castorena,* 2018 WL 10806903, at *1 (found that the plaintiffs agreed to arbitration when they failed opt out and continued their employment even though the plaintiffs "den[ied] that they received or read the Solution Channel Announcement email").

Plaintiff also argues that Defendants failed to meet their evidentiary burden of establishing that Plaintiff agreed to the Arbitration Policy. Contrary to Plaintiff's contention, Defendants offered ample persuasive evidence that Plaintiff received notice of the Arbitration Policy. As explained in Ms. Allen's declaration, the Bank implemented a nationwide rollout of its Arbitration Policy on November 8, 2024, and the Bank's business records maintained in the ordinary course of business confirm that notice of the Arbitration Policy was sent to Plaintiff's company email address as part of that rollout. Ms. Allen is a qualified custodian of records with personal knowledge of the Bank's Arbitration Policy, the procedures used to distribute the policy to employees, and the electronic business records documenting that distribution. Accordingly, her declaration authenticates those records and establishes that they are admissible under the business records exception to the hearsay rule. Fed.

R. Evid. 803(6); *see e.g., Derderian v. Sw. & Pac. Specialty Fin., Inc.*, 673 F. App'x 736, 738 (9th Cir. 2016) ("declaration was based on information she learned by personally reviewing her employer's business records, and the substance of that declaration could be admitted at trial under the business-records exception to hearsay"); *U-Haul Int'l, Inc. v. Lumbermens Mut. Cas. Co.,* 576 F.3d 1040, 1044 (9th Cir. 2009) (finding declarant was "was qualified to testify about the business practices and procedures for" data in his company's computerized database); *Starace v. Lexington L. Firm,* 2019 WL 2642555, at \*4 (E.D. Cal. June 27, 2019) (finding business records declaration sufficient for motion to compel arbitration where the declarant was a "qualified witness," the records were made at the time of the incident recorded, and that the records were kept in the course of regular business).

### 3. There is No Disputed Material Fact that Plaintiff Agreed to the Arbitration Policy.

#### a. Plaintiff Does Not Dispute That She Received the Email Notice of the Arbitration Agreement.

Plaintiff has failed to rebut Defendants' evidence establishing that she received notice of the Arbitration Policy and assented to its terms by continuing her employment for more than thirty days thereafter. In opposition, Plaintiff declares that she "did not sign any arbitration agreement" and she has "no record of receiving, opening, or acknowledging" the Arbitration Policy. ECF No. 42 ¶ 2. Those assertions do not create a genuine dispute as to whether Plaintiff agreed to arbitrate.

First, Plaintiff's statement that she did not sign the Arbitration Policy is legally irrelevant. As explained in Defendants' Motion, a signed agreement is not necessary to establish that Plaintiff agreed to arbitrate. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012) ("A signed agreement is not necessary, however, and a party's acceptance may be implied in fact.") Here, Plaintiff accepted the Arbitration Policy by continuing her employment after receiving notice of its terms.

Second, Plaintiff's assertion that she has "no record" of receiving, opening, or

acknowledging the Arbitration Policy does not establish that she did not receive notice. At most, it reflects that Plaintiff does not recall receiving the email or did not retain a copy of it. By contrast, Defendants have produced a business records declaration establishing that notice of the Arbitration Policy was sent to Plaintiff's company email address as part of the nationwide rollout, and the Bank also posted the Arbitration Policy on the Bank's intranet site. Plaintiff's assertion does not negate that evidence.

Moreover, even assuming Plaintiff did not read the Arbitration Policy after receiving notice, she cannot avoid the Arbitration Policy's contractual obligations by claiming she failed to read it. Motion at 7; *see e.g., Vernon v. Drexel Burnham & Co.*, 52 Cal. App. 3d 706, 714 (1975); *Castorena,* 2018 WL 10806903, at *4.

Plaintiff claims that Ms. Allen's declaration is unreliable because she states that the Bank sent the "reminder email to all active U.S.-based employees" including Plaintiff, but Defendants' counsel previously told Plaintiff in a pre-litigation statement that this reminder email was only sent to employees, including Plaintiff, who had not yet acknowledged the Arbitration Policy. Plaintiff's contention is immaterial because there is no dispute that Plaintiff did not acknowledge the Arbitration Policy and thus received the reminder email. Indeed, Plaintiff agreed to be bound by the terms of the Arbitration Policy simply by continuing her employment with the Bank and irrespective of whether she formally acknowledged the Arbitration Policy. In any event, Ms. Allen's supplemental declaration clarifies that the "reminder email" was only sent to those employees who had not yet acknowledged the Arbitration Policy, which includes Plaintiff.

### b. Plaintiff Has No Admissible Evidence that the Arbitration Agreement Does Not Exist.

Unable to rebut Defendants' evidence that the Bank distributed its Arbitration Policy to employees nationwide in November 2024, Plaintiff instead relies on speculation and unsupported inferences to argue that the Arbitration Policy was fabricated after the fact. Plaintiff's arguments are frivolous.

First, Plaintiff incredibly claims to possess "forensic metadata" purportedly showing that the Arbitration Policy was created months later, on February 27, 2025 – one day after Plaintiff allegedly disclosed her transgender status to management. *See* Opp. at 9. In support, Plaintiff relies on a self-generated "Forensic Metadata Analysis Report" that she attached to her declaration in support of her Motion to Remand. ECF No. 31, Page ID 1008-1009. Plaintiff states that she "personally extracted and reviewed the native file properties and embedded digital metadata" of the Arbitration Policy by using a "standard command-line utility functions within the macOS Terminal application to read the unaltered iManage and PDF data blocks embedded directly inside the document," and generated the report from those results. ECF No. 31, Page ID 86.

However, Plaintiff fails to establish that the purported metadata is remotely reliable or relevant in any way. The "Forensic Metadata Analysis Report" is a document Plaintiff created containing her own interpretations of purported metadata, including the alleged creation date (2025-02-27 13:09:54 UTC), modification date (2025-07-28 19:04:13 (UTC-04:00)), and creator application/producer (PDFium). ECF No. 31, Page ID 919, 1008-1009. Plaintiff provides no evidence that she possesses the specialized knowledge, training, or experience necessary to conduct a forensic metadata examination or interpret the results. Nor does she identify any reliable methodology, explain how the metadata was extracted, establish that the metadata accurately reflects the history of the document, or authenticate the report through competent testimony. Her opinions therefore lack foundation, constitute improper lay opinion, and concern technical matters requiring expert testimony. *See* Fed. R. Evid. 602, 701, 702, 901. Simply labeling a document a "Forensic Metadata Analysis Report" does not transform Plaintiff's personal interpretation into admissible forensic evidence. ECF No. 31, p. 105-106. Plaintiff's speculation cannot overcome the Bank's authenticated business records and sworn testimony establishing the nationwide rollout of the Arbitration Policy.

Plaintiff also argues that the Arbitration Policy does not exist because BANA's in-house counsel referred to the Arbitration Policy as an "exemplar" during pre-litigation settlement communications with Plaintiff. However, statements made during settlement negotiations are generally inadmissible to prove the validity of a disputed factual issue. *See* Fed. R. Evid. 408. In any event, in-house's counsel's characterization of a document during pre-litigation settlement discussions has no bearing on the admissible evidence before the Court. The existence of the Arbitration Policy is established through the Bank's sworn declaration – not informal settlement communications.

Plaintiff also suggests that the Arbitration Policy could not have existed because it was not produced in response to four of her five requests for her personnel file. Plaintiff cites no case authority supporting the proposition that an employer forfeits its right to compel arbitration merely because an arbitration agreement was not included in a personnel file production. To the contrary, courts have rejected this exact argument. *See e.g., Carrillo v. Sodexo, Inc.,* 2021 WL 2980594, at *2 (C.D. Cal. Jan. 8, 2021) (compelling arbitration and rejecting argument that failure to produce arbitration agreement both when plaintiff's counsel requested his personnel documents and when the plaintiff's counsel directly requested any arbitration agreement was inconsistent with right to arbitrate); *Folck v. Lennar Corp.,* 2018 WL 1726617, at *4 (S.D. Cal. Apr. 10, 2018) (finding that the plaintiff "presents no argument as to how Defendants acted inconsistently with a right to compel arbitration" where Defendants failed to produce an arbitration agreement in response to request for personnel file).

Finally, Plaintiff asserts that her personnel file contains a "twelve-page tracking report listing more than 700 policies, agreements, and acknowledgments spanning her employment," yet no arbitration agreement appears on that report. However, Plaintiff mischaracterizes this report. As explained in Ms. Allen's supplemental declaration, this "tracking report" is Plaintiff's transcript reflecting

trainings and other documents that were provided to Plaintiff through, or which Plaintiff registered for and/or completed through the myLearning platform. Allen Supp. Decl. ¶7. The Bank did not provide the Arbitration Policy through the myLearning platform, and the distribution and any acknowledgement of the Arbitration Policy are not recorded on the transcript from myLearning. *Id*. Accordingly, the fact that the Arbitration Policy is not identified on this report provides no basis to question the existence of the Arbitration Policy.

In short, Plaintiff's arguments rely on speculation, unsupported assumptions, and mischaracterization of the record – not competent evidence. None creates a genuine factual dispute sufficient to overcome the Bank's sworn testimony and authenticated business records establishing that Plaintiff received notice of the Arbitration Policy and assented to it through her continued employment.

### 4.    Plaintiff Is Not Entitled to an Evidentiary Hearing on Defendants' Motion.

Plaintiff has not made the required showing to justify her request for discovery and/or an evidentiary hearing on Defendants' Motion. Plaintiff relies on *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667 (9th Cir. 2021), but *Hansen* is inapposite. There, the Ninth Circuit explained, "once a district court concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id*. at 672. Here, no such factual dispute exists. As discussed above, Plaintiff's conjecture regarding the Arbitration Policy is not sufficient to rebut Defendants' evidence that Plaintiff received notice of the Arbitration Policy, and she accepted the Arbitration Policy by continuing her employment for thirty days thereafter. As such, Plaintiff has no admissible evidence to demonstrate a dispute of material fact that warrants additional discovery and/or an evidentiary hearing on Defendants' Motion.

### 5.    The Arbitration Policy Is Not Procedurally Unconscionable.

Plaintiff argues that the Arbitration Policy is procedurally unconscionable

because it was sent "via a single mass email – one of more than 700 corporate communications, policies, and acknowledgements Plaintiff received over the course of her employment . . . that purported to bind her by silence and inaction rather than by any affirmative, individually-confirmed acknowledgement, and that Plaintiff affirmatively denies ever having received." Opp. at 11. Plaintiff's argument lacks merit. Courts routinely find that it is sufficient notice for an arbitration agreement to be sent via email. *See e.g., Denham v. Weatherford U.S. L.P.,* 2023 WL 8870538, at *3 (C.D. Cal. Aug. 3, 2023); *Castorena,* 2018 WL 10806903, at *4.

Plaintiff relies on *Nguyen v. Barnes & Noble, Inc.,* 763 F.3d 1171 (9th Cir. 2014), but that case is distinguishable. *Nguyen* addressed the enforceability of a "browsewrap" agreement, in which a website merely posts terms of use and purports to bind users through their continued use of the website. *Id.* at 1176. Because browsewrap agreements may involve terms that are "buried at the bottom of a page or tucked away in obscure corners of the website," the Ninth Circuit focused on whether the website provided reasonably conspicuous notice of the contract's terms. *Id.* at 1177. Those concerns are wholly absent here. The Arbitration Policy was not embedded within a website or hidden among unrelated terms. Rather, the evidence shows that the Bank distributed the Arbitration Policy in a clear, simple, and standalone email with the conspicuous subject line, "Important: Binding Arbitration Policy."

Plaintiff's reliance on *Campbell v. Gen. Dynamics Gov. Sys. Corp.*, 407 F.3d 546 (1st Cir. 2005), a First Circuit decision that is not binding on this Court, is equally misplaced. There, the First Circuit held that an employer's companywide email announcing the implementation of a new dispute resolution policy failed to provide "minimally sufficient notice" of a contractual modification. 407 F.3d at 557, 559. The First Circuit noted several flaws with the employers' email, including that the employer's email failed to mention several crucial facts about the policy: that it contained an arbitration to arbitrate and contractually binding terms; treated

continued employment as an acceptance of those terms; and resulted in a waiver of an employee's access to a judicial forum. *Id*. at 547-48, 557-58. Notably, the First Circuit did *not* hold that an employer may never provide adequate notice through a companywide email. To the contrary, the First Circuit expressly recognized that "we easily can envision circumstances in which a straightforward e-mail, explicitly delineating an arbitration agreement, would be appropriate." *Id*. at 558. That is precisely what occurred here. The Bank's email clearly informed employees, including Plaintiff, of the "Important: Binding Arbitration Policy," that the Arbitration Policy "creates mutual, legal obligations for both Bank of America and its employees," and that employees would be deemed to have agreed to the Arbitration Policy by continuing their employment for thirty days after the Bank distributed the Policy via email. Thus, even under *Campbell,* the notice provided here was more than sufficient.

In any event, both procedural *and* substantive unconscionability must be shown in order to invalidate an arbitration agreement. *See* Motion at 9; *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002). She does neither. And as discussed above, she does not even attempt to argue that the Arbitration Policy is substantively unconscionable.

### 6. A Stay Pending Arbitration Is Appropriate.

If the Court determines that a valid agreement exists, Plaintiff "does not oppose an appropriately tailored stay at that time."

## II. CONCLUSION

For the reasons set forth above, as well as in Defendants' moving papers, the Court should grant Defendants' Motion in its entirety.

Dated: July 30, 2026

MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Karen Cho*

Karen Y. Cho
Nicole L. Antonopoulos

Attorneys for Defendants

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

12                                    Case No. 5:26-cv-03535-JGB-SP

## Certificate of Compliance

The undersigned, counsel of record for Defendants, certifies that this brief does not exceed 12 pages, which complies with this Court's Standing Order.

Dated:  July 30, 2026

MORGAN, LEWIS & BOCKIUS LLP

By  */s/ Karen Cho*
    Karen Y. Cho
    Nicole L. Antonopoulos

    Attorneys for Defendants
    BANK OF AMERICA, N.A., BANK
    OF AMERICA CORPORATION,
    TRICIA SHANKS, and PETER C.
    MAXIM

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

13

Case No. 5:26-cv-03535-JGB-SP

DB2/ 652988539.4 DEFENDANTS' AMENDED REPLY ISO MOTION TO COMPEL ARBITRATION