Luna D'Sol

Plaintiff, In Pro Per

2275 E Belding Dr

Palm Springs CA 92262

jravada@icloud.com

213-925-4069

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUNA D'SOL<br><br>                                    Plaintiff,<br><br><br>                        VS.<br><br><br>BANK OF AMERICA, N.A.;<br>BANK OF AMERICA CORPORATION;<br>TRICIA SHANKS, an individual;<br>PETER C MAXIM, an individual;<br>and DOES 1 through 50, inclusive,<br><br><br>                                    Defendant(s). | **Case No:** 5:26-cv-03535-JGB-SP<br><br>**DECLARATION OF LUNA D'SOL IN SUPPORT OF EX PARTE APPLICATON TO STRIKE, RESTRICT PUBLIC ACCESS OF**<br><br>Judge: Hon. Jesus G. Bernal.<br>.         United States District Juge<br><br><br>Courtroom:   1, 2nd floor<br><br><br>Complaint Filed: March 4th, 2026<br><br>Filed Concurrently with Plaintiff's Ex<br><br>Parte Application, Proposed Order |

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

**DECLARATION OF LUNA D'SOL**

I, **LUNA D'SOL**, declare as follows:

1.    I am the plaintiff in this matter. I have personal knowledge of each of the facts stated in this declaration and, if called as a witness, could and would testify competently to them.

2.    I am not an attorney or medical professional, and I do not offer legal conclusions, medical diagnoses, or expert opinions in this declaration. Unless otherwise stated, the matters described herein are based on my personal knowledge and firsthand experience. Any description of events, communications, symptoms, reactions, or effects upon me is offered solely as my own observation, experience, and understanding of what occurred and how those events affected me.

3.    I accessed the Bank of America's website for employees which  provides instructions to current and former associates directing them to use The Work Number to obtain employment-verification information (ECF Doc 50, p.2, RJN No 10, Exhibit J; ECD Doc. 50-2 Page Id #1431). I accessed those instructions and, following the procedure identified by Bank of America, obtained my own employment-verification record through The Work Number. (ECF Doc 49-2, p.3, ¶6, Exhibit 50; ECF Doc 49-3, pp. 3, 4).

4.    On August 11, 2025, I obtained a Right-to-Sue notice from the California Civil Rights Department in the administrative matter identified as "D'Sol / Bank of America et al.," which identifies me as Luna D'Sol and alleges discrimination and harassment based on sex/gender and gender identity or expression (ECF Doc. 49-4, pp. 2-5). The administrative record further identifies two uploaded documents titled "2025-02-26 - Luna shares transgender status and upcoming surgeries with manager - Sex:Gender Identity," containing my February 26, 2025 disclosure addressed directly to Defendants Tricia Shanks and Peter Maxim, in which I informed them that I identified as female. (Id., p. 5).

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

**MY DISCLOSURE AS A TRANSGENDER WOMAN**

**PART A**

5.      On February 27, 2025, I received an email from my former manager, Tricia Shanks, acknowledging my February 26, 2025 email in which I disclosed that I am a trans. Shanks's February 27 response included my former supervisor, Peter Maxim, whom I had included as a recipient of my original February 26 disclosure. My February 26 disclosure was previously identified and authenticated in my Supplemental Declaration at ECF No. 64-2, ¶19, which also identifies its prior filing location as Exhibit 20-1 at ECF No. 31, pp. 93–94.

6.      On February 28, 2025, I received an email from Loren Reed, an individual whose name I had never previously seen or heard. Reed's email appeared within the existing conversation thread containing my February 26, 2025 disclosure and Shanks's February 27, 2025 response. However, when I reviewed Shanks's preceding response, Reed's name did not appear among the recipients shown on that message. Reed's February 28 message was transmitted using "Reply All" and bore the subject line "RE: Personal Update pe." (emphasis added) Reed stated, "We 100% support you during this transition. Please let me know if there is anything you need from me or the leadership team." Attached hereto as **Exhibit 62** is a true and correct copy of a photograph of the email conversation as displayed on my Bank of America computer. Attached hereto as **Exhibit 63** is a demonstrative version of the same photograph enhanced solely for legibility. No content was added, removed, or altered in preparing Exhibit 63.

7.      I observed that Reed's email visibly shows it was being sent to me and Shanks and copied Peter Maxim. It did not reflect the message had been forwarded to her after Shanks last email. I understood that Shanks's February 27, 2025 acknowledgment had Loren Reeds included as a 'blind recipient' or as someone made not visible to everyone.


**PART B**

8.      On July 28, 2025, Bank of America's in-house counsel, Stephen Bird, responded to my request by email and attached an arbitration policy that he represented had been provided to me by email in November 2024 and that my continued employment constituted acceptance of its terms. A

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

true and correct copy of Bird's July 28, 2025 email was previously filed as Exhibit 20-2 at ECF No. 31, pp. 96–97, and is further identified and described in my Supplemental Declaration at ECF No. 64-2, ¶¶ 7–11.

**9.** As described in my Supplemental Declaration at ECF No. 64-2, ¶¶ 12–18, I personally opened the PDF attached to Bird's July 28, 2025 email in Adobe Acrobat and viewed its Document Properties and Additional Metadata. Adobe displayed a "Created" date of February 27, 2025, same day Shanks acknowledged my Transgender status, and a "Modified" date of July 28, 2025. Screenshots documenting what Adobe displayed were previously filed as Exhibits 59 and 60 at ECF Nos. 64-6 and 64-7, respectively. I incorporate that prior description solely to identify the observations upon which this paragraph is based and do not offer a forensic opinion concerning the meaning, origin, cause, or reliability of the displayed metadata.

**LOREN REED**

**10.** Bank of America approved my use of five days of sick time, effective May 20, 2025.

**11.** On May 21, 2025, the second day of my approved sick time, my former manager, Tricia Shanks, contacted me and asked to join a meeting. At approximately 10:35 a.m., I responded that my computer would not allow me to connect and specifically asked whether the issue was related to my leave, which had become effective the previous day, identifying my leave claim number as 4H2505NCCLN-0001. The image reproduced below is a true and correct copy of a screenshot of the text-message exchange between Shanks and me as it appeared on my phone.

**12.** Shanks did not answer my question whether the requested meeting concerned my leave. Instead, she responded, "Are you available to talk now? Loren and I can call you. There shouldn't be any issues with your computer." Shanks thus informed me that Reed would participate in the call, without stating the purpose of the meeting.

**13.** . Approximately two hours later, at 12:47 p.m., I received a secure email from Loren Reed at my personal email address bearing the subject line "Severance Summary Julio Ravada." Shanks was copied on the communication.  Attached hereto as **Exhibit 64** is a true and correct copy of the May 21, 2025 email I received from Loren Reed at my personal email address notifying

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

me that my employment with Bank of America would be terminated. I personally received and reviewed this email on May 21, 2025, and Exhibit 64 fairly and accurately reflects the email and attached termination communication as I received them.

**14.**     The termination letter stated that I would be provided 30 days to seek another position within the Bank and that, if I did not secure another position during that period, my employment would terminate effective June 17, 2025.

**15.**     I raised a concern that June 17, 2025, was not 30 days after May 21, 2025, and that 30 days would instead extend to June 20, 2025. The Bank characterized the June 17 date as an inadvertent error. I subsequently received an email stating that the termination document had been voided, followed by another email stating that it was being reissued with June 20, 2025, identified as the effective termination date.

**16.**     My employment officially ended on June 20, 2025, which is the same day of my 20th year employment anniversary.

**17.**     I was 40 years old on June 20, 2025

**18.**     I received my final pay-check 3 days late and I was never paid June 18th, 19th, and 20th.

**Personnel-Record Productions and Disclosures of my Former Legal Name**

**19.**     I requested copies of my personnel records from Bank of America on five separate occasions. On December 8, 2025, Defendants' counsel, Nicole L. Antonopoulos, produced documents responsive to one of those requests by sending me an email containing a link to a secure electronic portal. I responded in writing that I did not consent to electronic service or to receiving documents through secure-link portals. I stated: "Please note that I do not consent to electronic service or to receiving documents through secure-link portals. As I have not provided written consent under FRCP 5(b)(2)(E), electronic delivery is not an authorized method of service in this matter." A true and correct copy of my December 8, 2025 email correspondence with Ms. Antonopoulos is attached hereto as **Exhibit 65**.

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

**20.**      On December 15, 2025, Ms. Antonopoulos re-sent the package via mail that she described as my complete payroll record for the last 3 years and  After reviewing the production, I contacted Ms. Antonopoulos because it appeared that paystubs relating to payments from June 20, 2025 were missing (supra ¶18).

**21.**      On December 16, 2025, Ms. Antonopoulos sent me a second package that included the missing payroll documents. In the accompanying letter, Ms. Antonopoulos addressed me as "Mr. D'Sol."

**22.**      The December 16, 2025 production remains the only one of the five productions of my personnel file that included an arbitration policy.

**23.**      The December 16, 2025 production also contained documents bearing Bank of America Bates numbers BANK/LUNA000210 and BANK/LUNA000212 that were unknown to me and that I did not recall previously receiving or seeing during my employment. The pages are titled "PROFESSIONAL IMAGE STANDARDS" and "Unacceptable Attire." They separately identify standards for "WOMEN" and "MEN." The first page identifies clothing, undergarments, jewelry, grooming, and other appearance standards separately for women and men. The second page separately states, among other things, that women may wear no more than two earrings per earlobe and addresses women's makeup, while stating that men are not permitted to wear earrings. The documents also identify additional appearance and attire considered unacceptable for all associates. A true and correct copy of BANK/LUNA000210 and BANK/LUNA000212 are attached here to as **Exhibit 66**.

**24.**      I further observed that the page bearing Bates number BANK/LUNA000210 contains a handwritten "X" and a horizontal handwritten line near the bottom of the page. I do not observe a signature, printed name, date, acknowledgment language, or other information on the page identifying who placed those markings there or what they were intended to signify. I do not recognize the "X" or line as my signature, and I did not sign that page by placing an "X" on it.

**25.**      The same December 16, 2025 production contained a Bank document bearing Bates number BANK/LUNA000206 addressing employee absences, sick time, and disciplinary action. Under "LAWS TO BE GIVEN CONSIDERATION," the document states with respect to California Kin

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

Care Leave that when an associate calls in for a qualifying reason and has occasional illness days available, "the Bank cannot take disciplinary action against the associate." I understand that in my case the bank terminated my employment under these circumstances. A true and correct copy of BANK/LUNA000206 is attached here to as **Exhibit 67**.

**VIOLATION OF PRIVACY RIGHTS**

**26.**     On July 6, 2026, I learned that Defendants had filed the Declaration of Dineen M. Allen on July 2, 2026, publicly disclosing my former legal name. The disclosure appears at ECF No. 10-7, page 2, paragraph 4.

**27.**      After learning of the disclosure, I raised the issue with Defendants' counsel and requested that the disclosure be removed or corrected. I explained that Luna D'Sol is my legal name and that I did not want my former legal name publicly associated with my current identity.

**28.**     On July 9, 2026, I participated in a meet-and-confer with Defendants' counsel concerning, among other matters, the disclosure of my former legal name. During that discussion, counsel stated that Defendants did not believe there was a legal basis requiring amendment of the declaration and questioned the harm resulting from the disclosure. I discussed my understanding of SB 59 and explained that, apart from any legal requirement, I was personally asking Defendants to stop publicly identifying me by my former legal name. I explained that the disclosure was particularly distressing because this action concerns, among other things, my disclosure of my transgender status to the Bank. A true and correct copy of the email I sent to defendants' counsel on July 9th 2026 is attached here to as **Exhibit 68**.

**29.**     When Defendants subsequently filed a renewed declaration from Ms. Allen, my former legal name was not disclosed in that declaration (ECF Doc 56-1, pp. 1-3).

**30.**     On August 3, 2026, Defendants filed their Opposition to Plaintiff's Motion for Sanctions (ECF No. 60) and Request for Judicial Notice and supporting materials (ECF Nos. 61, 61-1)

**31.**      In their Opposition, Defendants argued that they had not acted in bad faith because I had previously filed a public complaint in an unrelated state-court action identifying myself as

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

"Luna D'Sol (formerly known as [Former Name])." (ECF Doc. 60, at 6:3-4).Defendants expressly cited their Request for Judicial Notice and Exhibit 1 as support for that assertion.

**32.** Although Defendants used "[Former Name]" in the text of their Opposition, the RJN exhibit they cited and filed in support of that argument publicly displayed the former legal name that I had previously asked Defendants to stop disclosing. (ECF Doc. 61-1, p.2,¶1)

**33.** The unrelated state-court action concerned real-property transactions and recorded property interests. Defendants' presentation of that action did not identify the subsequent Notice of Errata filed in that action in which opposing counsel apologized to the Court and to me for misgendering me. Attached hereto as **Exhibit 69** is the copy of Notie of Errata from opposing counsel apologizing to the court and to me for misgendering me.

**34.** On August 7, 2026, I again wrote directly to Defendants' counsel and formally renewed my request that they remove, redact, or amend the disclosure of my former legal name in the Allen Declaration and their RJN. I expressly informed counsel that the continued disclosure was causing me severe psychological distress. I described feeling as though I were drowning and having difficulty breathing, characterized the matter as an emergency, stated that the filings threatened my life, and ended my request by stating, "I am begging you to stop." A true and correct copy of the email I sent to defendants' counsel on August 7th 2026 is attached here to as **Exhibit 70.**

**35.** On the day that my Reply was due, Monday, August 10, 2026, Defendants' counsel responded to my August 7 email. Nicole Antonopoulos asked whether I was available on Wednesday to meet and confer regarding my August 7 email and my August 3 communication concerning sanctions. A true and correct copy of the email I sent to defendants' counsel on July 9th 2026 is attached here to as **Exhibit 71**.

**36.** I also clarify that the first time that I told counsel formlly about my name was on September 28, 2025, I provided her my court order information, name, case number and date. I also said Continued use of my former name "Julio Ravada" is inaccurate, disrespectful, and unacceptable. Please update all systems immediately.

**37.** In Defendants' Evidentiary Objections, I read their objection to my statement, "My legal name is Luna D'Sol, no 'fka' or 'aka' are found in that court order." Defendants objected on

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

the ground of "Lack of authentication," stating that I had neither identified the order by court, date, or docket number nor attached it. I understood that objection to mean that, if I wished the Court to consider my statement concerning what my name-change order actually provides, I would have to identify and place that order before the Court.

38.　　Having to do so is personally difficult and causes me substantial emotional distress. The order concerns an intensely personal part of my identity. I did not want to be placed in the position of publicly producing the very document connecting my present legal identity to my former identity in order to establish that my legal name is Luna D'Sol and that the order itself does not designate me as "fka" or "aka."

39.　　Nevertheless, because Defendants have challenged my statement concerning the contents of the order, I am now submitting the order so that the Court may determine directly what it says. I do so reluctantly and for the limited purpose of responding to Defendants' objection and establishing the contents of the order.

40.　　This is particularly distressing to me because, before the present dispute, Defendants and their counsel had received information specifically identifying Luna D'Sol as my legal name and identifying the September 11, 2025 name-change order. I had also repeatedly asked Defendants not to publicly identify me by my former legal name.

41.　　In my personal experience, when I introduce and identify myself by my legal name and another person nevertheless chooses to identify me by a former name after I have expressly asked that person to stop, I experience that conduct as degrading and humiliating. I cannot testify as to Defendants' subjective motives, but I can testify to the effect their continued use and disclosure of my former name has had on me.

42.　　On Wednesday, August 12, 2026, the day proposed by Defendants' counsel, I called both Nicole Antonopoulos and Karen Cho and left each of them a voicemail. I then emailed both counsel stating: "I just called you both and left a voicemail to each. I became available now for rest of the day, this is about your request from last Monday. Let me know when you'd like to connect." A true and correct copy of the email I sent to defendants' counsel on July 9th 2026 is attached here to as **Exhibit 72**.

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP

**43.**     On August 13, 2026, I spoke by telephone with Defendants' counsel regarding my request that Defendants remove or redact the public disclosure of my former legal name. During that conversation, counsel stated that Defendants had included my former legal name because they believed it was necessary to authenticate the state-court document and avoid confusion concerning my identity. Counsel further stated that Defendants relied on the fact that I had previously used my former name in public filings and that, in their view, the name was therefore already part of the public record. Counsel stated that she did not believe there was an emergency or a basis for ex parte relief and suggested that I refrain from filing an ex parte application and instead wait for the Court to address the issue in connection with the pending motions. I explained that my prior use of the former name in the unrelated state-court action occurred because that action concerned property and title records bearing that name, and I reiterated that Defendants' continued public disclosure was personally harmful to me. Counsel maintained that Defendants' disclosure was for authentication and what she described as legitimate purposes. The parties did not reach an agreement concerning removal or redaction of the challenged disclosures. Attached hereto as **Exhibit 74** is a true and correct copy of the email recap I sent to Defendants' counsel on August 14, 2026.

**44.**     I have experienced intermittent suicidal thoughts during this period and have remained under mental-health treatment. My treating provider had previously documented intermittent suicidal thoughts, isolation, crying, poor sleep, and poor appetite in an October 4, 2025 communication. A true and correct copy of that communication is attached hereto as **Exhibit 73.**

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 14, 2026, at Palm Springs, California.

/s/ Luna D'Sol

Luna D'Sol, Plaintiff, In Pro Per

DECLARATION OF LUNA D'SOL
5:26-cv-03535-JGB-SP