Exhibit 81

Morgan Lewis

**Nicole L. Antonopoulos**
Associate
+1.650.843.7236
nicole.antonopoulos@morganlewis.com

December 15, 2025

**VIA US MAIL**

Luna D'Sol
2275 E Belding Drive
Palm Springs, CA 92262
jravada@icloud.com

Re: Luna D'Sol - Request for Payroll and Personnel Records

Dear Mr. D'Sol:

In response to your request, I have enclosed additional payroll records and your personnel file (Bates-stamped BANK/LUNA000168 - BANK/LUNA000323).

Sincerely,

N Antonopoulos

Nicole Antonopoulos

NLA

# Payslip Details

| Employee Details | |
|---|---|
| Person Number | 20143187 |
| Name | Julio Ravada |
| Home Address | 2275 E Belding Dr<br>Palm Springs, CA 92262 |
| Company | Bank of America, National Association<br>100 North Tryon Street<br>Suite 170<br>Charlotte, NC 28202 |
| Work Location | US - CA - Palm Springs - 588 S Palm Canyon Dr - Palm Springs Main (CA0151) |
| State Business ID# | |
| Cost Center | 0001502501 |
| GL Company | 2001 |
| Pay Rate | [redacted] |

| Payroll Details | |
|---|---|
| Pay Frequency | Semi-monthly |
| Pay Begin Date | 06/01/2025 |
| Pay End Date | 06/15/2025 |
| Advice # | N/A |
| Pay Date | 06/13/2025 |

| Tax Details | |
|---|---|
| Federal Tax Marital Status | Single or Married filing separately |
| Federal Allowances | 0 |
| Federal Addl Withholding | $0.00 |
| W-4 - Total Dependent Amount | |
| W-4 – Multiple Jobs or Spouse Work | No |
| W-4 – Other Income | |
| W-4 - Deduction | |
| Tax Marital Status | Single or Married (with two or more incomes) |
| Allowances | 0 |
| Addl Withholding | $0.00 |

## Hours and Earnings

| Description | Prior Period Begin Date | Prior Period End Date | Rate | Current Hours | YTD Hours | Current Earnings | YTD Earnings |
|---|---|---|---|---|---|---|---|
| [redacted] | | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |

## Employee Taxes

| Description | Current Wages | YTD Wages | Current Withheld | YTD Withheld |
|---|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | | [redacted] | [redacted] |

## Pre-Tax Deductions

| Description | Current | YTD |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

## Direct Deposit Distribution

| Financial Institution | Account | Type | [redacted] |
|---|---|---|---|
| | | | [redacted] |

## After-Tax Deductions

| Description | Current | YTD |
|---|---|---|
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |
| [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] |

## Pay [redacted]

| | | | | | | |
|---|---|---|---|---|---|---|
| | [redacted] | [redacted] | | [redacted] | | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] | | [redacted] | [redacted] |

Visit HR Connect > Money > Payslips for information about your payslip. If you have questions, please contact the Global HR Service Center at 800.556.6044

# Payslip Details

| Time Off (Note: If you are a salaried employee, benefit hours taken may not be reflected in the available balance) | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

# Payslip Details

| Employee Details | |
|---|---|
| **Person Number** | 20143187 |
| **Name** | Julio Ravada |
| **Home Address** | 2275 E Belding Dr<br>Palm Springs, CA 92262 |
| **Company** | Bank of America, National Association<br>100 North Tryon Street<br>Suite 170<br>Charlotte, NC 28202 |
| **Work Location** | US - CA - Palm Springs - 588 S Palm Canyon Dr - Palm Springs Main (CA0151) |
| **State Business ID#** | |
| **Cost Center** | 0001502501 |
| **GL Company** | 2001 |
| **Pay Rate** | [redacted] |

| Payroll Details | |
|---|---|
| **Pay Frequency** | Semi-monthly |
| **Pay Begin Date** | 06/16/2025 |
| **Pay End Date** | 06/30/2025 |
| **Advice #** | N/A |
| **Pay Date** | 06/30/2025 |

| Tax Details | |
|---|---|
| **Federal Tax Marital Status** | Single or Married filing separately |
| **Federal Allowances** | 0 |
| **Federal Addl Withholding** | $0.00 |
| **W-4 - Total Dependent Amount** | |
| **W-4 – Multiple Jobs or Spouse Work** | No |
| **W-4 – Other Income** | |
| **W-4 - Deduction** | |
| **Tax Marital Status** | Single or Married (with two or more incomes) |
| **Allowances** | 0 |
| **Addl Withholding** | $0.00 |

| Hours and Earnings | | | | | | | |
|---|---|---|---|---|---|---|---|
| **Description** | **Prior Period Begin Date** | **Prior Period End Date** | **Rate** | **Current Hours** | **YTD Hours** | **Current Earnings** | **YTD Earnings** |
| [redacted] | | | | | | [redacted] | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted].21 |

| Employee Taxes | | | | |
|---|---|---|---|---|
| **Description** | **Current Wages** | **YTD Wages** | **Current Withheld** | **YTD Withheld** |
| [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | | [redacted] | [redacted] |

| Pre-Tax Deductions | | |
|---|---|---|
| **Description** | **Current** | **YTD** |
| [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] |

[redacted]

Visit HR Connect > Money > Payslips for information about your payslip. If you have questions, please contact the Global HR Service Center at 800.556.6044

# Payslip Details

| [redacted] | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

# Payslip Details

| Employee Details | |
|---|---|
| Person Number | 20143187 |
| Name | Julio Ravada |
| Home Address | 2275 E Belding Dr<br>Palm Springs, CA 92262 |
| Company | Bank of America, National Association<br>100 North Tryon Street<br>Suite 170<br>Charlotte, NC 28202 |
| Work Location | US - CA - Palm Springs - 588 S Palm Canyon Dr - Palm Springs Main (CA0151) |
| State Business ID# | |
| Cost Center | 0001502501 |
| GL Company | 2001 |
| Pay Rate | [redacted] |

| Payroll Details | |
|---|---|
| Pay Frequency | Semi-monthly |
| Pay Begin Date | 06/16/2025 |
| Pay End Date | 06/30/2025 |
| Advice # | N/A |
| Pay Date | 06/30/2025 |

| Tax Details | |
|---|---|
| Federal Tax Marital Status | Single or Married filing separately |
| Federal Allowances | 0 |
| Federal Addl Withholding | $0.00 |
| W-4 - Total Dependent Amount | |
| W-4 – Multiple Jobs or Spouse Work | No |
| W-4 – Other Income | |
| W-4 - Deduction | |
| Tax Marital Status | Single or Married (with two or more incomes) |
| Allowances | 0 |
| Addl Withholding | $0.00 |

**Hours and Earnings**

| Description | Prior Period Begin Date | Prior Period End Date | Rate | Current Hours | YTD Hours | Current Earnings | YTD Earnings |
|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |

[redacted]

[redacted]

[redacted]-Tax Deductions

[redacted]

[redacted]

[redacted]

# Payslip Details

| Time Off (Note: If you are a salaried employee, benefit hours taken may not be reflected in the available balance) | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

# Payslip Details

| Employee Details | |
|---|---|
| Person Number | 20143187 |
| Name | Julio Ravada |
| Home Address | 2275 E Belding Dr<br>Palm Springs, CA 92262 |
| Company | Bank of America, National Association<br>100 North Tryon Street<br>Suite 170<br>Charlotte, NC 28202 |
| Work Location | US - CA - Palm Springs - 588 S Palm Canyon Dr - Palm Springs Main (CA0151) |
| State Business ID# | |
| Cost Center | 0001502501 |
| GL Company | 2001 |
| Pay Rate | [redacted] |

| Payroll Details | |
|---|---|
| Pay Frequency | Semi-monthly |
| Pay Begin Date | 06/16/2025 |
| Pay End Date | 06/30/2025 |
| Advice # | N/A |
| Pay Date | 06/23/2025 |

| Tax Details | |
|---|---|
| Federal Tax Marital Status | Single or Married filing separately |
| Federal Allowances | 0 |
| Federal Addl Withholding | $0.00 |
| W-4 - Total Dependent Amount | |
| W-4 – Multiple Jobs or Spouse Work | No |
| W-4 – Other Income | |
| W-4 - Deduction | |
| Tax Marital Status | Single or Married (with two or more incomes) |
| Allowances | 0 |
| Addl Withholding | $0.00 |

**Hours and Earnings**

| Description | Prior Period Begin Date | Prior Period End Date | Rate | Current Hours | YTD Hours | Current Earnings | YTD Earnings |
|---|---|---|---|---|---|---|---|
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | [redacted] | | | [redacted] | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |

[redacted]

**Deductions**

[redacted]

[redacted]

[redacted] Net Pay

[redacted]

Visit HR Connect > Money > Payslips for information about your payslip. If you have questions, please contact the Global HR Service Center at 800.556.6044

BANK/LUNA000174

# Payslip Details

| [redacted] | | | |
|---|---|---|---|
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | [redacted] | [redacted] | [redacted] |

# Payslip Details

| Employee Details | |
|---|---|
| Person Number | 20143187 |
| Name | Julio Ravada |
| Home Address | 2275 E Belding Dr<br>Palm Springs, CA 92262 |
| Company | Bank of America, National Association<br>100 North Tryon Street<br>Suite 170<br>Charlotte, NC 28202 |
| Work Location | US - CA - Palm Springs - 588 S Palm Canyon Dr - Palm Springs Main (CA0151) |
| State Business ID# | |
| Cost Center | 0001502501 |
| GL Company | 2001 |
| Pay Rate | [redacted] |

| Payroll Details | |
|---|---|
| Pay Frequency | Semi-monthly |
| Pay Begin Date | 07/01/2025 |
| Pay End Date | 07/15/2025 |
| Advice # | N/A |
| Pay Date | 07/15/2025 |

| Tax Details | |
|---|---|
| Federal Tax Marital Status | Single or Married filing separately |
| Federal Allowances | 0 |
| Federal Addl Withholding | $0.00 |
| W-4 - Total Dependent Amount | |
| W-4 – Multiple Jobs or Spouse Work | No |
| W-4 – Other Income | |
| W-4 - Deduction | |
| Tax Marital Status | Single or Married (with two or more incomes) |
| Allowances | 0 |
| Addl Withholding | $0.00 |

| Hours and Earnings | | | | | | | |
|---|---|---|---|---|---|---|---|
| Description | Prior Period Begin Date | Prior Period End Date | Rate | Current Hours | YTD Hours | Current Earnings | YTD Earnings |
| [redacted] | | | | | | | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |
| [redacted] | | | [redacted] | [redacted] | [redacted] | [redacted] | [redacted] |
| [redacted] | | | | | | [redacted] | [redacted] |

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

# Payslip Details

BANK OF AMERICA

Your signed CSP Agreement is due on or before **7/8/2025**

GENERAL RELEASE AND
CORPORATE SEVERANCE PROGRAM AGREEMENT

1. Notice of Termination and Severance Eligibility. I acknowledge that I have received written notice that my employment with Bank of America Corporation and/or its subsidiaries and affiliates ("Bank of America") will be terminated because of a workforce reduction, realignment or similar measure and that, as a result, I am eligible to receive severance pay and benefits ("Program Assistance") under the Bank of America Corporate Severance Program ("CSP"). I also acknowledge that, with this General Release and Corporate Severance Program Agreement ("CSP Agreement"), I received additional materials containing detailed information about my eligibility to participate in the CSP, including the publication Your Guide to the Corporate Severance Program, a personalized Pay Computation Sheet that summarizes the Program Assistance for which I am eligible, and a CSP Timeline that outlines important dates in the CSP process (collectively referred to as "CSP Program Materials").

2. Time for Signing this CSP Agreement and Right to Revoke. I understand that to receive the Program Assistance under the CSP, I must sign and return all pages of this CSP Agreement as well as not revoke my acceptance and comply with all terms of this CSP Agreement. I acknowledge that the due date to return my signed CSP Agreement is listed at the top of this CSP Agreement and on my CSP Timeline. I also understand that for seven (7) calendar days after I sign this CSP Agreement, or such longer period as required by applicable law, I can change my mind and revoke my acceptance by returning the written and dated revocation to: Bank of America Associate Transition Services, NC1-021-08-03, P.O. Box 30120, Charlotte, North Carolina 28230. I also understand that if I do not revoke this CSP Agreement within seven (7) calendar days following the execution of it (excluding the execution date), it will become effective, binding, and enforceable.

3. Understanding This CSP Agreement.

   a. State Law Modifications. I acknowledge that I have received a document entitled General Release and Corporate Severance Program Agreement State Law Modifications ("State Law Modifications"). I understand that the entire State Law Modifications document is part of this CSP Agreement, and everything in it has the same importance and legal effect as if the State Law Modifications were set forth in this CSP Agreement. I also understand that if there is a conflict between a term in this CSP Agreement and the State Law Modifications, the State Law Modifications provision will apply.

   b. Consulting a Lawyer. I acknowledge that I have been advised by Bank of America that, before I sign this CSP Agreement, I should consult with a personal lawyer of my choice regarding the CSP Program Materials as well as this CSP Agreement's terms and their legal significance. I understand that I am responsible for all fees and costs associated with obtaining legal advice.

   c. Entire Agreement. I agree that, unless specifically mentioned otherwise in this CSP Agreement or the CSP Program Materials, all prior agreements and understandings covering the same or similar subject matter, written or oral, between Bank of America and me (except agreements regarding confidential information, non-solicitation, non-competition, intellectual property or similar agreements that are more protective of Bank of America's interests than the terms of this CSP Agreement and that have not expired or been waived by Bank of America in writing and Bank of America's Arbitration Policy, which is incorporated herein by reference) are replaced and superseded by this CSP Agreement, and are no longer of any force and effect. I understand that no one is authorized to make any representations that vary from or are inconsistent with the terms and conditions set forth in this CSP Agreement. I also understand that no one is authorized to make any assurances with respect to Bank of America's right and intention to enforce this CSP Agreement.

   d. Benefit Plans and Previously Granted Awards Unaffected by Agreement. I understand that for benefit plans governed by the Employee Retirement Income Security Act of 1974 ("ERISA Plans"), my eligibility for benefits will be determined in accordance with the terms of the applicable plan or other governing documents and not governed by the terms of this CSP Agreement. I also understand that for outstanding equity, long-term incentive, or similar awards granted or assumed by Bank of America prior to the date my employment terminates ("Previously Granted Awards"), my eligibility for continued vesting and future payments or distributions will be

determined in accordance with the terms of the applicable plans, award agreements, or other governing documents and not governed by the terms of this CSP Agreement. Nothing in this CSP Agreement shall impair, diminish, or interfere with any rights, privileges, or benefits that I have with respect to the ERISA Plans or Previously Granted Awards, nor shall anything in this CSP Agreement entitle me to vesting, payment or distribution rights not provided under the terms of the ERISA Plans or Previously Granted Awards. Except as to the ERISA Plans and Previously Granted Awards, I withdraw my participation in all bonus or incentive plans or programs and understand that I am not now nor will in the future be entitled to any further grants, awards, or payments under those plans or programs, including future grants of restricted stock units or shares.

e. Effect of Rehire While Receiving Program Assistance. I agree that if I am subsequently reinstated, hired, or rehired by Bank of America during the period of my Program Assistance, future Program Assistance will cease. If I receive my Program Assistance in one lump sum, I also agree to reimburse Bank of America the appropriate pro rata portion of my Program Assistance for the period I am employed with Bank of America.

4. General Release and Covenant Not to Sue.

a. Released Claims. For myself, my attorneys, heirs, executors, administrators, successors, and assigns, I knowingly, voluntarily and fully waive, release and forever discharge Bank of America and all of its current, former and future officers, directors, employees, assigns, agents, plans and plan trustees, independent contractors, shareholders, attorneys and representatives, jointly and individually ("Released Parties") from any suits, actions, or causes of action, including any claim for attorneys' fees or costs, existing at the time I sign this CSP Agreement, whether currently known or unknown to me, under any possible legal, equitable, contract, tort or statutory theory ("General Release") and agree not to sue any of the Released Parties in relation to such claims ("Covenant Not to Sue"). Except for claims described in the paragraph of this CSP Agreement with the heading "Claims Not Prohibited by General Release," and to the greatest extent permitted by applicable law, this General Release and Covenant Not to Sue includes, but is not limited to, claims arising out of or in any way related to my employment and/or the termination of my employment, such as, by way of example only, claims under the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, Section 1981 of Title 42 of the United States Code, the Employee Retirement Income Security Act of 1974 ("ERISA"), the Americans With Disabilities Act, the Rehabilitation Act of 1973, the Worker Adjustment and Retraining Notification Act, the Family and Medical Leave Act, the Equal Pay Act, the Ledbetter Fair Pay Act, and any other federal, state or local statute, ordinance, executive order, regulation (including any amendments) or any other legal theory.

b. Release of Class and Collective Action Claims. I understand that included in the General Release and Covenant Not to Sue are all the claims that have been, or may be, asserted by me or by any other person or entity on my behalf in any class or collective action relating to my employment and/or the termination of my employment with Bank of America. Accordingly, I waive any right to become, and promise not to consent to become, a member of any class in a case in which claims are asserted against the Released Parties that are related in any way to my employment or the termination from Bank of America and that involve events that have occurred as of the date I sign this CSP Agreement. I also waive all rights I might otherwise have to receive notice of any class or collective action. If I am included or identified as a member or potential member of a class in any legal proceeding, I agree to opt out of, or refrain from opting in to, the class at the first opportunity afforded to me after learning of my identification as part of the class. In this regard, I also agree that I will execute, without objection or delay, an "opt-out" form presented to me in connection with any legal proceeding.

c. Agency Actions. Subject to the "Exceptions" paragraph of this CSP Agreement, I agree that should any person or entity file or cause to be filed any civil action, suit, arbitration, or legal proceeding seeking equitable or monetary relief for claims arising out of my employment (with the exception of a proceeding before the Equal Employment Opportunity Commission ("EEOC") or the National Labor Relations Board ("NLRB"), or similar state or local agency alleging a violation of applicable anti-discrimination laws), I will take all necessary actions to withdraw from such action and/or have it dismissed with prejudice as it relates to me personally, and agree not to voluntarily participate or cooperate in such a matter unless required by law. If I am unable to preclude a charge or claim on my behalf, I agree that I will not seek or accept any personal relief, including but not limited to an award of monetary damages or reinstatement to employment, in connection with such a charge or claims.

d. Broadest Release of Claims. To the maximum extent permitted by law, and with the exception of those claims set forth in the Claims Not Prohibited by General Release paragraph of this CSP Agreement, I expressly agree that the General Release and Covenant Not to Sue will extend and apply to all claims, injuries and damages I may have against Bank of America or any Released Parties at the time I sign this CSP Agreement, regardless of whether I am aware of or suspect such claims at the time I sign. If it is determined that any claim covered by this General Release cannot be waived as a matter of law, I agree that the General Release and Covenant Not to Sue will nevertheless remain valid and fully enforceable as to the remaining released claims.

e. Claims Not Prohibited by General Release. I understand and acknowledge that the General Release and Covenant Not to Sue does not prohibit the following rights or claims: 1) those that first arise after the date I sign this CSP Agreement; 2) those that arise out of or in connection with the interpretation or enforcement of this CSP Agreement; 3) those that cannot be waived as a matter of federal, state or local law; 4) any right I may have to file a charge with the NLRB, or a charge or complaint of discrimination with the EEOC or similar state or local agency, or any right I may have to participate in any investigation or legal proceeding conducted by such an agency (though I will not seek or accept any personal relief, including but not limited to an award of monetary damages or reinstatement to employment, in connection with such a charge); or 5) rights to indemnification, if any, that are governed by Bank of America's Bylaws and applicable law.

f. California Waiver. To the extent California law applies to me, I waive all rights under California Civil Code Section 1542, which provides: A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

5. Special Provisions Relating to Release of Age Discrimination Claims. (I understand this paragraph only applies if I am age forty (40) or over.) I also understand that as part of the General Release and Covenant Not to Sue, I knowingly, voluntarily, and fully waive rights or claims under the ADEA that may have existed on or before the date I sign this CSP Agreement. Under the Older Workers' Benefit Protection Act ("OWBPA"), when two or more employees within a class, unit or group of employees ("Decisional Unit") are offered Program Assistance in connection with a separation from employment, each employee within the Decisional Unit who is age forty (40) or over, selected for separation, and asked to sign this CSP Agreement is eligible to receive a list, by job title and age, of other employees within the Decisional Unit who were selected and not selected for separation ("OWBPA Disclosure"). I acknowledge that if two or more employees are being separated within the Decisional Unit of which I am a part, I have received the list described in this paragraph as part of the OWBPA Disclosure within my CSP Program Materials. I also understand that I will not receive an OWBPA Disclosure if only one employee within the Decisional Unit is being separated. I also acknowledge that if I am in a Decisional Unit of two or more employees, my due date to sign and return this CSP Agreement, as indicated at the top of this CSP Agreement and on my CSP Timeline, is at least forty-five (45) days after the date I first received the OWBPA Disclosure. If I must return to Bank of America any of the consideration I received under this CSP Agreement, I agree that I will retain Five Hundred Dollars ($500.00) as consideration for my waiver of rights and claims under the ADEA.

6. Absence of Certain Claims.

a. No Charges or Complaints. I represent and warrant that, as of the date I sign this CSP Agreement, I have not filed or otherwise pursued any charges, complaints or claims of any nature against Bank of America or any Released Party with any local, state, or federal government agency or court, or in arbitration for which I have not formally requested dismissal, withdrawal, or termination. This does not include any reporting to a governmental, law enforcement, or regulatory authority concerning suspected violations of law (which I understand I am not required to disclose to Bank of America), pursuant to the Exceptions paragraph or as otherwise permitted by law. I acknowledge that Bank of America has fully satisfied all its obligations to me as a matter of law and pursuant to Bank of America policy, and I have no claims against Bank of America or the Released Parties.

b. CSP Program Materials Contain All Compensation and Benefits. I agree, except for benefits under any Bank of America plans that have vested or will vest according to the terms of those plans, Bank of America shall have no obligation to provide me with any payments, benefits, or consideration other than as described in the CSP Program Materials.

c. Duty to Report. Subject to the Exceptions paragraph, I acknowledge that as a Bank of America employee, it has been my obligation to advise Bank of America completely and candidly of all facts of which I am aware that constitute or might constitute violations of Bank of America's ethical standards or its legal or regulatory obligations. I represent and warrant that I am not aware of any such facts or that I have previously advised Bank of America of any such facts. I agree that I will advise Bank of America in the future of such facts that come to my attention.

7. Post-Employment Limitations and Obligations.

a. Future Cooperation. I agree that during and after the term of this CSP Agreement, I will make myself available, upon reasonable notice and under reasonable conditions, to assist Bank of America in any capacity with respect to matters I had knowledge of while employed by Bank of America. Without limitation, such assistance may include: 1) providing information or documents; 2) cooperating with investigations, negotiations, lawsuits, or administrative proceedings; 3) preparing for and giving testimony, including written or verbal declarations or statements; and 4) other similar activities. I understand that Bank of America will reimburse me for all reasonable and documented out-of-pocket expenses incurred because of my obligations under this subparagraph in accordance with Bank of America's then-applicable expense guidelines.

b. Obligations Regarding Confidential, Proprietary, and Trade Secret Information. I acknowledge that, during my employment, I had access to confidential, proprietary, and trade secret information about Bank of America, its employees, clients, and customers, which derives economic value from not being otherwise known to the general public ("Confidential Information and Trade Secrets"). Confidential Information and Trade Secrets provide a competitive advantage to Bank of America because they would be valuable to a competitive entity if disclosed. Confidential Information and Trade Secrets includes, but is not limited to: 1) the identities, incomes, net worth, accounts, financial portfolios, contact information, personal and familial relationships, investments, and/or other non-public information relating to Bank of America's existing and prospective clients and customers; 2) personnel information about other Bank of America employees obtained from confidential personnel files; and 3) Bank of America's business plans, strategies, products, pricing, computer programs, computer software, source codes, systems, databases, methods of operation, financial models, investments and other business transactions, policies and procedures. I understand that Bank of America has obligations to protect the confidentiality of Confidential Information and Trade Secrets and that such obligations extend to me, both during and after my employment ends. Subject to the Exceptions paragraph, I agree that I will not directly or indirectly disclose or use Bank of America's Confidential Information and Trade Secrets for my benefit or for the benefit of any other person or entity, including future employers, as it would cause immediate and irreparable damage to Bank of America's business. I also understand that nothing in this paragraph, or this CSP Agreement generally, precludes me from disclosing information relating to workplace issues, or from assisting coworkers or former coworkers, or from communicating with others, including third parties or the NLRB, about this Agreement or my employment, nor does this Agreement in any way restrict me from otherwise exercising my Section 7 rights under the National Labor Relations Act and/or Executive Order 13665.

c. Trade Secret Act Notice. Pursuant to the federal Defend Trade Secrets Act of 2016, I understand that I will not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that is made: 1) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney and solely for the purpose of reporting or investigating a suspected violation of law; 2) to my attorney in relation to a lawsuit for retaliation against me for reporting a suspected violation of law; or 3) in a complaint or other document filed in a lawsuit or other proceeding if such filing is made under seal.

d. Prohibited Solicitation of Bank of America Clients and Customers. In exchange for the consideration provided in this CSP Agreement and based on my access to Confidential Information and Trade Secrets during my employment, to the maximum extent permitted under applicable law, I agree that for the greater of six (6) months following the termination date of my employment or the period for which I am eligible for Program Assistance (or the equivalent number of weeks if I elect one lump sum payment) I shall not directly or indirectly, alone or in concert with others, solicit, encourage, influence, recruit, or induce, or attempt to solicit, encourage, influence, recruit, or induce (regardless of who initiates the contact), any client or customer who I served during my employment or whose name became known to me as a result of my access to Bank of America's Confidential Information and Trade Secrets ("Clients and Customers"), in an effort to divert, transfer or in any way take away business from Bank of America. I represent that I have reviewed the State Law Modifications to determine if this subparagraph applies to me.

I acknowledge that the prohibition contained in this CSP Agreement against soliciting business from Clients and Customers is intended to protect Bank of America's Confidential Information and Trade Secrets and does not prevent me from working for a competitive entity. I understand that: 1) prohibited solicitation of Bank of America Clients or Customers may result in cancellation of outstanding equity, long-term incentive, or similar awards granted or assumed by Bank of America; and 2) restrictions on solicitation of Bank of America Clients or Customers provided in plan documents and/or award agreements underlying outstanding equity, long-term incentive, or similar awards may be more expansive than those in this subparagraph.

e. Prohibited Solicitation of Bank of America Employees. In exchange for the consideration provided in this CSP Agreement and based on my access to Confidential Information and Trade Secrets during my employment, to the maximum extent permitted under applicable law, I agree that for one (1) year following the termination of my employment, I will not directly or indirectly, alone or in concert with others, solicit, encourage, influence, recruit or induce, or attempt to solicit, encourage, influence, recruit or induce any employee of Bank of America to cease working for Bank of America (regardless of who initiates the contact). I understand that: 1) prohibited solicitation of Bank of America employees may result in cancellation of outstanding equity, long-term incentive, or similar awards granted or assumed by Bank of America; and 2) restrictions on solicitation of Bank of America employees provided in the plan documents and/or award agreements underlying outstanding equity, long-term incentive, or similar awards may be more expansive than those in this subparagraph.

8. Negative Comments. Subject to the Exceptions paragraph, I agree to refrain from directly or indirectly making any statements or engaging in any other activities, including written, oral and electronic communications of any kind, in any format, directly or indirectly, to the press (on or off the record, or on background), on or through blogs or other social media, or to any other person or entity, that are maliciously untrue, such that they are made with knowledge of their falsity or with reckless disregard for their truth or falsity, regarding Bank of America, its business, its actions or those of the Released Parties. I understand that nothing in this paragraph prevents me from discussing or disclosing information about alleged unlawful acts (such as harassment or discrimination or any other conduct that I believe is unlawful).

9. Exceptions. I understand that nothing in this CSP Agreement prohibits or limits my counsel or me from initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before the Securities and Exchange Commission, the Department of Justice, the Financial Industry Regulatory Authority, the EEOC, the NLRB, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, regarding this CSP Agreement and its underlying facts and circumstances, or any reporting of, the investigation into, or proceeding regarding suspected violations of law, and that I am not required to advise or seek permission from Bank of America before engaging in any such activity. I also understand that, in connection with any such activity, I must inform that authority that the information I am providing is confidential. In addition, despite the foregoing, I also understand that I am not permitted to reveal to any third party, including any governmental, law enforcement, or regulatory authority, information that I came to learn during my employment that is protected from disclosure by any applicable privilege, including but not limited to the attorney-client privilege, attorney work product doctrine, or other applicable legal privileges. I also understand that my ability to disclose information may be limited or prohibited by applicable law and Bank of America does not consent to disclosures that would violate applicable law. Such applicable laws include, without limitation, laws and regulations restricting the disclosure of confidential supervisory information or disclosures subject to the Bank Secrecy Act (31 U.S.C. §§ 5311-5330), including information that would reveal the existence or contemplated filing of a suspicious activity report. Confidential supervisory information includes any information or materials relating to the examination and supervision of Bank of America by applicable bank regulatory agencies, Bank of America materials responding to or referencing non-public information relating to examinations or supervision by bank regulatory agencies, and correspondence to or from applicable banking regulators.

10. Miscellaneous Provisions.

a. Resignation of Board or Committee Memberships. I immediately resign all directorships and board or committee memberships that I hold within Bank of America and/or any other entity as a result of my employment with Bank of America. This resignation will be effective on the date my employment terminates or such other date as requested by Bank of America.

b. Return of Bank of America Property and Expense Reconciliation. I agree that by the last day I am actively at work, or such other date directed by Bank of America, I will return to Bank of America all equipment, business

records and/or other Bank of America property that has been or is in my care, custody, possession, or control. I also agree that by my last day of work, I will have reimbursed or reconciled to Bank of America's satisfaction all charges I have made to Bank of America or expenses I have charged to Bank of America. I understand that if I fail to return Bank of America equipment or property or if I fail to make necessary reimbursements regarding charges or expenses, the value I owe will be a debt obligation to Bank of America. I also agree that Bank of America is authorized to deduct the sums owed from the Program Assistance.

c. Breach and Remedy. I understand that Bank of America will have the right to bring legal action to enforce this CSP Agreement and to recover monetary or other damages resulting from a breach of it in accordance with Bank of America's Arbitration Policy. This right includes, but is not limited to, Bank of America's right to obtain injunctive relief to restrain any breach or threatened breach of this CSP Agreement or otherwise to specifically enforce any provision of it. I understand that if I breach any provision of this CSP Agreement, I will cease to be eligible for the Program Assistance and Bank of America may, in its sole discretion, discontinue remaining payments and benefits and may require me to reimburse the value of the Program Assistance, including the value of payments and benefits that I have received.

d. Dispute Resolution. All claims, disputes and controversies arising out of or relating to this CSP Agreement shall be heard in arbitration in accordance with Bank of America's Arbitration Policy.

e. Severability. Should any of the provisions of this CSP Agreement be rendered invalid by a court or government agency or should I fail to fulfill my obligations under it, the remainder of this CSP Agreement shall, to the fullest extent permitted by applicable law and at Bank of America's option, remain in full force and effect and I will be obligated to return, in full or in part (as determined by Bank of America) all consideration I received in exchange for signing this CSP Agreement, except, if applicable, the Five Hundred Dollars ($500.00) I received in exchange for my release and waiver of rights and claims under the ADEA.

f. Loss of Eligibility. I agree that if, after my last day worked, Bank of America becomes aware of information that would have resulted in the termination of my employment while still employed, I will cease to be eligible for payments and benefits under this CSP Agreement. In that event, Bank of America may, in its sole discretion, discontinue any remaining payments and benefits and may require me to reimburse the value of Program Assistance, including the value of payments and benefits that I have received.

g. Section 409A Compliance. I understand that this CSP Agreement is intended to comply with Section 409A of the Internal Revenue Code to the extent applicable. Notwithstanding any provision to the contrary, this CSP Agreement shall be interpreted and administered consistent with this intent. If this CSP Agreement provides for multiple payments, each separate payment provided pursuant to the terms of this CSP Agreement shall be treated as a separate "payment" for purposes of Section 409A. In addition, I acknowledge that, If I am a "specified employee" within the meaning of Section 409A, as determined by Bank of America under its Section 409A administrative policies, any payment made in connection with the termination of my employment shall not be made earlier than six (6) months after the date of such termination, to the extent required by Section 409A. I also understand that in no event will Bank of America be liable for any additional tax, interest, or penalty that may be imposed on me by Section 409A or damages for failing to comply with Section 409A.

11. Applicable Law. I agree that this CSP Agreement will be governed by ERISA. To the extent not preempted by ERISA, this CSP Agreement will be governed by and construed and interpreted in accordance with the laws of North Carolina, unless I am employed in California, in which case California law will apply.

I AFFIRM, REPRESENT, AND WARRANTY that: 1) I have read this CSP Agreement; 2) I have had sufficient time and opportunity to review and discuss it with a personal attorney of my choice; 3) I have had any questions about this CSP Agreement answered to my satisfaction; 4) I fully understand and appreciate the meaning of each term of this CSP Agreement; and 5) I am voluntarily signing this CSP Agreement on the date indicated below, intending to be fully and legally bound by its terms.

SEVERANCE PAYMENT ELECTION

I elect to receive my Program Assistance in the following manner (choose one):

x ____________ Installment Payments*

____________ One Lump Sum Payment**

DocuSigned by:

Employee Signature

**Julio Ravada**

Employee Name Printed

**20143187**

Employee Person Number

**7/18/2025**

Date Signed

*If you are bridging to a retirement milestone, you must elect installment payments to be eligible for benefits described in Your Guide to the Corporate Severance Program.

**One Lump Sum Payment is subject to supplemental tax withholding rates as described in Your Guide to the Corporate Severance Program.

ALL PAGES MUST BE RETURNED

Mail in the enclosed envelope or use the following address to mail using your envelope:

BANK OF AMERICA
GLOBAL HR SERVICE CENTER
ATTN: SEVERANCE PROCESSING
Dept. 01487
8770 New Trails Drive
The Woodlands, TX 77381

BANK OF AMERICA

# ARBITRATION POLICY

Bank of America strives to maintain a positive and productive work environment for all of its employees. Bank of America nonetheless recognizes that disagreements may arise between an employee and Bank of America, or between employees in a context that involves Bank of America, that cannot be resolved through internal procedures and processes. In such instances, Bank of America believes that the resolution of such disagreements can be best achieved on an efficient basis through external arbitration. For these reasons, Bank of America has adopted this Arbitration Policy ("Policy"). This Policy makes arbitration the required and exclusive forum for the resolution of all Covered Claims (as defined below), whether initiated by an employee or Bank of America.

For purposes of this Policy, "Bank of America" shall mean Bank of America Corporation, Bank of America, N.A., BofA Securities, Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, and/or any of its and their current, future and former parents, subsidiaries, affiliates, predecessors, successors or assigns.

## I. Covered Claims

Except for Excluded Claims (as that term is defined below), and to the maximum extent permitted by law, all disputes, claims, complaints, or controversies that any employee has had, has now, or has at any time in the future against Bank of America and/or any of its current, future and former officers, directors, employees, and/or agents (the "Company"), or that Bank of America has had, has now, or has at any time in the future against any employee, including, but not limited to, claims relating to breach of contract, tort claims, wrongful discharge, discrimination and/or harassment claims, retaliation claims, claims for overtime, wages, leaves, paid time off, sick days, compensation, penalties or restitution, or any other claim under any federal, state, or local statute, constitution, regulation, rule, ordinance, or common law, arising out of and/or directly or indirectly related to the employee's application for employment with the Company, the employee's employment with the Company, the terms and conditions of the employee's employment with the Company, and/or termination of the employee's employment with the Company (collectively "Covered Claims"), are subject to arbitration pursuant to the terms of this Policy and will be resolved by arbitration and NOT by a court or jury. THE PARTIES HEREBY FOREVER WAIVE AND GIVE UP THE RIGHT TO HAVE A COURT OR A JURY DECIDE ANY COVERED CLAIMS.

## II. Excluded Claims

The following claims and disputes are not subject to this Policy ("Excluded Claims"):

A. For employees registered with the Financial Industry Regulatory Authority ("FINRA"), claims that are required and eligible to be arbitrated under the FINRA Code of Arbitration Procedure for Industry Disputes (except that if a Covered Claim may not be arbitrated before FINRA or is ineligible for, otherwise excluded

from, or not subject to arbitration before, FINRA, then any arbitration of such Covered Claim shall be conducted in accordance with this Policy);

B. Claims pending in court as of the date Bank of America distributes this Policy to employees;

C. Claims that may not be subject to a pre-dispute arbitration agreement under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act (unless the employee elects to pursue such claims in arbitration pursuant to this Policy);

D. Applications or requests for temporary and/or preliminary injunctive relief in aid of arbitration or for the maintenance of the status quo pending arbitration, with the merits of any Covered Claim to be heard in arbitration;

E. Claims for workers' compensation or unemployment compensation benefits, but not retaliation claims arising out of or relating to claims for workers' compensation or unemployment compensation benefits;

F. Claims under the National Labor Relations Act, as amended within the exclusive jurisdiction of the National Labor Relations Board;

G. For employees employed in California, claims for public injunctive relief under California law (*i.e.*, claims that benefit citizens as a whole, not just the employee or a group of employees), provided that a court of competent jurisdiction, not an arbitrator, will decide whether a claim is a claim for public injunctive relief;

H. Representative "non-individual" California Private Attorneys General Act ("PAGA") claims to the extent they cannot be waived under applicable law, brought by the employee for alleged California Labor Code violations that individuals other than the employee have suffered; and

I. Any claim that is expressly precluded from arbitration by a governing federal statute.

Nothing in this Policy shall prohibit an employee from filing a charge, complaint or claim, or participating in an investigation, with the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the Occupational Safety and Health Commission, or any other federal, state, or local administrative agency. Notwithstanding the foregoing, any charge, complaint or claim involving a Covered Claim that is not finally resolved by the administrative agency, and any appeal or proceeding that commences in an agency and later is appealed to or brought in state or federal court, shall be subject to arbitration under this Policy and submitted to arbitration.

If any Excluded Claim is combined with a Covered Claim, the employee and Bank of America agree to sever the Excluded Claim(s) from any case they bring and pursue the Excluded Claim(s) in a case separate from the Covered Claim(s), which will be arbitrated to the maximum extent permitted by the Federal Arbitration Act.

## III. Class, Collective, and Non-Individual Representative Action Waiver

A. Waiver of Class, Collective, and Non-Individual Representative Actions:

1. To the maximum extent permitted by applicable law, Covered Claims must be brought in arbitration in an individual capacity only for injuries or violations directly experienced by the party bringing the claim, and must be adjudicated on an individual basis, and may not be initiated or maintained on a class action, collective action, or non-individual representative action basis in court or arbitration. This means that neither employees nor Bank of America may serve or participate as a class or collective action member or representative or receive any recovery from a class or collective action involving Covered Claims in any proceeding. In addition, neither employees nor Bank of America may participate as a plaintiff or claimant in a class or collective action involving Covered Claims against the employee or Bank of America, and agree to take all steps necessary to opt-out of, or refrain from opting into, any class or collective action involving a Covered Claim.

2. The arbitrator shall not have the authority to: (i) consolidate or join claims by different persons into one proceeding; (ii) determine whether the Covered Claim should proceed to final adjudication as a class, collective or non-individual representative action; (iii) allow any Covered Claim to proceed in arbitration as a class, collective or non-individual representative action; and/or (iv) award relief on a class, collective or non-individual representative basis with respect to any Covered Claim.

B. California Private Attorneys General Act ("PAGA") Individual Action Requirement. Employees employed in California and Bank of America further agree to arbitrate any PAGA claim by an employee to recover any unpaid wages, civil penalties as to the employee's individual claim, or other individual relief. The arbitrator is without authority to preside over any non-individual PAGA claim (*i.e.*, any PAGA claim by a party to the arbitration for penalties associated with violations and/or injuries that the employee did not directly experience themselves). This PAGA Individual Action Requirement clause, or any portion thereof, will be severable from this Policy if there is a final judicial determination that it is invalid, unenforceable, unconscionable, void or voidable. In such case, the PAGA action must be litigated in a civil court of competent jurisdiction but the portion of this PAGA Individual Action Requirement that is enforceable shall be enforced in arbitration.

C. Court to Decide Enforceability of the Waiver: A court of competent jurisdiction, not an arbitrator, must resolve issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement set forth above.

D. Right to Challenge Validity of this Policy: The employee has the right to challenge this Policy on any grounds that may exist in law and equity, and Bank of America shall not discipline, discharge, or engage in any retaliatory actions against the employee in the event the employee chooses to do so. Bank of America, however,

reserves the right to enforce the terms and conditions of this Policy. If, for any reason, the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement are held unenforceable or invalid in whole or in part, then a court of competent jurisdiction, not an arbitrator, will decide the claim as to which the waiver or requirement was held unenforceable or invalid and all other Covered Claims will remain subject to arbitration.

## IV. **Forum and Rules**

Except for arbitrations before FINRA, the following rules will apply to any arbitration under this Policy:

A. Except as modified in this Policy, any Covered Claim will be resolved by final and binding arbitration conducted under the auspices and rules of JAMS in accordance with and subject to the JAMS Employment Arbitration Rules and Procedures and the JAMS Policy on Employment Arbitration Minimum Standards of Procedural Fairness ("JAMS Rules") in effect at the time of the arbitration or any successor rules. The JAMS Rules are available at www.jamsadr.com. If there is any conflict between the JAMS Rules and this Policy, the Policy shall govern.

B. Any proceeding under this Policy must be brought within the time period provided for within the statute(s) of limitations applicable to the Covered Claims asserted.

C. Unless otherwise agreed by the parties, the arbitration shall be held in the county of the employee's current or last principal place of employment with Bank of America or, if not practicable, in the county closest to the employee's current or last principal place of employment with Bank of America where the arbitration can be held. If the employee's current or last principal place of employment with Bank of America is outside of the United States, the arbitration shall be held in New York, New York.

D. Unless otherwise agreed by the parties, the arbitration will be submitted to a single arbitrator selected in accordance with the JAMS Rules.

E. Except as expressly precluded by federal law, any issue concerning arbitrability of a particular issue or claim pursuant to this Policy (except for issues concerning the enforceability or validity of the Waiver of Class, Collective, and Non-Individual Representative Actions and/or PAGA Individual Action Requirement) must be resolved by the arbitrator, not the court.

F. Any party shall have the right to file, and the arbitrator must promptly hear and decide, any motion permitted by the Federal Rules of Civil Procedure, including, but not limited to, motions to compel discovery, motions for protective orders, motions to dismiss, motions for summary judgment, and motions in limine or any other dispositive motion. The arbitrator shall issue an appropriate protective order prior to the production of any relevant and discoverable confidential information or other non-publicly available documents or information requiring that such materials be treated as confidential at all times during and after the arbitration.

G. The arbitrator shall follow and apply the substantive law, and be subject to the same rules of evidence and burdens of proof, that would have governed the Covered Claim(s) had it been heard in court. The arbitrator shall not enlarge, add to, subtract from, disregard, or otherwise alter the parties' rights under the applicable law. In reaching a decision, the arbitrator shall be bound by the law and shall have no power to vary from said law.

H. The arbitrator shall issue a final and binding written award, subject to review on the grounds set forth in the Federal Arbitration Act. The arbitrator shall be authorized to award any party the full remedies that would be available to such party if the Covered Claim had been filed in a court of competent jurisdiction. The arbitrator shall have no authority to make awards beyond that remedy or relief. The arbitrator may award reasonable attorneys' fees and expenses only if permitted by the applicable statute, law or contract. In the absence of such an express requirement, the arbitrator shall not have the authority to award attorneys' fees and expenses to either the employee or Bank of America. The arbitrator shall not have authority to consider any claim that has not been administratively exhausted as required by statute, that is barred by an applicable statute of limitations, or that is otherwise raised in an untimely fashion as provided by applicable law.

I. The employee shall be responsible for any filing fee required to initiate arbitration on the employee's behalf or to assert any counterclaims up to the amount of the filing fee, if any, the employee would have incurred had the employee filed such claims in court, and Bank of America shall be responsible for all additional arbitration filing fees, forum fees, arbitrator fees, and other administrative fees and costs of the arbitration forum. The fees and expenses for any witness, expert, consultant, interpreter and others retained or consulted by a party shall be paid by the party requiring the presence of such persons, subject to applicable law. Except as otherwise provided by law, all attorneys' fees shall be paid by the party that incurs them.

J. No arbitration award or decision shall have preclusive effect as to any issues or claims in any other arbitration or court proceeding unless each of the parties in such proceeding was also a named party in the original arbitration and the issue and/or claims were actually litigated and decided by the arbitrator.

## V. **<u>Confidentiality of Proceedings</u>**

To the maximum extent permitted by law, the employee and Bank of America shall maintain the confidential nature of any arbitration proceeding and the award except as may be necessary in connection with a judicial action to vacate or enforce an award, or unless otherwise required or protected by law or allowed by prior written consent of both parties. This provision shall not prevent either the employee or Bank of America from communicating with witnesses to the extent necessary to assist in arbitrating the proceeding, nor shall this provision prohibit the employee from: (a) discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any other conduct that you have reason to believe is unlawful; (b) engaging in protected concerted activity under the National Labor Relations Act (such as discussions of wages, hours, or other terms and conditions of employment); or (c) initiating communications directly with, responding to any inquiry from, volunteering information to, or providing testimony before, the Securities and Exchange Commission, the Department of Justice, FINRA, any other self-regulatory organization or any other governmental, law enforcement, or regulatory authority, in

connection with any reporting of, investigation into, or proceeding regarding suspected violations of law (and the employee shall not be required to advise or seek permission from the Company before engaging in any such activity).

## VI. **Severability**

If any part or provision of this Policy is found to be void, voidable, or otherwise unenforceable, that part or provision shall be severed and such a finding will not affect the validity of the remainder of this Policy, and all other parts and provisions will remain in full force and effect. If a court of competent jurisdiction determines that a particular provision set forth herein is invalid, unenforceable, or void under the applicable law in a particular jurisdiction, such provision will not be enforced in that jurisdiction but shall remain effective and enforceable in all other jurisdictions.

## VII. **Governing Law**

The enforceability of this Policy shall be governed by and interpreted in accordance with the Federal Arbitration Act.

## VIII. **Modifications**

Bank of America reserves the right, in its sole discretion, to modify the terms of this Policy prospectively at any time by providing thirty (30) calendar days advance notice to employees. Such modifications shall be effective thirty (30) calendar days after the notice is provided to employees. To the maximum extent permitted by law, Employees' continuation of employment for thirty (30) calendar days after such notice is provided shall be deemed acceptance of the revised terms.

## IX. **At-Will Employment**

Neither the terms nor conditions described in this Policy are intended to create a contract of employment for a specific duration of time. Employment with Bank of America is voluntarily entered into, and employees are free to end their employment at any time, with or without notice or cause, subject to any agreement between the employee and Bank of America. Similarly, Bank of America may terminate the employment relationship at any time for any reason, with or without prior notice or cause, subject to any agreement between the employee and Bank of America.

## X. **Policy Survives Termination of Employment**

This Policy will survive the termination of an employee's employment with Bank of America. This Policy shall control over any prior agreement between any employee and Bank of America regarding the subject matter of dispute resolution of Covered Claims. Notwithstanding the foregoing, in the event this Policy is found to be void, voidable, or otherwise unenforceable in full, or a Covered Claim is found not to be subject to this Policy, any prior agreement between an employee and Bank of America regarding the subject matter of dispute resolution shall remain in full force and effect.

BANK OF AMERICA



Marie Terezakis
Head of Employee Relations and GHR Conduct

---

Please note that for purposes of Section II.B., Bank of America distributed the Arbitration Policy to employees at 10 a.m. Eastern on November 8, 2024.