Exhibit 88

**From:** **Jonathan Sack** jsack1@gmail.com
**Subject:** Re: Formal Objection to Revised Addendum – Financial Harm & Failure of Disclosure
**Date:** July 18, 2025 at 21:40
**To:** [redacted]
**Cc:** Sasha Pemberton spemberton@sackandsack.com, Jonathan Sack jsack@sackandsack.com, Queenie Paniagua qpaniagua@sackandsack.com

JS

Under no circumstance should you take anything less than what you deem to be acceptable. Indeed, [redacted] settlement more than what would be your lawful entitlement, despite your ludicrous assertion that you are entitled to 3.5 years of front pay without mitigation / offset.

Among other unheard-of claims, like "constructive foreclosure" to recover the phony lost equity in your foreclosed property. Surely you taped our call yesterday (you tape all calls) and a replay of it will demonstrate you cannot articulate a cause of action against your former employer for the loss of your home, despite your telling us you had an investor give you money and your ability to pay the $147,000 to reinstate the mortgage, AI knows best!

It's insincere to repeatedly complain about our level of advocacy while offering praise too, in a strange effort to punish / motivate us.

We appreciate the stress that comes with a firing but we did not cause this firing, we have been there for you fighting for you and the result is [redacted] and that is an acknowledgement of wrongdoing and our effective counsel.

But please stop the name calling. It's getting tiresome to hear you point fingers when we have been your greatest champions and most effective advocates.

Recall, you came up with an increase of the original severance package [redacted] effort at negotiation (great job!), then you turned the matter over to us, and we increased the severance 12 times that sum, without risk, and in the span of 2 months. Incredibly, you take credit for this result. If it were not comical, lesser advocates would be insulted by your hurtful dings. I find it an odd way to motivate. Just saying.

Despite our 1 + hour call yesterday walking you through the litigation process, you never once mentioned your insistence on having California State STD claims survive the settlement.

At the end of our thoughtful conversation, all you wanted was for me to give you a $23,000 concession on the 1/3rd legal fee from $197,825, to $175,000. Shocking. Not.

Queenie, Sasha and I decided to gift you the sum and make you feel whole, and now you forget that the conditional gift was what was requested of us in order to make you satisfied with the legal representation. You asked for nothing more from us or the Bank as a condition of settlement.

It's always been about the money for you, despite your protestations and claims of harm, and your repeated statements of your personal wealth and accumulation of Porsches and real estate properties.

Recall that in my 36 years in practice representing employees, I've seen thousands of firings and I have dealt with all sorts of client situations. You making your firing about me and my firm is simply misplaced anger.

Nonetheless, shame be on you for pissing on Queenie, Sasha and me.

And you say you like brutal honesty, yet when it comes to you, only rainbows and unicorns apply. You can make up legal claims and cherry-pick parts of emails to prove a point, without question, you are ALWAYS right and must have the last word because you and your chat GPT know all.

Yet, our collective wisdom accounts for nothing.

You were the one who has been undermining the process with the successive last moment new demands out of thin air.

This latest one you kept from us until today which required that the agreement reached now conditionally require the bank to reverse the 3rd party determination to cease your STD application / appeal. You over-negotiated yourself into this place.

As you are aware, per the policy terms in effect from well before your termination, there are no rights to STD benefits after your termination. Yet at the final moment, you raised this point. Read the plan again. Feed it to your dumb computer chat GPT program. You don't get lots of other benefits the bank used to provide, yet you now insist on more rights and anyone else, despite the policy you agreed to abide by for your 20 years of employment.

Each morning, I look forward to receiving your AI generated bullet point emails with the silly subject lines and new email threads. Communicating with Negotiating against a computer-generated reply has always been easy. That's why you have shunned the usual phone calls that are a big part of the attorney-client relationship. From now on, I will insist that clients talk with us, and not only communicate by email (you admitted to using AI to reply to us).

I advocated for you today on the calls I had with counsel. The Bank heard your new settlement demand and revised the agreement to confirm that it will not entertain your new off-market demand and cannot permit such conditions to persist. Your ploy of making the settlement conditional backfired.

The Bank is paying you [redacted] compromise settlement, not a "make-whole-you-win-everything-you-demand payment."

You wish to have the last word on all points. For instance, even after you signed, your last minute (after you signed) assertion that your pay rate for the severance calculation was too low was laughable, even you knew that you were looking for more that you had no right to, asserting that the severance plan entitles you to a calculation including stock grants, bonuses and values that are plainly not base salary.

You knew the math was right (you had the severance agreement in hand for months and never raised the issue until after you signed) but then you ran the same old pathetic and dumb AI chat GPT response to us, again, but you failed to show your dumb computer the underlying policy documents.

So of course your dumb computer-generated email spewed nonsense that you needed to walk back from when I referred you to the policy documents and how severance is calculated. In the 12,000 severance negotiations I've conducted since 1989, you were the first client to assert that the applicable pay rate for calculating severance should include a bunch of other pay, including stock and bonuses. Congrats! Please.

I loved the coy ploy of not signing on page 8. A classic effort to reserve your rights, as if no one would see that missing signature of yours on the release document. Who do you think your audience is, a bunch of dummies?

Then there was the re-trade on the split of settlement between wages and 1099 payments. All of a sudden, you wanted a greater amount apportioned to 1099, when it was never discussed and you knew from our prior conversations that the most that could be apportioned was 50% / 50%. Where did that come from? Again, never mentioned before, just your last minute effort at getting something you knew would only be an obstacle. The Bank rejected my demand for a larger split on the 1099.

Remind me to tell you the old joke about uber-chochmah two pants.

Now, you can choose to sign the final document (your STD is the same as severance pay so I fail to understand how you get more damages calculated with each email you send to us; there is no double counting for STD and severance pay, and we discussed this yesterday, and your rights as a CA resident are independent of your rights as an employee of B of A), or you can choose to arbitrate whatever claims you wish to assert with or without our firm representing you. Your rights to state disability payments are independent of your waiver of claims against B of A and its 3rd party administrator.

Be mindful that if you terminate my firm, the firm's retaining lien of $197,825 on this file and your matter needs to be paid to my law firm.

Your new counsel will need to pay off the earned $197,825 lien from any proceeds first before you and the new lawyers get paid.

If you terminate my firm now, we will inform Bank of America of our lien and our rights to the $197,825 fee earned [redacted] settlement.

Our firm's conditional gift to settle no longer applies. It only applies if you accept the settlement offered to you yesterday.

You think I did not see this coming yesterday when I said I would conditionally gift you the lower fee after you signed, and you did not trust me?

To think I had not seen your ploy for what it was is to grossly underestimate the level of my experience in these matters.

Unless you advise otherwise, I will inform Bank counsel of your rejection and I'm quite certain they will take the deal off of the table. For good.

Your salary continuation and paid benefits will cease.

Be mindful that your rights to healthcare will then be under COBRA at your sole expense. You said that you don't mind this; you have the ability to wait out the 12-18 months of an arbitration and you have plenty of financial resources to fund your life.

I've advised you to elect to continue coverage under any event.

Do not permit your medical coverage to lapse, especially given the medical needs you have told us about.

Jonathan Sack, Esq.
Sack & Sack, LLP
70 East 55th Street, 10th Floor
New York, NY 10022
Tel: 212-702-9000
Cell: 917-754-9000
jsack1@gmail.com
jsack@sackandsack.com

On Fri, Jul 18, 2025 at 11:55 PM Julio Ravada <jravada@icloud.com> wrote: