UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 26-3535 JGB (SPx)** | Date | August 27, 2026 |
|---|---|---|---|
| Title | ***Luna D'Sol v. Bank of America, N.A., et al.*** | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) DENYING Plaintiff's Motion to Remand (Dkt. No. 28); (2) DENYING Defendants' Motion to Compel Arbitration (Dkt. No. 10); (3) ORDERING the Parties to File a Joint Statement Regarding Limited Discovery About Formation of Arbitration Agreement by September 14, 2026; (4) DENYING Plaintiff's Motion for Sanctions (Dkt. No. 45); (5) DENYING Plaintiff's Ex Parte Application (Dkt. No. 65); (6) DENYING Plaintiff's Ex Parte Application (Dkt. No. 67); (7) VACATING the August 31, 2026 Hearing; and (8) DENYING AS MOOT Plaintiff's Ex Parte Applications to Continue Hearings (Dkt. Nos. 32, 55) (IN CHAMBERS)**

Before the Court are Plaintiff's Motion to Remand (Dkt. No. 28), Defendants' Motion to Compel Arbitration (Dkt. No. 10), Plaintiff's Motion for Sanctions (Dkt. No. 45), Plaintiff's Ex Parte Application filed August 14, 2026 (Dkt. No. 65), and Plaintiff's Ex Parte Application filed August 18, 2026 (Dkt. No. 67). The Court finds these matters appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15.

After considering the papers filed in support of and in opposition to these matters, the Court **DENIES** Plaintiff's Motion to Remand. (Dkt. No. 28.) The Court **DENIES** Defendants' Motion to Compel Arbitration (Dkt. No. 10) and **ORDERS** the parties to file a joint statement by September 14, 2026, regarding the proposed scope of and timeline for limited discovery related to the issue of contract formation only. The Court **DENIES** Plaintiff's Motion for Sanctions. (Dkt. No. 45.) Further, the Court **DENIES** Plaintiff's August 14, 2026 Ex Parte Application (Dkt. No. 65) and **DENIES** Plaintiff's August 18, 2026 Ex Parte Application (Dkt. No. 67).

The Court **VACATES** the August 31, 2026 hearing. As such, Plaintiff's ex parte application to continue the hearing on the Motion to Compel is **DENIED AS MOOT**. (Dkt. No. 32.) Plaintiff's ex parte application to continue the hearings on the Motion to Remand and Motion to Compel is also **DENIED AS MOOT**. (Dkt. No. 55.)

## I. BACKGROUND

On March 4, 2026, Plaintiff Luna D'Sol ("Plaintiff") filed suit in Riverside County Superior Court naming Bank of America, N.A. ("BANA"), Bank of America Corporation ("BAC"), Tricia Shanks ("Shanks"), and Peter C. Maxim ("Maxim") as defendants. (Dkt. No. 1-1.) The Complaint alleged claims for: (1) discrimination in violation of the Fair Employment and Housing Act (FEHA); (2) hostile work environment harassment in violation of FEHA; (3) retaliation in violation of FEHA; (4) failure to accommodate a disability in violation of FEHA; (5) failure to pay final wages and issuance of inaccurate wage statement; (6) failure to engage in interactive process; (7) aiding and abetting discrimination, harassment, and retaliation; (8) failure to prevent discrimination, harassment, or retaliation; and (9) wrongful termination of employment in violation of public policy. (Dkt. No. 1-1.) Of these nine causes of action, Plaintiff alleged the second (hostile work environment harassment) and the seventh (aiding and abetting discrimination, harassment, and retaliation) causes of action against Defendant Maxim. (Id.)

### A. Plaintiff's Motion to Remand

On June 25, 2026, Defendant BANA removed to the action to federal court, invoking this Court's diversity jurisdiction. (Dkt. No. 1.) On July 13, 2026, Plaintiff filed a Motion to Remand (Dkt. No. 28), supported by a memorandum of points and authorities ("MTR," Dkt. No. 29). On July 15, 2026, Plaintiff filed a declaration in support of her Motion to Remand. (Dkt. No. 31.) On July 20, 2026, Defendants Bank of America Corporation, Bank of America, N.A., Peter C. Maxim, and Tricia Shanks (together, "Defendants") filed their Opposition ("MTR Opp.," Dkt. No. 37) with an accompanying request for judicial notice (Dkt. No. 38.) On July 27, 2026, Plaintiff filed her Reply ("MTR Reply," Dkt. No. 49) with an accompanying request for judicial notice (Dkt. No. 50). Plaintiff also filed an opposition to Defendants' July 20, 2026 request for judicial notice (Dkt. No. 51), an objection to the Declaration of Karen Y. Cho (Dkt. No. 52), and an objection to evidence submitted in support of Defendants' opposition to Plaintiff's Motion to Remand (Dkt. No. 53).

### B. Defendants' Motion to Compel Arbitration

On July 2, 2026, Defendants filed a Motion to Compel Arbitration ("MTC," Dkt. No. 10), accompanied by a request for judicial notice (Dkt. No. 11). On July 20, 2026, Defendants filed a reply in support of its MTC, noting that Plaintiff had not filed an opposition by the filing deadline. (Dkt. No. 35.) On July 21, 2026, Plaintiff filed an opposition to the MTC (Dkt. No. 43)

with a supporting declaration (Dkt. No. 42).[1] On July 30, 2026, Defendants filed an amended reply in support of the MTC (Dkt. No. 56) and evidentiary objections to Plaintiff's declaration (Dkt. No. 57). On August 3, 2026, Plaintiff filed an objection to Defendants' amended reply. (Dkt. No. 59.)

### C. Plaintiff's Motion for Sanctions

On July 22, 2026, Plaintiff filed a motion for sanctions against Defendants and their counsel. (Dkt. No. 45.) Plaintiff filed a memorandum of points and authorities (Dkt. No. 46) and declaration (Dkt. No. 47) in support of her motion for sanctions. On August 3, 2026, Defendants filed their opposition to the motion for sanctions (Dkt. No. 60) and a request for judicial notice (Dkt. No. 61). On August 10, 2026, Plaintiff filed her reply. (Dkt. No. 64.)

### D. Plaintiff's Ex Parte Application Filed August 14, 2026

On August 14, 2026, Plaintiff filed an ex parte application requesting that: (1) the Court strike portions of Dkt. No. 10-7 and Dkt. No. 61-1 that publicly disclose Plaintiff's former legal name; (2) the Court deny Defendants' request for remote appearance; (3) the Court consider the subsequent record; (4) the Court direct Defendants to refrain from publicly disclosing Plaintiff's former legal name in future filings; and (5) the Court grant other and further such relief. (Dkt. No. 65.) Defendants filed their opposition on August 17, 2026. (Dkt. No. 66.) Plaintiff filed her reply on August 20, 2026. (Dkt. No. 70.)

### E. Plaintiff's Ex Parte Application Filed August 18, 2026

On August 18, 2026, Plaintiff filed another ex parte application requesting the Court to strike Dkt. No. 26 and Dkt. Nos. 26-1 through 26-10 due to filing, service, duplication, and record irregularities. (Dkt. No. 67.) On August 19, 2026, Defendants filed their opposition. (Dkt. No. 69.) On August 21, 2026, Plaintiff filed her reply. (Dkt. No. 71.)

## II. LEGAL STANDARD

### A. Motion to Remand

#### 1. Removal Jurisdiction

A defendant may remove a state court action to federal court if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). The notice of removal must be filed

[1] Though the Court acknowledges that Plaintiff's opposition was untimely, given Defendants' amended reply in response to Plaintiff's opposition, the Court deems briefings complete and evaluates the merits of Defendants' Motion to Compel Arbitration. The parties are reminded that failure to file any memorandum or other documents within the deadline set by the Local Rules may be deemed consent to the granting or denial of the motion. L.R. 7-12.

within thirty days after the defendant receives the initial pleading or within thirty days after the defendant receives a paper "from which it may first be ascertained that the case is one which is or has become removable" if "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b). "A plaintiff who contests the existence of removal jurisdiction may file a motion to remand, see 28 U.S.C. § 1447(c), the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1)." Leite v. Crane Co., 749 F.3d 1117, 1122 (9th Cir. 2014).

Removability of an action is "determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a [defendant's] duty to make further inquiry." Harris v. Bankers Life & Cas. Co., 425 F.3d 689, 694 (9th Cir. 2005). However, "it is to be presumed that a cause lies outside the limited jurisdiction of the federal courts and the burden of establishing the contrary rests upon the party asserting jurisdiction.'" Hunter v. Philip Morris USA, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting Abrego Abrego v. Dow Chem. Co., 443 F.3d 676, 684 (9th Cir. 2006)) (citation modified). Given this strong presumption against removal jurisdiction, "the court resolves all ambiguity in favor of remand to state court." Id. (quoting Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992)).

**2. Fraudulent Joinder Doctrine**

Federal courts have diversity jurisdiction over suits for more than $75,000 where the citizenship of each plaintiff differs from that of each defendant. 28 U.S.C. § 1332(a); Grancare, LLC v. Thrower by & through Mills, 889 F.3d 543, 548 (9th Cir. 2018). "[J]oinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity, 'if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state.'" Weeping Hollow Ave. Tr. v. Spencer, 831 F.3d 1110, 1113 (9th Cir. 2016) (quoting Morris v. Princess Cruises, Inc., 236 F.3d 1061, 1067 (9th Cir. 2001)). Given the "general presumption against [finding] fraudulent joinder," a party invoking federal diversity jurisdiction bears a "heavy burden" to prove fraudulent joinder "by clear and convincing evidence." Grancare, 889 F.3d at 548 (quoting Hunter, 582 F.3d at 1046); Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007).

A defendant can establish fraudulent joinder by showing "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." Grancare, 889 F.3d at 548 (quoting Hunter, 582 F.3d at 1044). The plaintiff is unable to establish a cause of action against the non-diverse party if the non-diverse party "cannot be liable on any theory." Id. (quoting Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)). For example, courts find fraudulent joinder where claims against the non-diverse defendant are time-barred, the non-diverse defendant's conduct is privileged under state law, or the non-diverse defendant is not a party to the contract at issue. Id. (collecting cases); see also Hamilton, 494 F.3d at 1206. However, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the

state court." Id. (quoting Hunter, 582 F.3d at 1046). Further, courts "decline[] to uphold fraudulent joinder rulings where a defendant raises a defense that requires a searching inquiry into the merits of the plaintiff's case, even if that defense, if successful, would prove fatal." Id. at 548–49 (citing Hunter, 582 F.3d at 1046).

The test for fraudulent joinder (a jurisdictional inquiry) and the test for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (an adjudication on the merits) are not equivalent, as a defendant may fail under Rule 12(b)(6) without having necessarily been fraudulently joined. Id. at 549. The test for fraudulent joinder is more akin to the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction. Id.

**3. 28 U.S.C. § 1447(c)**

"Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Gardner v. UICI, 508 F.3d 559, 561 (9th Cir. 2007) (quoting Martin v. Franklin Capital Corp., 546 U.S. 132, 134 (2005)). "[W]hether a removal is improper is not dispositive in determining whether fees should be awarded under 28 U.S.C. § 1447(c)." Id. at 562. Indeed, removal is not objectively unreasonable "solely because the removing party's arguments lack merit, or else attorney's fees would always be awarded whenever remand is granted." Grancare, 889 F.3d at 552 (quoting Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1065 (9th Cir. 2008)).

**B. Motion to Compel Arbitration**

The Federal Arbitration Act (FAA) requires district courts to compel arbitration of claims covered by an enforceable arbitration agreement. 9 U.S.C. § 3. Given the "liberal federal policy favoring arbitration," arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." Zoller v. GCA Advisors, LLC, 993 F.3d 1198, 1201 (9th Cir. 2021) (quoting AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011)).

When determining whether to compel arbitration, courts must decide: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. Id.; see also Lifescan, Inc. v. Premier Diabetic Services, Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (describing the limited role of courts). "[W]hile doubts concerning the scope of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate has been made." Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 743 (9th Cir. 2014) (quoting Applied Energetics, Inc. v. NewOak Cap. Markets, LLC, 645 F.3d 522, 526 (2d Cir. 2011)). The party seeking to compel arbitration bears the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. Chabolla v. ClassPass Inc., 129 F.4th 1147, 1153 (9th Cir. 2025). Federal courts apply state-law principles of contract formation in determining whether the parties have agreed to

arbitrate a particular dispute. Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 855 (9th Cir. 2022).

**C. Motion for Sanctions**

A district court may sanction a party under the "inherent power of federal courts to levy sanctions in response to abusive litigation practices." Leon v. IDX Sys. Corp., 464 F.3d 951, 957-58 (9th Cir. 2006). A court may invoke its inherent sanctioning authority "either for willful disobedience of a court order or when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Am. Unites for Kids v. Rousseau, 985 F.3d 1075, 1090 (9th Cir. 2021). Bad faith "requires proof of bad intent or improper purpose." Id. And "when a court imposes sanctions based on bad faith, the court must make an explicit finding that the sanctioned party's conduct 'constituted or was tantamount to bad faith.'" Id. (quoting Primus Auto. Fin. Servs., Inc. v. Batarse, 115 F.3d 644, 648-50 (9th Cir. 1997)).

**D. Ex Parte Application**

Ex parte applicants must show that their "cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures." Wells Fargo Bank, N.A. v. Stewart Homes, Inc., 732 F. Supp. 3d 1169, 1175 (C.D. Cal. 2024) (quoting Mission Power Eng. Co. v. Continental Cas. Co., 883 F. Supp. 488, 492 (C.D. Cal. 1995)). In determining irreparable prejudice, courts usually assess the merits of the motion "because if it is meritless, failure to hear it cannot be prejudicial." Id. Ex parte applicants must also show that they are "without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." Id.

## III. DISCUSSION

**A. Plaintiff's Motion to Remand**

**1. Removal Was Timely.**

Defendant BANA's removal was timely. A defendant has thirty days after receipt by or service on that defendant of the initial pleading or summons to file the notice of removal. 28 U.S.C. § 1446(b)(2)(B). On May 26, 2026, BANA's counsel signed and returned to Plaintiff its Notice and Acknowledgment of Receipt of Summons (NAR). ("Antonopoulos Decl." ¶ 3, Dkt. No. 37-3.) BANA filed its notice of removal on June 25, 2026. (Dkt. No. 1.) Plaintiff argues that BANA's removal was untimely because there was a typo in the case number, the proof of service accompanying the NAR was unsigned, and the state court recorded service of the complaint and summons on June 5, 2026. (MTR at 15–17; MTR Reply at 4–5.) These "defects" are immaterial to the question of whether BANA timely filed its notice of removal, as none of these errors would render BANA's notice of removal untimely.

//

//

### 2. All Defendants Consented to Removal.

Defendants BANA, BAC, Shanks, and Maxim all consented to removal as required by 28 U.S.C. § 1446(b)(2)(A). Defendant BANA's averment that "all Defendants consent to the removal of this action" (Dkt. No. 1 at 1, n.1.) is sufficient to show Defendants' unanimous consent. Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009) ("One defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient.").

### 3. There is Complete Diversity Between the Parties Under the Fraudulent Joinder Doctrine.

BANA removed this case to federal court based on diversity jurisdiction, even though the named parties are not completely diverse. BANA contends that non-diverse Defendant Maxim was fraudulently joined in this action to destroy complete diversity.[2] (MTR Opp. at 1, 8; Dkt. No. 1 at 7.)

As such, the Court evaluates whether "a possibility" of a claim against Maxim precludes finding fraudulent joinder. Plaintiff brings two causes of action against Maxim: hostile work environment harassment under FEHA; and aiding and abetting discrimination, harassment, and retaliation under FEHA. (Dkt. No. 1-1.) Defendants argue that "both of these FEHA claims are barred because Plaintiff did not name Maxim in her administrative charge and thus failed to exhaust administrative remedies as to Maxim before filing her complaint." (MTR Opp. at 1, 5.) Defendants also contend that Plaintiff's allegations against Maxim "amount to personnel management conduct, which do not support a claim for harassment" and "there is no liability for discrimination or retaliation on an aiding and abetting theory." (MTR Opp. at 1.)

Maxim is fraudulently joined because Plaintiff failed to name Maxim in her administrative charge. Before filing a suit alleging FEHA violations, a plaintiff must exhaust administrative remedies by filing a complaint of discrimination with the California Civil Rights Department ("CRD," formerly known as DFEH) and obtaining a right-to-sue letter. Cal. Gov't Code § 12960; see also Porter v. United Parcel Serv., Inc., No. CV 21-5349-GW-MARX, 2022 WL 3127911, at *2 (C.D. Cal. May 3, 2022). "The scope of the written administrative charge defines the permissible scope of the subsequent civil action." Rodriguez v. Airborne Express, 265 F.3d 890, 897 (9th Cir. 2001). Therefore, "[a] plaintiff is barred from suing individual defendants she fails to name in the DFEH charge." Batacan v. Allscripts Healthcare, LLC, No. SACV2100515CJCADSX, 2021 WL 2139065, at *2 (C.D. Cal. May 25, 2021). Plaintiff named Bank of America and CT Corporation (Registered Server) as the only respondents in her CRD

[2] BANA claims that BAC and Shanks are also sham defendants. (Dkt. No. 1 at 1, n.1.) The parties agree that BAC is a citizen of North Carolina and Delaware and Shanks is a citizen of Pennsylvania, while Plaintiff is a citizen of California. (See MTR at 6,7; MTR Opp. at 4.) Therefore, the Court need not decide whether BAC and Shanks were fraudulently joined for purposes of determining this Court's diversity jurisdiction over the matter.

charge. ("CRD Complaint," Dkt. No. 38-1.[3]) Plaintiff does not name Maxim anywhere in her CRD Complaint. (See CRD Complaint.)

Nonetheless, Plaintiff argues that she has identified Maxim in her CRD Complaint because she explained that she shared her transgender status and upcoming surgeries "with manager" or with "management" of the Bank. (MTR Reply at 2.) "[W]hile California courts have indicated that, in limited circumstances, a technical failure to properly name a defendant will not preclude the filing of an action against that defendant, Plaintiff has not pled facts establishing that her failure to name [Maxim] in her DFEH complaint should be excused, nor has she established that [Maxim] was actually included in the body of her complaint, even if [he] was left out of the caption." Tapia v. Artistree, Inc., 2014 WL 1402306, at *2 (C.D. Cal. Apr. 10, 2014). Plaintiff also points out that she attached a February 26, 2025 email addressed to Shanks and Maxim to her CRD Complaint. (MTR Reply at 2.) The Court is unable to verify that the screenshot of "Uploaded Files" and the photos of the email addressed to Defendants Shanks and Maxim (Dkt. No. 49-4) are an accurate depiction of the materials submitted to the CRD. Even assuming the photographs shown in Plaintiff's Exhibit 51 (id.) were indeed submitted with her CRD Complaint, Plaintiff does not meet the requirement to name defendants in the *caption* or *body* of her administrative charge. See Reyes v. Marshalls of CA, LLC, No. 222CV01245ODWASX, 2022 WL 2753520, at *5 (C.D. Cal. July 14, 2022) ("[T]he specific defendant must be named in the caption or body of the DFEH complaint.").

The Court **DENIES** Plaintiff's Motion to Remand because Plaintiff has failed to exhaust her FEHA administrative remedies with respect to Maxim, and her FEHA claims against him are therefore barred. Rodriguez, 265 F.3d at 897 ("Allegations in the civil complaint that fall outside of the scope of the administrative charge are barred for failure to exhaust . . . ."). The Court finds that amendment would be futile because Plaintiff does not dispute that she did not file an administrative charge naming Maxim with the CRD. Therefore, Maxim's joinder was fraudulent, and there is complete diversity among the remaining parties to support this Court's diversity jurisdiction. The Court need not reach the issue of whether Plaintiff has alleged a viable harassment claim or a viable aiding and abetting claim against Maxim to deny Plaintiff's Motion to Remand.

**4. The Amount in Controversy Requirement Is Met.**

Though Plaintiff contests the reliability of Defendant BANA's cited case (see MTR at 18), the parties do not dispute that the amount in controversy in this matter exceeds $75,000.

//

//

//

//

[3] As the Court finds Plaintiff's CRD Complaint (CRD Matter Number 202508-30704712) is not subject to reasonable dispute, the Court takes judicial notice of Plaintiff's Complaint of Employment Discrimination Before the State of California filed with the CRD. (Dkt. No. 38-1.)

### 5. Plaintiff's Request for Costs Is Denied.

The Court finds that Defendant BANA had an objectively reasonable basis for seeking removal, as Plaintiff cannot maintain a suit against Maxim due to her failure to exhaust administrative remedies as to Maxim. Under these circumstances, a reasonable litigant in Defendant BANA's position could have concluded that federal court was the proper forum to litigate Plaintiff's claims. As Defendant BANA's removal of the case was not objectively unreasonable, the Court finds the award of costs and attorney's fees improper. See Grancare, 889 F.3d at 552.

## B. Defendants' Motion to Compel Arbitration

### 1. Defendants Have Not Established the Existence of an Arbitration Agreement by a Preponderance of the Evidence.

As the party seeking to compel arbitration, Defendants bear the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence. Johnson v. Walmart Inc., 57 F.4th 677, 681 (9th Cir. 2023). Defendants submit a declaration by Dineen M. Allen in support of the existence of an arbitration agreement. ("Allen Decl.," Dkt. No. 10-7.) Allen, a Senior Vice President at BANA, asserts that on November 8, 2024 and again on November 22, 2024, BANA distributed an Arbitration Policy to "all active U.S.-based employees, including Ms. D'Sol." (Allen Decl. ¶ 5.) Allen declares that she "reviewed the Bank's internal electronic data to confirm that Ms. D'Sol and the Individual Defendants received both emails with the link to the Arbitration Policy." (Allen Decl. ¶ 6.)

Plaintiff argues that "[s]he has no record of receiving, opening, or acknowledging either email." (MTC Opp. at 4.) Plaintiff also points out that Defendants present "no delivery log, no read receipt, no distribution list bearing Plaintiff's name or email address" to show that the emails containing the arbitration agreement were actually delivered to Plaintiff's work email. (MTC Opp. at 8.) Defendants respond that "the Bank implemented a nationwide rollout of its Arbitration Policy on November 8, 2024, and the Bank's business records maintained in the ordinary course of business confirm that notice of the Arbitration Policy was sent to Plaintiff's company email address as part of that rollout." (MTC Reply at 5.)

Plaintiff contests the existence, not the scope, of an arbitration agreement that would encompass this dispute. Therefore, the presumption in favor of arbitrability does not apply, and the Court applies state-law principles of contract interpretation to decide whether an enforceable arbitration agreement exists. Johnson, 57 F.4th at 681–82 (9th Cir. 2023). To form a contract under California law, there "must be actual or constructive notice of the agreement and the parties must manifest their mutual assent." Keebaugh v. Warner Bros. Ent. Inc., 100 F.4th 1005, 1014 (9th Cir. 2024) (quoting Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 512-13 (9th Cir. 2023)). Though parties may manifest assent through conduct, "the conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents." Berman, 30

F.4th at 855. Here, Defendants' evidence of a nationwide rollout of its arbitration agreement and a declaration that the Bank's business records confirm notice to Plaintiff are insufficient to show, by a preponderance of the evidence, that Plaintiff had actual or constructive notice of the arbitration agreement. The Court therefore **DENIES** Defendants' Motion to Compel Arbitration.

**2. The Court Permits Limited Discovery with Respect to Notice.**

The Court finds that discovery—limited to the issue of contract formation—is warranted. Plaintiff's brief, however, is not sufficiently specific as to what discovery she would seek. Before issuing a limited discovery schedule, the Court **ORDERS** the parties to file a joint statement, no later than September 14, 2026, specifying the scope of and timeline for limited discovery solely on the issue of the existence of an arbitration agreement.

### C. Plaintiff's Motion for Sanctions

The Court finds substantial overlap in the briefings related to Plaintiff's Motion for Sanctions and the parties' briefs related to the Motion to Remand and the Motion to Compel Arbitration. Though the Court notes the parties' evidentiary objections and procedural deficiencies in various briefs, the Court finds no conduct by Defendants' counsel that is tantamount to bad faith to warrant an imposition of sanctions. The Court **DENIES** Plaintiff's motion for sanctions. Further, the Court sternly advises Plaintiff to engage in good faith meet-and-confer efforts to resolve or clarify any issues with Defendants before commencing unnecessary or duplicative motions practice.

### D. Plaintiff's August 14, 2026 Ex Parte Application

In Plaintiff's August 14, 2026 ex parte application, she requests, among other relief, that the Court strike portions of Dkt. No. 10-7 and Dkt. No. 61-1 that publicly disclose Plaintiff's former legal name. (Dkt. No. 65.) Defendants state that they do not oppose sealing or otherwise restricting public access to Plaintiff's former legal name in Dkt. Nos. 10-7 and 61-1 (Dkt. No. 66 at 1) but nonetheless explain that "the Allen Declaration used Plaintiff's former name to authenticate and identify the employee reflected in the Bank's records and to establish delivery of the Arbitration Policy" and that Plaintiff expressly states her former legal name in her own filings multiple times. (Dkt. No. 66 at 1–2.)

Federal Rule of Civil Procedure 5.2 and this District's Local Rule 5.2-1 require certain personal identifiers to be redacted before filing in the public docket. The filer is responsible for ensuring full compliance with Rule 5.2 to protect sensitive and private information, and "[a] person waives the protection of Rule 5.2(a) as to the person's own information by filing it without redaction and not under seal." L.R. 5.2-1; Fed. R. Civ. P. 5.2. Federal Rule of Civil Procedure 5.2 specifies redaction of an individual's sensitive information, including Social Security number, taxpayer identification number, birthdate, or financial account number. But the Rules do not

require redaction of a party's legal name—former or otherwise—unless the party is known to be a minor. Fed. R. Civ. P. 5.2.

Plaintiff seeks to redact her former legal name but cites no rule or law supporting such a redaction. Moreover, Plaintiff herself expressly states her former legal name in her own filings. Therefore, the Court finds that Plaintiff has not shown irreparable prejudice or Plaintiff's lack of fault in the disclosure of her former legal name. The Court advises the parties to follow the procedures set forth by the Local Rules and the Rules of this Court should they seek to redact certain information from future filings. Noting Plaintiff's wishes, the Court also advises the parties to refrain from stating Plaintiff's former legal name unless necessary. The Court **DENIES AS MOOT** the remainder of Plaintiff's requests.

### E. Plaintiff's August 18, 2026 Ex Parte Application

Plaintiff seeks to strike Defendants' opposition to Plaintiff's July 15, 2026 ex parte application (Dkt. No. 26) and Defendants' accompanying submissions (Dkt. Nos. 26-1 through 26-10) because they were docketed before Plaintiff's July 15, 2026 application and duplicated previous filings. (Dkt. No. 67.) The Court finds that Plaintiff has not demonstrated the need for any emergency relief, nor irreparable prejudice resulting from misordered or duplicative filings. See Mission Power Engineering Co. v. Continental Casualty Co., 883 F. Supp. 488, 492-93 (C.D. Cal. 1995). As such, the Court **DENIES** Plaintiff's ex parte application. (Dkt. No. 67.)

As this Court's Standing Order emphasizes, ex parte applications are reserved for requesting extraordinary relief. (Dkt. No. 62.) The Court warns Plaintiff that misuse of ex parte applications may result in sanctions and further delays in the ultimate resolution of her case.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Remand. (Dkt. No. 28.) The Court **DENIES** Defendants' Motion to Compel Arbitration (Dkt. No. 10) and **ORDERS** the parties to file, **no later than September 14, 2026**, a joint statement proposing (1) a limited scope of discovery regarding the formation of an arbitration agreement and (2) a timeline for such discovery and hearing on the issue of arbitrability. The Court **DENIES** Plaintiff's Motion for Sanctions. (Dkt. No. 45.) The Court **DENIES** Plaintiff's August 14, 2026 Ex Parte Application (Dkt. No. 65) and **DENIES** Plaintiff's August 18, 2026 Ex Parte Application (Dkt. No. 67.) The Court **VACATES** the August 31, 2026 hearing and **DENIES AS MOOT** Plaintiff's ex parte applications to continue hearings (Dkt. No. 32, 55).

**IT IS SO ORDERED.**